IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, Individually
and On Behalf of All Others
Similarly Situated,

    Plaintiffs,

vs.

LOU GALLEGOS, Secretary of the New Mexico
Department of Human Services,

    Defendant.

No. CIV 88-0385 JC

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

1. The named plaintiff is the single parent of a 12 year old boy. Recently, through no fault of her own, her employment earnings were drastically reduced. After depleting her savings on living expenses, plaintiff applied for food stamps, public assistance through the Aid to Families with Dependent Children (AFDC) program and Medicaid benefits from the New Mexico Department of Human Services (HSD) for her child and herself. She needed this assistance to survive until she could become fully employed again.

2. HSD, in violation of federal law, failed to screen plaintiff's food stamp application at the time she submitted it to determine whether her household was eligible to receive emergency food stamps. As a result, although plaintiff's household was entitled to receive food stamps within 5 days of submitting the food stamp application, it did not.

3. Plaintiff was also entitled under federal law to a determination by HSD of her eligibility for food stamps, AFDC and Medicaid within 30 days of the date she applied for these benefits. If she was eligible, she was also entitled to receive her authorization to participate (ATP) card or food

coupons within that time period, and prompt receipt of her AFDC grant and Medicaid authorization card. More than 30 days have elapsed and plaintiff has not received any eligibility determination or any assistance, although she has fully cooperated with HSD and has demonstrated her eligibility for all of these assistance programs. Instead, HSD has required plaintiff to verify unnecessary information and to reverify information already verified, and has accused her of failing to cooperate with the application and eligibility process.

4. Plaintiff suffers from diabetes and heart disease. She and her son have gone and continue to go without basic necessities, including food and medicines, because of HSD's failure to comply with the application processing deadlines imposed by federal law. She seeks, on her own behalf and for all other families and/or households similarly situated, a declaration that these practices are unlawful and to enjoin these practices.

### PARTIES

5. DEBRA HATTEN-GONZALES is an adult citizen and resident of Santa Fe, New Mexico.

6. LOU GALLEGOS is the Secretary of HSD. As such, he administers the New Mexico Public Assistance Act, Sections NMSA 1978, § 27-1-1 et seq. (1984 Repl.Pamp. and 1987 Cum.Supp.)., NMSA 1978.

### JURISDICTION

7. This action arises under 42 U.S.C. § 1983 (1982) and the Fifth and Fourteenth Amendments to the United States Constitution.

8. Jurisdiction is conferred by 28 U.S.C. §§ 2201, 2202, 1331, 1343(a)(3) and (4) and, for the claims arising under the Food Stamp Act of 1977, 28 U.S.C. 1337 (1982).

### STATUTORY AND REGULATORY SCHEME

#### Introduction

9. New Mexico participates in a comprehensive federal-state system

of funding and administering food, public assistance and medical programs to low-income individuals, households and/or families. HSD is the state agency designated to administer the food stamp, AFDC and Medicaid programs in New Mexico. NMSA 1978, § 27-1-1 et seq. (1984 Repl.Pamp. and 1987 Cum.Supp.). As such, HSD must comply with federal policies and procedures which govern participating states, through assurances required by and made in its state plan of operation for the food stamp program, 7 U.S.C. § 2020 (d) and (e) (1982, as amended) and 7 C.F.R. § 272.2 (1987), its state plan for public assistance, 42 U.S.C. §§ 601 and 602 (1982, as amended) and 45 C.F.R. § 201.3 (1987), and its state plan for medical assistance, 42 U.S.C. §§ 1396 and 1396a (1982, as amended) and 42 C.F.R. § 431.1 (b) (1987).

10. Food assistance is provided through the food stamp program authorized by the Food Stamp Act of 1977, 7 U.S.C. § 2011, et seq. The purpose of the food stamp program is to alleviate hunger and malnutrition, promote general welfare and safeguard the health and well-being of low-income households by permitting them to obtain a more nutritious diet. 7 U.S.C. § 2011 and 7 C.F.R. § 271.1(a). Food coupons or stamps are provided eligible households, which may be used like cash to purchase food. 7 U.S.C. § 2013(a). The United States Department of Agriculture (DOA) implements and oversees state participation in the food stamp program. 7 U.S.C.A. § 2013 (a). The DOA has promulgated regulations for the food stamp program at 7 C.F.R. 271, et seq. (1987).

