IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEBRA HATTEN-GONZALES, et. al.**

    Plaintiffs,

v.                                                                    No. CIV 88-0385 JC/ACT
                                                           Consolidated with No. CIV 88-0786 JC/ACT

**PAMELA HYDE,** Secretary of
The New Mexico Human Services
Department,

    Defendant.

**MEMORANDUM OPINION & ORDER**

THIS MATTER comes before the Court on Defendant's *Motion to Dismiss and Memeorandum (sic) in Support* (Doc. 340), filed July 9, 2007 ("Motion"). The Court, having considered the Motion, the parties' submissions, the relevant authority, and further having held a hearing on Thursday, November 29, 2007, finds the Motion not well-taken and it is denied.

**I.**      **Factual Background**

In 1988, Plaintiffs brought a class action suit challenging certain practices employed by the New Mexico Human Services Department ("HSD" or "Defendant") in processing applications for assistance under the Federal Aid to Families with Dependent Children (AFDC), Food Stamps and Medicaid programs. Seeking to resolve their differences amicably, the parties entered into a Settlement Agreement in 1990 ("Decree"). Among other items, the Decree provided for a certain monitoring process of applicant files to ensure Defendant's compliance with the terms of the Decree. Specifically, Plaintiffs were allowed to conduct two separate reviews of 40 files each, with the entire review process to be completed by June 1991. Realizing

that the process would take additional time, the parties sought and received an extension from this Court to allow the file reviews to continue through January 1993.  Despite reaching this revised deadline, the parties continued to work together to identify and address compliance issues for over a decade.  The most recent file reviews were conducted in 2001 and 2004, and consisted of approximately 180 case files each year.  As of today, Plaintiffs have yet to acknowledge Defendant's compliance with any provisions of the Decree and have demanded additional applicant files from Defendant as recently as March 13, 2007.

As a result of Plaintiffs' refusal to acknowledge compliance, Defendant asks this Court, pursuant to Fed. R. Civ. P. 12(b)(1), and/or (6) and D.N.M. LR-Civ. 7, to dismiss this action on the grounds that recent case law has raised a jurisdictional question concerning the Plaintiffs' authority to continue monitoring Defendant's compliance beyond the deadlines set forth in the Decree.

**II.      Legal Standard**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). When subject-matter jurisdiction is proven to be lacking "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)(quoting *Ex Parte McCardle*, 74 U.S. 506, 514, 19 L. Ed. 264 (1869)).  In addition, a court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 125 L. Ed. 2d 612, 113 S. Ct. 2891 (1993) (citation omitted).

**III.     Discussion**

Defendant argues that for approximately seventeen years, Plaintiffs have improperly relied on *Duran v. Carruthers*, 885 F.2d 1492 (10th Cir. 1989) to support a continued right to oversee compliance efforts. Defendant concedes that it has assented to continued monitoring beyond the time line in the Decree because of the perceived monitoring authority granted to Plaintiffs by *Duran*. In *Duran*, the parties entered into a comprehensive consent decree that, among other things, established an internal monitoring body to govern the operation of a prison. As this process proved ineffective, the district court ultimately appointed a special master to monitor defendant's compliance with the consent decree. Despite the appointment, plaintiffs continued to monitor defendant's postdecree compliance. The 10th Circuit held that, with respect to plaintiffs' request for attorneys fees for their own postdecree work, ". . . plaintiffs' attorneys were charged with continuing duties under the decree; in particular, they had the right to challenge in court any declaration of an emergency or any implementation of the decree." *Id.* at 1495. In awarding fees to plaintiffs' attorneys, the 10th Circuit stated that "the 1980 consent decree was only the beginning, and counsel for the plaintiffs has a continuing duty and responsibility to make sure that the defendants comply, and continue to comply, with the decree." *Id.*

Defendant now challenges Plaintiffs' longstanding reliance on *Duran*, asserting that under *Johnson v. City of Tulsa*, 489 F. 3d 1089, 1111 (10th Cir. 2007), any continuing duty of Plaintiffs' counsel to ensure Defendant's compliance with the decree must be "founded on language in specific provisions of the consent decree in that case." *Id*. Defendant states that the Decree in this case "contains no *Duran*-like specific provision" providing for continued monitoring. Morever, Defendant argues that since there were specific time lines for conducting file reviews in Section IV of the Decree, then under *Johnson*, once those specific time lines

3

expired, so did Plaintiffs ability to continue reviewing applicant files.

Plaintiffs argue that *Johnson* stands for the general proposition that plaintiffs' counsel in a consent decree case are obligated to conduct reasonable monitoring activities to ensure that the defendant adheres to the requirements of the decree. They further argue that even if *Johnson* stood for the proposition that continued monitoring is appropriate only where a decree specifically addresses it, such specific language is present in the Decree here.

