## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, Individually
and on behalf of all Others similarly
situated,

        Plaintiffs,

v.                                    Civil No. 88-0385 KG/CG

BRENT EARNEST, Secretary of the New Mexico
Human Services Department,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon *Plaintiffs' Motion for Injunctive Relief and Expedited Review and Hearing* ("Motion"), (Doc. 623), filed January 27, 2016; *The New Mexico Human Services Department's Response in Opposition to Plaintiffs' Motion for Injunctive Relief and Expedited Review and Hearing* ("Response"), (Doc. 636), filed February 8, 2016; and *Plaintiffs' Reply on Motion for Injunctive Relief and Expedited Review and Hearing* ("Reply"), (Doc. 642), filed February 15, 2016.  The Court heard oral argument on the Motion and received additional evidence at a hearing on March 7, 2016.  Having reviewed the parties' briefs and relevant law, and considering the parties' oral arguments and evidence in the record, the Court **GRANTS** Plaintiffs' Motion.

### I.    Factual and Procedural Background

    This case originally challenged certain practices of the New Mexico Human

Services Department ("HSD"), Income Support Division ("ISD"), in processing applications for assistance under the federal Food Stamps[1] and Medicaid programs.  Defendant Secretary of HSD ("Defendant") and Plaintiffs negotiated a resolution of the issues before the Court, which was memorialized in the *Modified Settlement Agreement* (the "Decree"), (Doc. 460), entered on August 27, 1998.  As part of the agreement between the Parties, this Court retained jurisdiction over the matter to enforce the terms, conditions, and undertakings of the Decree.  (*Order Modifying Settlement Agreement* at 2).  As part of the Decree, the Parties agreed to make good faith efforts to resolve any differences that may arise in the prospective implementation of the Decree. The Decree provides that, in the event the Parties cannot resolve their differences after good faith negotiations, either party may seek a ruling from the Court. (Decree at 3).

Pursuant to this provision, Plaintiffs' filed their Motion on January 27, 2016, in which they seek a ruling from the Court regarding Defendant's implementation of NMAC § 8.139.410.12 and NMAC § 8.139.410.14, and his alleged failure to comply with the terms of the Decree. The undisputed facts are as follows: On January 1, 2016, Defendant implemented NMAC § 8.139.410.12 and NMAC § 8.139.410.14, which limit eligibility for food assistance through SNAP for certain beneficiaries, pursuant to federal regulations.  (*See* Doc. 636-2 at 6). Federal law places special work requirements on a subgroup of SNAP participants, known as Able-Bodied Adults Without Dependents ("ABAWDs").  Under 7 C.F.R. § 273.24, after three months of receiving SNAP benefits, ABAWDs may be deemed ineligible to participate in the SNAP program, unless they fulfill specific work requirements, fall within certain exemptions and exceptions, or can show good cause for failing to comply with the requirements.  7 C.F.R. § 273.24(b) (ABAWDs "are not eligible to participate in the Food Stamp Program . . . if the individual received food stamps for more than three countable months during any three-year

---

[1] The Food Stamp Program is now known as the Supplemental Nutrition Assistance Program ("SNAP").

period . . . .").  Pursuant to NMAC § 8.139.410.4, eligibility criteria for whether an applicant can receive SNAP benefits beyond three months includes verifying whether the applicant is exempted from the work requirements or, if not exempt, if the applicant is fulfilling those work requirements.

In their Motion, Plaintiffs allege that the implementation of the new rule requires changes in the SNAP application process, and that Defendant has failed to implement these changes in accordance with the Decree.  Because Defendant's actions jeopardize Plaintiffs' access to vital food assistance, Plaintiffs ask this Court to enjoin Defendant from implementing the new rules until he can do so in accordance with the Decree.

## II.     Standard of Review

To obtain a preliminary injunction under FED. R. CIV. P. 65, the moving party bears the burden of showing:  (1) a substantial likelihood of success on the merits;  (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.  *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999) (citing *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army,* 111 F.3d 1485, 1489 (10th Cir.1997)).  "As a preliminary injunction is an extraordinary remedy, the [requesting party's] right to relief must be clear and unequivocal."  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001) (citing *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991)).

In some instances, the Court of Appeals for the Tenth Circuit has adopted a modified approach with regard to the first factor of whether the moving party has shown a substantial likelihood of success on the merits.  *Fed. Lands*, 195 F.3d at 1194–95.  Under this approach,

where a movant has established the last three requirements for a preliminary injunction, the party may satisfy the first requirement of a substantial likelihood on the merits "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id*. at 1195 (citing *Walmer v. United States Dep't of Defense,* 52 F.3d 851, 854 (10th Cir.1995)).

