IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

       Plaintiffs,

v.                                                                No. CV 88-385 KG/CG
                                                             Consolidated with
                                                             No. CV 88-786 KG/CG

BRENT EARNEST, Secretary of the
New Mexico Human Services Department,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon United States Magistrate Judge Carmen E. Garza's Proposed Findings and Recommended Disposition ("PFRD") filed on July 15, 2016. (Doc. 730). Judge Garza recommends that Defendant Secretary of the New Mexico Human Services Department Brent Earnest ("Defendant" or "Secretary Earnest") be found in contempt for failure to comply with several orders of this Court, that a special master be appointed to serve as an objective advisor to Defendant and to report to the Court on Defendant's compliance with the Court's orders in this case, and that Defendant be ordered to employ the organizational objectives and strategies described in his letter to Plaintiffs dated June 2, 2016. (Doc. 730) at 31–32.

The parties were notified that written objections to the PFRD were due within 14 days of the filing of the PFRD, and that failure to object would not allow for appellate review. (Doc. 730 at 32). Defendant timely filed The New Mexico Human Services Department's Specific Objections to the Proposed Findings and Recommended Disposition (Doc. 730) ("Objections"),

on July 29, 2016, and Plaintiffs filed Plaintiffs' Response to Defendant's Objections to the Proposed Findings and Recommended Disposition (Doc. 730) ("Response"), on August 12, 2016. (Docs. 743 and 746). After a *de novo* review of Defendant's Objections and Plaintiffs' Response, the Court adopts Judge Garza's PFRD.

## I.  Factual and Procedural Background

This case originally challenged certain practices of the New Mexico Human Services Department ("HSD") in processing applications for assistance under the federal Food Stamps program, referred to as the Supplemental Nutritional Assistance Program ("SNAP"), and Medicaid program. Specifically, Plaintiffs claimed that HSD was violating their federally-guaranteed right to receive a prompt SNAP and Medicaid eligibility decision. Defendant and Plaintiffs negotiated a resolution of the issues before the Court, which was memorialized in the Modified Settlement Agreement (the "Decree"), entered on August 27, 1998. (Doc. 460). As part of the agreement between the Parties, this Court retained jurisdiction over the matter to enforce the terms, conditions, and undertakings of the Decree. *Id*. at 2. Also, as part of the Decree, the Parties agreed to make good faith efforts to resolve any differences that may arise in the prospective implementation of the Decree. The Decree provides that, in the event the Parties cannot resolve their differences after good faith negotiations, either party may seek a ruling from the Court. *Id*. at 5.

Since the Court entered the Decree, the parties have sought several rulings from this Court. As detailed in the PFRD, beginning in 2014, this Court entered the following orders to resolve the issues of Defendant's non-compliance with the Decree and federal law: (1) Stipulated Order Resolving Plaintiffs' Motion to Enforce Compliance with Decree for Newborn and Children's Medicaid, regarding Defendant's processing of Medicaid renewals, (Doc. 475); (2)

2

Stipulated Order Resolving Plaintiffs' Motion to Hold Defendant In Contempt and for Sanctions, regarding Defendant's processing of benefit applications for households with immigrant members, (Doc. 477); (3) Order Granting Motion to Enforce Compliance, regarding Defendant's delays and denials in processing applications for food and medical assistance, (Doc. 500), which was amended and updated in an Amended Stipulated Order, (Doc. 554); and (4) Stipulated Interim Order in Lieu of Hearing May 28, 2014, on Motion to Enforce Compliance with Notice Provisions of Court Order, regarding Defendant's notices used for processing food and medical assistance applications, (Doc. 506), which was amended and updated in an Amended Stipulated Interim Order in Lieu of Hearing on Motion to Enforce Compliance with Notice Provisions of Court Order, (Doc. 549) (together, the "Court Orders").

