IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

   Plaintiffs,

vs.          No. CIV 88-0385 KG/CG
            Consolidated with
            No. CIV-88-0786 KG/CG

BRENT EARNEST, Secretary of the
New Mexico Human Services Department,

   Defendant.


**JOINT STATUS REPORT PURSUANT TO DOC. 658**

Outlined below are the Court Orders that parties believe are the most important compliance pieces to be addressed.  Each party gives its position and corroborating documents within the categories listed.

**PLAINTIFFS' SECTION**

The parties met on March 20, 2017 for a regularly scheduled Meet and Confer. Important agreements were made related to data required by the Decree and ongoing work on Notices.  Defendant agreed to provide a list of data required by the Decree and other Court Orders and plan to provide that data by the following Meet and Confer. Outcomes of that meeting are summarized in the letter attached as Exhibit 1. The parties held a separate meeting on notices and agreed to a set of notices that fall within the Consent Decree. HSD agreed to provide the status of the agreed upon notices and the parties will meet to develop a work plan for the remaining work on notices. Plaintiffs were encouraged by these agreements but are concerned that Defendant is not timely processing applications and renewals.

Data from Defendant shows that tens of thousands of New Mexicans timely renew SNAP each month, but do not receive food assistance they are eligible for because of HSD delays. Applications for SNAP are not being processed within the time frames required by the Decree and federal law. Data shows that a large number of families are not receiving emergency food assistance to which they are entitled. In this environment, Defendant has proposed to implement administratively complex copayments for a large share of Medicaid participants and issued regulations indicating the Department may implement a three-month limit on SNAP for unemployed adults as soon as June 1, 2017.  Plaintiffs look forward to discussing these issues and the Special Master's recent recommendations with the Department at the next Meet and Confer. *See* data for January and February 2017 summarized in Table 1, below.

Table 1

|  | January | February |
|---|---|---|
| Overdue SNAP applications | 10,548 | 7,100 |
| Overdue SNAP renewals | 36,587 | 30,943 |
| Overdue Medicaid applications | 14,411 | 11,458 |
| Overdue Medicaid renewals | 23,876 | 48,288 |
| Expedite SNAP Timeliness | 82.7% | 91.9%* |
| SNAP timeliness | 93.2% | 91.5%* |
| Medicaid approval timeliness | 91.2% | 86.6% |
| Medicaid denial timeliness | 79.7% | 81.2% |
| % of customer service phone calls answered | 24% | 25% |

*Excludes cases marked as untimely pursuant to previous orders of the Court. HSD broke out this data for February, but not for January.

Defendant continues to withhold information that he is required to provide to Plaintiffs' Counsel concerning compliance with the Decree. Defendant attached a report to the USDA to his final draft of this JSR on April 18, 2017. Defendant had this report on April 7, 2017 while the parties were working on drafts of the JSR but did not provide it until after the deadline to submit the JSR to the Special Master. Even worse, the report shows that Defendant had data on the status of the SNAP backlog throughout the month of March and April, but did not provide it to Plaintiffs' Counsel. The report that Plaintiffs received on April 17th, describes weekly and daily data the Department reports to the USDA on the status of the SNAP backlog. HSD agreed to provide all reports to Plaintiffs' Counsel that are provided to the USDA, and this data is required by the Decree, ¶ 6, p. 26.  Defendant's report to the USDA states that HSD continues to track weekly processing of overdue SNAP renewals that includes reasons for the delays, but this data has not been provided to Plaintiffs' Counsel in over a month. Defendant also denies agreements that were made in the meet and confer, yet he did not respond to the simple letter Plaintiffs sent confirming the outcomes of the meet and confer. *See* Exhibit 1. Because of Defendant's persistent disregard for this Court's orders and the requirements to work with Plaintiffs' Counsel, Plaintiffs will seek assistance of the Court in compelling the Department to comply with the Decree and provide information as required.

## I.       Medicaid Renewals

Relevant paragraphs of Court Orders related to Medicaid Renewals are listed above.  Plaintiffs renew and incorporate all compliance related concerns outlined in the March 2017 JSR (Doc. 773).

**Doc. 475 - Stipulated Order Resolving Plaintiffs' Motion to Enforce Compliance with Decree for Newborn and Children's Medicaid**

**¶ 3 – *On or before March 14, 2014, Defendant will submit to Center for Medicaid/Medicare Services ("CMS") for approval the form attached hereto as Exhibit A which, upon approval by CMS, shall be the only form used for the redetermination of eligibility of MAGI and family***

*based Medicaid categories. Pending approval of the attached form by CMS, Defendant will continue the redetermination process of automatically cascading eligibility for the existing members who are currently active to another assistance category, such as SNAP, TANF, or Medicaid.*

In the March JSR (Doc, 773), Plaintiffs documented their concerns that the Department is closing cases without the MAD 608 having first been sent to families.

*¶ 5 – Prior to sending a family a notice of Medicaid termination or redetermination, Defendant will continue to conduct its own timely review of the family's information, contained in its own files or otherwise available, in order to determine whether the children or other family members currently enrolled in Medicaid are eligible for other categories of coverage. If such eligibility is determined, Defendant will administratively renew eligibility for each family member without requiring the family to take any action.*

Defendant is not timely renewing Medicaid and currently has a backlog of 38,000 Medicaid renewals that have not been timely processed. Defendant informed Plaintiffs that when HSD does not timely attempt to renew Medicaid using information the state agency has on file (i.e. administrative renewal), the household receives a MAD 608 renewal form. Plaintiffs inquired as to whether these households would be penalized for not turning in the renewal form, if in fact HSD could have renewed Medicaid using electronically available information. HSD informed Plaintiffs that HSD does not close cases without checking to see if an administrative renewal was attempted. Where an administrative renewal is possible, HSD's policy is to renew benefits even where the MAD 608 has not been received.

Defendant reports continued work on automating the Medicaid renewal process. Federal agencies will be reviewing the process and then HSD will provide Plaintiffs' Counsel an opportunity to comment.

### Doc. 587 – Order Setting Deadlines

**¶ 3 – Required Defendant to train all of his workers on the new, legally correct policy on Medicaid renewal by the end of June 2015.**

Plaintiffs documented Defendant's non-compliance with this paragraph in the previous two Joint Status Reports. Defendant recently released a request for proposals for assistance in worker training.

**¶ 5 – Requires that Defendant complete and implement the Notice of Case Action containing provisions related to administrative renewal.**

Plaintiffs documented Defendant's non-compliance with this paragraph in the previous two Joint Status Reports. The parties have agreed to set out a priority work plan for notices, that should include incorporating this requirement into the Notice of Case Action.

