**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**DEBRA HATTEN-GONZALES, et al.,**

**Plaintiffs,**

**vs.**

**No. CIV 88-0385 KG/CG**
**Consolidated with**
**No. CIV 88-0786 KG/CG**

**BRENT EARNEST, Secretary of the**
**New Mexico Human Services Department,**

**Defendant.**

**PLAINTIFFS' MEMORANDUM CONCERNING THE STATUS OF DEFENDANT'S COMPLIANCE WITH THE CONSENT DECREE AND SUBSEQUENT ORDERS OF THIS COURT AND REQUEST FOR SANCTIONS**

## I. INTRODUCTION

Plaintiffs prepared the following document concerning Defendant's compliance at the request of the Special Master. Plaintiffs are filing this memorandum for the Court's record and to request that monetary sanctions be imposed against Defendant. In September of 2016, Defendant was held in contempt for noncompliance with the Consent Decree and other Court Orders. The Court appointed a Special Master to facilitate compliance in this matter. More than six months after the appointment of the Special Master, the Department has made shockingly little progress towards compliance. Eligible New Mexicans are without food and medical assistance because Defendant has a backlog of tens of thousands of unprocessed cases, the vast majority of clients cannot get through by phone and systemic changes required by multiple court orders have not been enacted. Rather than capitalizing on the expertise and recommendations of the Special Master as an opportunity to minimize or end this litigation, Defendant has stalled his own progress by refusing to establish deadlines for compliance or to produce required information. For example, months have been wasted as Defendant made frivolous arguments to

the Special Master that the majority of Decree requirements were "moot for further compliance," that delays in assistance are not systemic problems, and that Defendant did not need to provide the vast majority of data required by the Decree. For the reasons detailed below, Plaintiffs request that this Court sanction Defendant for every day he is not in compliance with critical Decree requirements.

## II. ELIGIBLE NEW MEXICANS GO WITHOUT FOOD AND MEDICAL ASSISTANCE BECAUSE DEFENDANT HAS NOT COMPLIED WITH ORDERS OF THE COURT.

This Court has repeatedly stated that the most important purpose of the Decree is to ensure that eligible New Mexicans receive benefits to which they are entitled. The Decree requires that Defendant timely process SNAP and Medicaid applications in compliance with federal law. *Decree*, Page 5, ¶1. All systemic barriers to 100% timely processing must be removed. *Id.* Thousands of families go without food and medical assistance each month because Defendant is not timely processing cases and has not provided a date as to when families will timely receive food and medical assistance.

### (1) Application Delays

| Percent of Untimely Medicaid and SNAP applications | | | | | |
|---|---|---|---|---|---|
| | **January** | **February** | **March** | **April** | **May** |
| **Expedited SNAP** | **17.3%** | **10.1%** | **6.9%** | **6.9%** | **10.4%** |
| **SNAP Approvals** | **6.8%** | **9%** | **10.4%** | **8.3%** | **5.2%** |
| **Medicaid Approvals** | **8.8%** | **13.4%** | **11.9%** | **10%** | **10%** |
| **Medicaid Denials** | **20.3%** | **18.8%** | **56.7%** | **43%** | **59.3%** |

*See* Defendant's FFY 2017 Application Processing Timeliness, attached as Exhibit 1.

The most recent data from the Department shows that in May 2017, more than 10.4% of expedite eligible SNAP applicants statewide were not able to buy food within the required 7 days

because of Defendant's failure to timely process cases.[1] The May 2017 timeliness numbers show that one of the State's largest offices failed to provide food benefits on time to over 37% of the households eligible for emergency food assistance.[2] ***This means that in May alone, 2,046 New Mexicans went without emergency food assistance to which they were entitled.***[3] ***In April, 1,167 New Mexicans went without emergency food assistance to which they were entitled.***[4] Delays in Medicaid application processing mean that over 929 families did not receive Medicaid on time in the month of May and over 2,831 families did not receive a timely denial, which delayed their access to coverage through the New Mexico Health Insurance Exchange.[5] Defendant must forward applicant information to the Health Insurance Exchange for all New Mexicans denied Medicaid. *See* C.F.R. 435.1200(e). For newborns born to mothers who are eligible for or receiving Medicaid, Defendant must add the newborn baby onto Medicaid within 3 days following notification of birth from the health care provider. *See* NMAC 8.231.600.10 and 42 CFR 435.117(b)(1). Defendant does not have sufficient Medicaid determiners located in hospitals to facilitate this process. As a result, newborns are not being added onto Medicaid within the required three days. In many cases, it is taking over a month to enroll eligible infants into Medicaid. As a result, many infants are discharged from the hospital and even the Neonatal Intensive Care Unit without medical coverage and the means to pay for necessary medical supplies.

