
EXHIBIT 3

NM Center on Law & Poverty
924 Park Avenue, SW Ste. C
Albuquerque, NM 87102
(505) 255-2840 tel.; 1 (505) 255-2778 fax
contact@nmpovertylaw.org

**HSD Response sent via email on February 28, 2017**

RE:   Response to Plaintiffs' 2.23.17 Letter on Outcomes from the February 21, 2017 Meet and Confer.

HSD's responses are in blue.

**1) Joint Status Report for March:** We did not agree on a schedule for exchanging Joint Status Report Drafts. Can we agree to exchange drafts on 3/7/2017 for a 3/15/2017 filing date?

HSD agrees the parties will exchange drafts on 3.7.17 for a 3.15.17 filing. HSD expects that the same format will be used from the last JSR so that neither party spends time rewriting information. HSD requests that the parties agree to reduce the next JSR to an update instead of creating another large document with many exhibits. HSD intends to only provide information that is new to each topic and to attach exhibits that are new – so that the JSR is an update of the last JSR. Please provide Plaintiffs' position on this.

**2) Renewal Delays:**

The parties discussed the difference between the data compiled by Defendant and Plaintiffs concerning delays in the renewal process. HSD clarified that the data the Department provided in the JSR is unduplicated. HSD agreed to provide unduplicated data on renewal delays caused by HSD monthly.

(1) HSD agreed to provide the unduplicated number of overdue SNAP renewals based on the reason they are overdue during the time period for which such data is required by FNS. HSD will begin providing this data with the March 20th data set.

(2) HSD agreed to evaluate how it can provide data for Medicaid that is parallel to number one above. This evaluation includes working with Ms. McKissic looking at the data HSD currently provides to its federal partners to see if any of this data will meet the request of Plaintiffs and the description of data in the Consent Decree.

(3) HSD agreed to evaluate how it can provide the total number of Medicaid Renewals that are due by month.

HSD stated that cases delayed because of "pending tasks" are attributed to state agency delays, but may also include some delays caused by clients. The parties agreed to review a sample of 20 randomly selected cases delayed due to "pending tasks" to gain more information on the underlying causes of delays in those cases.

HSD agreed to pull and review 20 cases from the overdue recertification list that have a delay due to pending tasks, from the January, 2017 set, to determine specific reasons for the delay in processing for each of these 20 cases. HSD invites Plaintiffs to come review these cases with HSD.

Plaintiffs requested data showing the ratio of total renewals that are overdue and information specifically on renewal delays for Medicaid. The Department agreed to investigate ways to provide this data.

HSD agreed to evaluate how it can provide the total number of Medicaid Renewals that are due by month.

HSD strives to process renewal packets within 10 days of receipt. Plaintiffs explained a problem with this time frame that causes interruption in SNAP benefits for families. Under federal law, individuals are entitled to [un]interrupted benefits if they timely return their renewal form. An individual could timely turn in a renewal form on the 15th of the month and if the form is not processed until 10 days later – i.e. the 25th day, the family will likely experience a delay in benefits. The state must schedule a renewal interview for SNAP to occur by the 20th day of the month (to ensure the household has 10 days prior to the end of the certification period to provide verification). If the state agency does not initiate renewal form processing until after the 20th day of the month, a family that timely renewed is likely to experience an interruption in SNAP benefits.

HSD plans to address delays include:

HSD agrees except where clarified in blue.

☐ Filling vacancies.

☐ Opening a phone based center in Truth or Consequences for 10 staff, filled from current vacancies.

☐ Utilizing a team of 35 field office staff to work through backlogs that exist across the state at specific offices. The staff are pulled from different offices across the state to work on overdue cases for specific offices. This does not cause delays in the offices where the 35 staff normally work.

Staff are not physically "pulled" from their offices, as cases from anywhere in the state can be worked in any state office. For clarification – this is a virtual pulling of staff to work sets of cases from around the state.

☐ HSD will continue to keep all ISD field offices closed for half a day on Wednesdays.

☐ HSD has discussed closing or consolidating offices at the legislature, but based on current funding levels and budget talks, this does not appear to be necessary.

HSD reported at the meet and confer that the approprations bill, as it stood then, provided additional money to the department. HSD reported that with the additional funding the department may not have to close offices. HSD also stated that the appropriations bill is still in development by the legislature and is subject to change.

☐ HSD believes that timeliness will also improve after it finishes processing overdue cases under the FNS corrective action plan – by April of 2017.