11. Public assistance is provided to needy families with dependent children through the Aid to Families With Dependent Children (AFDC) program authorized by Part A of title IV of the Social Security Act of 1935, 42 U.S.C. § 601, et seq. (1982, as amended). The AFDC program was enacted (1) to encourage the care of dependent children in their own home or that of relatives; and (2) to ensure that parents or guardians are financially able to provide for these children. 42 U.S.C. § 601. Under the AFDC program, eligible

3

families receive a monthly check for basic needs. Id. The United States Department of Health and Human Services (HHS) implements and oversees state participation in the AFDC program. Id. HHS has promulgated regulations regarding the general administration of public assistance programs at 45 C.F.R. § 205.5, et seq. (1987).

12. Medicaid is a type of medical assistance program provided to, among others, AFDC recipients who are eligible for federal matching, under title XIX of the Social Security Act, 42 U.S.C. § 1396a.(10)(A)(i)(I). The New Mexico Medical Assistance Program is a federal-state funded program administered by HSD according to regulations promulgated by HHS, found at 42 C.F.R. § 430.0, et seq. The purpose of Medicaid is to provide that essential health services are made available to eligible recipients who otherwise would not have the financial resources to obtain them. 42 U.S.C. § 1396.

13. Since an individual is automatically entitled to Medicaid if determined eligible for AFDC, both programs are applied for at the same time and on the same form. 42 C.F.R. § 435.909.

14. Households in which all members are applying for AFDC are additionally allowed to apply for food stamp benefits simultaneously. 7 C.F.R. §§ 271.2 and 273.2(b) and (j). Once AFDC has been approved for all household members, the household is categorically eligible for food stamps. 7 C.F.R. § 2771.2(j).

15. The AFDC/Medicaid application is deemed filed on the date an individual indicates in writing to HSD, on a form prescribed by HSD, his desire to receive assistance. 45 C.F.R. § 206.10(b)(3).

16. The food stamp application is deemed filed the day it is returned to the office designated by HSD to accept the household's application, as long as the form contains the applicant's name and address, and is signed by a responsible member of the household or the household's authorized representative. 7 C.F.R. § 273.2(c).

4

17. The length of time HSD has to deliver food stamps and AFDC/Medicaid benefits is calculated from the date each application is filed. Id; 45 C.F.R. § 206.10(a)(3)(i).

## Food Stamp Program

18. The household's food stamp eligibility and benefit level is based solely on food stamp eligibility criteria, and the household must be certified in accordance with the notice, procedural and timeline requirements of the federal food stamp regulations. 7 C.F.R. § 273.2(c) Action on the food stamp portion of the application cannot be delayed because the public assistance determination has not been made. Id.

19. The food stamp application process includes filing and completing an application form, being interviewed and having certain information verified. 7 C.F.R. § 273.2(a). HSD must act promptly on all applications and provide food stamp benefits retroactive to the month of application to those households that have completed the application process and have been determined eligible. Id. Expedited service must be available to households in immediate need. Id.

## Emergency Food Stamps

20. If a household has $100.00 or less in liquid resources and less than $150.00 in gross monthly income, or if its combined gross income and liquid resources are less than the household's monthly rent or mortgage and utilities, it is eligible to receive emergency food stamps no later than 5 days after the application date, through expedited certification and issuance procedures. 7 U.S.C. § 2020(e)(9)(A).

21. All households must be screened by HSD for eligibility for expedited food stamp certification and issuance when an application is filed or as individuals come in to apply. 7 C.F.R. § 273.2(ii)(2).