Review of the implementation procedures of the Decree is set forth in Section IV. That section states that:

> The parties agree that applicants are entitled to review the implementation of this Agreement to determine if its terms, conditions and undertakings are implemented in a timely and correct fashion. The parties agree to the following review procedures and timetables:
>
> 1. The review of implementation procedures will commence six months after this agreement is approved by the Court and will be completed by the end of the second annual quarter following full implementation of the terms, conditions and undertakings of this Agreement. . . . Within 30 days of completion of the review of implementation procedures, the applicants will request from the Court dismissal with prejudice of all such issues actually resolved by this Agreement.

Decree, p. 21. Paragraph 2 of Section IV defines the timetable for completion of the file reviews:

> 2. In March 1991, counsel for applicants will review 40 HSD initial application case files for the Food Stamps and Medicaid programs, selected by random state-wide sample, to determine the extent of HSD's compliance with the terms, conditions and undertakings of Section II of this Agreement. If HSD is fully complying with those terms, conditions and undertakings, plaintiffs will, within 30 days, request from the Court dismissal with prejudice of the issues resolved by Section II of this Agreement. If HSD is not fully complying with those terms, conditions and undertakings, in June 1991, counsel for applicants will review another 40 HSD initial applications case files for the Food Stamps and Medicaid programs, selected by random state-wide sample. If HSD is fully complying with those terms, conditions and undertakings, plaintiffs will, within 30 days, request from the Court dismissal with prejudice of the issues resolved by Section II of this Agreement.

4

*Id.* Notably, the Decree does not provide further instructions if, after the proposed second review of 40 additional files, HSD is still not fully complying with the terms of the Decree. Though Defendant is correct in asserting that, pursuant to the Decree, dismissal was to have occurred in "strict accordance with the timetables set forth in Section IV," *Id.*, the parties adherence to the timetables thus far has been anything but strict. Whether this is due to the absence of additional instructions is unclear. What is abundantly clear to the Court, however, is that over the years, the provisions of the Decree relating to compliance review have become elastic in both interpretation and application. What may once have been straightforward is now convoluted.

The Decree itself was modified by the Court on two occasions. The first instance occurred in August of 1992, when the Court extended the June 1991 deadline relating to "implementation procedures" to January 1993. The second occurred in 1998 when the Court removed all references to AFDC programs in compliance with a change in federal law that replaced this program with a block grant program entitled Temporary Assistance to Needy Families (TANF). Changes, however, were not made to the timetables or procedures for review at the time of this second modification in 1998. Rather, the parties continued to meet and confer in good faith pursuant to the spirit of the Decree, with the common goal of resolving the dispute amicably.

Just as was the case in *Duran*, and confirmed in *Johnson*, the Decree here does provide specific language that the parties have adhered to over the years. The Decree states that "[t]o the extent that any term of this Agreement is prospective in nature, HSD agrees to continue to meet and confer with counsel for the applicants regarding the progress made towards implementation

of this Agreement's terms until each such term is finally implemented." Decree, p. 3.  The Decree further states, similar to the language in *Duran*, that "[t]he parties agree to make good faith efforts to resolve any differences that may arise in the course of rendering this Agreement operational.  If the parties cannot resolve their differences after such negotiations, either party may seek a ruling from the Court." *Id.*  The parties have followed both of these provisions. Another provision of the Decree states that "[o]nce the terms of this Agreement have become fully operational and permanently incorporated into HSD's administration of the . . . programs, the applicants will seek dismissal of these actions, with prejudice regarding only such issues actually resolved in this Agreement, from the Court." *Id.*  Clearly, Plaintiffs have not moved for a dismissal of this action since, in their estimation, the terms have not become fully operational and compliance is still wanting.  While the parties may not have followed the timetable language to the letter, they have followed the aforementioned provisions relating to compliance review.

Though stated as "the complete and final agreement between the parties," clearly the parties have not treated the time lines of the Decree with such rigidity and neither will the Court. Thus, the Court adopts the reasoning of *Duran* and views the Decree as a framework, the beginning of the monitoring process, while explicitly refraining from expressing any opinion on Defendant's compliance.  Accordingly, the Court finds that the *Johnson* case does not prevent Defendant from monitoring compliance and consequently, there is no jurisdictional question.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's *Motion to Dismiss and Memeorandum (sic) in Support* (Doc. 340), is hereby DENIED.

Dated: December 13, 2007

s/John Edwards Conway

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

Daniel Yohalem, Esq.
Santa Fe, NM

Jane Yohalem, Esq.
Santa Fe, NM

Gail J. Evans, Esq.
Albuquerque, NM

Counsel for Defendant:

Paul R. Ritzma, Esq.
Santa Fe, NM