However, the Tenth Circuit has also identified three types of specifically disfavored preliminary injunctions: (1) preliminary injunctions that alter the *status quo*; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004).  Such disfavored injunctions are subject to a heightened standard, and "'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'"  *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (citing *O Centro*, 389 F.3d at 975)).

Where the heightened standard apples, this Circuit's "less rigorous fair-ground-for-litigation standard should not be applied."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citing *Sweeney v. Bane,* 996 F.2d 1384, 1388 (2d Cir.1993)); *Schrier*, 427 F.3d at 1261.  "Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms, and may not rely on our modified likelihood-of-success-on-the-merits standard."  *Schrier*, 427 F.3d at 1261 (citing *O Centro*, 389 F.3d at 975–76).  "By requiring this heightened showing, 'our aim is to minimize any injury that would not have occurred but for the court's intervention.'"

*Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (citing

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009)).

## III.    Analysis

In support of their Motion, Plaintiffs state that Defendant has promulgated new

conditions of eligibility for certain SNAP applicants in the form of ABAWD work requirements.

Plaintiffs allege that these requirements are conditions of eligibility that must be implemented in

Defendant's application processing practices, notice requirements, and other standard forms in

accordance with the Decree. (Doc. 627 at 1–2).  Plaintiffs argue that they are entitled to a

preliminary injunction enjoining Defendant from implementing those new requirements because

they have shown that:  (1) they are substantially likely to prevail on the question of whether

Defendant's application processing practices and standard forms violate federal law and the

Decree; (2) the injunction is necessary to prevent the significant risk that class members will

suffer the irreparable harm of losing food benefits for which they are eligible; (3) this irreparable

harm outweighs any harm to Defendant as a result of the injunction; and (4) the public interest

strongly favors enjoining Defendants from implementing the new work requirements until they

can do so in accordance with the Decree.  (Doc. 623 at 27–30; Doc. 642 at 11–16).

Defendants argue that Plaintiffs must satisfy a heightened standard in this case, because

an injunction would disturb the *status quo*.  Under that standard, Defendant maintains that it has

promulgated the ABAWD work requirements in accordance with federal law. (Doc. 636 at 16).

In addition, Defendant argues that any irreparable harm suffered by Plaintiffs is theoretical and

speculative, does not outweigh the harm Defendant will suffer if it cannot implement the

ABAWD program, and that the public interest favors allowing Defendant to implement a rule

that is within its discretion to promulgate. (*Id*. at 13–18).

Plaintiffs respond that the circumstances presented here do not necessitate a heightened standard for granting the requested relief.  Plaintiffs argue that granting the injunction would not disturb the *status quo* as Defendant has stated that he is not currently counting months against ABAWD beneficiaries. Thus, according to Plaintiffs, a preliminary injunction would actually maintain the *status quo*.  Because the Court finds that Plaintiffs have made a sufficient showing for a preliminary injunction, even under the heightened standard, the Court will not address this argument.

A. <u>Substantial Likelihood of Success on the Merits</u>

Plaintiffs argue that they have shown a substantial likelihood that they will prevail on the merits of this case because Defendant has not implemented the ABAWD conditions of eligibility in Defendant's application processing practices in accordance with the Decree.  (Doc. 623 at 4–5).  Plaintiffs contend that they have shown that Defendant provides incorrect and incomplete information about the ABAWD work requirements during the application process and fails to verify compliance with the work requirements prior to an eligibility determination, in violation of the Decree.  (Doc. 642 at 13).  In addition, Plaintiffs maintain that Defendant has violated the Decree by failing to provide them with an opportunity to comment and conference on the standard forms used in relation to the new ABAWD work requirements.  (Doc. 642 at 11).

In response, Defendant maintains that he has complied with federal statutes and regulations in implementing the current regulations regarding the ABAWD work requirements. (Doc. 636 at 16).

1. *Defendant's Obligations Under the Decree*

The Decree in this case was entered to address Plaintiffs' concerns regarding their federally-guaranteed right to receive prompt SNAP eligibility decisions and, if eligible, benefits under SNAP.  (Decree at 2).  As a result, the Decree establishes certain standards for

Defendant's benefit application processing practices, recognizing that "uniformity in office application processing practices is necessary to guarantee that each applicant will be provided with a fair and equal opportunity to participate in the Food Stamp . . . program[ ] consistent with the goal of assisting all eligible individuals to qualify."  (*Id*. at 7).