    The Court then referred this matter to Judge Garza to monitor Defendant's compliance with the Court Orders. (Doc. 557). In doing so, Judge Garza comprehensively addressed the parties' disputes relating to Defendant's compliance with the Court Orders, including conducting a full-day conference on the issues before the Court, holding monthly status conferences, receiving monthly Joint Status Reports ("JSRs"), conducting motion hearings, and extending the original deadlines of the Court Orders to allow Defendant an opportunity to come into compliance. After several months, and having provided Defendant with several opportunities to meet the extended deadlines, Judge Garza entered an Order to Show Cause ("OSC") requiring Defendant to show cause as to why he should not be held in contempt and sanctioned for failing to comply with the Court Orders. (Doc. 620). Judge Garza then received evidence and heard oral argument on the question of Defendant's compliance at hearings on the OSC on April 28, May 13, and July 6, 2016.

Based on the evidence and argument presented at the hearing, Judge Garza ultimately recommended that Defendant be found in contempt for failing to comply with the Court Orders. In addition, Judge Garza recommended that a special master be appointed to serve as an objective advisor to Defendant and to report to the Court on issues related to SNAP and Medicaid eligibility processes and Defendant's compliance with the Court Orders, the Decree, and federal law. Finally, Judge Garza recommended that Defendant be required to implement the organizational objectives and strategies described in his letter to Plaintiffs dated June 2, 2016 ("June 2 Letter"). (Doc. 712).

Defendant does not object to Judge Garza's recommendations that a special master be appointed in this case and that Defendant pay the expenses and salary related to the appointment of the special master. (Doc 743) at 1. As a result, this Court has already entered an order appointing a special master and outlining the process for selecting the special master. (Doc. 751). In addition, Defendant does not object to the recommendation that he be ordered to employ the organization objectives and strategies described in his June 2 Letter.

However, Defendant objects to Judge Garza's finding of contempt. Specifically, Defendant asserts that the record does not support Judge Garza's conclusion that Defendant has not "diligently attempted in a reasonable manner to comply" with the Court Orders. (Doc. 743) at 2. In response, Plaintiffs first argue that, if this Court accepts Defendant's Objections, sufficient evidence exists in the record to find Defendant in contempt. Nevertheless, Plaintiffs maintain that the record does not support Defendant's Objections. (Doc. 746) at 1.

**II.    Objections**

    *A.  Standard of Review*

After a magistrate judge files her recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. FED. R. CIV. P. 72(b)(2). An objection must be both timely and "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). In doing so, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3).

    *B.  Defendant's Objections to the PFRD*

In the PFRD, Judge Garza concluded that Defendant has neither complied with the Court Orders nor diligently attempted in a reasonable manner to comply with those Orders, and ultimately recommended that Defendant be found in contempt. (Doc. 730) at 31–32. Judge Garza based this conclusion on factual findings regarding HSD's revisions of the New Mexico Administrative Code ("NMAC"), processing of overdue pending cases, trainings on benefit eligibility based on immigrant classifications, eligibility determinations and renewals of Medicaid benefits, written notices of eligibility decisions and delays, and processing of expedited SNAP applications. *Id*. at 6–20.

Defendant objects to certain factual findings which support Judge Garza's ultimate conclusion of contempt. (Doc. 743) at 2. In particular, Defendant asserts that several of Judge

5

Garza's factual findings with regard to HSD's revisions of the NMAC, training on issues surrounding immigrant eligibility for benefits, HSD's procedural denials of applications, and HSD's contract with literacy expert MAXIMUS do not find support in the record, and, therefore, cannot support her recommendation that Defendant be found in contempt. *Id*. at 2–9.

As an initial matter, Defendant specifically objects to Judge Garza's finding that he has not "diligently attempted in a reasonable manner to comply" with the Court Orders, and asks this Court to find that Defendant has substantially complied with the Court Orders. (Doc. 743) at 2, 9. However, as explained in the PFRD, and as Plaintiffs point out, whether Defendant has "diligently attempted in a reasonable manner to comply" with the Court Orders is not the standard for contempt in the Tenth Circuit. Rather, for a party to be held in civil contempt in this Circuit there must be a demonstration, by clear and convincing evidence, that: (1) a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *F.T.C. v. Kuykendall*, 371 F.3d 745, 754, 756–57 (10th Cir. 2004); *Cf. New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989) (explaining that court may hold party in contempt only where "the party has not diligently attempted in a reasonable manner to comply"). Judge Garza explicitly based her recommendation for contempt on the Tenth Circuit standard, and declined to adopt the standard of other Circuits. (Doc. 730) at 23–24. Judge Garza then found that, *even if* the Court were to adopt the standard of other Circuits, Defendant had not demonstrated that he "diligently attempted in a reasonable manner to comply" with the Court Orders. *Id*. at 24–27.