*¶ 2 - Defendant will inform Plaintiffs whether Defendant agrees that the NMAC needs to be revised, and if so, when he will launch the revision, by no later than June 15, 2015. If the parties cannot reach agreement on the content of the policy, and the changes needed in the NMAC, Plaintiff will file a motion with the Court to seek a ruling on the matter. If such a motion is filed, the date for Defendant to take action shall be suspended pending the outcome of the motion and shall be extended as necessary.*

Defendant's non-compliance with this paragraph is detailed below under Doc. 601, ¶ 1, which was entered because Defendant did not comply with this paragraph.

**Doc. 554 – Amended Stipulated Order**

**¶ 2 - Requires the Department to train workers on of policies related to Medicaid renewal.**

**Doc. 601- Order Setting Deadlines**

*¶ 1 – By September 30, 2015, Defendant will provide Plaintiffs with his final position on the NMAC revisions, including the substance of the revisions he is going to make, as well as when he will issue a notice of proposed rulemaking to implement the revisions. Once Plaintiffs have that information, Plaintiffs will determine whether they are going to file a motion with the Court. If such a motion is filed, the date for Defendant to take action shall be suspended pending the outcome of the motion.*

Defendant issued proposed regulations for SNAP and Plaintiffs' counsel is reviewing the proposed changes. Defendant has yet to issue changes related to Medicaid and have only provided a tentative date in this JSR when the proposed notice of rulemaking will be issued. Plaintiffs are concerned that Defendant has instead released a proposal to begin charging Medicaid participants co-payments effective July 1, 2017.

## II.   Application Processing for Households that Include Immigrants

Relevant paragraphs of Court Orders related to application processing for households that include immigrants are listed below. Plaintiffs renew and incorporate all compliance related concerns outlined in the March 2017 JSR (Doc. 773).

**Doc. 477: Stipulated Order Resolving Plaintiffs' Motion to Hold Defendant in Contempt and for Sanctions.**

**¶ 6 On or before April 30, 2014, Defendant will train or re-train all of its supervisors that many immigrants are eligible for benefits, so long as they are lawfully residing and that no one should be discouraged from applying based on immigration status, in accordance with Federal and State regulations. Defendant will include in this training the details of the many different immigrant classifications that are eligible for benefits and how to process those applications. Defendant will incorporate this information into its regular training programs, which it shall update as required to reflect changes in federal and state law.**

Defendant's non-compliance with this paragraph is documented in the previous two status reports. Plaintiffs are pleased that Defendant has begun working with an immigrant expert and has released a request for proposals to improve worker training. It is unclear when trainings will be legally compliant.

**Doc. 587: Order Setting Deadlines**

**¶ 9 Training New Employees: Defendant is currently re-vamping his training materials (26 modules) for new employees. Defendant will provide Plaintiffs with a draft of these materials by July 15, 2015. Plaintiffs will provide comments by August 1, 2015. Defendant will begin training their trainers on these new employee training materials by September 1, 2105 and then train new employees hired after September 1, 2015 periodically.**

The status of Defendant's compliance with this paragraph is the same as for ¶6 of Doc. 477 above.

**Doc. 601: Order Setting Deadlines**

**¶ 6 Requires Defendant to implement a training for new employees by November 1, 2015.**

The status of Defendant's compliance with this paragraph is the same as for ¶6 of Doc. 477 above.

**¶ 7 – Defendant will determine how it can fix the ASPEN system to that it is not requiring entry of a document to prove immigrations status.**

Currently, the ASPEN system does not have a comprehensive list of eligible immigration statuses with corresponding documents that can be used to verify such status. The result is that the system inaccurately denies immigrant families benefits for which they are eligible. This has been documented to Defendant with multiple cases over the last two years. Defendant has acknowledged that this is a problem and, as a result, has agreed to make necessary changes to the IT system. Plaintiffs have developed a table and corresponding explanatory letter (attached as Exhibit 2) for the Department to use in re-programming ASPEN to correctly determine immigration status. The table includes all eligible immigration statuses and lists corresponding documents that can be used to verify each status. Plaintiffs' letter enumerates further suggestions to ensure that the ASPEN system is correctly programmed to accurately determine immigrant eligibility. In addition to ensuring that the system is updates with a comprehensive list of statuses and accompanying documents, Plaintiffs also suggested the following: 1) eliminate the option for caseworkers to select "client self attests to undocumented" and instead make the option "client did not identify an eligible status," and 2) begin collecting information to determine if the applicant is subject to the five year bar. Plaintiffs look forward to working with the Department to implement these suggestions and hope that the Department's expert on immigration will provide assistance in this project.

Other compliance issues related to this paragraph are documented in the previous status report.

**¶ 8 Defendant is required to train long term employees on immigrant eligibility.**

**Other Provisions of the Consent Decree**

**Page 26, ¶ 10 –** *HSD will not makes changes in the application processing practices without providing Plaintiffs' counsel with at least one month's advance notice and an opportunity for comment.*

Plaintiffs documented their concerns in the March 2017 status report that HSD is updating the ASPEN system to display alien sponsor information from SAVE.  The system change request indicates that the Department is making IT changes to begin collecting information from immigrant applicants about their sponsors. The Department does not have regulations or processes in place to begin collecting sponsor information in accordance with federal law and HSD failed to provide Plaintiffs' counsel with notice of this change as required by the Decree. In the March 20, 2017 Meet and Confer, the Department stated that HSD took the first steps to determine the programming hours to implement the change because it received an outside directive to do so but was unsure about the source of the directive.  The Department agreed to provide this information to Plaintiffs as soon as possible but have not provided the information as of the time of filing of this Status Report. Defendant assured Plaintiffs that the Department is not currently collecting immigrant sponsor information and has no immediate intentions to use this information for seeking assistance from sponsors.

III.    Notices

**Doc. 549: Amended Stipulated Order in Lieu of a Hearing on Motion to Enforce Compliance with Notice Provisions of Court Order**

**¶ 1 and ¶ 2: Defendant is required to include Plaintiffs' Counsel in a notice work group that is creating SNAP and Medicaid model notices. ¶ 3: Defendant will continue to provide Plaintiffs' Counsel with notices, factors that trigger use of particular notices, story boards, reasons, and eligibility determination language until otherwise ordered by the Court. ¶ 4 Reiterates the requirements of the Decree that prohibit Defendant from making changes to standard form documents adopted pursuant to the Decree without 30 days-notice and an opportunity to comment.**

**¶ 7**: **Defendant must provide the Notice of Case Action and all denial and closure reason codes to MAXIMUS Corporation for a 6**[th] **grade literacy review, translation from English to Spanish, as well as review for Doc. 504 compliance**.