---

[1] *See Exhibit 1*.
[2] *Id.*
[3] *See* May 2017 Monthly Statistical Report, at p. 15 available here: http://www.hsd.state.nm.us/uploads/FileLinks/587930e6bdd0402c9d4990a78c041734/May2017_MSR.pdf. HSD reports there are 2.11 persons per SNAP. See April 2017 Monthly Statistical Report, at p. 3, available here: http://www.hsd.state.nm.us/uploads/FileLinks/587930e6bdd0402c9d4990a78c041734/MSR_04_2017_ex.pdf
[4] *See* April 2017 Monthly Statistical Report at p. 15.
[5] *See* Exhibit 1 and May 2017 Monthly Statistical Report.

**(2) Renewal Delays** [6]

| SNAP and Medicaid Renewal Delays | | | | | | |
|---|---|---|---|---|---|---|
| | **January 9, 2017** | **February 7, 2017** | **March 10, 2017** | **April 11, 2017** | **May 2, 2017** | **June 9, 2017** |
| **Unprocessed SNAP renewals** | **36,587** | **34,877** | **30,943** | **15,904** | **5,128** | **4,620** |
| **Unprocessed Medicaid renewals** | **23,876** | **48,288** | **38,467** | **54,542** | **63,975** | **53,912** |

**Medicaid Renewals**: Overdue Medicaid renewals cases have more than doubled since January 2017. The number of overdue renewals has fluctuated over the past six months, with the highest numbers for each month displayed above. Defendant reports that families continue to receive Medicaid, even where HSD has failed to timely process their renewal. However, Defendant has acknowledged that the delayed processing of paperwork causes the IT system to automatically terminate Medicaid without an individualized eligibility decision, as required by Doc. 500, paragraph 7. The Department states that the only way to avoid this automatic case closure is for workers to timely log paperwork the day it is received. However, the vast majority of cases are unprocessed because of "pending tasks," which includes unprocessed paperwork turned in by clients. *See* chart detailing Defendant's overdue Medicaid renewals, attached as Exhibit 2. Defendant promised to document the extent of this illegal process, but has not done so. *See* letter documenting the outcomes of the February 2017 meet and confer attached as Exhibit 3. The Department's most recent data on Medicaid enrollment shows a drop in enrollment of over 3,000 participants between April and May 2017, the majority of which are children.[7] Plaintiffs are concerned that many of these closures are incorrect. Defendant does not provide data on case closures, as required by the Decree. As a result, the closures cannot be analyzed.

[6] January through March were reported by HSD in Monthly reports on the date indicated. April through June are pulled from daily reports on overdue cases. Each day represents the highest number of overdue cases each month.
[7] *See* HSD Monthly Eligibility Reports, available at: http://www.hsd.state.nm.us/LookingForInformation/medicaid-eligibility.asp

**SNAP Renewals:** Defendant has made progress in decreasing the overall number of overdue applications for SNAP; however, the Department is not timely processing renewals. As a result, at the beginning of each month thousands of families go without food assistance because of these delays. Defendant gradually processes the overdue cases over the course of the month, but the process is repeated each month because Defendant does not have enough staff to process cases. HSD's data shows that the number of overdue renewals jumped from 199 at the end of May to 2,615 on June 1st. This means that 5,518 New Mexicans experienced an illegal and unexplained gap in their food benefits in the month of June alone.[8] Families often discover the delay after they have depleted their prior month's benefits and are unable to purchase food at the beginning of the following month. The most recent statewide timeliness data published by Defendant shows that 15% of SNAP renewals were not timely processed.[9] In some offices, it was as high as 50%.[10]