HSD has stated several times that the processing of SNAP overdue pending applications and cases in accordance with the FNS corrective action plan will have a negative impact to the timeliness rate. HSD did not state that timeliness will improve by April 2017. Processing of the overdue pending applications and cases for SNAP will occur through April 2017.

☐ Automated Medicaid renewal will be active in May of 2017 and HSD expects that it will have a positive impact on timeliness starting in June of 2017.

HSD expects that the automation of the Medicaid administrative renewal process will reduce workload for eligibility workers. HSD did not state that the automation will have a positive impact on timeliness.

Plaintiffs requested that HSD consider including information scheduling out or allowing for on demand interviews that is mailed with the renewal form.

As discussed at the meeting, HSD is open to making such policy decisions in the future.

### 3) Individualized Review

The parties discussed data on the number of SNAP applications denied without an "individualized review checklist" in the case file. Defendant stated that workers struggle to get the checklist into the case files, but that in many instances the individualized review did take place, according to the case notes. There is no individualized review tracking for Medicaid denials or renewals. Plaintifs agreed to review the data that HSD provided tracking individualized review for SNAP renewals. Workers were instructed to complete individualized review checklists for every case closed or denied for procedural reasons.

HSD agrees

### 4) Phones

HSD has experienced a large increase in call volume, causing a high rate of abandoned calls. HSD stated that this is caused by transitioning to closing cases for procedural reasons, open enrollment under the ACA and LI-HEAP season. HSD anticipates that the volume will go down and strives to have the wait time be under 2 minutes and have less than 10% of the calls abandoned.

Plaintiffs' Counsel inquired about the phone system monitoring that involves calling local offices on a variety of measures. Plaintiffs' specifically inquired about monitoring to include reviewing Decree requirements concerning telephone system. See Paragraph 6, pg. 11 and Paragraph 8, pg. 8. Paragraph 6 on page 11 specifically requires periodic check to see if telephone calls are returned. HSD agreed to investigate how it can provide information on compliance in its phone monitoring.

HSD agreed. QIS has added this task to their work so that this data will be collected.

### 5) Data generally

Mr. Parker requested that HSD review all federally required data reports concerning Medicaid and SNAP with Ms. Mckissic to see what data exists and may meet the requirements of the Decree or other data requested by Plaintiffs' Counsel.

HSD agrees

Data in the draft JSR concerning reason codes that make up general denial and case closure reasons in reports shows all procedural reason codes.

HSD is not sure that it understands this comment – please explain so that the parties can be on the same page. HSD's provision of reason codes used for the ST 007 and 005 reports are self-explanatory. Any reason code that has sub-triggers that might populate that reason code had the sub-triggers listed in HSD's initial draft of the February, 2017 JSR. HSD is unsure if this clarification addresses Plaintiffs' intended point.

Data on the number of delay notices issued that was included in the draft JSR was for December of 2016 and included all programs. HSD agreed to attempt to provide the data on Medicaid and SNAP only.

HSD agreed to look into this and update Plaintiffs on the specific data it can provide for delay notices by program.

### 6) Mass updates

Mass updates cause Medicaid cases only to improperly close for procedural reasons where a renewal packet has been received, but was not logged as received. HSD cannot turn off mass updates without causing other widespread problems to the system. The parties discussed the need to be on time with renewal packet processing to avoid this problem. Plaintiffs requested information on the number of cases closed for procedural reasons due to a mass update. Defendant agreed to investigate whether this data is available.

HSD agrees and sent a request to Deloitte to gather the total number of cases opened by mass updates in a given month, and for the same month, the number of Medicaid renewal cases that are procedurally closed for failure to log in the renewal packet.

### 7) Current status of regulatory changes:

a. The only notice of proposed rule-making that HSD has issued thus far is the April 15, 2016 notice, concerning regulations agreed upon in September of 2015. These regulations, which concern general provisions and some SNAP regulatory changes, have been finalized and were sent to SRCA on February 16, 2017. SRCA will publish the regulations on its own schedule.

HSD agrees, although by this date, the NMCAP proposed ruled making has also been published.

b. HSD is finalizing Medicaid related regulations and a notice of proposed rulemaking will be issued in the "near future."
HSD agrees.

c. HSD is working on NMAC changes related to Simplified Reporting for SNAP, Immigrant eligibility and student SNAP eligibility. These are in draft form and HSD is unsure when a proposed notice of rulemaking will be issued.
HSD agrees

d. HSD agreed to send Plaintiffs' Counsel current drafts of b and c above.