22. If a household is eligible for expedited food stamps, HSD must mail the stamps to it no later than the close of business of the 4th calendar day

5

following the date the applicaton was filed, or have the stamps available to be picked up no later than the close of business on the 5th calendar day. 7 C.F.R. § 273.2 (i) (3). If the deadline falls on a Sunday or a Monday holiday, a one or two day extension of the time limit is allowed; if the deadline falls on a Saturday, the food stamps must be available the preceding Friday. Id.

23. Verificaton of income and liquid resources for households entitled to expedited food stamps is done only to the extent practicable in the limited time available. 7 U.S.C. § 2020(e)(9)(A)(i)(II). To expedite the certification process, HSD must postpone verifications of information needed for eligibility except for the applicant's identity. 7 C.F.R. § 273.2(i)(4)(i). HSD should make all reasonable efforts to verify the household's residency, income statements, liquid resources and other eligibility factors through collateral contacts or readily available documentary evidence, but benefits cannot be delayed beyond the time limits imposed on expedited food stamp certification and issuance solely because income has not been verified. Id. Moreover, HSD cannot delay the certification of households entitled to expedited service when it has determined that it is unlikely other verifications can be obtained within the expedited procedures timeframes. Id.

24. Whether or not the household is eligible for expedited food stamps, HSD must promptly verify necessary income and other eligibility factors determined so as to complete certification of and provide a food stamp allotment retroactive to the period of application to any eligible household not later than 30 days following the filing of an application. 7 U.S.C. § 2020(e)(3).

25. The regulation implementing this statutory mandate requires HSD to provide eligible households that complete the intitial application process an opportunity to participate as soon as possible, but not later than 30 days after the application was filed. 7 C.F.R. § 273.2(g)(1). This is accomplished

by mailing the household the food allotment or the ATP card at least 2 days in advance of the 30th day; if the ATP card is mailed, HSD must make sure that it can be used to receive food stamps after it is received but before the 30 day standard expires. 7 C.F.R. § 273.2(g)(2). The household has not been provided with an opportunity to participate in the food stamp program within the 30 day standard if the ATP card or food allotment is mailed on the 29th or 30th day. Id.

### AFDC and Medicaid Programs

26. Each state must provide Medicaid coverage for all AFDC recipients, since they are considered "categorically needy". 42 C.F.R. §§ 435.1(d), 435.110 and 435.115. In determining eligibility for families and children, the state must apply the financial eligibility requirements of the state's AFDC plan. 42 C.F.R. § 435.711.

27. New Mexico must provide AFDC and/or Medicaid benefits to eligible applicants with reasonable promptness. 42 U.S.C. § 602(a)(10)(A) and 1396a.(8); 42 C.F.R. § 435.906.

28. "Reasonable promptness" has been interpreted by federal regulations to mean that a decision shall be made promptly on AFDC and/or Medicaid applications, pursuant to reasonable State-established time standards not in excess of 45 days. 45 C.F.R. § 206.10 (a) (3) (i); 42 C.F.R. § 435.911.

29. In New Mexico, both AFDC and/or Medicaid eligibility must be determined within 30 days from the date of application. N.M.Human.Serv.Dept.Reg. § 214 (December 1, 1987).

30. For Medicaid, the time standards must cover the period of time from the date of the application to the date HSD mails notice of its decision to the applicant. 42 C.F.R. § 435.911. The state agency must determine eligibility within the state time standards except for unusual circumstances; if such unusual circumstances exist, they must be

7

documented in the in the applicant's case record. Id. The state agency cannot use the time standards as a waiting period before determining eligibility. Id.

31. Each AFDC application must be disposed of by a finding of eligibility or ineligibility unless the applicant withdraws his application, dies or cannot be located. 45 C.F.R. § 206.10 (a) (8). Financial assistance must begin not later than the date of authorization of payment or 30 days from the date of receipt of a signed and completed application, whichever is earlier, provided that the individual meets all the eligibility conditions. 45 C.F.R. § 206.10 (a) (6) (i) (A). Financial assistance could begin as early as the date of application, providing the assistance unit meets all the eligibility conditions. 45 C.F.R. § 206 (a) (6) (i) (C).