Generally, the Decree requires that Defendant "standardize the application process by implementing and maintaining uniform office practices throughout the state and by providing applicants with written information in standardized formats which is comprehensive, accurate, and easy to understand."  (*Id*. at 8).  The "application process" begins when an applicant submits an application for SNAP benefits, and ends with a notice of eligibility decision and, if eligible, when benefits are deposited in the mail or available through electronic transfer.  (*Id*. at 4).  It

> includes all actions taken with respect to an application, including, but not limited to, providing relevant written information to applicants, screening an application, holding an application interview, verifying eligibility factors, responding to applicant requests for assistance and extension of time, and issuing and mailing an eligibility decision and, if eligible, benefits.

(*Id*.).  An "applicant" is a person who is applying for SNAP assistance, a household or budget group member, or an authorized representative.  (*Id*.).

In addition, the Decree states that "every applicant is entitled to an eligibility decision written in terms comprehensible to the applicant which, among other things . . . sets forth the specific regulation(s) on which the decision is based and contains a detailed individualized explanation of the reasons supporting the decision."  (*Id*. at 21).  Notice to applicants must be written at no more than a sixth grade reading level, to be reviewed and certified by a literacy expert. (*Id*. at 8).

Finally, the Decree establishes that Defendant will not make any changes in the application processing practices or the use of standard form documents adopted under the Decree

without providing Plaintiffs' counsel with at least 30 days advanced notice and an opportunity to confer on the matter.  (*Id*. at 26–27).

> 2. *Whether there is a Substantial Likelihood Defendant has Violated the Decree*

The relevant question here is not only whether Defendant's notices and correspondences with SNAP applicants comply with federal law, but whether Defendant's application processing practices provide New Mexicans with a fair opportunity to receive benefits for which they are eligible, as required by the Decree.  This includes providing applicants with written information in standardized formats that are comprehensive, accurate, and easy to understand.

As an initial matter, Defendant acknowledges that he assumed that any changes in the application process and standard forms with regard to the ABAWD work requirements did not fall within the scope of the Decree until this Court ruled on that exact question in February 2016.  As a result, Defendant concedes that it did not provide Plaintiffs' counsel with at least 30 days advanced notice and an opportunity to confer on any changes to the application processing practices or the use of standard forms as contemplated under the Decree.  (Decree at 26–27).  In addition, all forms prepared in connection with these changes have not been reviewed and certified by a literacy expert to be written at no more than a sixth grade reading level.  Indeed, Defendant acknowledges that forms will not be certified by a literacy expert until April 30, 2016. This is also a clear violation of the Decree.  (Decree at 21).

Moreover, the testimony and exhibits establish that the forms circulated to SNAP applicants, beneficiaries, and case workers contain incorrect, or otherwise inconsistent and incomplete, information regarding the ABAWD work requirements and the applicable exceptions and exemptions.  For example, Defendant initially notified potential ABAWD beneficiaries in November 2015 with the form FSP003 and a trigger notice regarding the new

ABAWD work requirements.  (Def.'s Ex. 4 & 5).  These forms contained incorrect and

incomplete information regarding the available exemptions to the ABAWD work requirements.

The FSP003 indicated that in order to receive an exemption an applicant must attend school full-

time, when in reality she must only attend school part-time.  Additionally, both forms completely

omit available exemptions, including exemptions for those who are pregnant or who live in a

household with a child under the age of eighteen.

After January 1, 2016, when the current rule was promulgated, Defendant replaced the

FSP003 with the FSP400, which is the current form meant to give notice of the ABAWD work

requirements and to explain how to meet those requirements.  (Def.'s Ex. 11).  However, the

FSP400 does not contain any information regarding the exemptions to the work requirements,

and while it mentions that good cause may be available to waive the requirements, it does not

provide any information on how to verify or show good cause.  (*Id*.).  Further, with regard to

verifying compliance with the work requirements, the form does not indicate when Defendant

will start counting months against beneficiaries, or provide a deadline by which to verify

compliance. In addition, it is not clear which information Defendant may electronically verify, or

which information an applicant must provide herself.  The form simply states that Defendant will

attempt to verify an applicant's activity electronically, and if it is unable to do so, that the

applicant or beneficiary must provide verification in order to continue to receive SNAP benefits.

(Def.'s Ex. 11 at 2).