Defendant does not object to Judge Garza's application of the Tenth Circuit standard or her findings under that standard, or ask this Court to adopt the standard of other Circuits. On this

basis alone, this Court is compelled to adopt Judge Garza's findings and recommendation based on the Tenth Circuit standard.

In addition, this Court agrees with Plaintiffs that, even if the Court accepted Defendant's Objections, there is more than sufficient evidence in the record to support a finding of contempt.  Upon this Court's review of the entire factual record, the Court finds the individual objections to be quite narrow.  Indeed, Judge Garza relied on several additional factual findings to support her recommendation, which remain uncontested by Defendant.  In particular, Defendant does not object to Judge Garza's findings that not all SNAP and Medicaid applicants have received individualized notices of delay in processing, in violation of the Decree; Defendant does not properly renew Medicaid eligibility under federal law or the Decree;[1] not all notices issued by Defendant are currently fully compliant with the Decree; or that Defendant's employees have been entering false information in case files in order for the cases to appear ineligible for expedited SNAP benefits and, thus, timely processed. (Doc. 730) at 17–20.

As a result, even accepting Defendant's objections, there is ample evidence to support Judge Garza's finding that Defendant has neither fully complied with the Court Orders, nor "diligently attempted in a reasonable manner to comply" with those Orders.  Nevertheless, in an effort to thoroughly address Defendant's contentions, the Court will address each of Defendant's specific objections in turn.

   1. *Revisions of the NMAC*

First, Defendant objects to Judge Garza's findings with regard to relevant revisions of the

---

[1] In fact, from this Court's review of the briefs and the transcripts, it does not appear that Defendant has ever provided the Court with any information indicating that HSD properly processes Medicaid renewals as required by federal law and as specifically ordered by this Court. *See* (Doc. 475) at ¶ 5).

NMAC. As explained in the PFRD, throughout 2015, the parties agreed that Defendant would make several substantive revisions to the NMAC in order to bring it into compliance with federal regulations governing SNAP and Medicaid programs. *See* Doc. (651-1) at 47–71. These changes include adding regulations regarding Medicaid renewals, revising regulations to explain who must provide a Social Security Number ("SSN") in order to receive Medicaid, and revising regulations surrounding notice and time standards in processing applications for SNAP and Medicaid. *Id*. at 7–8, 14–16, and 18–20. The Court ultimately ordered Defendant to "provide Plaintiffs with his final position on the NMAC revisions, including the substance of the revisions he is going to make, as well as when he will issue a notice of proposed rulemaking to implement the revisions" by September 30, 2015. (Doc. 601) at ¶ 1. Based on the evidence and argument presented at the hearings, Judge Garza found that Defendant had not complied, or diligently attempted in a reasonable manner to comply, with the Court Orders regarding NMAC revisions. (Doc. 730) at 6–7.

Defendant contends that the Court Orders only require Defendant to "provide Plaintiffs with his final position on the NMAC revisions, including the substance of the revisions he is going to make," and do not order that Defendant actually promulgate those revisions.[2] (Doc. 601) at ¶ 1; Doc. 743) at 2–3. Defendant states that he provided Plaintiffs with HSD's position on the NMAC revisions by September 30, 2015, and therefore fulfilled his obligations under the Court Orders. As a result, Defendant maintains, Judge Garza's finding that he has not complied, or reasonably attempted to comply, with the Court Orders as they relate to the NMAC revisions is not supported by the record. (Doc. 743) at 3.

---

[2] Defendant maintains that, while HSD indicated it would begin the promulgation process in October 2015, it did so during a status conference and was not ordered to do so by the Court. (Doc. 743 at 3).