**¶8, 9, and 10 Defendant must provide the NOCA to Plaintiffs' Counsel for final review after it is reviewed by a literacy expert.**

**¶11-16 Defendant did not meet the deadlines in these paragraphs for completing notices.**

**Doc. 587 ¶ 15-18 and Doc. 601 ¶ 10-11 concerning dates for implementation of notices.**

Relevant paragraphs of Court Orders related to notices are listed above. The parties met on April 3, 2017 to discuss notices and whether they fall under the provisions of the Consent Decree.  The parties were able to agree on a set of notices that fall under the Decree as well as a set of notices that do not fall within the scope of the Decree.  The parties also established a third set of notices for which the parties could agree whether they fall under the Decree, however, the parties agreed to come up with a plan to resolve the disagreement in the near future. HSD committed to providing a status on all notices the parties agree fall under the Decree as well as the Department's proposal for priority of implementation by the next Meet and Confer. HSD also agreed to provide to Plaintiffs with the version of the notice to be implemented and indicate who completed the literacy review as soon as possible after the initial list with the status of notices is created.  The parties also agreed to add the following to the list of notices: 1) reason codes; 2) list of verification documents that populates in the request for verification notice (HUMAD) and 3) the Medicaid notice sent to participants who are incarcerated.  The Department further agreed to provide additional information the following notices: 1) Breast and Cervical Cancer Medicaid application and renewal notices, 2) MAD 295 and 296 concerning transportation services for Medicaid, and 3) the MAD 308 related to the Emergency Medical Services for Aliens program. After the Meet and Confer, the parties will meet and establish a work plan for implementing notices, including a detailed plan for the Notice of Case Action.

The Department reports that there has been a delay in implementing a revised version of the MAD 608 and that HSD is still testing and revising the programming of the form to only ask for SSNs of individuals seeking or receiving benefits. The Department committed to keeping Plaintiffs informed about the status of the revisions.

The parties discussed problems with the SNAP interim report at the March Meet and Confer. The Department agreed that the deadline provided in the current version of the interim report is incorrect and does not give families enough time to return the report without experiencing an interruption in benefits in violation of federal law. The Department agreed to change the deadline in the notice to the 10th of the month.  The Department further agreed to change the deadline in the warning notice to correctly reference the date the notice was due (rather than stating it was due on the 17th of the month) and to say that the report must be turned in by the last day of the month to prevent case closure.  HSD committed to making these changes within two weeks of the Meet and Confer.  On April 3, 2017 the Department sent Plaintiffs proposed changes to the interim report that contained a deadline of the 15th of the month – not the 10th of the month as previously promised.  On April 7, 2017 the Department informed Plaintiffs that the notice will be revised again to include a deadline of the 10th of the month.  While Plaintiffs are pleased that the Department is making the appropriate changes, Plaintiffs believe that the confusion and multiple revisions are indicative of a larger problem in relation to the Department's work on notices and have requested that the Department establish a process to minimize inadvertent and illegal changes to notices without appropriate approval.  Plaintiffs are concerned that the warning notice will not be fixed until August.

**Delays and Denials**

Relevant paragraphs of Court Orders related to delays and denials are listed below. Plaintiffs renew and incorporate all compliance related concerns outlined in the March 2017 JSR (Doc. 773). Additional matters are addressed below.

**Decree**

**Page 5, ¶ 1 –** *100% compliance with the federal application processing time standards in the Food Stamps and Medicaid programs is required.  The parties recognize that random or unforeseen circumstances involving an individual worker or office may result in less than 100% compliance in any given month, but agree that systemic or programmatic barriers to 100% timeliness must be removed in and when they are identified.*

Thousands of New Mexicans do not receive food benefits each week because the Department is not timely renewing benefits and processing applications.  When applications for SNAP and Medicaid are not timely processed, eligible participants go without food and medical benefits to which they are entitled. Defendant's enrollment numbers include unprocessed cases where families are not receiving benefits. The Department's own data shows that it has a backlog of tens of thousands of unprocessed SNAP and Medicaid applications and renewals.  Defendant reports that he is working with the USDA to resolve the backlog of SNAP applications, but provides no date as to when application and renewal processing will be timely and how the Department will avoid future backlogs. Defendant is not closely tracking Medicaid backlogs or providing information as to when and how the state will comply with the Decree as to Medicaid. The table below lists the current backlog numbers provided to Plaintiffs' counsel prior to the March meet and confer and the slow progress the Department has made in the last two months in reducing the number of overdue cases. Data tables showing the data summarized below are attached as Exhibit 2.

**Table 2 Overdue SNAP and Medicaid Cases**

| Overdue | February 7, 2017 | March 10, 2017 | % in Reduction |
|---|---|---|---|
| Medicaid Applications | 11,458 | 6,828 | 41% |
| Medicaid Renewals | 48,288 | 38,467 | 21% |
| SNAP Applications | 7,100 | 3,388 | 53% |
| SNAP Renewals | 34,877 | 30,943 | 12% |

When SNAP renewals are not timely processed, many participants who timely renew benefits do not receive food benefits the following month. As a result, a large share of families are without food each month because of HSD is not processing renewals in compliance with the Decree and federal law. The most recent data provided by Defendant shows an overall increase in the number of overdue SNAP renewals caused by Department delays.  For the most recent week that HSD provided data, 44% of overdue cases were delayed due to HSD error.  Even more troubling

is that after Plaintiffs brought this to the Department's attention, HSD stopped providing data that shows the share of unprocessed renewals caused by HSD delays.  Data from HSD shows that the Department continues to collect this information, but HSD has not provided it to Plaintiffs' Counsel. The data the Department has provided to date is summarized below.

**Table 3 Overdue SNAP Renewals Caused by Department Delays**

|  | Total Overdue Cases | Pending tasks | Renewal packet not sent | SNAP interview scheduled | SNAP packet received timely | Total | % |
|---|---|---|---|---|---|---|---|
| 02/03-02/09 | 6,643 | 1,737 | 184 | 554 | 306 | 2,781 | **42%** |
| 02/10-02/16 | 5,177 | 1,250 | 143 | 245 | 305 | 1,943 | **38%** |
| 02/17-02/23 | 3,797 | 742 | 99 | 134 | 258 | 1,233 | **32%** |
| 02/24-03/02 | 9,047 | 2,398 | 237 | 797 | 543 | 3,975 | **44%** |

Defendant's processing times for expedited SNAP demonstrate on their face that the Department is far from achieving compliance with timeliness standards in the Decree and federal law. *See* Table 1 above. As a result, a large share of families do not receive emergency food benefits to which they are entitled.  In February 2017, some field offices reported processing times as low as 73.2% on non-expedite cases, and 71.1% for expedited cases. These numbers exclude cases that were previously pending due to this Court's Orders. **This means that is some parts of the State more than 28% of applicants entitled to emergency assistance are not receiving benefits on time.** Statewide and regional timeliness data for SNAP is attached as Exhibit 4.

The Department's Medicaid application timeliness data shows that processing times in some regions in February 2017 were as low as 82.5% for approvals and as low as 73.6% for denials. This means that a large share of families are waiting more than 45 days for health care to which they are entitled. Data on Medicaid application processing timeliness is attached as Exhibit 5. Despite an agreement by Defendant to investigate what data could be provided related to timeliness of Medicaid renewal processing, Plaintiffs have yet to be provided with any such information from the Department. The Department reports that most Medicaid participants continue to receive benefits despite HSD delays in processing renewals.