The Department has stated that overdue SNAP and Medicaid renewals are, in part, due to the requirement that caseworkers complete an individualized eligibility review document prior to closing a case. The Department proposed the current individualized review process as a means for coming into compliance with federal law under its Food and Nutrition Services (FNS) corrective action plan. The process requires case workers to go through a checklist of federal requirements before manually closing or denying benefits. Defendant does not have adequate staff to accurately deny benefits. The Department has committed to hiring and filling vacancies. *See* Section VII below. Additionally, both the Plaintiffs and Special Master recommended that the Department investigate ways to make the process more efficient while ensuring that eligible

---

[8] There is an average of 2.11 persons per SNAP case. *See* HSD's April Monthly Statistical Report.

[9] *See* HSD's ISD-GI 17-15 FFY 2017 SNAP Performance Report-Third, page 13, *available at* http://www.hsd.state.nm.us/uploads/files/Looking%20For%20Information/General%20Information/Procedures/ISD%20-%20GIs/GI%2017-15%20FFY%20Third%20FFY%202017%20SNAP%20Performance%20Report.pdf

[10] *Id*.

families are not denied benefits. In the March 2017 Meet and Confer, the Defendant agreed to investigate ways in which they could automate portions of the individualized review process. As of May 31, 2017, the Department reported no progress on this front.

**(3) Defendant does not have a functional phone system and is not effectively managing the statewide call center.**

The Decree requires that phone calls be answered, messages be taken and kept, and that supervisors periodically conduct random checks to ensure that telephone calls are returned. *See* Decree, p. 11, ¶ 6 and p. 12, ¶ 8. Access by phone is critical for applicants in rural areas. Defendant provides all applicants with the HSD customer service line number, should families have questions about their case. Five field offices also have all phone calls routed directly to the customer service line. The five offices that are routed to the call center carry a caseload of 104,282 Medicaid cases and 41,658 SNAP cases.

Currently, Defendant's customer service center answers just 35% of the English language calls and only 19% of the Spanish language calls. The call center does not allow clients to leave a voicemail as required by the Decree. Members of the Plaintiff class and Plaintiffs' counsel have personally experienced a wait time of multiple hours when seeking assistance through the call center.

**Percent of Phone Calls Answered at HSD Statewide Call Center**

| | January 2017 | February 2017 | March 2017 | April 2017 | May 2017 |
|---|---|---|---|---|---|
| Percentage of calls answered (English) | 25% | 27% | 28% | 32% | 34% |
| Percentage of calls answered (Spanish) | 13% | 15% | 15% | 18% | 19% |

In the May 2017 Meet and Confer, the Department said it is contracting with a corporation named Conduent to increase phone capacity. The Department stated that the contract start date

will not be until after the 2018 fiscal year begins but could not provide a date certain. The contract will allegedly require that Conduent implement skills based routing for all phone calls, e.g. clients calling to complete an interview will be re-routed to staff members specifically trained to conduct interviews. It will also require Conduent to hire additional staff. The Department has not provided any indication that these measures will significantly increase the number of calls answered at the call center and has not addressed the specific failures to Spanish speaking New Mexicans, a clear civil rights violation. Moreover, the contractor will only be able to accommodate Medicaid calls, as FNS requires that phone calls be answered by merit staff, not contractors. The Department has already stated that the major use of the phone system is interviews for SNAP. The Department provided no information about how or if Conduent will be able to fulfill the Decree requirement that client are able to leave voicemails. Plaintiffs also recently learned that call center leadership illegally directed staff to deny access to interviews, withhold information from clients and give local field offices false information, as described in section VII below. Plaintiffs informed the Special Master about the illegal directive and he alerted Defendant, who asserts that upper management was completely unaware of the policy at the statewide call center.