HSD agrees. The drafts were sent on 2.28.17. However, they are still in the internal approval process and have not been signed off by OOS as of today. Additionally, this set includes proposed changes for the E&T Program rule and the Time Limit Rule, which have also been sent to Plaintiffs in their draft form on 2.28.17.

### 8) Immigrant eligibility

a. HSD stated that all IT related work was completed to change the immigrant details page in ASPEN. Plaintiffs' Counsel brought up 2 outstanding issues: 1) the verification process agreed upon between the parties included unfished sections that dealt with text boxes that populate during a SAVE verification that allow for the provision of more information on an applicant and 2) the back end mapping of immigration status to document type and immigration status and other factors that determine eligibility. Plaintiffs' Counsel agreed to provide the last correspondence on 1 above, which indicated there would be at least one more JAD on the issue. (attached) Defendant agreed that Plaintiffs' Counsel should continue with the work on back end mapping for Deloitte.

HSD agrees. Once we have the back-end mapping piece agreed to by the parties, we will need one more JAD to finish the immigrant details page IT work for CR 2174. The text box addition for the second tier of SAVE will be in a different CR that has not yet been scheduled. The addition of the text box is a best practice and not federally required.

b. HSD stated that the CMS corrective action plan included a finding that the ROP was not being implemented correctly, and in fact it was being implemented too broadly. Plaintiffs' Counsel explained that they have brought this to the attention of HSD in the past and that the IT changes

should fix this problem. Ms. Armijo requested that the CMS findings be considered in determining the IT changes related to immigrant eligibility and that the changes be communicated to Ms. Armijo.

HSD agrees.

### 9) Notices

a. Plaintiffs agree to provide HSD with a list of notices that Plaintiffs believes should be included in the list for future notice work.

HSD agrees and sent a table for such purpose to Plaintiffs on 2.27.17. The table has all "exhibit L" notices listed plus other notices/items HSD believes Plaintiffs want added to the future working list for compliance.

b. HSD provided a list of notices that fall within the Decree. Plaintiffs agreed to provide their position on whether the notices fall within the Decree.

HSD is unsure how this comment differs from the one above.

c. Defendant agreed to provide the current status of all notices and his position as to what notices fall under the Decree.

HSD agrees to look again at the notices, including Plaintiffs input on the table sent to them on 2.27.17, to re-evaluate its designation of DHG versus non-DHG notices so that the parties can come to a final agreement for future compliance analysis. HSD also agrees that once a final list is agreed upon, HSD will provide, for that set, current status and will provide additional information such as what entity did the literacy review, the feedback from the literacy expert, and a copy of the notice w/ the literacy review incorporated.

d. Release 3.2 is May of 2017

HSD agrees

### 10) NMCAP

a. The initial notice sent to SNAP supplement participants about the termination of the NMCAP program was incorrect and HSD sent another notice. HSD agreed to provide a copy of the second notice to Plaintiffs' Counsel.

As clarified multiple times, HSD did not terminate the program as a discretionary act. HSD disagrees that the first notice sent was "incorrect." The first set of notices described a hard end date for the program. After further discussions with FNS, FNS instructed HSD to implement a phased close out of the pilot project. The second notice that was sent clarified that the individuals NMCAP benefits until their recertification date and would not close at the end of March 2014.

b. Plaintiffs agreed to advise the Special Master as to a proposed remedy to address any improper loss of benefits to disabled or elderly SNAP households.

HSD agrees and will provide its own position and legal support to the SM once it receives Plaintiffs' argument as to legal remedy.

**11) Data that HSD provided on February 22, 2017.**

Thank you for providing the following data and information:
a. The document the Special Master requested HSD send to Plaintiffs on February 2, 2016 concerning compliance with the Decree.
b. Data on co-enrollment across SNAP and Medicaid.
c. CMS corrective action plan letter and HSD's response.

If you have questions or concerns, please contact: Natalie Campbell, 1010 18th Street NW, Albuquerque, New Mexico, 87504; 505.222.9915; F 505.827.7720; or cell – 505.573.9604; Natalie.Campbell@state.nm.us.

Sincerely,

**Natalie Campbell**
Assistant General Counsel, OGC, HSD
1010 18th Street NW Albuquerque NM 87104
505-222-9915; 505-827-7720 or 505-573-9604; F 505-827-7729
Natalie.Campbell@state.nm.us

cc: Brent Earnest, Secretary
Sean Pearson, Deputy Cabinet Secretary
Christopher Collins, General Counsel
Lawrence Parker, Special Master