32. Financial assistance and medical care and services (including emergency medical care) included in the state plan must be furnished promptly to eligible individuals without any delay attributable to HSD's administrative process. 45 C.F.R. § 206.10 (a) (5) (i); HSD's policies and procedures must ensure that Medicaid eligibility is determined in a manner consistent with simplicity of administration and the best interests of the applicant or recipient. 42 C.F.R. § 435.903.

33. The standards and methods for determining AFDC and Medicaid eligibility must be consistent with the objectives of the programs, and must respect the rights of individuals under the United States Constitution, the Social Security Act, title VI of the Civil Rights Act of 1964 and all other relevant provisions of federal and state laws. 45 C.F.R. § 206.10 (a) (10); 42 C.F.R. § 435.902..

34. Each AFDC and/or Medicaid applicant has the right to adequate, written notice indicating whether assistance has been authorized (and the amount of assistance authorized) or denied. If assistance is denied, the reasons for and specific regulations supporting such action, and an explanation of his or her right to request a hearing must be provided. 45

C.F.R. § 206.10 (a) (4); 42 C.F.R. § 435.912.

## FACTS

35. The named plaintiff is the single mother and caretaker of a 12 year old boy. Until recently, she supported herself and her son through self-employment as a janitor.

36. In the latter part of December, 1987 plaintiff was informed that the number of offices she was responsible for cleaning was reduced to one. Her income was correspondingly reduced from almost $800.00 per month to $50.00 per month.

37. Plaintiff and her son subsisted on her savings, her last full paycheck and her reduced monthly earnings until the latter part of February, 1988.

38. On or about February 22, 1988 plaintiff applied for food stamps, AFDC and Medicaid at HSD's Income Support Division Santa Fe county field office. On information and belief, plaintiff's applications were not registered and not deemed filed on the day she completed and returned them.

39. At the time plaintiff applied for food stamps, AFDC and Medicaid, she had less than $50.00 in liquid resources. Her only source of income was the $50.00 per month she received from janitorial work. She had no financial means to provide for herself and her child.

40. Plaintiff was not screened for eligibility for emergency food stamps, through the expedited certification and issuance process, when she went to the HSD office to apply for food stamps or when she filed her food stamp application.

41. Plaintiff was eligible for emergency food assistance when she applied for food stamps. However, she was not informed of the availability of emergency food stamps, was not asked to verify any eligibility factors for emergency food stamps and did not receive emergency food stamps.

9

42. Plaintiff received "orientation" concerning the food stamp, AFDC and Medicaid programs on February 29, 1988. She was also interviewed by Joann House, her HSD eligibility worker on that day and was informed of only some of the verifications plaintiff must provide in order to establish her eligibility for these programs. Ms. House failed to inform plaintiff of the availability of emergency food stamps or to expedite the certification and issuance process.

43. On or about March 4, 1988 plaintiff provided to her eligibility worker those verifications she had been informed were necessary to determine her eligibility for the assistance she requested. Although she was unable to get a written letter from her employers (by this time, plaintiff had begun a second part-time job), she provided the employers' names and telephone numbers and indicated that both individuals would be glad to verify plaintiff's earnings by telephone. She was not able to see her worker and left the information with the HSD receptionist.

44. On March 8, 1988 plaintiff had to go to the emergency room since she had been without the insulin, Glucatrol and Lopressor medications she needed for her diabetes and heart disease. Plaintiff had no medical insurance or coverage whatsoever, and no funds to pay for the cost of her care.

45. On March 9, 1988 plaintiff again attempted to see her eligibility worker. When she was unsuccessful, she contacted the worker's supervisor, "Ron". She told Ron she was ill and needed medical assistance as soon as possible. Ron told her that she would receive her food stamps and Medicaid authorization card through the mail, and that she could come into the HSD office to verify this the following day.