Defendant urges that applicants may obtain information regarding the exemptions or how

to verify documents by calling the customer service number on the FSP400 or visiting

Defendant's website.  Even assuming, however, that applicants would know to call the customer

service to inquire about exemptions they have not been informed of, or have the ability to

navigate Defendant's website to find those exemptions, this practice does not comply with the Decree's requirement that Defendant "provid[e] applicants with written information in standardized formats which is comprehensive, accurate, and easy to understand."  (Decree, p. 8).

Defendant further argues that, in any event, the only notice it is required by law to send to ABAWD beneficiaries is a notice of a reduction or termination of benefits.  It is Defendant's position that, although the ABAWDs are subject to general work requirements and are considered to be work registrants, HSD is not required to explain the pertinent ABAWD work requirements or the rights and responsibilities of ABAWDs.  Defendant reasons that, even though the state is required to do so under 7 C.F.R. 273.7(c) for general work requirements, because the ABAWD time limit is described in a different regulatory section that does not specifically require any notices, those general work-type notices are not required when the work registrant is an ABAWD. (Doc. 636 at 9).

While the Court fails to see the distinction between notices for general work requirements and notices regarding the ABAWD work requirements,[2] by sending these notices Defendant is, nevertheless, disseminating incorrect and incomplete information.  These faulty forms, regardless of whether they are required by law, may affect ABAWDs' eligibility and ability to receive SNAP benefits.

Throughout the testimony before the Court, witnesses for Defendant admit to these errors, and explain that any confusion with regard to an application would be clarified in an application interview, during which workers may use the form FSP200, the only form which currently states all exceptions and exemptions correctly, to review all possible exceptions and

---

[2] Indeed, the regulations governing the ABAWD time limit and work requirements refer to and incorporate provisions from the regulations governing general work requirements.  *See* 7 C.F.R. § 273.24(a)(3), (4); 7 C.F.R. § 273.24(c)(5).

exemptions to the ABAWD work requirements.[3]  (Def.'s Ex. 9).  First, however, the Court is not satisfied that relying on the interview process to compensate for admittedly incorrect and incomplete information complies with the requirements under the Decree or with the intent of the Decree.  Second, and more importantly, Defendant has also admitted that there is a segment of the SNAP applicant population that is not provided an interview before an eligibility determination.  As a result, those individuals who have received inadequate information under the Decree are without any recourse to become properly informed of their rights and responsibilities in order to continue to receive food assistance.

Finally, Defendant has presented a sample notice of adverse action, which Defendant may use to notify beneficiaries of a reduction or termination of benefits for failure to comply with the ABAWD work requirements.  (Def.'s Ex. 19; Pls.' Ex. P).  According to guidance from the United States Department of Agriculture, this notice must state that the beneficiary is subject to the ABAWD time limit, and that she has failed to fulfill the ABAWD work requirements. (Pls.' Ex. O at 3–4).  The notice should also include criteria for exemptions and exceptions, how to fulfill the requirements, and explain the opportunity to regain eligibility under the regulations. (*Id*.).  HSD's sample notice of adverse action does not include any information regarding exemptions from the ABAWD work requirements or establishing good cause, and does not include all ways to otherwise fulfill the requirements.  (Def.'s Ex. 19; Pls.' Ex. P).  Additionally, the sample notice does not set forth the specific regulations on which the decision is based, or contain a detailed individualized explanation of the reasons supporting the decision, as required by the Decree. (Decree at 21).

---

[3] Testimony indicates that this form is not sent home to any individual applicant or beneficiary and is only for a caseworker's use during the interview.

In addition to deficient forms, the Court is also concerned with Defendant's training of its employees with regard to the implementation of the ABAWD time limit.  The record reflects that, due to receiving federal guidance on the ABAWD requirements late in December, the trainings for caseworkers did not begin until December 28, 2015, days before the promulgation of the final rule and during the week between the holidays.  While the Decree does not specifically govern the method of training caseworkers and the Department's employees, effective training is certainly essential for caseworkers to properly process applications and interview and screen applicants.  In fact, the Decree requires that caseworkers screen applicants during an interview, and fully advise the applicant of any eligibility factors and verification of those factors.  (Decree at 10–11).

Indeed, there is evidence in the record of several members of the class receiving drastically different treatment by HSD throughout their application, and improperly being labeled as mandatory ABAWD recipients who had been accumulating countable months.  For example, SNAP recipient Ellana Tsethlikai does not seem to have been screened for all applicable exemptions under the regulation, and is currently required to submit verification that she is fulfilling the work requirement, when she may actually be exempt from those requirements entirely.  Additionally, recipients Cassandra Bentacourt, Daytwan Tate, and Jenness Bailey, were all determined to be mandatory ABAWD in error, as all three had indicated on their applications that they were homeless, exempting them from the ABAWD requirements.  Their cases have since been reconsidered by Defendant, who admits that they had been initially determined as mandatory ABAWD recipients in error.  It should be noted, however, that all three recipients were properly exempted from the ABAWD requirements only after Plaintiffs filed this Motion, and some were found exempt as late as March 7, 2016, the date of the hearing before this Court.