8

Indeed, the Court Orders do not specifically require Defendant to promulgate the NMAC provisions.  (*See* Doc. 601 at ¶ 1).  However, the Court Orders do explicitly require Defendant to inform Plaintiffs of the date by which HSD "will issue a notice of proposed rulemaking to implement the revisions."  (*Id.*).  By Defendant's own testimony at the hearing on April 28, 2016, he has not provided Plaintiffs with information as to when he will issue a notice of proposed rulemaking as to the NMAC provisions.  (Doc. 695) at 64.  Defendant also does not address this requirement in the Objections.  *See* (Doc. 743) at 2–4.

Instead, Defendant seems to argue that any obligation to provide Plaintiffs with a date by which he will issue a notice of proposed rulemaking is fulfilled by actually beginning the promulgation process of the revised rules, emphasizing that HSD has begun the formal promulgation process with regard to rule changes surrounding SNAP.[3]  To the extent this action demonstrates compliance with the Court Orders, HSD has only started the formal promulgation process with regard to SNAP rule changes.  (Doc. 695) at 41–44, 63–65.  HSD has not begun the promulgation process with regard to rules changes surrounding Medicaid applications and Medicaid renewals.  (Doc. 695) at 63–65.  To date, Defendant has not provided Plaintiffs or the Court with a date by which HSD will issue a notice of proposed rulemaking to implement the remaining revisions, and has not provided any explanation as to why he has not done so.

Defendant also emphasizes that HSD has instituted interim policies and procedures ("IPPs"), which communicate correct policy surrounding SNAP and Medicaid application processing and are accessible to workers while the NMAC revisions are being promulgated and published. (Doc. 743) at 3–4; (Doc. 695) at 65.  However, Defendant correctly notes that the

---

[3] By Defendant's own account, HSD did not begin the formal promulgation process with regard to rules related to SNAP until April 15, 2016—over six months after the original deadline to provide Plaintiffs with a date by which HSD will issue a notice of proposed rulemaking and less than two weeks before Judge Garza began to take evidence in this case. (Doc. 743 at 3).

Court Orders do not require that Defendant issue IPPs with regard to the NMAC revisions. (Doc. 743) at 4. While the Court appreciates that Defendant has utilized IPPs to communicate policy to workers while finalizing any changes to the NMAC, IPPs are interim processes which do not necessarily demonstrate compliance, or diligence in attempting to comply, with the Court's requirement to provide a date by which HSD will issue a notice of proposed rulemaking to implement the substantive NMAC revisions. This Court is concerned that, almost a year after the original deadline, HSD has not even provided a date by which it intends to begin the formal promulgation process with regard to Medicaid regulations. This is especially concerning since the record reflects that HSD continues to improperly process the majority of Medicaid renewals.[4]

As a result, the record is clear that Defendant has not shown that he is in compliance with the Court Orders with regard to the NMAC revisions, and has not otherwise shown that he has diligently attempted to comply with those Orders.

### 2. Issues Surrounding Immigrant Applicants

Second, Defendant objects to Judge Garza's findings with regard to HSD's training of staff on processing SNAP and Medicaid applications for households with non-citizens. This Court first ordered Defendant to develop training on benefit eligibility based on several types of immigrant classifications, and how to process those applications, in early 2014. (Doc. 477 at 6). Subsequently, Defendant was to have provided training materials on immigrant eligibility for new employees to Plaintiffs for comment, and, ultimately, to implement the training by November 1, 2015. (Doc. 587 at ¶ 9; Doc. 601 at ¶ 6). The Court also ordered Defendant to develop immigrant eligibility training for long-terms employees, and to provide information on that training to Plaintiffs in September 2015. (Doc. 601 at ¶ 8). Judge Garza

---

[4] Defendant does not object to Judge Garza's findings with regard to HSD's improper processing of Medicaid renewals.

found that, based on the trainings provided to Plaintiffs and Defendant's testimony that no updated training had been implemented, Defendant had not diligently attempted in a reasonable manner to comply with the Court Orders immigrant eligibility training.  (Doc. 730 at 10–12).