The Department committed to developing a strategic plan to become current in processing. The plan includes 1) automating the individualized review process required before closing a case, 2) implementing automated renewal by May of 2017, 3) continued use of the Tiger Team for processing applications and renewals that became overdue before October 2016 to the meet the FNS imposed deadline in the corrective action plan, 4) continued use of the ART team to work

on post October 2016 overdue applications and renewals, 5) using federal matching funds to hire additional front line workers, and 6) filling all vacant positions. The need for additional processing staff has been recognized by the Special Master and was included in the recommendations he issued on March 20, 2017, attached as Exhibit 3.  Plaintiffs are pleased with the Department's stated intentions to become current in processing but have serious concerns about HSD's plans to hire additional staff and fill all vacancies. In March of 2017, Governor Martinez ordered a statewide hiring freeze for most State departments and announced that her administration is preparing to furlough employees across state government as soon as April.[1] Plaintiffs look forward to hearing how HSD will meet staffing needs in the face of the Governor's new directive.

**Doc. 500 – Order Granting Motion to Enforce Compliance (Doc. 479)**

***¶ 7 – Defendant must immediately suspend the automatic closure function in its computer system to ensure that, at least for the time being, nor more families are terminated from the SNAP or Medicaid programs and made to begin the application process anew without an individualized review by a caseworker to determine if the family has fulfilled its recertification obligations and remains eligible.***

In the March JSR (Doc. 773), Plaintiffs documented the IT system's use of "mass updates" that cause Medicaid cases to illegally close where a renewal packet was returned to ISD but not logged as received. The Department stated that the only way to prevent this from happening is for HSD to timely log packets as received. The Department committed to having Deloitte run a query to determine how many cases have been closed as a result of the mass update and to re-allocate resources to ensure more staff is available to promptly log renewal packets as received. The Department has yet to provide Plaintiffs with query run by Deloitte.  Plaintiffs remain concerned that families are illegally losing health benefits. As is more fully discussed above, it is unclear how the Department will ensure more staff are allocated to processing renewal packets, given the current State-wide constraints on hiring.

**¶ 5 - Defendant will deny SNAP and Medicaid only after an individualized eligibility determination.**

Defendant remains out of compliance for the same reasons listed above relative to ¶ 7. Plaintiffs are concerned that families are not receiving food benefits due to HSD delays in processing their renewal. This is identical to a case closure and clients are not informed that they will not receive benefits until HSD gets to their case.

**<u>Doc. 712 – Letter outlining steps the Department must take towards compliance. This letter was incorporated into Judge Gonzales Order (Doc. 730)</u>**

---

[1] *Martinez Says State Employee Furloughs May Start Soon*, Andrew Oxford, Santa Fe New Mexican, March 27, 2017, available at http://www.santafenewmexican.com/news/local_news/martinez-says-state-employee-furloughs-may-start-soon/article_07727968-132b-11e7-a9fd-9f35203eb575.html.

Plaintiffs are pleased that Defendant has issued a request for proposal for assistance in worker training.

## IV.     Doc. 658 Time limit for Able Bodied Adults Without Dependents and Related Work Requirements

Plaintiffs remain concerned about Defendant's poor work on the future implementation of the time limit and related SNAP work requirements that is described in the last status report.  This month, Defendant issued proposed regulations indicating that the Department may choose to implement the three-month time limit as soon as June 1, 2017 unless a waiver is in place. A waiver is currently in place, but states can choose to remove the waiver. Plaintiffs are concerned that Defendant is not being forthcoming with plans to implement the time limit in New Mexico so as to evade compliance with this Court's Orders until a decision is made on Defendant's appeal at the 10th circuit. This is not in the best interests of New Mexicans and the efficient administration of the SNAP program.

## V.     Continued Compliance Issues

### 1) Data Required by the Decree

The Department agreed to create a table with every data piece required by the Decree and to provide same to Plaintiffs within two weeks of the last Meet and Confer (April 7, 2017). Plaintiffs received the table from HSD on April 12, 2017.  Plaintiffs will provide a position on whether the list is complete or whether there are additional data pieces required for compliance tracking. Once the parties agree that the list is complete, HSD agreed to identify what data is available and/or what is lacking and what steps it will take to provide the data. HSD further agreed to explain any circumstances that prevent HSD from providing the required data immediately. This information will be incorporated into the table and will be provided to Plaintiffs prior to the April 2017 Meet and Confer.  The parties agreed to reserve any time on the April Meet and Confer agenda to discuss next steps for finalizing and producing any outstanding data.  Plaintiffs are pleased that the Special Master confirmed that HSD must provide the procedural denial rate by office.  If this is provided, Plaintiffs will not need reports on individual reasons.  Plaintiffs are concerned about the quality and accuracy of Defendant's data and look forward to discussing how Defendant will determine the procedural denial rate.

Plaintiffs are concerned about the methods the Department uses for tracking Medicaid timeliness data.  The reports the Department currently provides to Plaintiffs have important data missing for some offices, e.g. the South Valencia ISD office provides Medicaid approval timeliness data, but none for denials. HSD agreed to provide an explanation for this. The Department has yet to provide this information.

**2) Phones**

The most recent data from HSD reveals that only 25% of calls placed to the call center are answered. Data on phones provided by Defendant is attached as Exhibit 7. The Department acknowledges that it does not have adequate technology to determine the phone capacity necessary to effectively administer SNAP and Medicaid and that it must increase its phone capacity to better serve clients. In the March 2017, Meet and Confer, the Department said it is considering taking measures to increase its phone capacity, including contracting with Young Williams (the current Child Support Enforcement Division phone contractor) to provide telephonic customer service options.   The contractor would only be able to accommodate Medicaid calls as FNS requires that phone calls be answered by merit staff.  The Department also stated it is considering hiring additional staff who will solely be responsible for answering incoming calls and to implementing skills based routing so that staff members who are specially trained in certain areas can more effectively serve clients who call in seeking particular types of assistance.

Several individual field offices do not accept calls and are instead routed to the HSD call center. This means that the call centers' inability to handle the volume of calls likely impacts certain offices more than others.  The call center does not have the capacity to record voicemail.  The Department agreed to provide information as to how offices whose calls are routed to the call center answer phone calls and return voice mails as required by the Decree.  That information has yet to be provided to Plaintiffs.

## VI.   New Programs to Be Implemented by the Department

New Co-payments.