## III. NOTICES DO NOT COMPLY WITH THE DECREE AND DEFENDANT HAS NOT PROVIDED A DATE WHEN THEY WILL

New Mexicans do not receive eligibility notices that comply with the Decree and federal law and Defendant has not identified a date when this will be accomplished. Defendant has been working with a notice expert to review some notice content related to SNAP. The parties met in April 2017 to discuss notices and whether they fall under the provisions of the Consent Decree. The Department created a chart with the status on all notices the parties agree fall under the Decree. The Special Master reviewed the same list and agreed with Plaintiffs that a great

majority of the notices fall within the Consent Decree. *See* Special Master's opinion as to notices attached as Exhibit 4. Defendant provided a list of tasks taken by the Department as to each notice that Defendant believes fall under the Decree. Implementation dates are not given for the vast majority of notices, most significantly the eligibility notice. *See* chart attached as Exhibit 5. The chart requests Plaintiffs' priority of importance, but states this is not related to when notices will be implemented. The parties prioritized notices in May of 2015. Defendant's representatives refuse to provide or agree to deadlines because "deadlines get [them] in trouble." Ongoing changes to notices are put into use without the literacy review or comments from plaintiffs. Defendant also continues to propose unnecessary administrative changes as described in section VII below that will require changes to client notices. The state of the following notices and forms are especially concerning:

1) Notice of Case Action - The eligibility notice for SNAP and Medicaid continues to be confusing, incomplete and contains incorrect information. Defendant has only stated that the SNAP portions of the notice are under review by an expert, but will not give a time frame for implementation or even a date for when the review will be complete. The current notice incorrectly states that there are mandatory work requirements for SNAP and populates with confusing and incorrect eligibility information.

2) Online Application and Renewal – Defendant continues to roll out new application and renewal forms that do not comply with the decree or federal law. Plaintiffs learned in recent months that Defendant implemented an online renewal option for SNAP and Medicaid. The online renewal option was launched without first giving Plaintiffs the opportunity to comment and the Department did not complete literacy review prior to implementation. Plaintiffs were not given a demonstration of this process until June 14, 2017. Defendant was held in contempt, in part, because the Medicaid renewal process, and

specifically the renewal form, did not comply with federal law, the Decree or this Court's Order on Medicaid Renewals. The current online renewal form does not comply with federal law, the Decree, or Doc. 475 because it is not pre-populated, does not collect sufficient information from clients seeking to add a new household member and was not reviewed by a literacy expert. These are only the errors that Plaintiffs were able to see from a very basic demonstration. Defendant agreed to give Plaintiffs the opportunity to test the module with a sample case, so that Plaintiffs can fully view the form and give comment as required by the Decree. Plaintiffs have already brought an error in the online SNAP renewal form to the attention of the Defendant, but Defendant refused to remedy the error.

3) MAD 608 -The MAD 608, the notice used to renew Medicaid illegally requests social security numbers of all individuals, rather than just those seeking benefits.

4) FSP 300 – HSD created this form during one of the Defendant's failed attempts to implement work requirements in the SNAP program. The form is used to document exemptions for individuals who are "unfit for employment." The Department represented that this notice was no longer in use and did not include it in a comprehensive list of notices provided to Plaintiffs. However, members of the plaintiff class are receiving this notice with their SNAP renewal. *See* notice dated June 21, 2017 attached as Exhibit 6 Plaintiffs have never reviewed this notice. Defendant represented to Plaintiffs that he was not currently enforcing any work requirements, even those required by federal law (i.e. prohibition on voluntary quit) because the Department does not have adequate denial or closure notices.

## IV. DEFENDANT'S REGULATIONS, WHICH SERVE AS A SOURCE OF POLICY FOR CASEWORKERS, STILL DO NOT COMPLY WITH FEDERAL LAW OR THE DECREE

The Department implemented some important changes to SNAP regulations in February

and has continued to release proposed regulatory changes. Defendant released additional proposed regulatory changes to the SNAP program in April. Unfortunately, the recently proposed SNAP regulations contain many errors and delete entire sections that explain verification requirements for non-citizens, rather than implementing agreed improvements. On June 14, 2017, Defendant released proposed regulatory changes to Medicaid, which Plaintiffs are reviewing. Unfortunately, Defendant has proposed unnecessary and drastic changes to the Medicaid program in New Mexico that, if adopted, will require entirely new Medicaid regulations be drafted and implemented over the next year and half. *See* section VII below.