46. On March 10, 1988 plaintiff received a letter from her eligibility worker. The letter informed her that her application for "ADC" had been "delayed" because of plaintiff's alleged failure to provide necessary verifications, and that if the verifications were not received by March 18,

10

1988 plaintiff's applications [sic] would be denied. The letter demanded verifications which had already been provided, had never been requested before and/or were irrelevant to plaintiff's circumstances. The letter also asked plaintiff to anticipate how she would pay her rent and utilities on her limited AFDC grant.

47. Plaintiff tried to see her worker that day and was told she could not. She called Ms. House and was informed by her that, since plaintiff was calling from within the HSD Santa Fe county field office (apparently, against the rules), Ms. House would not discuss her application with her. Ms. House referred plaintiff to the letter she wrote her the previous day. Plaintiff informed her she had already received the letter, had it with her and that she had all the verifications the letter requested. Ms. House refused to discuss the matter with her further. Plaintiff left the verifications, including letters from her employers, with the HSD receptionist. She was unable to learn whether her food stamps and Medicaid card was or would be mailed to her and waited over an hour to speak with Ron. During this time, Joanne House walked by plaintiff 11 times without acknowledging her presence. When plaintiff finally saw Ron, he informed her that he could not help her. By this time, plaintiff had provided her eligibility worker with all the requested necessary verifications of factors needed to determine her initial eligibility for (nonemergency) food stamps, AFDC and Medicaid. The information she provided demonstrated her eligibility for all of these programs.

48. On March 22, 1988, Joanne House again wrote plaintiff and, for the first time, demanded that she complete a "monthly report" recording her income and other circumstances for February, 1988. She also demanded verifications of these circumstances. The eligibility worker had all the information she was again requesting. Completion of a "monthly report" is not a requirement for completing the application process for any of the

programs plaintiff applied for. Plaintiff promptly returned the completed monthly report and resubmitted her verifications to the HSD office.

49. In her March 22, 1988 correspondence, Joann House for a second time demanded that plaintiff inform her how she intended to meet her rent and utilities expenses with the limited AFDC grant she was requesting. She wrote plaintiff that this "question...must be reconciled". Plaintiff had already explained to her worker during her February 29 interview that she had recently suffered a reduction in income, she did not know whether, or how, she would continue to pay her shelter and utilities expenses, and she was looking for another job which would enable her to meet her monthly living expenses.

50. Plaintiff has not received any written determination from defendant of her eligibility for food stamps, AFDC or Medicaid, or her right to request a hearing on any denials of or delays in assistance. Plaintiff has not received any assistance from defendant whatsoever.

51. Plaintiff attempted to receive a decision regarding her applications for assistance by repeatedly contacting a representative of United States Representative Bill Richardson, a representative of Governor Garrey Carruthers and an administrative assistant of Secretary Lou Gallegos. Each of these individuals contacted the HSD Santa Fe county field office on plaintiff's behalf; none of them were able to obtain consistent, useful information regarding the delay in processing plaintiff's requests for assistance, what actions, if any, plaintiff needed to take to complete the application process or when the application process would be completed.

52. The actions of defendant's employees and agents have and continue to cause plaintiff and her son irreparable harm. This family lacks food, medical treatment and is in imminent danger of becoming homeless through eviction.

## CLAIMS FOR RELIEF

53. By actions described in paragraphs 35 through 52 of this complaint, defendant, not through any fault attributable to plaintiff, has failed to promptly screen plaintiff's application for eligibility for emergency food stamps, and to certify and issue her emergency food stamps within 5 days of the date she applied for food stamps, in violation of 7 U.S.C. § 2020(e)(9)(A) and 42 U.S.C. § 1983.

54. By actions described in paragraphs 35 through 52 of this complaint, defendant, not through any fault attributable to plaintiff, has failed to complete certification of and provide a food stamp allotment to plaintiff (retroactive to her application date) not later than 30 days following the filing of her food stamp application, in violation of 7 U.S.C. § 2020(e)(3) and 42 U.S.C. § 1983.

55. By actions described in paragraphs 35 through 52 of this complaint, defendant, not through any fault attributable to plaintiff, has failed to provide AFDC and/or Medicaid benefits to plaintiff with reasonable promptness in violation of 42 U.S.C. § § 602(a)(10)(A) and 1396a.(8), and 42 U.S.C. § 1983.