Defendant justifies the errors made with regard to an applicant's status as "chronically homeless" by stating that HSD did not receive guidance as to the exact definition of homelessness until November 2015, and later changed the definition to include a broader population.  However, according to the testimony, Defendant is still developing a definition of homelessness and a memo to guide case workers in applying it.  This situation also presents concerns with regard to Defendant's compliance with the Decree. Indeed, the Court is not convinced that Defendant can accurately explain to applicants and beneficiaries whether they may be considered "unfit for work" based on chronic homelessness, or consistently make those determinations, when it has not decided on or fully developed a chronically homeless definition for its own internal use.

In light of the foregoing, the Court finds that Defendant has not developed a standardized application process, as applicants are given inconsistent, incorrect, and incomplete information, in violation of the Decree.  There seems to be a significant amount of work to be done in order to properly implement the new ABAWD work requirements into Defendant's current application processing practices in accordance with federal law and the Decree.  Therefore, Plaintiffs have made a strong showing of substantial likelihood of success on the merits.

### B. *Significant Risk of Irreparable Harm*

Plaintiffs argue that they will suffer irreparable harm if the injunction is not issued.  (Doc. 623 at 28–30; Doc. 642 at 11–13).  Plaintiffs explain that, because Defendant provides incorrect and incomplete information on the application for assistance and other standard forms, and does not screen applicants for exemptions to the ABAWD requirements during the application process, individual class members may not be properly exempted from the ABAWD requirements. (Doc. 642 at 11–12).  Plaintiffs maintain that individuals who are not

properly exempted and cannot comply with the work requirements will lose food assistance beginning April 1, 2016, and will be disqualified from the SNAP program for over two years thereafter.  (*Id*.).  Plaintiffs allege that the financial, physical, and emotional hardship of losing food assistance cannot be compensated and, as a result, the harm inflicted is irreparable.  (Doc. 642 at 12–13).

Defendants contend that Plaintiffs cannot demonstrate that they will suffer irreparable harm absent an injunction, because the harm Plaintiffs complain of is merely speculative and theoretical.  (Doc. 636 at 15).  Defendant states that, even if a class member was not properly exempted from the ABAWD work requirements, the individual's benefits would be terminated after April 1, 2016 at the earliest.  (Doc. 636 at 14).  This is because, under the new rule promulgated on January 1, 2016, ABAWD applicants may receive assistance for three months before their benefits are terminated for failure to comply with work requirements.  (Doc. 636 at 15).  Furthermore, Defendant argues, any ABAWD applicant who is denied benefits is entitled to a fair hearing to challenge the eligibility determination under the rule.  (*Id*.).

"An irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experiences harm that cannot be compensated after the fact by monetary damages."  *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (internal citations omitted).  "Purely speculative harm will not suffice . . . ." *RoDa*, 552 F.3d at 1210. However, "an injury is not speculative simply because it is not certain to occur."  *Greater Yellowstone*, 321 F.3d at 1258.

A SNAP beneficiary's loss of food assistance is irreparable. Indeed, those who receive SNAP benefits rely on those benefits to eat.  The Court received testimony that the ABAWD population is one of society's most vulnerable, living off of incomes as low as $2,000.00 per

year, and most often not qualifying for other forms of assistance.  No amount of damages would

be adequate to retroactively remedy the loss of food assistance and the resulting financial and

physical hardship to Plaintiffs.  *See Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982)

(finding a showing of risk of irreparable injury where enforcement of California rule may deny

plaintiffs needed medical care); *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269

F.3d 1149, 1156 (10th Cir. 2001) (explaining that irreparable injury occurs when the court would

be unable to grant effective monetary remedy after trial because such damages would be

inadequate).

     The faulty forms and inconsistent practices described above, all in violation of the

Decree, fail to properly inform members of the plaintiff class of their rights and responsibilities

as SNAP beneficiaries.  As demonstrated by the testimony of SNAP beneficiaries at the hearing,

Defendant's errors and inefficiencies in these respects have real consequences—some of those

beneficiaries had technically accumulated countable months, and only through the intervention

of Plaintiffs' counsel did their ABAWD status change, or months were not found countable.  The

forms used by Defendant provide incorrect or incomplete information to at least 13,500

applicants and current beneficiaries who may be subject to the ABAWD time limit, putting

individuals who may otherwise be eligible at risk of losing their SNAP benefits.  As a result, the

Court finds that, based on the facts presented, Plaintiffs have shown there is a significant risk that

eligible New Mexicans will not receive the food assistance they are entitled to under federal law.