Defendant now objects to Judge Garza's finding on the basis that Judge Garza discounted HSD's use of IPPs as training tools on immigrant applications.  (Doc. 743) at 5–7.  Defendant asserts that the initial training for employees is contained in two IPPs, the content of which was created with Plaintiffs.  (Doc. 743) at 6.  Defendant does not object to Judge Garza's findings with regard to errors contained in the training modules presented to the Court, and, instead, maintains that those training modules were in development at the time of the hearing and should not detract from the fact that HSD utilized the IPPs developed with Plaintiffs to train staff.  (Doc. 743) at 6–7.

However, as Plaintiffs argue in their response, IPPs are interim policies and procedures which do not necessarily equate comprehensive training.  (Doc. 746) at 3–4.  Indeed, the IPPs which purportedly serve as HSD's training on immigrant eligibility were originally issued in February 2014, and were required by an entirely separate paragraph of the Court's original order regarding Defendant's processing of benefit applications for households with immigrant members.  (Doc. 695) at 145–46.  In that order, Defendant was required to issue two IPPs on immigrant eligibility by March 3, 2014.  *See* (Doc. 477) at ¶ 3.  In a separate paragraph of the same order, and in subsequent orders as described above, the Court required Defendant to develop and implement training on immigrant eligibility for new and long-term employees.  *See* (Doc. 477) at ¶¶ 5, 6; (Doc. 587) at ¶ 9; (Doc. 601) at ¶¶ 6, 8.

Again, the Court is encouraged by HSD's use of IPPs to train supervisors and staff while it develops comprehensive trainings on complicated issues regarding immigrant eligibility.

11

However, this Court would be hard-pressed to find that IPPs issued in early 2014 satisfy Defendant's obligation to develop trainings that were required in a separate portion of the order, and in subsequent orders issued over a year later. Accordingly, because Defendant has admittedly not implemented any other training besides these IPPs, the Court finds that Defendant is not in compliance with the Court Orders surrounding training on immigrant eligibility, and that Defendant has not diligently attempted to comply with the related Court Orders.

### 3. Procedural Denials

Third, Defendant objects to Judge Garza's finding that HSD procedurally closes cases in the backlog, in violation of the Court Orders. (Doc. 743) at 7–8. As stated in the PFRD, Defendant has had a backlog of thousands of cases that have not been processed within the federal timelines. In 2014, Plaintiffs brought to the Court's attention that Defendant's computer system was automatically and procedurally closing cases that had not been approved or denied within the appropriate federal timelines. In an order dated May 20, 2014 ("Doc. 500"), this Court then ordered that HSD cease all procedural denials of SNAP and Medicaid benefits without individualized review, until the backlog is addressed. (Doc. 500) at ¶¶ 4, 5. The Court subsequently ordered Defendant to begin processing cases in the backlog according to federal law and the Decree, first by March or April 2015, and then by October 1, 2015. (Doc. 554) at ¶¶ 3–5; (Doc. 587) at ¶ 21. In addition, the Court ordered Defendant to provide Plaintiffs with a sample of cases that were overdue and pending denial or closure in order for Plaintiffs to conduct a case file review. (Doc. 554) at ¶ 9; (Doc. 587) at ¶ 22.

Defendant does not dispute that HSD has been closing cases for procedural reasons since August 2015. Per HSD policy, HSD staff are directed to deny applications for procedural reasons after an applicant submits a new application within sixty days of an original application,

12

and indicates that he or she did not complete the previous application process. (Doc. 655 at ¶ 8). Under those circumstances, HSD policy directs staff to procedurally deny the original application. *Id*.; Pls.' Ex. Y (admitted at hearing on April 28, 2016). Instead, Defendant objects to Judge Garza's findings on the basis that, first, HSD has not had a backlog of unprocessed cases since August 2014. (Doc. 743) at 7 (citing (Doc. 695) at 224). Second, Defendant argues that staff do not procedurally deny an application unless the applicant concedes that he or she did not complete the previous application process, which HSD views as meeting the requirement of an individualized review. *Id*. at 7–8. As a result, Defendant maintains that taking action on these particular cases does not require an amendment of the Court's order prohibiting HSD from procedurally denying cases, or that HSD otherwise seek permission of the Court to do so. (Doc. 743) at 8.[5]