In his March 20, 2017 recommendations, the Special Master stated "in consideration of recent history, the ISD program will cease all efforts to plan, develop or implement new programs, with the exception of programs required by state or federal agencies to meet requirements within regulations." *See* Exhibit 3.  Despite this clear recommendation, the Department has proposed implementing new and revised co-payments for Medicaid recipients to obtain medical services, effective July 1, 2017. These co-payments alter the conditions of eligibility for Medicaid services. Information about applicable co-pays is collected at the time of application as co-payment amounts are based on the applicant's income. A participant can be denied medical care if they fail to pay the amount, thereby altering the scope of the benefit itself by making medical care more expensive to obtain. Federal law prohibits denial of Medicaid covered services for clients with incomes below 100% of the federal poverty level.[2] This means that providers will need to be notified about client income eligibility and whether the client is subject to co-pays. The proposal will create significant administrative burdens and changes to the Department's IT system, risking errors in determining eligibility for services and demanding new resources to ensure proper compliance with federal law, as described in a memo from the New Mexico Center on Law and Poverty, sent to the Special Master and Human Services Department on April 7, 2017, attached as Exhibit 4.

_____

[2] 42 CFR 447.52(e)).

The co-payments will vary for each Medicaid recipient depending on the type of medical service and their individual circumstances – including their income level, Medicaid category, and whether the person is Native American – and there are special conditions and limitations to when co-payments may be charged. To correctly administer the new proposal in compliance with federal laws and guidance, HSD must at a minimum: assure an accurate process for determining copayments and eligibility for services for individuals applying for Medicaid, for current enrollees who will be subject to new or revised co-payments, and for individuals who have a change in circumstances; properly notify Medicaid recipients of their eligibility for services; develop a tracking and notification system of copayments in coordination with medical providers and Medicaid managed care organizations; and issue extensive new rules, regulations, notices and public informational materials.

The Department asserts in its section that it is obligated to comply with a legislated mandate under the 2016 General Appropriations Act (the Act), which directs the Department to "pursue necessary federal authority to include additional cost-sharing requirements for recipients of Medicaid services, including co-payments for certain services." The Department misinterprets the directive in the Act.  The 2016 Act governs appropriations for fiscal year 2017 which will expire on June 30, 2017.  Language in the Act specifically addressing Medicaid states that the intent is to reduce projected spending for fiscal year 2017, however, HSD's co-pay proposal would only impact spending beginning in fiscal year 2018 which begins in July. Implementing co-payments in July 2017 does not achieve a reduction in spending in fiscal year 2017 as the Department asserts.  In fact, the Department is currently expecting a $5,000,00.00 surplus at the end of fiscal year 2017 from appropriations made from the general fund.[3]  The Department's decision to implement co-payments serves no valid legislative purpose and will hinder compliance with the Decree and federal law.

The Department currently has over 59,748 unprocessed Medicaid applications and renewals because the Department is not processing cases in the timeframes required by the Decree and federal law.  Defendant has not promulgated regulations concerning the Medicaid application and renewal process required by Court Order and Defendant's eligibility notices do not meet the requirements of the Decree and federal law. Given this severe non-compliance, it is clear that Defendant cannot implement the proposed co-payments by July 1, 2017 in accordance with federal law and the Decree. Any savings anticipated by requiring low income families to pay for medical care or the subsequent and more likely denial of healthcare to low income families, will be overshadowed by expenses associated with carrying out the new policy in accordance with the law. This will cause Defendant to divert what are already insufficient resources away from compliance with the Decree and other Court Orders, bringing the Department further out of compliance. Defendant must timely process applications and renewal for SNAP and Medicaid and comply with other Orders of the Court before taking implementing a complex co-payment system that restricts eligibility for Medicaid.

---

[3] *See* the New Mexico State Legislature *General Appropriations Act of 2017* at paged 172-173 available at https://www.nmlegis.gov/Sessions/17%20Regular/final/HB0002.pdf.

**HSD'S SECTION**

For February 2017, HSD had over 520,000 individuals enrolled in the SNAP program and 900,000 individuals enrolled in the Medicaid program.  SNAP enrollment has increased 3.4% since February 2016.  Medicaid enrollment has increased 6.2% since February 2016.  Current enrollment numbers from the February 2017 HSD Monthly Statistical Report for both programs are in the table below.

| | SNAP | Medicaid |
|---|---|---|
| Individuals | 520,387* | 904,258 |
| Adults | 303,813 | 514,208 |
| Children | 216,574 | 390,050 |
| Benefits Issued | $55,937,134 | N/A |
| *includes active cases with zero benefits | | |

More than 77,000 individuals visited ISD's field offices in February 2017.  The division also received almost 79,000 phone calls for the same month.  The division continues to see an increase in the number of calls received at the Customer Service Center (CSC).  Average calls have increased 80% from State Fiscal Year 2015 to 2017.  ISD is looking to augment its CSC staff with contractor staff and allocating positions to handle the increase in calls.

In anticipation of a change in format of the JSR, the Human Services Department is developing a data set for the Special Master and Court that will include the following elements: number of applications processed, SNAP and Medicaid timeliness rates by region, average number of days to process cases   (ability to exceed federal timeliness standards).

HSD is committed to ensuring that New Mexicans receive the benefits they are eligible for.  The tables above show that approvals are occurring within federal standards.  Denials are significantly impacted by the processing of overdue pending applications as most overdue pending applications are denied for procedural reasons.

HSD is making progress in processing all overdue application and recertifications.   In November 2016, HSD had more than 37,000 recertifications pending after modification of the Court order in August 2016.   We are working closely with our federal partners such as FNS in tracking this progress.  See for example the "Corrective Action Plan Progress Report" (Exhibit A) attached to this JSR and the charts below.





**Throughout this document, HSD has provided the language of the court order verbatim to respond more precisely and completely to issues and matters before the court.**

I.      **Medicaid Renewals**

**Doc. 475**

¶ 3      *On or before March 14, 2014, Defendant will submit to Center for Medicaid/Medicare Services ("CMS") for approval the form attached hereto as Exhibit A which, upon approval by CMS, shall be the only form used for the redetermination of eligibility of MAGI and family based Medicaid categories. Pending approval of the attached form by CMS, Defendant will continue the redetermination process of automatically cascading eligibility for the existing members who are currently active to another assistance category, such as SNAP, TANF, or Medicaid.*

The MAD 608 notice, which is currently sent to recipients, was co-created, reviewed by, and approved by Plaintiffs.  A literacy expert has reviewed it and is at a 6th grade reading level.  It is federally compliant.  The MAD 608 is still being tested to ensure that individuals who are not receiving benefits are not asked to provide a SSN.

¶ 5      *Prior to sending a family a notice of Medicaid termination or redetermination, Defendant will continue to conduct its own timely review of the family's information, contained in its own files or otherwise available, in order to determine whether the children or other family members currently enrolled in Medicaid are eligible for other categories of coverage. If such eligibility is determined, Defendant will administratively renew eligibility for each family member without requiring the family to take any action.*

There is no additional information related to this issue at this time. HSD is compliant with this Order.