## V. DEFENDANT HAS NOT MADE SYSTEMIC CHANGES TO ACCURATELY DETERMINE ELIGIBILITY FOR FAMILIES THAT INCLUDE IMMIGRANTS

In September of 2016, this Court found that the Defendant is not in compliance with its Orders regarding training on immigrant eligibility, including Doc. 477, Doc. 587 and Doc. 601. Defendant was required to create a training on immigrant eligibility for new employees and a separate training for long term employees. *See* Doc. 587, at ¶ 9and Doc. 601 at ¶ 8. Defendant never did this and continues to argue that using interim policies as training materials is sufficient, despite the Court's ruling that the interim policy is not sufficient. *See* Doc. 757, p. 12. In fact, Defendant asserts that it "continues to disagree" with the Court's findings as justification for continued non-compliance. *See* Doc. 771, p. 26. Defendant has not changed his IT system so that the ASPEN system does not require entry of an immigration document, where status can be verified electronically, as required by Doc. 601, ¶ 7. Plaintiffs have provided extensive assistance to Defendant's IT staff for programming changes that will make the IT system compliant and the parties agreed on a verification process for immigration status. Unfortunately, none of this has been implemented. The result is that eligible families are illegally denied benefits and required to supply unnecessary documents in violation of the Decree and federal law.

In February of 2017, Defendant began contracting with an immigration attorney for help with immigrant eligibility for benefits. It is unclear how Defendant has utilized the attorney to help achieve compliance. There have been no changes to the ASPEN system and Defendant has not provided a date for when the Department will have even a draft training on immigrant eligibility. Defendant edited regulations related to immigrant eligibility for SNAP and has proposed new regulations for Medicaid. Defendant deleted SNAP verification requirements for non-citizens and simply references the CFR, so workers have no guidance on the specific process the Department uses to verify immigration status.

## VI. DEFENDANT DOES NOT HAVE A MEDICAID RENEWAL PROCESS THAT COMPLIES WITH THE LAW

In March of 2014, this Court issued an order requiring Defendant to bring the Department's Medicaid renewal process into compliance with the Decree and federal law. *See* Doc. 477. Specifically, Defendant must attempt to renew Medicaid based on information it has on file before requesting documentation from families. If Defendant cannot complete an *ex parte* Medicaid renewal, the Department must issue a pre-populated notice to families and request that they sign and return the form if nothing has changed from what is on the pre-populated form or indicate a change on the form and turn in any necessary verification. Defendant has had great difficulty implementing this simple process, so Plaintiffs are pleased that Defendant has implemented an automated Medicaid renewal function just this month. However, Defendant did not provide Plaintiffs with an opportunity to comment on the automated process, despite agreeing to do so and the fact that such a review is required by the Decree. Defendant has not responded to requests for information on the functioning of the system since its roll out. Given Defendant's past history of implementation failures, Plaintiffs are hopeful, but logically concerned about the transition. The automated process will only work for individuals that have

income that can be verified electronically. All other participants must complete a renewal form and some will need to turn in verification. The paper renewal form does not comply with the law and the new online renewal has more serious errors, both of which are described in section III. Additionally, Defendant recently proposed to require renewal for Medicaid twice a year, instead of the one time required by federal law, which will double the administrative burden for the Department and Medicaid participants. Only after harsh feedback from legislators, Plaintiffs, and public comment did Defendant state that he would withdraw this proposal. This has yet to be confirmed in writing.

## VII. DEFENDANT HAS NOT MADE ADMINISTRATIVE CHANGES OR EXERTED LEADERSHIP TO FACILITATE COMPLIANCE

### 1) Defendant does not have sufficient staff to carry out the duties of the Department:

The Defendant's current staffing levels and staff structure make it impossible to achieve compliance. In his March 20, 2017 recommendations, the Special Master recommended that the Department place a moratorium of hiring staff above the Financial Assistance Analyst (FAA) level and encouraged the Defendant to increase the number of FAA staff to support the operational processes. *See* Special Master's recommendations attached as Exhibit 7. In his March 29, 2017 response, the Defendant committed to hiring 55 new FAA positions over the subsequent six months. As of the May meet and confer, the Department had yet to even post the new positions. *See* June 6, 2017 letter from Plaintiffs to HSD, attached as Exhibit 8. However, despite the recommended moratorium on hiring upper level management, the Defendant hired an additional FAA supervisor as well as two additional County Directors. Defendant discussed hiring just one County Director with the Special Master. Also, in the December 2016 Meet and Confer, the Department committed to filling all vacancies. *See* HSD's January 4, 2017 letter to Plaintiffs, attached as Exhibit 9. As of May 30, 2017 the Department reported that there were