56. By actions described in paragraphs 35 through 52 of this complaint, defendant, not through any fault attributable to plaintiff, has failed to provide plaintiff with timely, adequate, written notice of its determination of plaintiff's eligibility for food stamps, AFDC and/or Medicaid, including plaintiff's right to a fair hearing regarding any denial, in violation of 7 U.S.C. § 2020(e)(3), 42 U.S.C. § § 602(a)(10)(A), 1396a.(8) and 1983.

57. By actions described in paragraphs 35 through 52 of this complaint, defendant, not through any fault attributable to plaintiff, has deprived plaintiff of her rights to equal protection and due process of law, in violation of the 5th and 14th Amendments to the United States Constitution and 42 U.S.C. § 1983.

## CLASS ALLEGATIONS

58. The named plaintiff's claims are typical of the claims of the following class:

> All individuals, families and/or households in New Mexico who have applied, are applying for or will apply for benefits under the food stamp program, AFDC program and/or Medicaid program.

59. The class is so numerous that joinder of all members is impracticable.

60. There are questions of law and fact common to the class, including the legality of failing to promptly register food stamp, AFDC and Medicaid applications, to screen food stamp applicants for expedited food stamp certification and issuance, to provide expedited food stamp certification and issuance to eligible applicants, to provide (nonexpedited) food stamp determinations and, if eligible, benefits within 30 days of the date of application, to provide AFDC and Medicaid determinations and benefits with "reasonable promptness", and of requiring verification of eligibility factors which do not have to be verified and requiring reverification of information already verified.

61. Questions of law and fact common to members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudicaton of the controversy.

62. The claims of the named plaintiff are typical of the class.

63. The named plaintiff will fairly and adequately protect the interests of the class.

64. The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications and

14

would substantially impair or impede their ability to protect their interests.

65. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the class as a whole.

WHEREFORE, the named plaintiff, on her behalf and for all others similiarly situated, prays:

1. That this action be certified and maintained as a class action as soon as practicable;

2. That the Court declare the following of defendant's practices are unlawful:

   a. failure to promptly screen a household's application for eligibility for emergency food stamps;

   b. failure to certify and issue emergency food stamps to eligible households within 5 days of the date the household applied for food stamps, through no fault attributable to the household;

   c. failure to complete certification of and provide a food stamp allotment to eligible households not later than 30 days following the filing of a food stamp application, through no fault attributable to the household; .

   d. failure to provide AFDC and/or Medicaid benefits to eligible applicants with reasonable promptness, through no fault attributable to the applicant; and

   e. failure to provide applicants with timely, adequate, written notice of its determination of the applicants' eligibility for food stamps, AFDC and/or Medicaid, through no fault attributable to the applicant.

3. That the Court issue preliminary and permanent injunctive relief, directing defendant to promptly determine that plaintiff is and, since the date of application has been, eligible for food stamps, AFDC and Medicaid and to provide her with immediate, adequate written notice of these determinations.

15

4. That the court preliminarily and permanently enjoin defendant from engaging in the practices set forth in paragraph 2 of this prayer for relief, through a corrective action plan or other means.

5. That the Court award plaintiffs their costs, including reasonable attorneys fees, pursuant to 42 U.S.C. § 1988.

6. For other relief that is warranted.

*Patricia Glazek* (signature)

Patricia Glazek
Northern New Mexico Legal Services, Inc.
Post Office Box 1454 - 214 Grand Avenue
Las Vegas, New Mexico 87701
(505) 425-3514

Attorneys for plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Misc-88-112

DEBRA HATTEN-GONZALES, et al.,   No. CIV88-0385 JC

vs.