     Defendant emphasizes that Plaintiffs have not demonstrated an immediate, irreparable

harm, since no Plaintiff has used up all three countable months towards their three-month limit,

and may not face a termination or reduction of benefits for failure to comply with ABAWD until

as late as June 2016 because Plaintiff will begin counting months in March 2016.  The Court is

not persuaded by this argument for two reasons.  First, elsewhere in the record, a witness for Defendant indicated that SNAP beneficiaries who are not fulfilling the ABAWD requirements, and are not otherwise exempt, are currently incurring countable months without any notice. Nevertheless, even if they are not currently incurring countable months, a witness for Defendant testified these months may be used against those beneficiaries retroactively.  As a result, at best, there is conflicting testimony in the record with regard to when exactly Defendant will begin to use countable months against SNAP beneficiaries, and whether Defendant may count those months retroactively.

Second, this Circuit does not require that Plaintiffs demonstrate that the threat of irreparable harm be immediate.  Rather, in determining whether Plaintiff has made the requisite showing, this Court must assess "whether such harm is likely to occur before the district court rules on the merits." *RoDa*, 552 F.3d at 1210.  Defendant has represented that the earliest time by which non-compliant ABAWD beneficiaries may have their benefits terminated is June 2016, and that he will begin to accumulate countable months against those beneficiaries in March 2016. The Court notes that Defendant made this argument on March 7, 2016, at a time when HSD had already begun to accumulate countable months against beneficiaries and put them on track to potentially lose benefits by June, all while Defendant, admittedly, has not developed or even planned to provide notice of the accrual of a countable month until the end of April.  The harm of these actions to SNAP beneficiaries is certainly not speculative or theoretical at this point.  Indeed, while no member of the plaintiff class will lose her benefits tomorrow for failure to comply with ABAWD requirements, as of the date the Court enters this order, members of the plaintiff class are incurring countable months, potentially leading to the ultimate termination of benefits.

Defendant's argument that there are several safeguards to prevent eligible New Mexicans from losing their benefits is similarly unavailing.  Defendant relies primarily on the fact that before HSD terminates any SNAP recipient's benefits, the recipient is provided with a notice of adverse action which notifies them of their right to a fair hearing to challenge the eligibility determination.  However, in order for a fair hearing to be an adequate remedy, "[t]he hearing must be at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).  In the context of public benefits, "these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend . . . by presenting his own arguments and evidence . . . ." *Id*. at 267–68.

Here, the record establishes that HSD's proposed notices of adverse action do not inform recipients as to how to comply with the ABAWD work requirements, the exceptions and exemptions to those requirements, or how to regain eligibility.  (Def.'s Ex. 19).  Coupled with the possibility that some applicants have never been informed of the exemptions to the ABAWD requirements or how to properly verify those exemptions, *see* discussion *supra* pp. 10–12, the Court is not convinced that an applicant could contest an adverse decision in a meaningful way.

Further, HSD policy allows a beneficiary thirteen days from receiving the notice of adverse action to request a fair hearing.  Defendant explains that, if the request is made within the thirteen day deadline, the beneficiary will continue to receive SNAP benefits during the fair hearing process.  A beneficiary may also request a fair hearing up to ninety days after receiving the notice, but after thirteen days the beneficiary will lose her SNAP benefits. As a result, unless a SNAP recipient is able to properly challenge an eligibility decision within thirteen days of receiving notice of that decision, she will lose her benefits throughout the fair hearing process and any subsequent judicial review.  Defendant does not indicate how long this process may

take. Because of the deficiencies in HSD's standard forms and application processing practices described above, the Court finds that a fair hearing and subsequent judicial review does not provide an adequate remedy for the significant risk that eligible New Mexicans may lose their SNAP benefits and suffer irreparable harm.

Thus, based on the record before the Court, even when provided the opportunity to challenge an eligibility determination based on the ABAWD work requirements at a fair hearing, there is nevertheless a significant risk that otherwise eligible SNAP beneficiaries will suffer an irreparable harm by losing their food assistance.