Defendant's argument that the backlog has been eliminated and addressed is not persuasive. Secretary Earnest testified that the backlog was eliminated in August 2014, and that what remains is a group of cases in which HSD cannot take any further action, but also cannot close pursuant to this Court's orders. (Doc. 743) at 7; (Doc. 695) at 224. However, despite asserting that HSD resolved the backlog in August 2014, Defendant stipulated to orders filed in May and September 2015, which listed enumerated paragraphs titled "backlog." In those

---

[5] Defendant did not move to rescind or modify Doc. 500 until July 5, 2016, in order to procedurally close a broader number of cases, pursuant to correspondence with United States Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"). (Doc. 743) at 8; (Doc. 710) at 1; *See* (Doc. 725), The New Mexico Human Services Department's Motion to Amend This Court's Orders Relative to Procedural Denial and Closing of Applications and Recertification-Applications for SNAP and Medicaid Benefits. In an abundance of caution, this Court did amend Doc. 500 to now read that "[n]one of the foregoing is intended to impede Defendant from complying with the requirements of the Code of Federal Regulations, federal law, directives by appropriate federal agencies, and the Consent Decree in this case." (Doc. 749) at ¶¶ 1, 2. Defendant does not object to Judge Garza's findings on the grounds that other federal authority requires the procedural denial of these cases.

paragraphs, the Court required HSD to properly re-process cases that are overdue pending closure or denial under the law. (Doc. 587) at ¶ 21; (Doc. 601) at ¶ 14. While there seems to be some dispute as to terminology, there has been no finding by this Court that the backlog, or collection of overdue pending cases, has been addressed such that Defendant can return to procedurally denying cases. Indeed, it seems inappropriate to do so when Judge Garza has made undisputed findings that HSD has not properly re-processed a majority of cases that are overdue pending denial or closure. (Doc. 730) at 8–9. Additionally, to the extent the backlog has been "addressed" as originally contemplated by the Court Orders, it certainly was not addressed in August 2015, when the Court ordered Defendant to re-process all SNAP and Medicaid cases pending denial or closure by October 1, 2015. (Doc. 587) at ¶ 21; (Doc. 601) at ¶ 14. According to Defendant, HSD began procedurally denying some cases at that time. (Doc. 655) at ¶ 8.

Furthermore, Defendant's argument that HSD's policy provides for individualized review, as required by Doc. 500, is similarly unavailing. Again, HSD policy requires staff to procedurally deny an original application for benefits where an applicant submits a new application within sixty days of the original application and indicates that he or she did not complete the previous application process. (Doc. 655 at ¶ 8). While Defendant maintains that this constitutes "individualized review" under this Court's Orders, the Orders explicitly state that "Defendant will deny SNAP and Medicaid benefits only after an individualized eligibility determination based on income, assets, residency, and other eligibility factors, *rather than those factors related to the application process itself*." (Doc. 500 at ¶ 5) (emphasis added). Thus, HSD's policy, on its face, conflicts with the Court Orders. As a result, this Court finds that Defendant has not diligently attempted to comply with those Orders.

    *4. Notices*

Finally, Defendant objects to Judge Garza's finding that Plaintiffs' questioning at the hearing on July 6, 2016, demonstrated that HSD's contract with literacy expert MAXIMUS to review notices had expired, and that Secretary Earnest was unaware of this fact. As stated in the PFRD, the Decree establishes standards for notices of eligibility decisions and delays which require that the notices are written at a sixth grade reading comprehension level. (Doc. 460-2) at 3–5. The notices must include individualized reasons for eligibility delay or information needed to verify an eligibility factor, and identify any action necessary to remedy the delay or verify eligibility. *Id*. HSD reports that it is currently working with two notice experts to analyze the readability of HSD's notices, MAXIMUS and CTS, to ensure compliance with the Decree. (Doc. 695) at 45.