## Doc. 587

¶2      **NMAC** - *Defendant will inform Plaintiffs whether Defendant agrees that the NMAC needs to be revised, and if so, when he will launch the revision, by no later than June 15, 2015. If the parties cannot reach agreement on the content of the policy, and the changes needed in the NMAC, Plaintiff will file a motion with the Court to seek a ruling on the matter. If such a motion is filed, the date for Defendant to take action shall be suspended pending the outcome of the motion and shall be extended as necessary.*

NMAC revisions addressing Medicaid are under internal review. HSD will propose an effective date to occur in the fall of 2017, with notice of proposed rulemaking (NPRM) to occur no later than May 30, 2017, for these Medicaid eligibility rule revisions..

## ¶ 3 – Required Defendant to train all of his workers on the new, legally correct policy on Medicaid renewal by the end of June 2015.

There is no additional information related to this issue at this time.  HSD continues to be in compliance with this court order.  HSD has implemented new training for caseworkers on the processing of Medicaid applications and renewals.  This new training was reviewed by Plaintiffs and reviewed and approved by CMS.  All caseworkers have been trained using the reviewed material beginning October 31, 2016.  New caseworkers have received the same training.

¶ 5    *Notice* - *Defendant will provide Plaintiffs with a draft of language which Defendant will include in the Notice of Case Action form ("NOCA") concerning Medicaid administrative renewal by May 8, 2015. Plaintiffs will return comments on this draft language by May 15, 2015. Defendant will schedule a meeting with its contractor, Deloitte, to review the NOCA by May 22, 2015. Defendant will include information about when the NOCA will be completed and implemented in the May Joint Status Report, along with information as to why time frame was selected.*

There is no additional information related to this issue at this time.  HSD continues to be in compliance with this court order.  On-going, the NOCA will continue to evolve with the changing needs of the dynamic programs administered by HSD.  HSD will continue to allow Plaintiffs 30 days opportunity to review and conference on future changes.

## Doc 601:

¶1    *NMAC* – *By **September 30, 2015**, Defendant will provide Plaintiffs with his final position on the NMAC revisions, including the substance of the revisions he is going to make, as well as when he will issue a notice of proposed rulemaking to implement the revisions. Once Plaintiffs have that information, Plaintiffs will determine whether they are going to file a motion with the Court. If such a motion is filed, the date for Defendant to take action shall be suspended pending the outcome of the motion.*

The proposed effective date for these rules will be in the fall and HSD will follow all regular promulgation timelines.

## II.  Application Processing for Households that Include Immigrants

## Doc 587

¶ 9    *Training new employees* - *Defendant is currently re-vamping his training materials (26 modules) for new employees. Defendant will provide Plaintiffs with a draft of these materials by July 15, 2015. Plaintiffs will provide comments by August 1, 2015. Defendant will begin training their trainers on these new employee training materials by September 1, 2015 and then train new employees who are hired after September 1, 2015 periodically*

There is no additional information related to this issue at this time.  HSD continues to be in compliance with this court order.

HSD is contracting with an Immigration Law Attorney, Pamela Kennedy, to provide the Department with the necessary expertise to finalize the training related to Immigrant eligibility. HSD is waiting for the attorney to return the signed contract.    The training has gone through Plaintiff review.

HSD released the request for proposal to engage outside consultants to assist the department in improving training materials and techniques on Monday, April 10[th.]   This consultant will also assist in the development of a desk reference guide for employees.

## Doc. 601

¶ 6     *Training new employees* – *By September 11, 2015, Defendant will provide Plaintiffs with an update concerning when its new employee training will be ready for use, adopting the changes suggested by Plaintiffs in their August 3, 2015 letter. In the meantime, Defendant will continue to use its training materials on immigrant eligibility used with current employees to train new employees. Defendant's provided Plaintiffs with the implementation date of November*

There is no additional information related to this issue at this time.   HSD continues to utilize IPP 14-02 and IPP 14-03 to train all staff with regard to immigrant eligibility.   In addition to the IPPs, NMAC was updated to address when a social security number will be required.   The corresponding IPP will be rescinded once the NMAC is published by SRCA.   See also answer to Doc. 587, ¶ 9, above.

¶ 7     *ASPEN - Defendant will determine how it can fix its ASPEN system so that it is not requiring entry of a document to prove immigration status.*

HSD disagrees with the Plaintiffs analysis.   The Plaintiffs' statement about what is "likely" to happen is unsupported by any evidence.   However, it may be possible for the system to incorrectly determine eligibility.   Given this possibility, we are working with Plaintiff, federal partners and a contract expert to collaboratively strengthen the IT pages relative to immigrant status.

HSD received Plaintiffs' input for the back-end mapping piece the first week of April 2017.  HSD is reviewing this piece and has sent it to Ms. Pamela Kennedy, the immigration subject matter consultant, for review after execution of the contract. It is expected that one additional JAD session will be needed to complete the design for this change. Plaintiffs will be invited to this JAD.

¶ 8 (and Court Order 477, ¶ 6)     *Training Long Term Employees – Defendant is going to implement an immigrant eligibility training for long term employees. Defendant will provide Plaintiffs with information about the status of this in the September 2015 JSR.*

There is no additional information related to this issue at this time. HSD continues to utilize IPP 14-02 and IPP 14-03 to train all staff with regard to immigrant eligibility.  See also answers to Doc. 587, ¶ 9 and Doc. 601, ¶ 6, above.  The power point training has been reviewed by Plaintiff and will soon be reviewed by HSDs expert immigration law attorney, Ms. Pamela Kennedy.

**Decree**

**Page 26, ¶ 10 –** *HSD will not makes changes in the application processing practices without providing Plaintiffs' counsel with at least one month's advance notice and an opportunity for comment.*

Plaintiff's allegation that the Department is making IT changes to begin collecting information from immigrant applicants about their sponsors is not true. No change in application processing practices has occurred.  When HSD moves towards using sponsor information in its application processing practice, the immigration expert consultant will be part of that development and Plaintiffs will have their 30-day review period and opportunity to conference. This was detailed in the last JSR and has been discussed at meet and confer.

### III.  Notices

<u>Doc 549</u>

¶¶ 1, 2  *Defendant will include plaintiffs' counsel in the Human Services Department work group that is creating SNAP and Medicaid model notices. Plaintiffs' counsel will serve on this workgroup until otherwise ordered by the Court;*

There is no additional information related to this issue at this time.  HSD continues to be in compliance with this court order.   This work is complete and such notices are in the review and implementation phases. There is currently no notice work group creating model notices.

*Defendant will confer with plaintiffs' counsel in setting all Notice work group meetings in order to ensure plaintiffs' counsel's participation;*

 See answer to the response directly above.

¶ 3  *Defendant will continue to provide plaintiffs' counsel with notices, factors that trigger use of particular notices, story boards, reasons, and eligibility determination language until otherwise ordered by the Court;*

There is no additional information related to this issue at this time.  HSD continues to be in compliance with this court order.  As notices are received from Insight, the notices are sent to Plaintiffs.