105 remaining vacancies within ISD, 36 of which are FAAs. The Department has provided no information as to when those vacancies will be filled. The current vacancies do not take into account the additional 55 FAA positions identified as necessary by the Department to increase case processing capacity. *See* emails from Defendant's staff attached as Exhibit 10. This means that ISD is currently understaffed by at least 160 employees, 91 of whom are FAAs and who perform the bulk of client services and case processing. Until the Department takes action to fully staff ISD, New Mexicans will continue to experience protracted delays and illegal denials of the benefits to which they are entitled.

**2) Lack of leadership prevents the Department from making significant progress**

Defendant does exercise the leadership, control, and managerial oversight to effectively come into compliance with the Court Orders, the Decree, and federal law. FNS found that HSD is "not effectively monitoring the administration of SNAP" in violation of federal law. *See* FNS finding 24 in Defendant's response letter at p. 12, attached as Exhibit 11. Defendant went more than one year without an ISD director, leaving the Division without sufficient oversight over statewide Medicaid and SNAP policies. In May of 2016, the former ISD Director, Marilyn Martinez, was removed from her position after it was revealed that there was a long standing practice within the Division of falsifying information in expedite food stamp cases in order to skew application timeliness numbers in the Department's favor. Notwithstanding the gravity of this practice, Ms. Martinez has remained continuously employed by the Department, as has the former Deputy Director Laura Galindo, who has been promoted to Director of Child Support Enforcement. The functions carried out by the ISD Director are critical to ensuing timely and accurate case processing in SNAP and Medicaid. Despite this, the Department took more than one full year to staff the position. The current ISD Director only began serving in her position on June 5, 2017. Plaintiffs are concerned that the lack of leadership has prevented the

Department from making significant progress towards compliance.

In Doc. 712 at ¶ 9, the Department committed to ensuring that all policy and procedural changes related to SNAP and Medicaid will be subjected to review and approval by the Office of General Counsel (OGC) and the Office of the Secretary (OOS). HSD volunteered to enact this policy when information surfaced that supervisors were adding assets into cases to cover up the failure to timely process applications for expedited SNAP. This policy is especially important because HSD does not have accurate regulatory guidance for workers and does not have a worker manual or accurate training. Illegal directives that restrict access to benefits and instruct workers to misrepresent facts continue to be issued by management staff even after the Secretary issued a warning letter, attached as Exhibit 12, to cease all such practices in May 2016 following the revelation that the Department was engaging in systemic falsification of expedite SNAP cases. Plaintiffs recently received a copy of an email directive dated April 17, 2017. The email is from the Customer Service Center Staff Manager to management staff, attached as Exhibit 13, announcing that interviews will no longer be conducted after 3:30 p.m. at the call center. The email states *"[p]lease make sure that staff are not saying this to the clients, including in emails to offices or in case notes. They do not have to justify why they are not doing the interviews, just say to the client that they are not available and to the office that the client has requested the interview be rescheduled*." All notices instruct clients that they can complete their interview before the scheduled time by calling the call center. HSD policy is to conduct interviews on demand via phone. This email directive restricts access to an interview to complete the SNAP application process, but also instructs workers to withhold information from applicants, and give false information about the client's wish to reschedule the interview. If a client is unable to complete an interview early, they may wish to keep their scheduled interview. Rescheduling their interview delays the process even further. Defendant's staff indicated an intention to restrict

interviews at the call center in December of 2016, but committed to notifying plaintiffs if a final decision was made. *See* Exhibit 9. The email directive demonstrates a pervasive lack of leadership in the Department and/or a deliberate attempt to evade the requirements of the Decree and Orders of the Court. The Secretary was purportedly unaware of the policy at the statewide call center prior to Plaintiffs providing it to the Special Master. It has become abundantly clear that these policy directives are an ongoing and deep rooted practice, the prevalence of which is unknown to the Secretary and his officials.