LOU GALLEGOS

FINANCIAL AFFIDAVIT,
APPLICATION TO PROCEED
IN FORMA PAUPERIS AND
ORDER (28 USC 1915)

FILED
88 MAR 31  AM 10:43

_____ CLERK
ALBUQUERQUE

I, __Debra Hatten-Gonzales__, make under oath the following statement regarding my financial, residential, marital and employment status, and since I am unable to prepay fees and costs in the above-entitled case, make application to proceed as a pauper in accordance with 28 USC 1915:

A. BACKGROUND AND RESIDENCE

1. Full name: __Debra Hatten-Gonzales__
2. Age: __37__    Sex: __Female__
3. Present address: __140 Bob Street Santa FE, N.M. 87501__
4. How long at this address? __3 Months__   Phone No. __N/A__
5. Married? ____ Single? __X__ Divorced? ____ Separated? ____
6. Number of dependents: __Two__
7. Ages of children living with you: __12 Years of age__
8. List relationship of other dependents living with you: __N/A__
9. List any dependents in items 7 and 8 depending on you for support: __Ricardo Hatten-Gonzales__

B. EMPLOYMENT AND INCOME

1. Are you now employed? __Yes__   Are you self-employed? __Yes__
2. Name and address of employer: __Salvation Army 525 W. Alameda Santa FE, N.M. 87501__
3. Position: __Van Driver__   Salary per month: $__116.10__
4. If self-employed, nature of business: __Janitorial Services__
5. Income previous month from self-employment: $__50.00__
6. If unemployed, how long since last job or self-employment? __Presently Self-Employe[d]__
7. Any other income such as disability pay, workman's compensation, social security, pension, interests, note and loan repayments, dividends, trust

1a

7. [...] OTHER — $400.00 donation by the Salvation Army to assist her with her rent debt.

8. If so, indicate source and amount per month? $ _____N/A_____

9. Total monthly net income: $ __150.00__

C. ASSETS

1. Do you own any real estate?   Yes ____   No __X__

   a. Description _____
   b. Location _____
   c. Estimated present value _____
   d. Estimated outstanding mortgages or contracts on property _____
   e. Payments per month _____

2. Do you own any automobiles:   Yes __X__   No ____

   a. Make __Chevrolet__   Model __Malbu__   Year __1978__
   b. Present value __300.00__   Total amount owed __00.00__
   c. Monthly payments __00.00__

3. Do you have any stocks or bonds?   Yes ____   No __X__

   a. Describe _____
   b. Present value _____

4. Do you have any cash in bank?   Yes ____   No __X__

   a. If so, indicate amount _____

5. Do you have any cash in savings and loan associations?   Yes ____   No __X__

   a. If so, indicate amount _____

6. Do you have any other assets not listed above excluding household furnishings and clothing?   Yes ____   No __X__

   a. If so, describe and give value _____

D. DEBTS AND OTHER OBLIGATIONS

1. Rent __$425.00__ per month
2. Utilities __77.64__ per month
3. Creditors:

| List: | Total Due | Monthly Payment |
|---|---|---|
| St. Vincent Hospital | $994.00 | 00.00 |
| Hospital Radiology Asso. | $26.98 | 00.00 |
| Perscriptions | | $57.50 |
| Food Expense | | $160.00 |
| St Vincent Hospital | $8.00 | 00.00 |

-2-

| List: | Total Due | Monthly Payment |
|---|---|---|
| Rent Over-Due | $502.64 | |
| Walgreens Pharmacy | $39.96 | |

4. Total Monthly Payments: $ 720.14

_Debra Hattin (signature)_
Signature of Applicant/Affiant

SUBSCRIBED AND SWORN to before me this 25th day of March, 19 88.

_(signature)_
Notary Public

My Commission Expires:
   February 2, 1992

## ORDER

☐ The Court has considered the foregoing Affidavit and Application and the same is DENIED.

☑ The Court has considered the foregoing Affidavit and Application and the same is GRANTED. It is ordered that the commencement and prosecution of the above-entitled suit, action, or proceeding is authorized without the prepayment of the filing fee, costs, or security therefor. However, any further proceedings involving cost must be specifically authorized in advance by the Court.

DONE at Albuquerque this 31st day of March, 19 88

_(signature)_
United States Magistrate/~~Judge~~

-3-