### C.   *Balance of Harms*

Plaintiffs contend that the threatened injury to Plaintiffs greatly outweighs the damage the injunction would cause Defendant.  (Doc. 642 at 14).  Plaintiffs argue that, although Defendant will be enjoined from implementing the new ABAWD work requirements, he will continue to have a rule for the program in place, as mandated by the federal government.  (*Id*. at 14). Moreover, Plaintiffs maintain that Defendant may seek a waiver from the federal government to avoid implementing the ABAWD work requirements, which would avoid any hardship altogether.  (*Id*.).  Plaintiffs contend that any harm incurred by HSD  does not outweigh the economic and severe suffering Plaintiffs will face if the injunction is not entered.  (*Id*. at 14–15). Defendant responds that, if Defendant is enjoined from implementing the current ABAWD rule, Defendant will not have a legally compliant rule in place as mandated by the federal government. (Doc. 636 at 16–17).  As a result, Defendant contends that it may be subject to sanctions. Because Plaintiffs do not face an immediate termination of benefits, and benefits will only be terminated after three months of non-compliance with the ABAWD work requirements,

Defendant maintains that the threatened injury to Plaintiffs does not outweigh the damage to Defendant.

"When balancing the equities among the parties, the Court must consider whether the threatened injury to the movant outweighs the potential harm to the defendants if the injunction issues." *Alpha Capital Anstalt v. Ness Energy Int'l, Inc.*, No. CIV-10-1218-D, 2011 WL 232393, at *4 (W.D. Okla. Jan. 24, 2011) (unpublished) (citing *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001)).  Here, the only potential harm to Defendant in the record are sanctions from the federal government for inappropriately issuing benefits to an individual subject to the ABAWD time limit who has not complied with the work requirements.

Given the evidence in the record, however, the Court finds that any financial loss or administrative inconvenience to Defendant is greatly outweighed by the financial, physical, and emotional suffering Plaintiffs may experience upon reduction or termination of their food assistance.  "Faced with such a conflict between financial concerns and preventable human suffering, [other courts have had] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor."  *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).  Indeed, Plaintiffs have shown that eligible New Mexicans' loss of food assistance will be a consequence of Defendant's failure to properly process applications and notify SNAP applicants of their rights and responsibilities.  The financial consequences of Defendant's failure to efficiently implement the ABAWD time limit in accordance with the Decree should not be visited upon individuals such as Plaintiffs.  *See Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982).

In addition, Defendant has stated that it has decided not to impose the ABAWD work requirements for the months of January and February 2016 as it works to properly administer the program.  Instead, Defendant will give applicants "good cause," which exempts them from the

requirements all together.  It appears that, in doing so, Defendant has not incurred any sanctions by the federal government.  Defendant has not explained why it cannot continue to provide applicants with "good cause" as it continues to make adjustments to the program in order to comply with the Decree.

Moreover, the record reflects that Defendant received confirmation in December 2015 that New Mexico is eligible for a statewide waiver of the ABAWD time limit.  (Pls.' Ex. Y).  It appears that the waiver may apply retroactively and, upon application, be issued in as little as twenty-four hours.  Because any administrative and financial costs for failure to implement the ABAWD requirements may be avoided entirely by obtaining a waiver, it appears that any harm from an injunction by Defendant would be self-inflicted.  *See Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) (finding that any harm incurred by defendant as a result of the injunction would be self-inflicted, since the state "jumped the gun" by entering into contractual obligations in light of environmental concerns with the contract); *see also Utahns For Better Transp. v. U.S. Dep't of Transp.*, No. 01-4216, 2001 WL 1739458, at *2 (10th Cir. Nov. 16, 2001) (unpublished).

Further, Plaintiffs' Motion was filed after nearly a year of this Court working with both parties in an effort to bring Defendant's existing application processing practices and notices into compliance with the Decree.  In fact, there is currently a pending *Order to Show Cause*, (Doc. 620), as to why Defendant should not be held in contempt for failing to comply with several of this Court's orders regarding Defendant's current practices.  Nevertheless, instead of focusing his limited resources on complying with the Decree as the non-ABAWD SNAP application process, Defendant chose not to pursue the available statewide waiver for the ABAWD time limit, and proceeded with implementing the underlying rule.  This action also cuts against their claim of

harm outweighing the harm to Plaintiffs.  *Utahns For Better Transp.*, 2001 WL 1739458, at *2

(finding the state agency was aware of several court cases challenging the approval of a certain

project, but chose to proceed anyway, cuts against claim of harm).