During the July 6, 2016, hearing before Judge Garza, Secretary Earnest seemed unaware of the status of HSD's contract with MAXIMUS and that it may be expiring after June 30, 2016. (Doc. 741) at 102–03. In response to later questions, Secretary Earnest stated that, while he was not aware of any contract with MAXIMUS which authorized it to do work for HSD after June 30, 2016, HSD could obtain a contract with MAXIMUS if necessary, or utilize another literacy expert with which HSD has contracted to perform literacy reviews. *Id*. at 108–09. Secretary Earnest could not speak to whether any efforts had been made to secure a contract with MAXIMUS. *Id*. at 109. While the testimony elicited does not definitively demonstrate the status of HSD's contract with MAXIMUS, or any other literacy expert, Secretary Earnest's testimony is indicative of a general lack of awareness and managerial engagement over HSD. The Court finds this especially concerning given that Secretary Earnest also testified that he had removed the previous director of HSD's Income Support Division, Marilyn Martinez, from her position, and that he and Deputy Cabinet Secretary Sean Pearson would, therefore, "be much

more directly involved in the day-to-day operations of that division." *Id*. at 92.  Secretary Earnest's testimony suggests that he is not so involved.

At this point, it is also important to note what Defendant has *not* objected to with regard to Judge Garza's findings relevant to the status of HSD's notices.  To summarize, Defendant does not object to Judge Garza's findings that: (i) not all notices are fully compliant with the Decree, since seven of those notices must be returned to the literacy expert for a literacy review; (ii) the Court ordered that Defendant implement a complete set of fully compliant notices originally by September 30, 2015, and then by December 31, 2015; (iii) the delay in implementing fully compliant notices was, at least in part, due to HSD error, as HSD originally sent non-compliant notices to the literacy expert for review, only to resubmit the notices after they had been revised to be compliant; or that, (iv) in the midst of Defendant's deadlines with this Court, HSD decided to expend its already limited resources on implementing an additional set of eligibility criteria for SNAP applicants known as Able-Bodied Adults Without Dependents ("ABAWDs"). (Doc. 730) at 14, 16–17.  In implementing the ABAWD program, HSD managed to develop entirely new notices and employee training, and promulgated new rules in the NMAC, that this Court found similarly failed to meet regulation requirements.  (Doc. 658). Indeed, this Court remains mystified that HSD would launch this ambitious program in one hand, while struggling with the other to comply with the Decree, Court Orders, and federal law. Finally, Defendant has not provided the Court with samples of corrected and compliant notices for the Court's consideration, or provided the Court with a date by which the literacy review of the notices will be completed.  (Doc. 730) at 16–17.  As a result, the record demonstrates that Defendant has not complied, or diligently attempted in a reasonable manner to comply, with the Court Orders regarding notices.

### III. Conclusion

In sum, this Court finds that Defendant's specific objections with regard to Judge Garza's factual findings are without merit, and this Court agrees with Judge Garza's conclusion that Defendant is not in compliance with the Court Orders, and has not "diligently attempted in a reasonable manner" to comply with those Orders. Based on the discussion above and the record in this case as a whole, it remains clear that HSD and its officials have failed to exercise the leadership, control, and managerial oversight to effectively come into compliance with the Court Orders, the Decree, and federal law.[6] Indeed, the overall direction and development of this case over the past several years has been troubling, to say the least. Therefore, the Court adopts Judge Garza's recommendation that Defendant be found in contempt for failure to comply with the Court Orders.

**IT IS THEREFORE ORDERED** that:

(1) Defendant's Objections be **OVERRULED**;

(2) the PFRD be **ADOPTED** (Doc. 730);

(3) Defendant employ the organizational objectives and strategies described in his letter to Plaintiffs dated June 2, 2016 (Doc. 712); and

(4) Defendant be found in contempt of Court as described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

---

[6] Defendant acknowledges that he must make serious and fundamental changes in order for the SNAP and Medicaid programs in New Mexico to come into compliance with federal law, the Decree, and the Court Orders, and may need outside expertise in doing so. (Doc. 741) at 92–94; (Doc. 712), Letter from Defendant outlining organizational objectives and strategies.