¶ 4  *HSD will not make changes to standard form documents adopted pursuant to the Decree without providing plaintiffs' counsel at least one month's advance notice and an opportunity to conference in the matter, as required by page 26-27 the decree;*

HSD continues to comply with this requirement.

¶ 7  *By December 3, 2014, the Notice of Case Action ("NOCA"), which is used for all approvals, denials and case closures, and the list of denial/closure reasons will be presented to Maximus  Corporation  for translation  into  Spanish,  at a 6th grade literacy  review in both English and Spanish, and Section 504 compliance;*

There is no additional information related to this issue at this time. FNS Headquarters and Insight are currently reviewing the NOCA and the reason codes.

¶¶ 8, 9, and 10

*By January 15, 2015, defendant will provide the final draft NOCA and denial/closure reason codes language to plaintiffs' counsel for final review. The parties will have reviewed the NOCA design with Deloitte or other IT expert present and discuss ongoing concerns, including but not limited to: 1) notices being issued outside of ASPEN concurrent with ASPEN notices causing confusion; 2) modification and/or removal of calculation tables; 3) Spanish language notices; and 4) guidelines for manual notices;*

There is no additional information related to this issue at this time. FNS Headquarters and Insight are currently reviewing the NOCA and reason codes.

*By February 16, 2015, defendant will meet and confer with plaintiffs' counsel regarding the Notice of Case Action (NOCA), as finalized by private contractors and the Department. The parties will review the NOCA design with Deloitte present and discuss ongoing concerns with the NOCA;*

There is no additional information related to this issue at this time. FNS Headquarters and Insight are currently reviewing the NOCA and reason codes.

*By February 27, 2015, defendant will provide to plaintiffs' counsel defendant's proposed final NOCA for plaintiffs' final review and opportunity to comment;*

There is no additional information related to this issue at this time. FNS Headquarters and Insight are currently reviewing the NOCA and reason codes.

¶¶ 11-16:

¶ 11    *By March 1, 2015, defendant and plaintiffs will plan a timeline and priority work plan for the remaining Notices;*

HSD and Plaintiffs had a productive meeting on April 3, 2017 and reviewed the outstanding notices and developed a final table of notices that both parties agree should be designated as "DHG notices" as well as several notices that both parties agree are not part of DHG.

Notices that the parties could not agree on have been temporarily "tabled" while a process is worked out to address them with the court. In the meantime, the parties have agreed to meet and work together to implement the notices.

HSD has already provided the proposal for priority demonstrating which notices are most important, not which can be completed the fastest. HSD did not agree that the remaining information cited by Plaintiff was promised by HSD at the next meet and confer. That timeline is not feasible. HSD is gathering the information and will provide it when available.

¶ 12    *By no later than April 30, 2015, defendant will implement the NOCA, and reason codes;*

There is no additional information related to this issue at this time.  FNS Headquarters and Insight are currently reviewing the NOCA and reason codes.

¶ 13    *By no later than April 30, 2014, defendant will implement the individualized delay notices as discussed in paragraph 5 above.*

There is no additional information related to this issue at this time.  HSD continues to be in compliance with this court order.  The notice of delay was last updated in October 2016 and is only issued when the delay is the cause of the agency.  The NOCA indicates the individualized reasons for denial which may include client-fault delays such as not providing necessary verification.

¶ 14  *By August 30, 2015, plaintiffs and defendant will finalize the remaining notices, factors that trigger use of particular notices, storyboards, reasons and eligibility determination language that will result in individualized and detailed eligibility decisions written at the sixth grade reading level;*

There is no additional information related to this issue at this time.  FNS Headquarters and Insight are currently reviewing the NOCA and reason codes.

¶ 15    *By September 1, 2015, the parties will meet and confer regarding the new version of the NOCA. The parties will evaluate how the new version is functioning, and discuss concerns;*

There is no additional information related to this issue at this time.  FNS Headquarters and Insight are currently reviewing the NOCA and reason codes.

¶ 16    *By no later than September 30, 2015, defendant will implement a complete set of notices that meet the standards of the decree.*

There is no additional information related to this issue at this time.  FNS Headquarters and Insight are reviewing the NOCA, reason codes and other SNAP related notices and forms.

**Concerns relative to the Interim Report Form**

The ISD 120 was fixed with ASPEN release 3.2.2 to include the 10th of the month and was implemented April 6, 2017. The ISD 120, which has been reviewed by Insight and FNS, will be implemented in a later ASPEN release.  The ISD 1250 will not be fixed until the ASPEN 3.6 release in August.

**HSD's Response to Plaintiff Concerns, 1-7 relative to Exhibit Q:**

**Doc. 601, ¶ 10**

¶ 10   *Notice Expert – Defendant has agreed to retain a notice and literacy expert. At the September 21, 2015 hearing, Defendant will provide further information concerning the status of the contract with the notice and literacy expert.*

There is no additional information related to this issue at this time.  HSD continues to be in compliance with this court order.  HSD maintains CTS as a literacy expert, and is also utilizing Insight for SNAP notices.

## IV.  Doc. 554: Amended Stipulated Order (following Doc. 500 and Doc 548).

### Current delays in processing

There is no additional information related to this issue at this time.

### Plaintiffs' concerns relative to Mass Update Effects:

Additional information on Mass Updates is addressed in the section below for Doc. 500, ¶ 7 on automatic closures.

### Timeliness of renewal processing

There is no additional information related to this issue at this time.

### Current Issues with Phone System

HSD continues to monitor the phone system issues.  HSD has added a checkpoint within the Quality Improvement Section to review whether voicemails are returned within 24 hours.  The monthly report was updated to reflect these changes in March, 2017.  Please see Exhibit B (QIS Monthly Phone Monitoring).

### Doc  712

¶ 4     *Human Services Department will continue to consult with outside experts including, but not limited to Covington and Burling, Maximus, the Center on Budget and Policy Priorities, and the National Immigration Law Center on issues such as immigration, notices, and training.*

There is no additional information related to this issue at this time.

¶ 5     *The Human Services Department will conduct ethics training for all employees to ensure that policies are followed throughout the department and that we observe the highest standards of ethics, honesty and integrity in the workplace. Ethics training will help maintain quality and productivity and assist our organization in compliance with laws and regulations.*

The ethics training is going live on HSD Blackboard this month and will be required for all employees.

*¶ 8     The department will begin an RFP process to bring in an outside consulting firm(s) to assist the department in the areas of:*

*a) Compliance with Court orders and federal law*

*b) Operational procedures especially related to application processing*

*c) Training – specifically, to create a desk reference binder (available in electronic and paper format) with important concepts organized as chapters.*

*The purpose of the RFP(s) would be to consult with outside entities to assess the department's current state and to obtain recommendations for future courses of action and assistance in implementation. The RFP process is expected to take six to nine months to complete before a contract is awarded with a firm for the work. We believe that the firm's work could be implemented within 18 months given the scope.*

Subsections a) and b) above are met with the work by the Special Master and the Compliance Specialist.  The RFP was released on April 10.