**3) Defendant is diverting its limited resources toward implementation of unnecessary programs:**

Despite HSD's inability to stay on top of basic case processing and effectively serve its clients, the Department plans to implement an administratively complex copayment system for a large share of Medicaid participants. Co-payments are not required under federal law. Plaintiffs wrote a letter to the Defendant explaining the administrative complexity of the proposal. *See* Exhibit 8 to Doc. 776. The Special Master also advised the Department to "cease all efforts to plan, develop or implement new programs, with the exception of programs required by state or federal agencies to meet requirements within regulations." *See* Exhibit 7. The Special Master asked HSD to report on all plans to implement new programming. HSD did not disclose the plan to implement co-payments and instead incorrectly told the Special Master that "all projects the division is engaged in are related to compliance or are tied to federal or state compliance." The Special Master subsequently recommended that "implementation of increased copayments in the Medicaid program should be suspended immediately." *See* letter from Special Master, dated April 27, 2017, attached as Exhibit 14. Despite clear recommendations and evidence suggesting that the implementation of co-pays is a hindrance to compliance, the Department released plans to implement even greater changes to the Medicaid program in New Mexico over the next year

and a half. Defendant seeks to require co-payments as soon as July of 2017 and more changes in 2019, including premiums and changes to Medicaid eligibility periods. [11] These changes will require significant staff time and resources to program and enact over the next year and a half.

## VIII. THE DEFENDANT MUST BE COMPELLED TO PROVIDE TIMELY AND ACCURATE INFORMATION TO THE SPECIAL MASTER AND PLAINTIFFS AND TO ESTABLISH AND IMPLEMENT PROMPT DEADLINES FOR PROJECT COMPLETION.

### 1) Defendant is not providing data to the Plaintiffs as required by the Decree

Defendant has never provided the data required by the Decree to monitor compliance. In February, Defendant identified data listed in the Decree and refused to provide the vast majority of it to Plaintiffs' Counsel. After wasting several months obstructing Plaintiffs' access to data, in April of 2017, Defendant agreed to work with Plaintiffs to identify all data required by the Decree. On April 26, 2017, Plaintiffs sent a final version of a chart to the Department listing all data the Department is required to provide and whether or not it is currently being provided. Plaintiffs asked that the Department respond as soon as possible indicating 1) whether there were any disagreements and 2) when and how any previously unreported data would be produced. To date, Plaintiffs have not received a response. In the meantime, Defendant does not report on required data concerning benefit denial

The Defendant recently identified an individual, Kristin Abdill, to serve as the "single point of contact" for all correspondence and data requests in this matter. Although Plaintiffs are pleased that the Department has designated one individual to fulfill this role, Ms. Abdill's function thus far has been to serve as a clearinghouse for information. She has no program knowledge and does not have the authority to make decisions regarding compliance matters. Requests for information made to Ms. Abdill are forwarded to program staff who often do not provide responses. In some instances, requests for information are not even acknowledged.

[11] *See* the Defendant's Section 1115 Demonstration Waiver Renewal Concept Paper, available at

Defendant's choice of a "single point of contact" has done little to facilitate Defendant's compliance in this matter. As usual, Defendant began sending Plaintiffs large quantities of outstanding information in advance of the scheduled status conference on June 29, 2017, thus evidencing the need for Court established deadlines.

**2) The Department refuses to establish and abide by deadlines or respond to correspondence:**

Since the Defendant was held in contempt, his officials have taken the untenable position that 1) they will not provide Plaintiffs or the Special Master with any deadlines surrounding steps the Department is taking towards compliance and 2) they will not commit to responding to any correspondence from Plaintiffs' counsel. In the May 2017 Meet and Confer, counsel for Defendant asserted that establishing deadlines "only gets [them] in to trouble" and therefore would not establish timeframes for compliance. Further, Defendant will not even respond to a simple letter documenting agreements between the parties. It is baffling that despite a finding of contempt and stern directives from the Court to meet important benchmarks in this matter, that the Defendant refuses to establish any timeframes for himself and his Department for coming into compliance. These concerns have been echoed by the Special Master. Without a clear mandate from this Court that Defendant establish and abide by deadlines and respond to correspondence, progress towards compliance will continue to be stalled in this matter.