Because the harm Plaintiffs face in losing food assistance is irreparable, and any

monetary damages Defendant may suffer will be self-inflicted, the Court finds that the balance of

the harms in this case tips strongly in Plaintiffs' favor.  *Dominion Video Satellite, Inc. v.*

*EchoStar Satellite Corp.*, 269 F.3d 1149, 1157 (10th Cir. 2001).

     *D.   The Public Interest*

Plaintiffs maintain that issuing the injunction would serve the public interest

because it ensures that tens of thousands of New Mexicans can maintain access to federal food

assistance while this Court decides the ultimate question of whether Defendant is in compliance

with the Decree.  (Doc. 623 at 29).  Plaintiffs emphasize that, in considering the public interest, it

is not only the harm to the individual class members the Court should consider, but also the harm

to society as a whole when it neglects the poor and hungry.  (Doc. 642 at 15).  In addition,

Plaintiffs explain that the loss of food assistance to a large number of New Mexicans will

increase costs for other state programs, including food banks and Medicaid.  (Doc. 642 at 15–

16).

In response, Defendant argues that issuing the injunction would be adverse to

the public interest because it would strip the single state agency tasked with administering SNAP

benefits of its discretion to institute an ABAWD program.  (Doc. 636 at 17).  Defendant

maintains that enjoining a state governmental agency from implementing a mandatory rule is

against the public interest, given that it could potentially lead to sanctions by the federal

government, which would take away funds that would otherwise go to public programs.  (Doc.

636 at 17–18).  Finally, Defendant believes that implementing the ABAWD work requirements will result in better outcomes for all SNAP recipients, which is also in the public interest.

"A party seeking a preliminary injunction is not required to show that the requested injunctive relief will serve the public interest; rather, it must show the issuance of the injunction would not be adverse to the public interest."  *Alpha Capital Anstalt*, 2011 WL 232393, at *4 (citing *Heideman v. South Salt Lake City,* 348 F.3d 1182, 1188 (10th Cir. 2003)).  The Court has no doubt that it is in the public interest to ensure that eligible New Mexicans in desperate need of certain benefits receive those benefits in a timely manner.  As the Ninth Circuit has already noted,

> [o]ur society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges. Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.  It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time.

*Lopez*, 713 F.2d at 1437–38.  Furthermore, from a practical standpoint, the ABAWD population is one of society's most vulnerable, and often do not qualify for other public benefit programs. When eligible individuals do not receive food assistance, it puts pressure on other entities and state programs such as food banks and shelters, and family members and friends to provide for the individuals the SNAP program is meant to assist.

Defendant maintains that if the Court were to grant this injunction, it would strip HSD of its ability to manage the programs over which it has sole authority, which is adverse to the public interest.  To be clear, the Court does not hold that Defendant's ABAWD rule is unlawful, or that Defendant may not implement this rule at some point in the future.  Defendant is certainly free to make its own policy decisions how it sees fit.  However, this Court does

require that Defendant do so in accordance with the Decree.  The Decree was formulated in cooperation with HSD, and was entered in an effort to provide vital assistance to needy members of our society.  The Court would be hard-pressed to find that holding HSD accountable in that endeavor is adverse to the public interest.

### IV.    Conclusion

For the foregoing reasons, the Court finds that Plaintiffs have made a sufficiently strong showing of a substantial likelihood on the success of the merits, a significant risk of irreparable harm, that any harm to Defendant is greatly outweighed by the potential harm to Plaintiffs, and that the injunction would not be adverse to the public interest.  Thus, even under this Circuit's heightened standard, Plaintiffs have demonstrated that the exigencies of the case support granting their request for a preliminary injunction.

The Court is mindful of the difficulty Defendant faces in implementing the ABAWD regulations, and is well-aware of the great efforts undertaken by Defendant's staff to try to effectuate the policies of these regulations with the intent to benefit society.  The Court's concern, however, is the manner and pace at which these new requirements have been implemented.

As a result, **IT IS THEREFORE ORDERED** that *Plaintiffs' Motion for Injunctive Relief and Expedited Review and Hearing*, (Doc. 623), is **GRANTED** and that Defendant is enjoined from implementing the ABAWD time limit and related work requirements until December 31, 2016.

**IT IS FURTHER ORDERED** that the parties are required to meet and confer regarding these issues once every three months.  The parties shall file a status report with the Court no later than two weeks, or fourteen days, after the meet-and-confer.

**IT IS FURTHER ORDERED** on or before Friday, March 18, 2016, that Defendant shall send notices to all individuals subject to the ABAWD time limit that the work requirements are not in place at this time.

_____
UNITED STATES DISTRICT JUDGE