**Doc. 500 – Order Granting Motion to Enforce Compliance (Doc. 479)**

**¶ 5 - Defendant will deny SNAP and Medicaid only after an individualized eligibility determination.**

HSD turned off the auto closure in May 2014.    HSD is investigating any unintended consequences of mass updates.  Otherwise, HSD remains in compliance with this paragraph and is conducting individualized eligibility reviews.

**¶ 7 – *Defendant must immediately suspend the automatic closure function in its computer system to ensure that, at least for the time being, nor more families are terminated from the SNAP or Medicaid programs and made to begin the application process anew without an individualized review by a caseworker to determine if the family has fulfilled its recertification obligations and remains eligible.***

There is no additional information related to this issue at this time. HSD is working with Deloitte to collect exact data to investigate this matter.

**V.     Doc. 658 Time limit for Able Bodied Adults Without Dependents and Related Work Requirements**

HSD is in compliance with this court order.  HSD disagrees with Plaintiff's analysis of the proposed regulations.   HSD has a current waiver in place.

**VI.    Continued Compliance Issues Raised by Plaintiffs**

    **1)    Data required by the Decree**

The Special Master has issued a letter stating that HSD should provide the data as described in the decree, but that HSD does not have to provide it broken down as requested by Plaintiffs.  For example, HSD must provide procedural closure/denial rates by office, but does not have to provide rates for subcategories such as "missed interview".  The letter from the Special Master is attached as Exhibit C.

    **2)    Intentional Program Violations (IPV) Issue**

There is no additional information related to this issue at this time.

    **3)    Combined Application Project:**

There is no additional information related to this issue at this time.

    **4)    Phones**

This is addressed in "current issues with phone system" above.

    **5) Improper income value for Medicaid eligibility.**

There is no additional information related to this issue at this time.  HSD has had multiple discussions with the federal Centers for Medicare and Medicaid Services (CMS) about their interpretation of the Code of Federal Regulations (CFR) on this issue, and is changing its practice to accord with CMS' interpretation with the rollout of Real-Time Eligibility (RTE) in May 2017.   Although HSD is changing its practice in May to align with CMS' interpretation of the CFR, the State anticipates ongoing discussion on this point with CMS. The State strongly prefers to use the trusted data source and provide the individual with an opportunity to dispute this amount through the traditional noticing process, just as would be done during the administrative renewal process; and does not agree that this practice conflicts with federal law.


**VII. New Programs to Be Implemented by the Department**

New Co-payments.

The scope of services in the Medicaid program, including co-payments, falls outside the scope of the DHG litigation.   HSD objects to Plaintiffs attempt to expand the scope of the decree and add additional issues not related to compliance.

As noted by plaintiffs, the HSD Medical Assistance Division is proposing to implement new or revised co-payment requirements for certain Medicaid recipients. HSD is obligated comply with a legislated mandate under the 2016 General Appropriations Act, which directs the Department

to "pursue necessary federal authority to include additional cost-sharing requirements for recipients of Medicaid services, including co-payments for certain services." To comply with this law, HSD has developed a co-payment proposal for Medicaid recipients that will meet the requirements of the 2016 General Appropriations Act, while ensuring that cost-sharing responsibilities of Medicaid recipients are reasonable. In fact, for some categories of Medicaid recipients, co-payment amounts will be reduced from higher levels that are currently authorized both in rule and the Medicaid State Plan.

To be clear, co-payments are amounts that some Medicaid recipients pay directly to a provider to share in the costs of a service, visit or item; however, they have no direct bearing on the Medicaid eligibility of the recipient. An individual who does not pay co-payments will never lose their eligibility for Medicaid as a result of non-payment. As authorized under federal rules at 42 CFR 447.52 (e), a Medicaid provider may require a recipient to pay their co-payments as a condition for receiving certain health care items or services when the household has income above 100% of the federal poverty level (FPL), but providers may choose whether to enforce this rule and are under no obligation to deny services to individuals who do not pay. In addition, certain vulnerable groups, such as pregnant women; and certain services, such as emergency care, are exempt from most out-of-pocket co-payments.

HSD has issued a draft State Plan Amendment outlining the Department's co-payment proposal. This draft document was made publicly available in early February 2017, with accompanying notices of public comment sent to Medicaid providers, tribal members and posted in both the *Albuquerque Journal* and the *Las Cruces Sun News*. The public/tribal comment period ended on March 17, 2017, and the Department is currently evaluating all of the comments that were received, including those that were submitted by plaintiffs.

The Department intends to issue a revised State Plan Amendment and proposed rules on co-payments soon, which will directly address many of the concerns mentioned by plaintiffs. HSD assures both plaintiffs and the court that the Department intends to follow all steps in the rule promulgation process, and that none of the new co-payments will be charged to Medicaid recipients until the state rulemaking process is complete.

It should be noted that while plaintiffs may argue that co-payments are linked with Medicaid eligibility, it is HSD's position that co-payments are well outside the scope of eligibility policy, IT/systems, and operations. This position aligns with how the federal Centers for Medicare and Medicaid Services (CMS) staff and rules are structured as well, as federal regulations and staff expertise governing Medicaid co-payments are considered part of Medicaid payment provisions and are intentionally disconnected from eligibility rules.

Co-payments have been in place for certain Medicaid populations in New Mexico for a number of years. Those co-payments are administered by the state's Centennial Care managed care organizations (MCOs) under HSD oversight through direct contracts with the HSD Medical Assistance Division. The Department's proposal for revised co-payment amounts does not substantially change the way that co-payments are to be operationalized or administered. While plaintiffs may argue that HSD is proposing an entirely new co-payment structure, the Department notes that the components that plaintiffs refer to as being new and/or complicated

are already fundamentally in place.

**Respectfully submitted,**

/s/ Christopher P. Collins

Christopher P. Collins and Natalie Campbell
New Mexico Human Services Department
2009 Pacheco Street
P.O. Box 2348
Santa Fe, New Mexico 87504
(505) 827-7701

Attorneys for Defendant

**Respectfully submitted,**

/s/ Sovereign Hager

Gail J. Evans and Sovereign Hager
New Mexico Center on Law and Poverty
924 Park Ave. SW, Suite C
Albuquerque, NM 87102
(505) 255-2840 FAX (505) 255-2778

Jane B. Yohalem
P.O. Box 2827
Santa Fe, NM 87504
(505) 988-2826 FAX (505) 982-6692
Daniel Yohalem
1121 Paseo de Peralta
Santa Fe, NM 87501
(505) 983-9433          FAX (505) 989-4844

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April 2017,  I filed the foregoing pleading electronically with the United States District Court, causing the same to be electronically served on opposing counsel, Christopher Collins. A copy of the foregoing Motion and this certificate were also served this day on these counsel by emailing a copy to Christopher.Collins@state.nm.us

*/s/ Sovereign Hager*
Sovereign Hager