## IX. THIS COURT SHOULD SANCTION DEFENDANT FOR CONTINUED NON-COMPLIANCE

Defendant is treating the appointment of a Special Master as an excuse to slow down compliance efforts and operate without deadlines or accountability. Being held in contempt did not compel Defendant to make significant progress. Therefore, this Court should use its authority to issue sanctions against Defendant until critical compliance measures are met.

The Court has broad discretionary power to order remedies in the context of contempt for

non-compliance with a Consent Decree. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187,193-194 (1949), *Berger v. Heckler*, 771 F.2d 1569 (2nd Cir. 1985); *see also Alexander v. Hill*, 707 F. 2d 780, 783 (4th Cir. 1983) ("stating that ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt"). "The Court may take such remedial steps as are appropriate given the resistance of the non-compliant party." *Madden v. Grain Elevator, Flour and Feed Mill Workers, Local 418*, 334 F.2d 1014, 1020 (7th Cir. 1964) The Court may take into consideration "what is necessary, what is fair and what is workable." *Berger*, 771 F.2d at 1569. This consideration includes the imposition of fines as a remedy for contempt where public institutions fail to comply with the requirements of a consent decree. *See Twelve John Does v. District of Columbia*, 861 F.2d 295, 297 (D.C. Cir. 1998) (affirming a holding that the District of Columbia was in contempt and appropriately fined $250 a day per overcrowded prison dormitory), *Madden*, 334 F.2d 1014 (affirming that a district court could impose fines, based on each day a party failed to comply with an in junctional order and could increase such fines for subsequent delays).

**X. CONCLUSION**

For the reasons set forth above, Plaintiffs request that this Court issue an Order fining Defendant Brent Earnest $100 per day, per item, or imposing some other effective sanction until all of the following have been accomplished:

1) 100% of expedite SNAP cases are timely processed for the previous calendar month;
2) 100% of newborn children born to mothers eligible for Medicaid are approved for Medicaid within 3 days for the previous calendar month;
3) 95% timeliness for initial Medicaid and SNAP applications by August 1, 2017;
4) 95% timeliness for Medicaid and SNAP applications for renewal by August 1, 2017;
5) Advertise all FAA vacancies and 55 new FAA positions;

6) Increase Family Assistance Analysists (FAA) by

    a. Hiring 55 additional FAA's by September 29, 2017,

    b. Filling 36 FAA vacancies by November 1, 2017;

7) Implement an eligibility notice (Notice of Case Action) that complies with the Consent Decree and federal law by October 1, 2017;

8) Establish deadlines for compliance with outstanding Orders by August 1, 2017 and abide by those deadlines;

9) Provide the following data required by the Consent Decree to Plaintiffs' Counsel and the Special Master by August 1, 2017:

    a. The initial and renewal application denials detailed in Decree, Section 1, ¶ 4(f),

    b. The timeliness of initial and renewal applications as required by the Decree, page 7, ¶ 5,

    c. The approval, withdrawal, procedural denial and need-based denial rates for each program, by office, as required by the Decree, section IV, ¶ 3(f);

10) Defendant responds to correspondence from Plaintiffs to confirm verbal agreements between the parties in writing; and

If these sanctions do not succeed in making the Department take this Court's Orders seriously, Plaintiffs will refile their request for appointment of a receiver to take over and run the Department until such time as it complies with the Consent Decree and this Court's implementing Orders.

Respectfully submitted,

*/s/ Sovereign Hager*
*/s/Maria Griego*
New Mexico Center on Law and Poverty
924 Park Ave., Suite C
Albuquerque, NM 87102
(505) 255-2840 FAX (505) 255-2778

Jane B. Yohalem
P.O. Box 2827
Santa Fe, NM 87504
(505) 988-2826 FAX (505) 982-6692

Daniel Yohalem
1121 Paseo de Peralta
Santa Fe, NM 87501
(505) 983-9433 FAX (505) 989-4844

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2017, I filed the foregoing pleading electronically with the United States District Court, causing the same to be electronically served on opposing counsel, Christopher Collins and Natalie Campbell at Christopher.Collins@state.nm.us and Natalie.Campbell@state.nm.us

*/s/ Maria Griego*
Maria Griego