

**Lawrence M. Parker**
Special Master

### *UNITED* STATES DISTRICT COURT
1190 S. Saint Francis Drive
Harold Runnels Building Suite N330
Santa Fe, New Mexico  87505

RECEIVED
FEB 0 2 2018
505-469-8476
Chambers of
Kenneth J. Gonzales

The Special Master prepared the following document concerning the Defendant's compliance

with the Consent Decree as required by order, selecting and appointing the Special Master, No.

762.

**Background**

The New Mexico Income Support Division (ISD) is a part of the New Mexico Human

Services Division (HSD). The chief executive officer of HSD is a Cabinet Secretary, the chief

executive officer of ISD is a Deputy Cabinet Secretary, and the ISD Director manages the

program. The New Mexico ISD division is divided into five regions; each region is managed by

a Regional Operation Manager (ROM). There are 33 county offices each managed by a County

Director. The County Directors are responsible for direct delivery services.   The New Mexico

HSD/ISD administers federal programs under federal oversight of Food and Nutritional Services

(FNS) and the Center for Medicaid and Medicare Services (CMS).  ISD is responsible to New

Mexico applicants and clients for providing timely and accurate eligibility determination actions

(Exhibit 1, ISD map of New Mexico with Regions and county offices).  The mission of ISD is to

relieve, minimize, or eliminate poverty and make available certain services for eligible low

income individuals and families through state-wide programs of financial assistance, food

assistance, employment assistance and training services (Exhibit 2, ISD web site page 1).

Plaintiffs filed a law suit claiming that the application process in the New Mexico ISD program violated their federally guaranteed rights to receive a prompt eligibility decision and, if eligible, benefits by:

1. Failing to inform applicants adequately of eligibility factors which must be verified, the alternate methods by which verification can be accomplished and the availability of HSD assistance in obtaining verification that is not readily available.

2. Imposing inconsistent and excessive verification requirements which discourage applicants from completing the application process or result in the unlawful denial of benefits.

3. Delaying the issuance of eligibility decisions and benefits beyond federal time standards

4. Failure to screen food stamp applications routinely and adequately for emergency assistance and provide timely expedited benefits.

5. Failing to provide applicants with adequate written notice of eligibility decisions.

The original order was filed in 1989, and was certified as a class action consisting of present and future applicants for this program (No. CIV 88-0385-JC/ DJS).  In an effort to resolve the issues in the original law suit, a consent Decree was agreed to by the Plaintiff and HSD agency and ISD program as filed in 1998 (No. CIV 88-0786 JC/DJS).   Since the filing of the Consent Decree, several motions filed, orders issued and exhaustive actions completed to compel the Defendant to come into compliance with the requirements of the Consent Decree. The motions and orders include Documents 475, 477, 500, 506, 549, 554, 587, 601, 606, 712, and 749.  The parties engaged in monthly court meetings resulting in the filing of Documents 599, 605, 609, 613, 616, and 619.  The parties participated in monthly meet and confer meeting

and filed joint status reports to the courts resulting in Documents 590, 592, 595, 596, 608, 611, and 614.

In 2016, the HSD Cabinet Secretary sent out a directive to all ISD employees explaining his expectations for improving services to clients and coming into compliance with the Consent Decree.  The result of his efforts to facilitate compliance resulted in limited improvement in services to clients or movement towards attaining compliance with the Consent Decree (Document No. 730).  In 2016, a hearing was held and evidence demonstrated the Defendant lacked the leadership and management skills to move the division into compliance with the Consent Decree. It was also clear that the ISD management team did not have the knowledge, skills or ability (KSA) to manage this program in a manner to produce sustained positive outcomes related to compliance with the Consent Decree or client services. After hearing the evidence and giving consideration to the options available to the court the decision was made to appoint a Special Master to assist the Defendant with coming it compliance with the Consent Decree (Exhibit 3, Doc. 730 page 32).  The Defendant was held in contempt of court (Document 757) for failing to comply with orders requiring ISD to meet time frames and show progress in coming into compliance with the Consent Decree.  The Special Master was appointed in November 2016 to serve as an objective advisor to the Defendant and report to the court on issues related to Supplemental Nutrition Assistance Program (SNAP) formerly known as Food Stamps and Medicaid eligibility processes and compliance with the Consent Decree.

**Plaintiffs**

The Special Master recognizes the efforts of the Plaintiffs in their attempt to resolve the Consent Decree and the outstanding court orders.

Currently, the New Mexico Law and Poverty Center is the advocate for, the lead attorney for and monitor for the Plaintiffs. Plaintiff's counsel continues to demand the ISD programs come into compliance with the Consent Decree, federal and state requirements for providing services to SNAP and Medicaid clients. During the past 27 years, motions filed and orders were issued requiring Defendant compliance with the consent decree and federal regulations. Plaintiffs' advocate and counsel has extended the scope of the Consent Decree to include all SNAP and Medicaid programmatic changes made by the agency and federal oversight agencies. This effort allows the Plaintiffs' involvement in all aspects of the ISD operation, including ISD daily business operation. Plaintiffs' advocate, through a network of ISD employee confidential informants keeps tabs on the ISD operation and program issues. The information received from these ISD staff is used by Plaintiffs to demonstrate failures in the eligibility system. The evidence often indicates the Defendants are making errors in processing applications. The Plaintiffs usually do not bring the issues identified to the immediate attention of the Defendant due to an inherent lack of trust between the parties. The Plaintiff advocates and counsel do not trust the Defendant to make sound decisions or take remedial actions to rectify the issue. The Plaintiffs have long complained that when errors or issues are brought to the attention of the Defendants, the information is ignored, disregarded, or lack response.

**Defendants**

The New Mexico Income Support Division and the Cabinet Secretary has been the Defendant in this case from the date of initial filing. In the history of this case, the Defendant has not completely met the requirements of the Consent Decree, court orders, FNS and CMS

program requirements. Problems identified include insufficient management or program expertise, staff attending court not prepared for the hearing, implementing new programs without proper strategic planning and coordination, and failing to meet deadlines and time frames. Staffing and budget constraints are often discussed as factors related to the ISD program not meeting required time frames. These constraints are national issues; however, many states are meeting the federal requirements while effectively managing these constraints. Both parties acknowledge (Document 808) ISD has made some progress and met some requirements of the Consent Decree and associated court orders.

**Consent Decree**

Over time, certain requirements of the Consent Decree have been met, some of the requirements need to be updated, some need to be rewritten and others need to be removed. The Consent Decree requirements as written are not attainable for the following reasons:

1. The Plaintiff class consist of "…present and future applicants for these programs." There is not an end date for applicants to be included in this class action. Federal regulations require states to determine SNAP eligibility accurately, timely, and within program requirements.

2. The consent decree, as written, requires 100% standard in SNAP and Medicaid timeliness. The 100% compliance standard is not realistic because there will always be operational and programmatic barriers to compliance that are factors beyond ISD program's control. (E.g: changes in regulations or requirements, client behavior patterns, and natural disasters).

3. There are actions and deadlines that are no longer relevant. (e.g., Consent Decree Section II, pages 10-11, Para.5, Exhibit 4).

4. The relationship between the Defendants and Plaintiffs is not in the interest of client services and on the current trajectory will not lead to positive outcomes for this Consent Decree. The parties lack trust and respect for the other and the majority of meetings result in anger without accomplishment. The joint status report meetings conducted during fall and winter 2017 are examples.

5. The Defendants' performance in the program areas leading to the filing of the lawsuit has appeared to improve in some areas while other areas require more in depth review, monitoring and structured direction. The onsite observations and data obtained during the compliance reviews is provided in the Compliance Specialist Report (Exhibit 5).

**Findings**

Historically, the Defendants have failed to wholly meet the requirements of the Consent Decree, Court orders, or federal requirements since the signing the Consent Decree. There have been times in which the Defendant was in compliance with a part of FNS regulations. The agency was awarded enhanced funding bonus money for their performance in the areas of timeliness and Quality Control accuracy (Exhibits 6-12) corresponding section of the Consent Decree. However, there is no evidence either party filed a motion or sought relief from the court to demonstrate improvement or movement towards a resolution of the Consent Decree.

The Defendant's current executive management team experiences difficulties in managing the ISD program in a positive manner. The Cabinet Secretary was appointed

December 2014 and the Deputy Cabinet Secretary was appointed January 2015. The Cabinet Secretary is the person responsible for the Agency (HSD) administration with the Deputy Cabinet Secretary is responsible for administration of the ISD program. This leadership team took control of a program with a history of failure related to the Consent Decree and execution of the program requirements and during times of major operational change (Affordable Care Act and ASPEN implementation). Under the direction of the Deputy Cabinet Secretary the following occurred:

1. An advance warning directive and request for a corrective action plan from Food and Nutrition Services (FNS) dated June 16, 2016 (Exhibit 13) for failure to meet FNS requirement in providing SNAP services to clients.

2. A corrective action plan requested from the Centers for Medicaid and Medicare services (CMS) dated January 20, 2017(Exhibit 14) for failure to meet requirements in providing services to clients.

3. A state-wide problem in which applicants and clients were denied benefits due to program violations where employees added resources to client eligibility screens in ASPEN resulting in clients being denied access to benefits (OIG Letter Exhibit 15).

4. As of April 6, 2017 a backlog of SNAP Applications, Recertification, and Interim Reports of 36,622 (Exhibit 16).

5. As of April 6, 2017, a backlog of Medicaid Applications and Recertification of 63,141 (Exhibit 16).

It is a fact that the Deputy Cabinet Secretary took control of a program with many problems; however when you take the timelines into consideration, he and his direct reports have distinct responsibility for the program failures. Accountability at all levels is almost nonexistent, creating an environment where failure is an accepted part of the ISD operation and culture.

Timelines and deadlines for meeting expectations have little or no relevance in the ISD business operations, processes, or methods of administration.  This is evidenced through the Defendants' performance established in the Consent Decree, court orders, and federal requirements, including Plaintiffs' requests.   The Consent Decree was modified in 1998 and agreed to by the Plaintiff and Defendant. In this agreement the requirements and time frames were set in which the Defendant HSD would come into compliance with the Consent Decree. It is a fact that the requirements have not been met completely.

**Conclusion**

The evidence shows that HSD/ISD has not come into full compliance with the Consent Decree, court orders, FNS and CMS program requirements. The management team decision making and communication have proven deficient in recent years and failed to yield progress in the area of client services and employee development.  Since July 2017, the department has shown improvement in Consent Decree reporting, hiring of Family Assistant Analyst level staff, and performance in the area of eligibility determination approval timeliness.  Due to reactionary management philosophy, the management continues to struggle with strategic decision making and implementation of changes to facilitate improved business processes and outcomes.  There is

evidence to indicate the current HSD/ISD management team lacks sufficient knowledge, skills and abilities (KSA's) to appropriately manage the program or bring it into full compliance with the Consent Decree.

Consideration was given to whether a recommendation of receivership was a viable option to full compliance with the Consent Decree.  The evidence shows limited progress by the ISD program management.  However, there is no evidence of immediate and irreparable harm to the class members. It is my opinion that receivership will not result in immediate resolution of the ISD program deficiencies.  If there is limited or insufficient progress in meeting the requirements of the recommendations for improvement, the issue of receivership should be reconsidered.

**Recommendations**

1. Remove from any position that directly or indirectly impacts ISD Field Operations: Assistant General Counselor, Former Deputy Cabinet Secretary, Income Support Director, Field Operations Deputy Director, and a Regional Operations Manager. After the changes are implemented, an assessment of County Directors and Line Managers will be completed to determine additional changes required.
   **Implementation Timeframe:**  45 Calendar Days from the order

2. Revise the Consent Decree to give recognition to the parts that have been completed, update requirements, close the class (if allowed by law) and dismiss all court orders, in which the requirements have been met.
   **Implementation Timeframe:**  30 Calendar Days from the Order

3. Implement an unbiased case review process to assist in validating that the ISD program is meeting the requirements of the Consent Decree. The case review process should include:

   a) An independent random selection of the case sample.

   b) A case sample that includes all case action types.

   c) An independent dispute resolution process.

   **Implementation Timeframe:** April 1, 2018

4. ASPEN – Develop and implement ASPEN refresher training to include functionality and known work arounds for staff success.

   **Implementation Timeframe:** 120 Days from Order

5. Reinstate auto denial and closure functions within ASPEN and eliminate manual eligibility review and completion of the Individual Eligibility Review form by workers.

   **Implementation Timeframe:** March 1, 2018

6. Training – Enhance new employee training to align with realistic job expectations. Improve the accuracy of the training materials (e.g., streamline reporting and Immigration Training).

   **Implementation Timeframe:** 180 Days from Order

7. Implement an agreed upon tolerance level for determining compliance in the area of timeliness to allow for client services and human error.

   **Implementation Timeframe:** 60 Days from Order

8. Appoint knowledgeable subject matter experts for the ISD program areas for SNAP, Medicaid, and Immigration.  The three positions will have exclusive responsibility for serving as liaison between Plaintiffs, Defendant, and the Special Master.

   **Implementation Timeframe:**  60 Days from Order

9. Failure to complete or make sufficient progress by the Court's standards on these recommendations will result in additional recommendations for the Court's consideration.


Respectfully submitted

Lawrence Parker
Special Master

# New Mexico Counties
## By Region



Exhibit ___1___





Home   About Us   Centennial Care   Communications and Public Information
Contact Us   theWire-Employees Only

**Looking For Assistance** | **Looking For Information** | **Providers**
**Newsroom**

# LOOKING FOR ASSISTANCE

*The mission of the Human Services Department (HSD) is to reduce the impact of poverty on people living in New Mexico by providing support services that help families break the cycle of dependency on public assistance.*

**Looking for Assistance Overview**

**Emergency Information**

**Field Offices**

**Apply For Benefits**

**Health Coverage**

**Food Assistance**

**Income Support**

   Income Support Overview

   Community Assistance and Community
   Services Block Grant

   General Assistance for Disabled Adults
   and Unrelated Children

   Low Income Home Energy Assistance
   Program

   Refugee Resettlement Program

## Income Support - Overview

The mission of the Income Support Division (ISD) is to relieve, minimize or eliminate poverty and to make available certain services for eligible low-income individuals and families through statewide programs of financial assistance, food assistance, employment assistance and training services.

The Human Services Department (HSD) also recognizes the importance of developing work readiness in the populations served through public assistance. To do this, HSD has developed programs geared towards the training and placement of individuals int these programs, please visit the Build Your Future section of

### Relevant Information

Career Links Program
Income Eligibility/ Federal Poverty Level Guidelines
ISD General Information Policies
ISD Interim Policies and Procedures
ISD Manual Revision Memos
ISD Registers
ISD Rules and Statutes

Exhibit ___2___

efforts in facilitating full compliance with the Court Orders, Defendant has neither complied with those orders nor diligently attempted in a reasonable manner to comply.

**IT IS THEREFORE RECOMMENDED** that Defendant be found in contempt of the Court Orders;

**IT IS FURTHER RECOMMENDED** that a special master be appointed to serve as an objective advisor to Defendant and to report to the Court on issues related to SNAP and Medicaid eligibility processes and Defendant's compliance with the Court Orders, the Decree, and federal law, as outlined in the proposed order attached. In addition, Defendant should be ordered to employ the organizational objectives and strategies described in his letter to Plaintiffs dated June 2, 2016, (Doc. 712);

**IT IS FINALLY RECOMMENDED** that expenses incurred in appointing the special master and the special master's salary be paid by Defendant.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

**Exhibit** 3

and that another responsible person may attend the interview with the applicant or in the applicant's place.

Upon request, the employee will provide a standard form on which the applicant may request a waiver of the face-to-face interview (food stamps) or of the office interview (Medicaid) or designate an authorized representative.

4. **SCREENING BY MAIL**   If an applicant mails in the application, or is unwilling or unable to be screened in person, HSD will screen the application for all programs and for expedited food stamp eligibility upon receipt.   An Appointment Letter and Verification Checklist (with appropriate boxes marked) will be mailed to the applicant on the same day the application is received.

5. **APPLICATION INTERVIEW**   At the application interview, an eligibility worker will advise the applicant of any eligibility factors which have previously been established through documents in HSD's possession and which are not subject to change, including U.S. citizenship, permanent residency, birth date, relationship and social security enumeration. The worker will not require further verification of any eligibility factors already so established.

The worker will then review with the applicant information received from government data systems (BENDIX, HPWX, WDX, SDX and IEVS). The worker will not require further verification of such information unless it is disputed by the applicant or the information is otherwise questionable as defined in ISD Reg. No. 163.

**Exhibit** _4_

The worker will make copies of verification documents brought to the interview by the applicant and provide a receipt for the documents.

The worker will advise the applicant of any eligibility factors which must still be verified and the methods by which verification can be accomplished. The worker will explore with the applicant what verification documents are "readily available" to the applicant and request those documents first. If an eligibility factor cannot be established through readily available documents, the worker will advise the applicant that verification may occur through the use of collateral contacts (that is, the oral statements of third parties) or a home visit. The worker will offer to assist the applicant in obtaining needed verification if the circumstances indicate that the verification may be difficult for the applicant to obtain. If the offer to assist is accepted, the worker will provide such assistance.

The worker will provide the applicant with a written list, on a standard form, of the specific verification documents the applicant and worker believe are readily available and will establish one or more outstanding eligibility factors.

6. **TELEPHONE CALLS**  Each office worker will accept telephone calls throughout the working hours unless the worker is conducting an interview, attending a meeting, or otherwise unavailable. If the worker is unavailable for a telephone call, the receptionist or unit clerk will take as detailed a message as the client wishes to convey and will provide a copy of this message to the eligibility worker and the eligibility worker's supervisor. The eligibility worker supervisor will periodically conduct a random check to see if telephone

# COMPLIANCE REVIEW REPORT

January 31, 2018

SUBMITTED BY

# RAMONA MCKISSIC

*COMPLIANCE SPECIALIST*

4330 CUTLER NE
ALBUQUERQUE, NM 87110

Exhibit __5__

## I.    Executive Summary

This report includes results of compliance review visits conducted April 2017 through December 2017.  During this period, seventeen[i] onsite office reviews were completed representing 51.5 percent of the offices statewide.  The compliance review provides an independent, onsite, and unbiased review of New Mexico Human Services field offices within the Income Support Division (ISD).  The review assesses compliance with federal and state requirements for Supplemental Nutrition Assistance Program (SNAP) and Medicaid administration, Debra Hatten-Gonzales litigation requirements, and includes areas of strength and opportunities for improvement.

New Mexico Income Support Division administers SNAP and Medicaid programs through thirty-three field offices located within counties divided into five regions.  Field Operations central office manages the regions through the functions of the ISD Director and Field Operations Deputy Director.  Each region is managed by a Regional Operations Manager (ROM) with responsibility for five to eight offices per region.  Each office is managed by a County Director with direct supervision of Line Managers within the office.  The line manager has specific unit responsibilities and provides direct supervision of eligibility workers and clerical staff.

The compliance review assesses aspects of the local office operational process.  The areas include, but are not limited to client services, operational structure, management processes, communication methods, assignment and management of staff resources, workload, and managerial monitoring and evaluation of adherence to established processes and requirements of the state and federal regulations and the consent decree.  The review is comprised of actual observations and discussions with staff at the family assistance analyst, line manager, county director, regional operations manager, and deputy director levels.  A subsequent case review must be completed to validate eligibility determination process areas of the onsite review.  For the purpose of this report, the assessment includes system reports/data, actual staff role observations, client interview observations, and staff interviews. The compliance statistics cited throughout the report represent compliance rating of the offices reviewed, unless otherwise noted.

## II.    Timeliness

Income Support Division is responsible for completing actions to facilitate timely eligibility decisions for clients and applicants[ii]. The consent decree requires 100 percent timeliness performance with federal regulations. There is disagreement between the parties around the interpretation and resulting standard required to be met. For the purposes of this report, the 95 percent tolerance level is applied to determine timeliness compliance. The division is responsible to determine eligibility for SNAP (expedite and non-expedite) and Medicaid within state and federal timeframes. The system and compliance review data indicates some weakness across all programs. However, data at the time of report generation indicates improvement in the area of eligibility timeliness for approvals since the compliance reviews were performed. Statewide averages indicate the division has exceeded **97 percent** timeliness in SNAP Approvals (Expedite and 30 day) and **95 percent** timeliness in Medicaid approvals each month since August 2017[iii]. The division has provided Medicaid timeliness renewal data for the month of November 2017. The division reports statewide performance for the month of **97.8 percent**; however, independent report generation capabilities are not available.

The division demonstrates weakness in denial processing and SNAP recertification timeliness and recertification reporting. At the time of report, the November 2017 reporting indicates recertification timeliness of **90.4 percent** for SNAP recertification applications received timely from clients and processed timely by ISD staff. At the time of report, a method to validate the recertification data reported by HSD is nonexistent. The ASPEN Business Intelligence tool is not updated to allow independent report generation. The agency reports the recertification timeliness information is generated from ASPEN data by ISD data analytics staff. At the time of report, the division's timeliness performance in the area of denials statewide for SNAP 30 Day is **62.6 percent** for December 2017 and for the same period, Medicaid denial processing is **59.5 percent**.[iv]

The results at the time of compliance review and report generation are provided below.

*SNAP Non-Expedite Timeliness*

Ten of the seventeen offices reviewed were meeting a 95 percent tolerance level at the time of the compliance review. This performance represents **58.8 percent compliance** for the offices reviewed in the area of SNAP Non-Expedite timeliness at the time of review. In comparison, at the time of report generation the sixteen of the seventeen offices reviewed were meeting a 95 percent tolerance level representing **94.1 percent compliance** at the time of report.

*Expedite SNAP Timeliness*

Eleven offices of the offices reviewed were meeting tolerance levels at the time of the compliance review representing **64.7 percent compliance** in the area of SNAP Expedite timeliness.  At the time of report generation, sixteen of the seventeen offices reviewed were meeting tolerance the 95 percent tolerance level representing **94.1 percent compliance** at the time of report.

*Medicaid Timeliness*

One of the seventeen offices reviewed was meeting a 95 percent tolerance level at the time of the compliance review representing **5.88 percent compliance** in the area of Medicaid timeliness.  At the time of report, five of the seventeen offices reviewed were meeting tolerance levels representing **29.4 percent compliance** in the area of Medicaid timeliness

*100 percent compliance application processing timeliness standards*

The consent decree requires 100% compliance with application processing timeliness standards for SNAP Expedite, Non-Expedite, and Medicaid.  At the time of the review, one of the seventeen offices was meeting tolerance levels across all three areas representing **5.8 percent compliance**.  At the time of report generation, five of the seventeen offices reviewed were meeting tolerance levels representing **29.4 percent compliance** in this area.  The data suggests the majority of the offices were meeting the federal tolerance of 95 percent in both SNAP areas and failing to meet tolerance levels in the area of Medicaid application processing.



**Figure 1**



**Figure 2**

*Application Registration*

Application registration timeliness has a direct impact on the overall timeliness of the eligibility determination. The offices are required to perform application registration within 24 hours of receipt of an application for assistance, regardless of the client submission method. Eleven of the seventeen offices reviewed were meeting application registration timeliness at the time of the onsite review representing **64.7 percent compliance** in the area of application registration. The offices failing to meet application

registration requirements at the time of review include the four Albuquerque offices, Clovis, and Santa Fe.

*Scheduling Timeliness*

Client interview scheduling is required for SNAP application and periodic review. The client may also request an interview for programs where an interview is not required. The offices are required to conduct interviews within 10 business days. Twelve of the seventeen offices reviewed were meeting requirements at the time of onsite review representing **70.6 percent compliance** in scheduling. The offices failing to meet scheduling requirements at the time of review include the four Albuquerque offices and Socorro.

*Application Screening*

The offices are required to perform application screening to determine whether the client meets criteria for Expedite SNAP Criteria. All seventeen of the offices reviewed demonstrate screening is performed in person and when the application is received via drop box or mail for **100 percent compliance**. While the offices were performing across the board, some offices were untimely due to the untimely application registration performance at the time of the review.

III.    **Quality**

Income Support Division has statewide quality control performance goals of cumulative Payment Error Rate of 6% or better or an Accuracy Rate of 94% for Quality Control cases reviewed. The division also has a cumulative negative error rate of 1% or Case and Procedural Error Rate (CAPER) of 99%. The state error rates in both Quality Control areas are failing to meet performance goals. To meet these goals, the office line managers are required to review staff cases to ensure accuracy. The Quality Improvement Section (QIS) staff and the County Directors maintain monitoring responsibility.

*Quality Control Positives*

Twelve offices were meeting payment error rates goals at the time of the compliance review representing **70.5 percent compliance** in this area. At the time of report generation, fourteen review offices were meeting payment error rate goals representing **82.3 percent compliance** at the time of report. The state cumulative payment error rate was **6.68 percent** at the time of report.

6

*Quality Negatives*

One office of the offices reviewed met payment error rates goals at the time of the compliance review representing **5.88 percent compliance** in this area.  At the time of report generation, seventeen review offices failed to meet payment error rate goals representing **0 percent compliance** at the time of report.  The state cumulative payment error rate was **51.8 percent** at the time of report.

*Quality Control Standard of Review*

The Consent Decree requires quality control to conduct reviews in accordance with the Court Order.  The Quality Improvement Section (QIS) within the Quality Assessment Bureau conducts reviews and has established a process for monitoring DHG requirements during state management evaluations. The offices are required to submit corrective action plans related to DHG findings.  The quality control section does not perform reviews specifically for DHG requirements but for timeliness, notices, accuracy of the eligibility determination.

IV.    **Office Processes**

The office processes includes actual local office execution of DHG requirements in the eligibility process.  The observations onsite determined the efficiency of the division related to adherence to signage, client pamphlets, intake of applications and verification documents, front office/lobby service levels/customer service, application interview availability, eligibility policy process adherence, call center and local office telephony performance, phone messages taken and calls returned, and uniform office practices.

The on-site review observations indicates compliance of 80 percent or better in the areas of office pamphlets/flow charts, application interview, uniform office practices, and scan/copy verification documents.  ISD demonstrates compliance weakness in the areas of lobby wait times, expedited policy process adherence, call center performance, telephones answered/voicemails returned, and maintain phone logs/messages. The detailed performance is provided below.

*Scan/Copy Verification Documents*

The offices are required to scan all applications and verification documents same day received.  At the time of review, sixteen of the seventeen offices were compliant representing **94.12 percent compliance** at the time of review.  One office failed to scan

7

applications received from the drop box at the 4:30 p.m. pick up. The applications were held and scanned the following day.

*Office front lobby process/Wait Times/Service Levels*

The offices are required to maintain customer centric and consistent lobby processes that are conducive to high levels of client service. The service levels observed include the staff interactions, resolution, staff knowledge, and the client wait times. At the time of review, thirteen of the seventeen offices were compliant representing **76.4 percent compliance**. The lobby wait times were deficient in four of the seventeen offices.

*Pamphlets/Flow charts*

The offices are required to maintain pamphlets and flow charts in the office. At the time of review, all seventeen offices were compliant representing **100 percent compliance** of the offices reviewed.

*Application Interview*

The offices are required to ensure clients are offered an opportunity to interview without a barrier to access. At the time of review, sixteen of the seventeen offices reviewed were meeting requirements representing **94.12 percent compliance**. One office was observed disallowing clients the opportunity to interview at the time an application is received.

*Expedite Policy Process followed*

The offices are required to follow the expedite policy process. The offices are required to screen all applications for expedited service eligibility, conduct an interview (in person or via telephone), and ensure all policy and requirements of the postponed interview waiver are followed. At the time of the review, ten of seventeen offices were following expedite policy processes representing **58.8 percent compliance**. The seven offices failing to follow policy failed to make telephone attempts to contact clients for interview, even when the client listed telephone contact information on the application.

*Call Center phones answered performance*

ISD operates six call centers or Customer Service Centers (CSC) across the state. The direct management of the call center staff (including management) is at the county and region level. The call center reporting and oversight is centrally managed out of the Sandoval county office. The management being segmented creates situations where the operating practices are inconsistent and unenforced. Reporting July 1 – September 1 indicates abandonment rates were 52 percent with an average wait time for English speaking callers of 27:34 and a wait time of 27:54 for Spanish speaking callers.

September 1-November 30 reporting indicates 47 percent abandonment rate and wait times of 22:43 for English and 22:58 for Spanish. There has been some improvement in the statistics; however, there is room for improvement in the area of call centers performance. The reporting and monitoring systems developed are robust, but requires some consistency in the management oversight of the call center staff locally. At the time of report, ISD was in contract negotiations with a vendor to improve the performance in the area of call centers. Additional and continued monitoring is required in the area call centers.

*Telephones answered voicemails returned*

At the time of review, ten of the seventeen offices were meeting requirements representing **58.8 percent compliance**. The four offices were failing to answer the telephone in a timely manner and three were failing to return voice mail messages timely.

*Maintain phone messages/logs*

At the time of review, eleven of the seventeen offices were meeting requirements representing **64.7 percent compliance**. Six offices were failing to maintain telephone logs or were not logging all calls received.

*Uniform Office Practices*

The offices are required to operate using uniform office practices. The model office business process is implemented statewide and is an expectation of the central office management. At the time of review, the County Plan of Operations documentation are out of date in all offices reviewed. The local office staff indicates central office management has failed to approve an updated plan for the staff in the regions. At the time of review, fifteen of the seventeen offices reviewed were operating within the expected model office process representing **88.2 percent compliance**. The two offices failing to operate within model office concept were small offices and management indicates the staffing and office size attributes to the office is not employing uniform office practices.

## V.    Eligibility Determination Processes

The Consent Decree requires ISD to provide assistance to facilitate eligibility decisions, review government systems prior to pending the case, provide a list with specific verifications documents that are readily available, use verification for more than one eligibility factor, assist clients with getting verification, not request additional or reject verification unless unreliable, not require questionnaires or verification not necessary for eligibility, not require eligibility factors not subject to change, not require further

verification of eligibility factors already established, not deny applications solely because the client failed to verify expenses or a collateral contact failed to act, provide notice of questionable information to clients, allow 10 +3 days to provide information if a notice is mailed, and issue and keep document receipts in the file for six months.

The onsite compliance review observation indicates the offices reviewed are meeting most requirements; however, a case review is required to validate actual performance in the eligibility determination process. The specific onsite observation performance is provided below. There was one office that was observed failing to provide assistance or assist with getting verification. There were two offices that were observed requesting additional information or rejecting verification.

At the time of review compliance review, all seventeen offices reviewed were observed meeting the following requirements representing **100 percent compliance** of offices reviewed:

- *Provide a list of specific verification documents that will establish outstanding eligibility factors*
- *Base eligibility on readily available verification and use the document for more than one eligibility factor*
- *Request only necessary verification to determine eligibility for benefits*
- *Do not require questionnaires seeking information unnecessary to determine eligibility and benefit amounts*
- *Do not require verification of eligibility factors not subject to change*
- *Notice of questionable information provided to clients.*
- *Do not deny eligibility solely because the client failed to verify expenses.*
- *Provide adequate written notice of eligibility decisions*
- *Clients given 10 +3 days to provide information when notice is mailed.*
- *Document receipts and keep in case file for six months.*
- *Review government data systems prior to requesting verification*

At the time of compliance review, sixteen of the seventeen offices reviewed were observed meeting the following requirements representing **94.1 percent compliance**. One office interview observations revealed a worker failed to accept the written statement of child support from the absent parent and requested additional collateral contact.

- *Do not require further verification of eligibility factors already established*
- *Provide assistance to facilitate eligibility decisions*
- *Assist the applicant in obtaining needed verification*

10

At the time of compliance review, fifteen of the seventeen offices reviewed were observed meeting the following requirements representing **88.2 percent compliance**. Two office interview observations revealed staff rejected verification documents without discussion about reliability or whether the document was questionable.

- *Do not request additional proof, do not reject a verification document unless unreliable.*

The onsite review process revealed the Fair Hearing processes are inconsistent and untimely. At the time of review, twelve of the seventeen offices were meeting requirements and were timely processing fair hearing requests representing **70.5 percent compliance.**

*Backlog Processing*

At the beginning of the compliance reviews, ISD had backlogs of unprocessed SNAP and Medicaid cases. As of April 6, 2017 ASPEN[v] data indicates the division had a backlog of 63,141 Medicaid applications and renewals and 36,622 SNAP applications, recertification, and interim reports.

As of December 29, 2017 ASPEN data[vi] indicates the division backlog is 894 Medicaid applications and recertification, 150 SNAP applications and recertification, and 208 Interim Reports. The progress is significant and the division has demonstrated similar performance since August 2017.

**VI.    Notices**

The Consent Decree requires ISD to review and update eligibility notices to improve clarity, consistency, and readability. ISD is required to ensure all notices include a sixth grade reading comprehension level and include plaintiff's review prior to final implementation. The income support division and central office management has worked to prioritize the notices and ensure literacy review. The agency has updated the majority of the notices at the time of this report. The Notice of Case Action (NOCA) was updated and implemented on January 2, 2018. A case review is required to ensure the accuracy of the implementation of this notice and the accuracy of the prior notices implemented. The agency is commended for the work completed in the area of notices in the past year. However, continued improvement in the area of communication and transparency related to utilization and modifications to notices with the Plaintiffs.

## VII.    Culture/Management

During interviews with ROMs, County Directors, Line Managers, FAA, and Clerical staff, the staff at every level cited issues with the way Central Office managed the regions. The staff indicated communication is a major issue. The regions do not believe they are receiving information in a timely or correct manner that is conducive to productivity and accuracy. The staff at the line manager, county director, and ROM levels states that Central Office does not include the region in the decision making processes; therefore, the decisions are not always the best decisions for the division. The staff at all levels indicates fear and retaliation is the management culture present within Income Support Division. Some staff interviewed maintains the field employees are not respected or trusted for the work they perform day to day. The staff indicates information is not shared appropriately or timely, there is not follow-up or follow-through with directives and indicates the management is negative and/or invisible; therefore, the regions and local offices are left to their own discretion, at times. Some staff states the Counties are often told to "figure it out" or "get over it" in when concerns are raised.

Fourteen of the seventeen offices reviewed cited communication as an issue representing **82.3 percent** of offices reporting the issue. The staff indicates the communication platforms exist, but are not effectively utilized by the executive management. The staff indicates the improvements are required for the positions ISD Deputy Director, ISD Director, HSD Deputy Director, and Cabinet Secretary.

Fifteen of the seventeen offices reviewed cited Central Office management/culture as an issue representing **88.2 percent** of offices reporting the issue. The staff indicates the executive management has cultivated a culture that lacks accountability, self-reflection, and respect for the region staff.

Nine of the seventeen offices reviewed cited Region Management/culture as an issue representing **52.9 percent** of offices reporting the issue. The staff indicates the regional management has created environments of hostility through their failure act responsibly and respectfully related to their charge as leaders within the region. Some of the issues cited include a failure to treat staff with dignity and respect. The line management in the offices reporting these issues indicates some of the regional management disallows decision making at the line management levels.

## VIII.    Barriers

*Loss of Auto Denial Functions*

- *Impacts ability to perform other eligibility actions*

*ASPEN performance*
- Slow system performance
- Need liaison between Deloitte and the Field Operations
- Release notes for system changes need to be improved.  The release notes are often confusing and released long after the system change occurs
- Need more training on workarounds
- Need more help desk support and management of the ASPEN system
- ASPEN testing process for the system is deficient and includes a process by which testing staff "pass" results to meet testing deadlines
- Recertification proration policy not working correctly
- Newborns – system requires use of file date in birth month even when the application was received after the birth month
- Third HUMADs – some issuing for unknown ASPEN reasons.  ASPEN will not allow closure of case prior to the HUMAD date, impacting timeliness
- EDGs building randomly – we have cases that ASPEN builds EDGs for people in the case who are not requesting benefits.  Recent help desk tickets are 225069, 226711, and 226702
- EMSA cases are being randomly included in Medicaid timeliness numbers erroneously.  Recent help desk ticket 228934
- Approvals for MSP/Family Planning – staff report cases roll from MAGI Adult to MSP categories and as part of that they are then approved for Family Planning which appears a late approval.  The issue may be fixed with September release but could affect timeliness reports
- Add a Person – Timeliness reports pick up the original application date, even though we added the person timely and approved the new EDG for them timely, the old application date made the case look untimely.  The issue may be fixed with September release could impact timeliness

*Human Resources*

- Staff (Line Management, County Directors, and ROMs) indicates more support to manage deficient staff is required.  These staff claim HR and the Union hinders abilities to get their jobs done

- Hiring process is long and cumbersome
- Staff claim to be working "off the books" to get the job done with management awareness
- Staff Turnover
- Supervisors working cases to meet demands not leading
- Supervisors lack time to develop staff or perform leadership functions
- Leave limitations affects staff morale
- ROM directives regarding staff meetings (when they can occur, length, and topics)
- Lack of communication and management support related to personnel actions
- Management reporting expectations unrealistic

*Culture*

- Directives are rarely put in writing. Information is provided verbally on conference calls and when asked for clarification or direction, it is not received; therefore, Regional Operations Managers (ROM) and County Directors (CD) staff are, at times, left to their own discretion to operationalize
- Information is often disseminated late with short deadlines and high demands
- Management in regions and offices staff are doing things differently due to the lack of straight communication from the ROMs and Central Office
- Management decisions are made in a bubble at Central Office without consulting actual staff that has to make it work day-to-day
- Inappropriate personnel action information is shared outside of protocol by the Directors and the information is leaked prior to announcements due to friendships.
- Staff indicates there is a fear of retaliation when concerns are voiced to higher level management
  - Very high level management is rude, inflexible, and not willing to listen to the real issues facing the local office management and assist with resolution
  - ROMs fear the ISD Deputy Director and some CD's fear the ROMS

*Training*

- Policy and Procedures are not useful or user friendly and need improvement in policy clarifications and directives
- Need true refresher training and not reactionary training product due to audit findings

14

- Need more localized training/development of staff with local management flexibility to utilize or meet needs
- New hire training is not realistic aligned with reality of expected job functions
- Need improvement (examples from staff include Streamlined Reporting and Immigration training). The staff cited the training is confusing, inaccurate and could create errors for the agency
- Need more managerial development trainings (not just leadership program)

## IX.    Conclusion

There are inherent issues in the management of the Income Support Division Field Operations. The observations and information suggest a strong need for consistent and meaningful information and direction from Central Office that flows succinctly and consistently throughout the state. There is a need for a more robust communication model with targeted and strategic information sharing and complete monitoring and follow-through at the forefront of ISD operations. The regional management staff lacks a clear roadmap for success from the current leadership and requires improvement and transparency. The data and state of operations in the offices reviewed points to a history of lack of close maintenance in the programs. The management of the eligibility determination approval timeliness, lobby wait times, and individual region management performance with accountability actions has increased since July 2017, but requires ongoing actions that result in consistent improvements and sustained program compliance.

---

[i] Los Lunas/Belen information is consolidated for the purposes of this report.
[ii] SNAP Expedite processing timeframe is 7 days, SNAP Non-Expedite is processed within 30 days, and Medicaid is processed within 45 and 90 days (for certain categories of eligibility).

[iii] Source:  ASPEN BI Tool Report Library approvals for August, September, October, November, and December
[iv] Report Generation includes data from the Business Intelligence Tool for the period December 1 – 31st, 2017.
[v] DHG Activity report dated April 7, 2017
[vi] DHG Activity report dated December 29, 2017
7573562460

*USDA*

United States Department of Agriculture

Office of the Secretary Washington. DC. 20250

8Er' 27

The Honorable Susana Martinez
Office of the Governor 490 Old Santa Fe Trail, Room
400 Santa Fe, New Mexico 87501

Dear Governor Martinez:

Congratulations! I am pleased to inform you that New Mexico will receive a Supplemental Nutrition Assistance Program (SNAP) High Performance Bonus Award of $1,056,711.

New Mexico is among the six States with the highest percentage of timely processed SNAP applications during fiscal year (FY) 2010. This is the first year New Mexico has been recognized in the area of timeliness. New Mexico's application processing timeliness rate for FY 2010 was
97.05 percent. This customer service measure supports the Food and Nutrition Service's (FNS) goal to improve program access.

Section 16(d) of the Food and Nutrition Act of 2008 (7 U.S.C. 2025(d)) authorizes the Secretary to award $48 million in bonuses to State agencies that demonstrate high or improved performance in administering SNAP. In addition to application processing timeliness, FNS identified several other performance areas for FY 2010 awards. They are the best and most improved payment error rates and the best and most improved negative error rates, announced in June 2011, and the best and most improved Program Access Index, also announced today.

I personally commend you for this achievement and encourage you to continue your efforts to maintain New Mexico's excellent application processing timeliness rate and to improve overall administration of SNAP.

Sincerely,

*I*

TW ks toyu4SW*~

Kevin W. Concannon Under Secretary Food, Nutrition, and Consumer Services

Exhibit    6



**USDA**

**United States Department of Agriculture**

Office of the Secretary
Washington, D.C. 20250

SEP 26 2012

The Honorable Susana Martinez
Governor of New Mexico
490 Old Santa Fe Trail, Room 400
Santa Fe, New Mexico 87501

Dear Governor Martinez:

Congratulations! I am pleased to inform you that New Mexico will receive a Supplemental Nutrition Assistance Program (SNAP) High Performance Bonus Award of $885,317.

New Mexico is among the six States with the highest percentage of timely processed SNAP applications during fiscal year (FY) 2011. This is the second consecutive year New Mexico has been recognized in the area of timeliness. New Mexico's application processing timeliness rate for FY 2011 was 98.63 percent. This customer service measure supports the Food and Nutrition Service's (FNS) goal to improve program access.

Section 16(d) of the Food and Nutrition Act of 2008 (7 U.S.C. 2025(d)) authorizes the Secretary to award $48 million in bonuses to State agencies that demonstrate high or improved performance in administering SNAP. In addition to application processing timeliness, FNS identified several other performance areas for FY 2011 awards. They are the best and most improved payment error rates and the best and most improved negative error rates, announced in June 2012, and the best and most improved Program Access Index, also announced today.

I personally commend you for this achievement and encourage you to continue your efforts to maintain New Mexico's excellent application processing timeliness rate and to improve overall administration of SNAP.

Sincerely,

*Kevin W. Concannon*

Kevin W. Concannon
Under Secretary
Food, Nutrition, and Consumer Services

An Equal Opportunity Employer

**Exhibit** 7



**NEW MEXICO HUMAN SERVICES DEPARTMENT**
P.O. Box 2348
Santa Fe, New Mexico 87504-2348

**Susana Martinez**
*Governor*

**Sidonie Squier**
*Secretary*

Media contact: Matt Kennicott (505) 827-6236 or (505) 819-1402
matt.kennicott@state.nm.us

**September 29, 2011**
**For Immediate Release**

## Human Services Department Recognized for Efforts to Provide Timely Nutrition Assistance to Those Most in Need

*First Time New Mexico Has Received Timeliness Recognition*

**SANTA FE –** The New Mexico Human Services Department Income Support Division (HSD/ISD) has received a performance bonus of $1.05 million from the United States Department of Agriculture Food and Nutrition Services (USDA/FNS) for making program improvements to the Supplemental Nutrition Assistance Program (SNAP) to ensure that New Mexicans most in need receive food benefits in a timely and efficient manner. This is the first time New Mexico has received this bonus.

"The Income Support Division works on a daily basis to ensure that they are providing those New Mexicans most in need with the timely support of these safety net services," commented Secretary Sidonie Squier. "This recognition is a testament to the good job the hard working department employees in the field are doing each day to serve the citizens of our state. I look forward to them building upon this success in serving their fellow citizens."

"New Mexico is ranked 4th in the nation in terms of the highest percentage of SNAP applications processed in a timely manner during Fiscal Year 2010. This is the first year our state has been recognized in the area of timeliness, with an application processing timeliness rate of 97.05%," said Ted Roth, Acting Director of the Income Support Division. "We will maintain our excellent and efficient customer service and will continue to build upon this achievement into the future."

Early this summer the Income Support Division was also recognized for other areas of program excellence. That recognition includes Excellence in Program Integrity, Excellence in Financial Management, and Outstanding Performance in Claims Collection.

**Exhibit** ___8___

SNAP Background:

The Supplemental Nutrition Assistance Program (SNAP) helps many low- income households buy the food they need to stay healthy, productive members of society. SNAP benefits are simple to use when purchasing food products at a grocery store.

The Federal Government sets the rules for who qualifies for SNAP benefits and determines the amount of SNAP benefits that can be received each month. The Human Services Department (HSD) will help individuals determine whether or not they qualify for SNAP and the amount of the monthly benefit. This normally depends on how much money they earn each month as well as other assets.

When an individual is approved for SNAP benefits, they are issued an Electronic Benefits Card (EBT). Each month the SNAP allotment is deposited in the EBT account. The card can then be used to purchase food items at most grocery stores.

###



**United States
Department of
Agriculture**

Food and
Nutrition
Service

Southwest Region

1100 Commerce St.
Dallas, TX
75242

⌈JUL 1 6 2012⌋

SUBJECT:    High Performance Bonus Awards

TO:    All State Agencies, Southwest Region
Supplemental Nutrition Assistance Program

FNS has been providing high performance bonuses to State agencies since fiscal year (FY) 2003 in recognition of their achievements in the administration of SNAP. These bonus awards total $48 million annually and require no match; however, for a variety of reasons, many recipient States have failed to draw their bonus awards. As you also know, these bonus awards are available for any State purpose, but Under Secretary Kevin Concannon has encouraged States that received FY 2011 bonus payments to use this funding to continue their efforts to improve administration of SNAP, particularly in the area of program integrity.

Currently, the Food and Nutrition Service (FNS) is holding in excess of $35 million in SNAP high performance bonus award funds issued during the periods FY 2007 through FY 2011. These funds have not been drawn by the States to which they were awarded. This represents an untapped resource to the States at a time of significant fiscal challenge and presents financial management issues for the FNS. To address these issues, FNS has decided to change the method of disbursement for the bonus awards.

Historically, bonus awards have been made available to the States through their normal SNAP state administrative expense letter of credit (LOC). Beginning with the FY 2011 awards, which will be announced prior to September 30, 2012, States will no longer draw these bonuses from the LOC. State bonuses will be disbursed directly to States' bank account via electronic funds transfer (EFT). States receiving FY 2011 bonus awards will need to be made aware of this change in procedure.

We also need to encourage States to draw the outstanding balances of prior years' bonus funds to which they are entitled prior to August 17, 2012. Attached you will find a report detailing by fiscal year and State all undrawn bonus award balances as of July 11, 2012. We ask that States draw prior year balances through normal LOC processes by August 17, 2012. After that date, FNS will begin to disburse remaining balances to the States by EFT.

**Exhibit____9**

ASA Memo                                                           2

If you have any questions concerning this policy, please contact Anne Snell at
214.290.9931 or anne.snell@fns.usda.gov.

DWIGHT CRUDUP
Regional Director
Supplemental Nutrition Assistance Program

Attachment

**USDA**

**United States
Department of
Agriculture**

Food and
Nutrition
Service

Southwest Region

1100 Commerce St.
Dallas, TX
75242

SUBJECT:    Supplemental Nutrition Assistance Program (SNAP) State Performance
Bonus Award

TO:    Marilyn Martinez, Acting Director, Income Support Division, NMHSD
Donna Sandoval, Deputy Director of Administrative Services and
Co-CFO, NMHSD
Ricky Bejarano, State Comptroller

I would like to extend my congratulations to your State Agency for its exemplary
performance in FY 2013 in the area of the highest percentage of timely processed SNAP
applications during fiscal year (FY) 2013.  In recognition of this achievement, your State
will receive a SNAP State Performance Bonus Award in the amount of $1,326,420.

Your State will receive this bonus as an Electronic Funds Transfer (EFT).  In order to
process the EFT we have attached the banking details for your State treasury (or "general
fund") for your confirmation.  Once we have received confirmation of the banking details
and other supporting material described below at the Regional Office, we will initiate the
transfer of funds to that account.

As you may be aware, a recent amendment to the legislation authorizing SNAP has made
the performance bonuses available only for costs of SNAP program activities.
Specifically, Section 16(d)(5) of the Food and Nutrition Act of 2008, as amended by the
Agricultural Act of 2014, requires that:  "A State agency may use a performance bonus
payment received under this subsection only to carry out the program established under
this Act."  That section goes on to give the following examples of allowable performance
bonus use:

(A) technology;

(B) improvements in administration and distribution; and

(C) actions to prevent fraud, waste, and abuse.

While these funds are available for any allowable cost under the SNAP program, we
would hope that you would give the examples provided in the authorizing legislation
your due consideration.

**Exhibit**   10

In order to comply with the requirements of the Food and Nutrition Act of 2008, as amended, your State agency must provide this office with the following documentation within thirty (30) calendar days of receipt of this letter by your agency:

> (A) Your intended use of the performance bonus funds;

> (B) Any updates to your State Plan resulting from your use of these funds (where applicable); and,

> (C) Updates to your FNS-366A (SNAP Program and Budget Summary Statement) resulting from your use of these funds (where applicable).

Attached is a template for your use in identifying how your agency plans to spend this bonus. You may use this template or provide your plan in some other format containing the activities that you will perform with this funding, whether they are reimbursable activities, and the amounts that you intend to spend on each activity. States may revise their bonus expenditure plan as needed as long as the funds are used for allowable SNAP costs. The State should provide these revised expenditure plans to this office.

I would remind you that the use of performance bonus funds on administrative activities eligible for the 50-percent administrative match (including Employment and Training activities other than those that are 100 percent federally funded) will generate a dollar-for-dollar match from USDA in accordance with the established SNAP reporting requirements. I encourage State agency to take advantage of this opportunity to effectively double the amount of this performance bonus by utilizing the funds on reimbursable expenses.

If you have any questions, please contact Dwight Crudup, Regional SNAP Division Director, at (214) 290-9920 or Dwight.crudup@fns.usda.gov.

Sincerely,

WILLIAM LUDWIG
Regional Administrator

Enclosures



**United States
Department of
Agriculture**

Food and
Nutrition
Service

Southwest Region

1100 Commerce St.
Dallas, TX
75242

SUBJECT:   Supplemental Nutrition Assistance Program (SNAP) State Performance
Bonus Award

TO:   Marilyn Martinez, Acting Director, Income Support Division, NMHSD
Donna Sandoval, Deputy Director of Administrative Services and
Co-CFO, NMHSD
Ricky Bejarano, State Comptroller

I would like to extend my congratulations to your State Agency for its exemplary
performance in FY 2013 in the area of the highest percentage of timely processed SNAP
applications during fiscal year (FY) 2013. In recognition of this achievement, your State
will receive a SNAP State Performance Bonus Award in the amount of $1,326,420.

Your State will receive this bonus as an Electronic Funds Transfer (EFT). In order to
process the EFT we have attached the banking details for your State treasury (or "general
fund") for your confirmation. Once we have received confirmation of the banking details
and other supporting material described below at the Regional Office, we will initiate the
transfer of funds to that account.

As you may be aware, a recent amendment to the legislation authorizing SNAP has made
the performance bonuses available only for costs of SNAP program activities.
Specifically, Section 16(d)(5) of the Food and Nutrition Act of 2008, as amended by the
Agricultural Act of 2014, requires that: "A State agency may use a performance bonus
payment received under this subsection only to carry out the program established under
this Act." That section goes on to give the following examples of allowable performance
bonus use:

(A) technology;

(B) improvements in administration and distribution; and

(C) actions to prevent fraud, waste, and abuse.

While these funds are available for any allowable cost under the SNAP program, we
would hope that you would give the examples provided in the authorizing legislation
your due consideration.

**Exhibit** __11__

New Mexico Application Timeliness                                                    2

In order to comply with the requirements of the Food and Nutrition Act of 2008, as amended, your State agency must provide this office with the following documentation within thirty (30) calendar days of receipt of this letter by your agency:

> (A) Your intended use of the performance bonus funds;

> (B) Any updates to your State Plan resulting from your use of these funds (where applicable); and,

> (C) Updates to your FNS-366A (SNAP Program and Budget Summary Statement) resulting from your use of these funds (where applicable).

Attached is a template for your use in identifying how your agency plans to spend this bonus. You may use this template or provide your plan in some other format containing the activities that you will perform with this funding, whether they are reimbursable activities, and the amounts that you intend to spend on each activity. States may revise their bonus expenditure plan as needed as long as the funds are used for allowable SNAP costs. The State should provide these revised expenditure plans to this office.

I would remind you that the use of performance bonus funds on administrative activities eligible for the 50-percent administrative match (including Employment and Training activities other than those that are 100 percent federally funded) will generate a dollar-for-dollar match from USDA in accordance with the established SNAP reporting requirements. I encourage State agency to take advantage of this opportunity to effectively double the amount of this performance bonus by utilizing the funds on reimbursable expenses.

If you have any questions, please contact Dwight Crudup, Regional SNAP Division Director, at (214) 290-9920 or Dwight.crudup@fns.usda.gov.

Sincerely,

WILLIAM LUDWIG
Regional Administrator

Enclosures



**United States Department of Agriculture**

Office of the Secretary
Washington, D.C. 20250

SEP 29 2014

The Honorable Susana Martinez
Governor of New Mexico
490 Old Santa Fe Trail, Room 400
Santa Fe, New Mexico  87501

Dear Governor Martinez:

Congratulations!  I am pleased to inform you that New Mexico will receive a Supplemental Nutrition Assistance Program (SNAP) Performance Bonus Award of $1,326,420.

New Mexico is among the six States with the highest percentage of timely processed SNAP applications during fiscal year (FY) 2013.  This marks the fourth consecutive year New Mexico has been recognized in the area of timeliness.  New Mexico's application processing timeliness rate for FY 2013 was 98.64 percent.  This customer service measure supports the Food and Nutrition Service's (FNS) goal to improve program access.

Section 4021 of the Agricultural Act of 2014 requires high performance bonus payments to be used only for SNAP-related expenses such as investments in technology, improvements in administration and distribution, and actions to prevent fraud, waste, and abuse.  I encourage States that receive such bonuses to use these funds to improve program administration, particularly in the area of program integrity.  It is our joint responsibility to ensure that taxpayer dollars are spent wisely.  Reinvesting performance bonus funds for integrity initiatives provides a return on this valuable investment and supports our priorities for program integrity, program access, and customer service.

I understand New Mexico recently experienced problems with timely processed applications for FY 2014.  Although this issue is currently being addressed, I encourage you to use some of your bonus award funds to continue improvements in this area.

Section 16(d) of the Food and Nutrition Act of 2008 (7 U.S.C. 2025(d)) authorizes the Secretary to award $48 million in bonuses to State agencies that demonstrate high or improved performance in administering SNAP.  In addition to application processing timeliness, FNS identified several other performance areas for FY 2013 awards.  They are the best and most improved payment error rates and the best and most improved case and procedural error rates, announced in June 2014, and the best and most improved Program Access Index, also announced today.

**Exhibit**  12

An Equal Opportunity Employer

The Honorable Susana Martinez
Page 2

I personally commend you for this achievement and encourage you to continue your efforts to maintain New Mexico's excellent application processing timeliness rate and to improve overall administration of SNAP.

Sincerely,

Kevin W. Concannon
Under Secretary
Food, Nutrition, and Consumer Services

New Mexico Human Services Department
Income Support Division
Date:  9/26/2016

## Corrective Action Plan

**Name and title of person who has overall responsibility for this plan:**
Brent Earnest, Secretary, NM Human Services Department

### Finding #1:

Certifying households for 3 months without determining household eligibility in violation of Sections 11(e)(3) and (4) of the Act, 7 CFR 273.12(a)(5)(iii)(D),273.14(a), 273.14(b)(3).

**Description of deficiency and root cause:**
The practice of the three-month certification was implemented in June of 2014 in response to an order from Federal District Court Judge Gonzales (Doc. 500) in May 2014.  Three month certifications are provided when a SNAP recipient doesn't complete the Interim Report (IR) or Recertification (PR) process.  To avoid what would be considered to be a procedural closure under the court's order, HSD has granted an additional three months of benefits in a short-term certification period.  In some instances, the case is certified for three months without determining household eligibility, without conducting an interview, or without obtaining appropriate verification.  Recently, HSD has found that, in some instances, a three-month certification is maintained even though a SNAP recipient has completed the IR or PR process within the current certification period.  The three-month certification process requires ISD field staff to work around the properly designed, rules-based ASPEN system.

**Magnitude and geographic extent of deficiency and data sources used:**
The three-month certification process was implemented statewide beginning in June 2014.  HSD has obtained a report[1] from the ASPEN system to identify the number of cases that have received a three-month certification.  HSD identified that as of June 2016, there are an estimated 63,478 cases that have received a three-month certification at least one time since June 2014.  A case could have one or more three-month certification periods.  Based on the report referenced above, three-month certifications were issued 94,011 times.  As of August 2016, the total dollar amount for the cases placed on a three-month certification is $88,067,532 as reported in Report ASPEN00117025.  As of July 12, 2016, HSD estimates that there are 6,879 cases with an active three-month certification.  HSD will update the information in Report ASPEN00117025_unduplicated to identify the magnitude when the Secretary's directive is issued as described in step 5 below.

---

[1] ASPEN00117025_unduplicated – Report has been provided to FNS.

**Exhibit** _13_

**Complete description of activity developed to resolve deficiency:** In order to stop the
three-month certification process, ISD will cease the practice of certifying cases for three
months and only certify cases once the interim report or recertification process is
completed in accordance with CFR.   To resolve this finding, the Department will take
the following steps:

1. Issued a letter to Plaintiff's counsel informing them of a proposed change in the
   processing of SNAP applications and cases to eliminate the three-month
   certification process and address concerns raised by FNS.  HSD Cabinet Secretary
   Brent Earnest completed this action on July 5, 2016.  See Attachment A.
2. Filed a motion with Federal court to amend the May 2014 order (Doc. 500).  The
   motion proposed amending sections of the May 2014 order that result in processes
   that conflict with the Code of Federal Regulations (CFR) for the SNAP program.
   The Department's Office of General Counsel (OGC) completed this action on
   July 6, 2016. See Attachment B. Plaintiffs filed their response on July 19, 2016.
   HSD has requested twice that the hearing on the motion be expedited.  The
   hearing was held on August 18, 2016.
3. Formalize the Department's individualized review process to include a checklist
   for ISD field staff.  The individualized eligibility review checklist was sent to
   FNS for review and approval on July 22, 2016.  The process is sent to FNS
   on August 26, 2016.  The final process and checklist will be sent to Plaintiff's
   counsel after FNS and HSD create a process approved by FNS.  HSD will ask
   Plaintiffs for a single, expedited review of the process and checklist.
4. Given modification of the May 2014 federal court order (Doc. 500) following the
   August 18, 2016 hearing, the HSD OOS will issue a directive to cease the three-
   month certification process.  The directive will be issued by Cabinet Secretary
   Brent Earnest no later than September 1, 2016.  The directive will be sent to FNS
   the same day the directive is issued to staff.
5. Develop a targeted training for ISD staff to include the proper procedures for
   processing cases when an IR or PR is not able to be processed due to missing
   information or actions required by the SNAP recipient.  The training will be
   mandatory for all ISD staff.  Lee Cabeza de Vaca, ISD Training Staff Manager,
   will begin development of the training on July 25, 2016.  Development of the
   training will be completed by August 12, 2016.  Shanita Harrison, ISD Deputy
   Director, will review the training by August 19, 2016.  The training will be sent to
   FNS for review on August 22, 2016.  Based on feedback received, the training
   will be updated by September 27, 2016.  The training will be sent to Plaintiff's
   counsel for a single review, pending FNS' approval.  HSD will ask Plaintiffs for
   an expedited review. The training will be delivered to ISD staff starting October
   4, 2016, and will be completed by October 30, 2016.  The training will be
   conducted in person.  ISD Regional Office Managers and Bureau Chiefs will
   ensure all staff attend the training and sign acknowledgements of attendance and
   comprehension.
6. HSD will identify cases due for renewal through the IR/PR report and also the
   caseload search inquiry in ASPEN.  When an eligibility determination cannot be
   made due to delay of the customer, HSD will take the action to complete an

2

individualized review to properly close the case. In the instance where all required documentation and actions have been completed by the customer, HSD will process the renewal for the correct certification period.

7. Upon issuance of the Secretary's directive referred to in step 4 above and no later than October 31, 2016, ISD staff will process all cases in accordance with the procedure identified in step 3 above. No new three-month certifications will be issued and HSD estimates that all three-month certification instances will be eliminated 90 days after the start of processing.

**Tasks/steps, time frames and person(s) responsible for each task/step:**
Timeframes for completing the steps are identified in each step above. At this time, HSD is unable to estimate the completion date for all steps because some steps are outside of the control of the department. The Department will continue to update FNS on a weekly basis to further refine the final date for the entire CAP.

**Description of plan to monitor implementation tasks/steps and time frames:**
Sean Pearson, Deputy Secretary, will be responsible to ensure that the tasks, steps and time frames are met. Natalie Campbell, Assistant General Counsel is responsible for tracking the communication timeframes with Plaintiffs. Mr. Pearson and Ms. Campbell will review progress with Brent Earnest, Cabinet Secretary, weekly. HSD staff will review progress with FNS weekly during scheduled teleconferences or on-site visits by FNS staff. All reports utilized in the course of executing the corrective action identified above will be shared with FNS.

**Description of plan to evaluate effectiveness of activity to resolve deficiency:**
On a monthly basis, the ISD Quality Assessment Bureau (QAB) will review a report[2] to track progress towards eliminating the three-month certification cases.

Any cases receiving a new three-month certification will be reviewed by QAB. Cases with a new three-month certification period will be reported monthly to HSD, OGC, OOS and FNS. Cases that aren't processed correctly or aren't completed within the appropriate timeframe will be sent to a Regional Operations Manager (ROM) for review. ROMs will address issues with ISD staff and escalate issues as necessary. Appropriate actions could include additional training or the implementation of a second party review process. This step will continue until there are no cases in a three-month certification period.

Ongoing reviews by field office Line Managers will include monthly case reviews that include IRs and PRs to ensure correct processing. The Secretary's directive will include a requirement that each Line Manager review a minimum of fifteen IRs and PRs combined during their monthly case reviews. To properly track the case type, an additional column will be added to the case review tally sheet. This step will remain in place until all of FNS' findings identified in the May 27, 2016 letter are resolved. Shanita Harrison, ISD Deputy Director, will initiate this step with the field offices once the Secretary's directive is issued.

---

[2] ASPEN00117025_unduplicated – Report has been provided to FNS

**Expected outcome:**

HSD expects that with the issuance of the directive and the training, staff will cease to override the certification periods. The Department expects to see a small number of cases certified outside of the standard timeframes for a period, but this number will decrease as staff are reminded and re-trained to properly process IRs and PRs. All three-month certification periods should be eliminated 90 days after processing begins.

**As of the date of this plan/update, the status of performing tasks/steps, meeting time frames and effectiveness of initiative to resolve deficiency:**

As of September 26, 2016, steps 1 through 4 have been completed. All remaining steps are on track to be completed in accordance with the timeframes established above.

## Finding #2:

Incorrectly pending SNAP applications beyond 60 days from the date of initial application instead of closing or denying the cases in violation of 7 CFR 273.2(g)(3), 273.2(h)(2), 273.2(h)(4)(iii).

**Description of deficiency and root cause:**
The practice of pending applications beyond 60 days from the date of the initial application instead of denying the application began with the implementation of an order from Federal District Court Judge Gonzales (Doc. 500) in May 2014. Doc. 500 ¶4 orders HSD to immediately suspend the practice of denying SNAP and Medicaid benefits for any other procedural reasons, such as failing to attend an interview or failing to provide proof of income, until the backlog is addressed. In an effort to comply with the Court's order, applications are left pending beyond 60 days when an application cannot be processed due to a lack of interview and/or verification. The application remains pending until the verification is provided and/or the applicant completes the interview. Subsequent processing of pending applications can result in retroactive benefits as identified in Finding #5.

**Magnitude and geographic extent of deficiency and data sources used:**
As of the July 2016 report to the court, there are approximately 11,500 SNAP applications pending beyond the 60th day.[3] Pending applications are also tracked by each field office using an overdue application tracking report.

**Complete description of activity developed to resolve deficiency:**

1. Filed a motion with Federal court to amend the May 2014 order (Doc. 500). The motion proposed amending sections of the May 2014 order that result in processes that conflict with the Code of Federal Regulations (CFR) for the SNAP program. The Department's Office of General Counsel (OGC) completed this action on July 6, 2016. See Attachment B. Plaintiffs filed their response on July 19, 2016. HSD has requested twice that the hearing on the motion be expedited. The hearing was held on August 18, 2016.

2. Formalize the Department's individualized review process to include a checklist for ISD field staff. The individualized eligibility review checklist was sent to FNS for review and approval on July 22, 2016. The process will be sent to FNS on August 26, 2016. The process and checklist will be sent to Plaintiff's counsel after FNS and HSD collaborate and the process is approved by FNS. HSD will ask Plaintiffs for a single, expedited review of the process and checklist.

3. Given modification of the May 2014 federal court order (Doc. 500) following the August 18, 2016 hearing, the HSD OOS will issue a directive to deny an application or close a case in accordance with CFR and after an individualized review is completed. The directive will be issued by Cabinet Secretary Brent

---

[3] Monthly Application Report July 2016 – Report has been provided to FNS

Earnest no later than September 1, 2016. The directive will be sent to FNS the same day the directive is issued to staff.

4. Develop a targeted training for ISD staff regarding the individualized review process. The training will be mandatory for all ISD staff. Lee Cabeza de Vaca, ISD Training Staff Manager, will begin development of the training on July 25, 2016. Development of the training will be completed by August 12, 2016. Shanita Harrison, ISD Deputy Director, will review the training by August 19, 2016. The training will be sent to FNS for review on August 22, 2016. Based on feedback received, the training will be updated by September 27, 2016. The training will be sent to Plaintiff's counsel for a single review, pending FNS' approval. HSD will ask Plaintiffs for an expedited review. The training will be delivered to ISD staff starting October 4, 2016, and will be completed by October 30, 2016. The training will be conducted in person. ISD Regional Office Managers and Bureau Chiefs will ensure all staff attend the training and sign acknowledgements of attendance and comprehension.

5. HSD has identified a team of individuals who will be tasked with executing the process specified in step 2 above for overdue pending SNAP applications. The team will consist of 60 members with back-ups and team captains. The identification of this Tiger Team was completed by Shanita Harrison, ISD Deputy Director, on July 22, 2016.

   Upon issuance of the Secretary's Directive referred to in step 3 above and no later than October 31, 2016, the Tiger Team will begin processing of all overdue pending applications in accordance with the process identified in step 2 above. ISD field offices and the Customer Service Center will also process overdue pending applications in accordance with the process identified in step 2 above. HSD estimates that it will take six months to complete processing of all overdue pending applications.

7. Modify the ASPEN system to:
   a. Only allow management staff the ability to access the override screens in ASPEN.

8. Line Managers and County Directors will monitor the case load inquiry report in ASPEN daily to identify applications that are pending and attempt to make an eligibility determination. Applications are tracked from the 25th day pending to the 30th day pending. Offices also continue to monitor their electronic data management (EDM) inbox queues for any new incoming documents or actions on all cases. Applications that continue to pend will be monitored through the 30th day to ensure that on the 30th day, the Notice of Case Action correctly identifies the reason for the delay in processing. The Notice of Case Action is automatically generated by the ASPEN system and will be sent on the evening of the 30th day to the SNAP applicant. On the 29th day the County Director will submit a report to the Regional Operations Manager explaining the reason the application remains pending.

9. Line Managers and County Directors will monitor the application tracking report daily to identify applications that are pending on the 30th day. On the 30th day, or next working day if on a weekend or holiday, ISD staff will conduct an

individualized review and either approve or deny the application in accordance with the process identified in step 2 above.

**Tasks/steps, time frames and person(s) responsible for each task/step:**
Timeframes for completing the steps are identified in each step above. At this time, HSD is unable to estimate the completion date for all steps because some steps are outside of the control of the department. The Department will continue to update FNS on a weekly basis to further refine the final date for the entire CAP.

**Description of plan to monitor implementation tasks/steps and time frames:**
Sean Pearson, Deputy Secretary, will be responsible to ensure that the tasks, steps and time frames are met. Natalie Campbell, Assistant General Counsel is responsible for tracking the communication timeframes with Plaintiffs. Mr. Pearson and Ms. Campbell will review progress with Brent Earnest, Cabinet Secretary, weekly. HSD staff will review progress with FNS weekly during scheduled teleconferences or on-site visits by FNS staff. All reports utilized in the course of executing the corrective action identified above will be shared with FNS.

**Description of plan to evaluate effectiveness of activity to resolve deficiency:**
To evaluate the effectiveness of the actions taken above, QAB will review any application processed past the 60th day. QAB's review will consist of applications with an application date subsequent to the Secretary's directive. QAB will utilize the monthly timeliness report[4] for the review and require corrective action from the ISD field office for applications that are processed late. Corrective action will be reviewed, approved, and tracked by the appropriate ISD Regional Operations Manager and Shanita Harrison, ISD Deputy Director.

On a weekly basis, the ISD Quality Assessment Bureau (QAB) will review a report to determine the number of remaining applications that require processing by the Tiger Team. The weekly report will be shared with the HSD OGC, HSD OOS, and FNS. The review will also consist of a random check of denied applications to ensure ISD staff processed the application in accordance with the process identified in step 2 above. Applications that aren't processed correctly will be sent to ROMs for review. ROMs will take appropriation action and escalate issues as necessary. Appropriate actions could include additional training or the implementation of a second party review process.

**Expected outcome:**
HSD expects that with the issuance of the Secretary's directive and implementation of the ASPEN changes, applications will be processed appropriately in accordance with CFR.

**As of the date of this plan/update, the status of performing tasks/steps, meeting time frames and effectiveness of initiative to resolve deficiency:**
As of September 26, 2016, steps 1, 2, 3 and 5 have been completed. All remaining steps are on track to be completed in accordance with the timeframes established above.

---

[4] SNAP Non-Expedite Report

### Findings #3 & 4:

Incorrectly pending (HSD refers to these cases as "suspended") SNAP cases at recertification if the client fails to comply with recertification requirements in violation of 7 CFR 273.14(e)(2).

Incorrectly pending (HSD refers to these cases as "suspended") SNAP cases for changes resulting in ineligibility or if client fails to comply with interim reporting requirements in violation of 7 CFR 273.12(c)(2)(i), 273.12(a)(5)(iii)(D).

**Description of deficiency and root cause:**
The practice of suspending SNAP cases at interim report and recertification if the recipient fails to comply with interim report or recertification requirements began with the implementation of an order from Federal District Court Judge Gonzales (Doc. 500) in May 2014. Doc. 500 ¶7 orders HSD to immediately suspend the automatic closure function in its computer system to ensure that, for at least for the time being, no more families are terminated from SNAP and made to start the application process anew without an individualized review by a caseworker to determine if the family has fulfilled its interim report or recertification obligations and remains eligible. As a result, when an interim report or recertification cannot be processed due to a lack of interview, verification, or submission of the renewal packet or interim report, the SNAP case remains suspended until the verification is provided or the applicant completes the necessary action.

**Magnitude and geographic extent of deficiency and data sources used:**
As of July 2016, there are approximately 27,973 SNAP cases that are in a suspended state and are considered to be an overdue interim report or recertification.[5] Overdue interim reports and recertifications are tracked by each field office using an overdue Interim Report/Periodic Review tracking report that is generated from ASPEN.

**Complete description of activity developed to resolve deficiency:**

1. Filed a motion with Federal court to amend the May 2014 order (Doc. 500). The motion proposed amending sections of the May 2014 order that result in processes that conflict with the Code of Federal Regulations (CFR) for the SNAP program. The Department's Office of General Counsel (OGC) completed this action on July 6, 2016. See Attachment B. Plaintiffs filed their response on July 19, 2016. HSD has requested twice that the hearing on the motion be expedited. The hearing was held on August 18, 2016.
2. Formalize the Department's individualized review process to include a checklist for ISD field staff. The individualized eligibility review checklist was sent to FNS for review and approval on July 22, 2016. The process will be sent to FNS on August 26, 2016. The process and checklist will be sent to Plaintiff's counsel

---

[5] Overdue Renewal Report July 2016

after FNS and HSD collaborate to finalize a process that is approved by FNS. HSD will ask Plaintiffs for a single, expedited review of the process and checklist.

3. Given modification of the May 2014 federal court order (Doc. 500) following the August 18, 2016 hearing, the HSD OOS will issue a directive to deny an application or close a case in accordance with CFR and after an individualized review is completed. The directive will be issued by Cabinet Secretary Brent Earnest no later than September 1, 2016. The directive will be sent to FNS the same day the directive is issued to staff.

4. Develop a targeted training for ISD staff regarding the individualized review process. The training will be mandatory for all ISD staff. Lee Cabeza de Vaca, ISD Training Staff Manager, will begin development of the training on July 25, 2016. Development of the training will be completed by August 12, 2016. Shanita Harrison, ISD Deputy Director, will review the training by August 19, 2016. The training will be sent to FNS for review on August 22, 2016. Based on feedback received, the training will be updated by September 27, 2016. The training will be sent to Plaintiff's counsel for a single review, pending FNS' approval. HSD will ask Plaintiffs for an expedited review. The training will be delivered to ISD staff starting October 4, 2016, and will be completed by October 30, 2016. The training will be conducted in person. ISD Regional Office Managers and Bureau Chiefs will ensure all staff attend the training and sign acknowledgements of attendance and comprehension.

5. HSD has identified a team of individuals who will be tasked with executing the process identified in step 2 above. The team will consist of 60 team members with back-ups and team captains. The identification of the Tiger Team members was completed by Shanita Harrison, ISD Deputy Director, on July 22, 2016.

6. Upon issuance of the Secretary's Directive referred to in step 3 above and no later than October 31, 2016, the Tiger Team will begin processing all overdue recertifications in accordance with the process identified in step 2 above. ISD field offices and the Customer Service Center will also process overdue recertifications in accordance with the process identified in step 2 above. HSD estimates that it will take six months to complete this step.

7. Line Managers and County Directors will monitor the IR/PR report monthly. Every business day ISD field offices process IRs and PRs. In the event a case has an outstanding IR, the household will be sent an Interim Report Warning Notice ten calendar days prior to the end of the certification period. HSD will continue to monitor the case for processing. If the case has not been determined for ongoing eligibility, HSD will take action to conduct an individualized review starting the last day of the certification period.


**Tasks/steps, time frames and person(s) responsible for each task/step:**
Timeframes for completing the steps are identified in each step above. HSD is unable to estimate by what date all steps will be completed because some steps are outside of the control of the department.

**Description of plan to monitor implementation tasks/steps and time frames:**
Sean Pearson, Deputy Secretary, will be responsible to ensure that the tasks, steps and time frames are met. Natalie Campbell, Assistant General Counsel is responsible for tracking the communication timeframes with Plaintiffs. Mr. Pearson and Ms. Campbell will review progress with Brent Earnest, Cabinet Secretary, weekly. HSD staff will review progress with FNS weekly during scheduled teleconferences or on-site visits by FNS staff. All reports utilized in the course of executing the corrective action identified above will be shared with FNS.

**Description of plan to evaluate effectiveness of activity to resolve deficiency:**
On a monthly basis, QAB will review a report to determine the number of remaining overdue recertifications that require processing. The monthly report will be shared with the HSD OGC, HSD OOS, and FNS. The review will also consist of a random check of cases to ensure ISD staff processed the application in accordance with the process identified in step 2 above. Recertifications that aren't processed correctly will be sent to ROMs for review. ROMs will take appropriate action and escalate issues as necessary. Appropriate actions could include additional training or the implementation of a second party review process.

QAB will review any recertification processed late and require corrective action from the ISD field office. Corrective action will be reviewed, approved, and tracked by the appropriate ISD Regional Office Manager and Shanita Harrison, ISD Deputy Director.

**Expected outcome:**
HSD expects that with the issuance of the Secretary's directive and training, interim reports and recertifications will be processed appropriately in accordance with CFR.

**As of the date of this plan/update, the status of performing tasks/steps, meeting time frames and effectiveness of initiative to resolve deficiency:**
As of September 26, 2016, steps 1 through 3 have been completed. All remaining steps are on track to be completed in accordance with the timeframes established above.

### Finding #5:

Providing retroactive benefits to the month of application to incorrectly pended applications and "suspended" cases in violation of 7 CFR 273.2(h)(2)(ii), 273 .2(h)(3)(ii), 273 .2(h)(4)(iii), 273.14(e)(2)-(3).

**Description of deficiency and root cause:**

The practice of providing retroactive benefits was implemented in June 2014 in order to comply with a federal court order from Federal District Court Judge Gonzales (Doc. 500). As was indicated in Findings 2 through 4, Doc. 500 removed the ability for HSD to deny applications or close SNAP cases at interim report or recertification based on procedural reasons until an individualized review was completed. The intention of removing the capability to deny or close in accordance with the Federal program requirements was that individuals would continue receiving benefits until the backlog was addressed. Knowing that it was in violation of the CFR to continue household benefits, when the recipient did not comply with the requirements, HSD agreed to issue retroactive benefits to the applicant or recipient if contact was made to complete the application or renewal requirements or provided verification.

In October 2015, as part of ISD's review of the pending applications and overdue renewal and interim reports, guidance was provided to staff by ISD management on how to conduct an individualized review of the pending and suspended cases when the individual makes contact. The contact is typically made by the individual submitting a new application, Interim Report or recertification form. When this contact is made, as part of the interview, the staff were to first review the case and determine if ISD met all of the federal application or recertification requirements within the required timeframes and to discuss with the individual the reason they did not comply with their obligations. If it was determined ISD did not meet their requirements, the application or recertification was processed from the original application date or the case was reinstated to the first day of the month following the end of the certification period. If it was determined that ISD met their obligations and the individual stated they did not complete their obligations, the pending application or suspended case was denied or closed and the new application registered on the day it was received.

**Magnitude and geographic extent of deficiency and data sources used:**

The practice of providing retroactive benefits was implemented statewide in June 2014 in order to comply with Doc. 500. As of June 2016, it is estimated that $4,608,000 was issued in retroactive SNAP benefits for suspended cases. HSD has expunged[6] $39,310 in SNAP benefits. For applications, it is estimated that $6,586,000 has been issued. HSD has expunged $105,100 in SNAP benefits. These figures are from the ad-hoc report titled, "*2014-2016_Applications_DHGRelated_RetroBenefits_Initial Application.*" This report has been provided to FNS.

---

[6] HSD expungement processes are the same that are defined in H.R. 2419, the Food, Conservation, and Energy Act of 2008, also known as the Farm Bill of 2008.

**Complete description of activity developed to resolve deficiency:**
The issuance of retroactive benefits to incorrectly pended applications or suspended cases will cease upon completion of all steps identified in Findings 1 through 4.


**Tasks/steps, time frames and person(s) responsible for each task/step:**
Timeframes for completing the steps are identified in each step above. At this time, HSD is unable to estimate the completion date for all steps because some steps are outside of the control of the department. The Department will continue to update FNS on a weekly basis to further refine the final date for the entire CAP.


**Description of plan to monitor implementation tasks/steps and time frames:**
Sean Pearson, Deputy Secretary, will be responsible to ensure that the tasks, steps and time frames are met. Natalie Campbell, Assistant General Counsel is responsible for tracking the communication timeframes with Plaintiffs. Mr. Pearson and Ms. Campbell will review progress with Brent Earnest, Cabinet Secretary, weekly. HSD staff will review progress with FNS weekly during scheduled teleconferences or on-site visits by FNS staff.


**Description of plan to evaluate effectiveness of activity to resolve deficiency:**
HSD believes that by implementing the activities to resolve the deficiencies in Findings 1 through 4, retroactive benefits will no longer be issued. The Business Intelligence (BI) timeliness report for approved cases will allow HSD to track the benefits given retroactively. The field staff currently validates these reports to identify cases processed out of timeframes as a result of the court order. This process will stay in place to track retroactive benefits. QAB will monitor the BI timeliness reports and request justification for any case processed past the 30th day.


**Expected outcome:**
ISD expects that with the issuance of the directive and the individualized review of pending SNAP applications and overdue interim reports and recertifications to document the applicant/recipient did not meet their obligation, the issuance of retroactive benefits will decrease dramatically. ISD expects the issuance of retroactive benefits will continue only when it is determined the agency is at fault for the delay in determination.


**As of the date of this plan/update, the status of performing tasks/steps, meeting time frames and effectiveness of initiative to resolve deficiency:**
The status of tasks and steps is stated in Findings 1 through 4.

12

### Findings 6, 7, & 8

Certifying applications without conducting an interview in violation of 7 CFR 273.2(d), 273.2(e), 273.14(a), 273.14(b)(3).

Certifying applicants and households without appropriate verification to determine eligibility and appropriate benefits in violation of 7 CFR 273.2(f)(2), 273.2(f)(4), 273.2(f)(8), 273.10(a), 273.10(c)(l).

Failure to maintain accurate case records to allow FNS to determine if HSD is incompliance with program requirements in violation of Section 11(a)(3) of the Act

**Description of deficiency and root cause:**
The practice of certifying households without conducting an interview or appropriate verification to determine eligibility was implemented in June of 2014 in response to an order issued by Federal District Court Judge Gonzales (Doc. 500). The practice is further described in Finding #1.

HSD is maintaining accurate case records in accordance with Section 11(a)(3) of the Act. As HSD implements the corrective action identified in the previous findings, data within HSD's eligibility system, ASPEN, will be easier to retrieve and understand.

These three findings coincide with Finding #1 regarding the three-month certification.

In order to maintain the accurate data and to ensure integrity in the system, HSD has created change requests to Deloitte for system updates. HSD is proposing to flag the dates to ensure the workers do not back date information in ASPEN. HSD will limit the override screen to only management staff. ASPEN already has some functions that require a case to be reviewed by a manager. An example of this is any issuance over $1,000.

**Magnitude and geographic extent of deficiency and data sources used:**
Please see Finding #1.

**Complete description of activity developed to resolve deficiency:**
Please see Finding #1.

**Tasks/steps, time frames and person(s) responsible for each task/step:**
Please see Finding #1.

**Description of plan to monitor implementation tasks/steps and time frames:**
Please see Finding #1.

**Description of plan to evaluate effectiveness of activity to resolve deficiency:**
Please see Finding #1.

**Expected outcome:**
Please see Finding #1.

**As of the date of this plan/update, the status of performing tasks/steps, meeting time frames and effectiveness of initiative to resolve deficiency:**
Please see Finding #1

14

Appendix A – Table of Corrective Action Steps

| Finding Number | Corrective Action Step | Owner | Due Date | Status |
|---|---|---|---|---|
| 1, 8 | Issued a letter to Plaintiff's counsel informing them of a proposed change in the processing of SNAP applications and cases to eliminate the three-month certification process and address concerns raised by FNS. | Secretary Earnest | 07/05/2016 | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Filed a motion with Federal court to amend the May 2014 order (Doc. 500). The motion proposed amending sections of the May 2014 order that result in processes that conflict with the Code of Federal Regulations (CFR) for the SNAP program. | Christopher Collins | 07/06/2016 | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Formalize the Department's individualized review process to include a checklist for ISD field staff. | Sean Pearson | 07/22/2016 | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Send individualized review process to Plaintiff's counsel. | Natalie Campbell | After FNS review and approval. | Complete |

Appendix A – Table of Corrective Action Steps

| Finding Number | Corrective Action Step | Owner | Due Date | Status |
|---|---|---|---|---|
| 1, 2, 3, 4, 5, 6, 7, 8 | Send individualized review process to FNS. | Sean Pearson | 07/22/2016 | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Court hearing on motion. | Federal District Court | 08/18/2016 | Complete |
| 1, 8 | Develop a procedure for the processing of cases that are currently in a three-month certification period. | Shanita Harrison | 07/22/2016 | Complete |
| 1, 8 | Send procedure to Plaintiff's counsel. | Natalie Campbell | After FNS review and approval. | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Issue a directive to cease the three-month certification process, pending of applications beyond 30 days, and to ensure cases are closed in accordance with CFR. | Secretary Earnest | 09/01/2016 | Complete |

16

Appendix A – Table of Corrective Action Steps

| Finding Number | Corrective Action Step | Owner | Due Date | Status |
|---|---|---|---|---|
| 1, 2, 3, 4, 5, 6, 7, 8 | Develop a targeted training for ISD staff to include:<br>• the proper procedures for processing cases when an IR or PR is not able to be processed due to missing information or actions that are required by the SNAP recipient<br>• the individualized review process | Lee Cabeza de Vaca | 08/19/2016 | In Progress |
| 1, 2, 3, 4, 5, 6, 7, 8 | Send training to Plaintiff's counsel. | Natalie Campbell | After FNS review and approval. | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Send training to FNS for review. | Sean Pearson | 08/22/2016 | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Update training based on feedback received from FNS and Plaintiff's counsel. | Lee Cabeza de Vaca | 09/27/2016 | In Progress |
| 1, 2, 3, 4, 5, 6, 7, 8 | Contingent upon issuance of the Secretary's directive, deliver training to ISD staff. | Lee Cabeza de Vaca | 10/04/2016 through 10/30/2016 | |

Appendix A – Table of Corrective Action Steps

| Finding Number | Corrective Action Step | Owner | Due Date | Status |
|---|---|---|---|---|
| 1, 2, 3, 4, 5, 6, 7, 8 | Identify a team of individuals (Tiger Team) who execute the procedure identified in step 4. | Shanita Harrison | 07/22/2016 | Complete |
| 1, 2, 3, 4, 5, 6, 7, 8 | Upon issuance of Secretary's directive and no later than October 31, 2016, ISD staff will begin processing all cases in accordance with the procedure identified. All three-month certification instances will be eliminated 90 days after issuance of the Secretary's directive. All overdue pending applications will be processed within six months of when processing begins. All overdue interim reports and recertifications will be processed within six months of when processing begins. | Shanita Harrison | 04/30/2017 | |

Appendix A – Table of Corrective Action Steps

19

| Finding Number | Corrective Action Step | Owner | Due Date | Status |
|---|---|---|---|---|
| 2 | Send proposed change to the Notice of Delay to Plaintiff's counsel for review. | Natalie Campbell | 07/29/2016 | Complete |
| 2 | Modify the ASPEN system to only allow overrides to be performed by supervisors. | Vida Tapia-Sanchez | 10/31/2016 | In Progress |
| 2 | Line Managers and County Directors will monitor the application tracking report daily to identify applications that are pending and attempt to make an eligibility determination. | Line Managers and County Directors | Ongoing | |
| 3, 4, 5, 6, 7, 8 | Line Managers and County Directors will monitor the IR/PR report monthly. On the last day of the certification period ISD staff will conduct an individualized review and process the case. | Line Managers and County Directors | Ongoing | |

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Dallas Regional Office
1301 Young Street, Suite 833
Dallas, Texas  75202



**CENTERS FOR MEDICARE & MEDICAID SERVICES**
**CONSORTIUM FOR MEDICAID**
**& CHILDREN'S HEALTH OPERATIONS**

## DIVISION OF MEDICAID & CHILDREN'S HEALTH  - REGION VI

January 20, 2017

Ms. Nancy Smith-Leslie, Director
Medical Assistance Division
New Mexico Department of Human Services
P.O. Box 2348
Santa Fe, New Mexico 87504

Dear Ms. Smith-Leslie:

This letter is being sent as a formal follow-up to the Centers for Medicare and Medicaid Services (CMS) review of Medicaid eligibility, enrollment, renewal, and verification enrollment practices in New Mexico conducted in 2016.  In response to issues related to the administration of the state's Medicaid program arising from the long-standing *Hatten-Gonzalez v. Hyde* court case and concerns from advocates, CMS conducted two site visits to New Mexico in June and August 2016. These included detailed discussions of Medicaid eligibility and enrollment policies and procedures with agency leadership from the Income Support Division (ISD) and Human Services Department (HSD) as well a detailed review of cases and a desk audit, during which state eligibility staff demonstrated processing of two Medicaid applications in the state's ASPEN eligibility system.  In addition, CMS has reviewed a large number of state eligibility notices, training materials, and other documents provided by the state.

Since May 2016, CMS has identified a number of policies implemented by New Mexico that do not comply with federal requirements and has worked with the state on changes to policies and processes to address these. CMS acknowledges progress that the state has made in modifying some of the policies to ensure compliance with federal law.

However, CMS has identified a number of deficiencies related to the application, verification, and renewal processes in New Mexico which remain in violation of federal Medicaid requirements.  We also found that, exacerbating these deficiencies, ASPEN, the state's eligibility and enrollment system, relies on extensive manual processes and workarounds which are not consistent with CMS' expectations for efficient deployment of technology, particularly given the federal investment in the modernization of the system and the state's plan, articulated in Governor Martinez's March 23, 2011 letter requesting federal funding, to develop a state of the art, web-based eligibility system to reduce workload for the local offices.  The manual nature of eligibility determinations in the state, combined with a lack of clear and accurate training materials and other resources needed by eligibility workers to exercise judgment correctly, leaves the New Mexico system prone to serious errors in eligibility determinations, delayed processing of applications and renewals, and additional burden on applicants and beneficiaries to provide unnecessary documentation.  Indeed, CMS observed such errors during the case review and desk audit conducted in August 2016.  CMS has provided recommendations to the state to address concerns with the state's training materials and other resources to support the state eligibility staff. While we appreciate that the state has made some changes to the materials in response to our comments, problems remain.



**Exhibit** ___14___

The deficiencies found by CMS are outlined in detail in Table 1, below. This letter is a formal request for a corrective action plan describing in detail a reasonable timeline for addressing each of the deficiencies identified.

The State has 30 days from the date of this letter to provide the corrective action plan described above. Failure to respond will result in the initiation of a formal compliance process. During the 30 days, CMS is available to provide technical assistance, as needed. If you have any questions, please contact stephanie.kaminsky@cms.hhs.gov.

Sincerely,

Bill Brooks
Associate Regional Administrator, Region VI

2

Table 1: Deficiencies Identified by CMS in New Mexico's Medicaid Application, Verification, and Renewal Processes

| | Requirement | Regulations | Finding |
|---|---|---|---|
| 1 | Implementation of appropriate methods of administration for proper and efficient operation of the state plan | 42 CFR §431.15 requires that the state plan must provide for methods of administration that are found by the Secretary to be necessary for the proper and efficient operation of the plan. In the March 23, 2011 funding request from Governor Martinez, New Mexico requested enhanced federal funding for the modernization of ASPEN, to create a state of the art, web-based, integrated eligibility system which would reduce workload for the local offices, create seamless integration with the Marketplace and result in more streamlined consumer eligibility processing. | Due to deficiencies in the state's ASPEN system, the Medicaid eligibility determination process in New Mexico relies upon excessive manual processing and workarounds by eligibility workers.  Particularly in light of the deficiency in the training of and resources available to, eligibility workers in the Income Support Division, the result is errors in eligibility determinations at application and renewal. Given the federal investment in the modernization of ASPEN, a more efficient deployment of technology is expected. With existing deficiencies and the resulting need for manual workarounds, the current system is not consistent with requirements for efficient operation of the Medicaid program or the state's plan, outlined in its March 2011 funding request. |
| 2 | Use of an approved single, streamlined application | 42 CFR §435.907 requires that the agency must accept an application via the internet website described in §435.1200(f), by telephone, via mail, in person and through other commonly available electronic means.  The application must be the single, streamlined application for all insurance affordability programs developed by the Secretary or an alternative approved by the Secretary. | New Mexico is using an alternative single, streamlined online application that has not been approved by the Secretary. In the companion letter issued with SPA # 13-0021-MM2, CMS outlined changes in the state's application that were to be implemented no later than December 31, 2015.  The state has not completed required changes. CMS also discovered that the state's alternative paper application used to apply for multiple human services programs includes questions that are not permissible under federal regulations, including detailed information about absent parents. |
| 3 | Electronic Verification- Limitation on documentation required from applicants and beneficiaries | 42 CFR §435.952 – requires that an individual must not be required to provide additional documentation unless the information cannot be obtained electronically or the information is not reasonably compatible, at which point the individual must be provided a reasonable amount of time to furnish additional documentation. | Despite state policy to check PARIS as part of the verification process, documents are requested of applicants to verify that individuals are not enrolled in benefits in other states. |
| 4 | Application of a reasonable compatibility standard for income verification | 42 CFR § 435.952(b) requires that if information provided by or on behalf of an individual (on the application or renewal form or otherwise) is reasonably compatible with information obtained by the agency in accordance with §435.948, §435.949 or §435.956 of this subpart, the agency must determine or renew eligibility based on such information. | New Mexico continues to use the verified data source as the value for completing eligibility and enrollment in coverage instead of the attested value, when attested information is reasonably compatible with information from data source.  If basing determination on a data source will result in a material difference to individual (such as different benefits, premiums or cost sharing), the state must use attested information or give the individual an opportunity to establish accuracy of attested information. |
| 5 | Provision of benefits during a reasonable opportunity period (ROP) | The Immigration and Nationality Act limits, with narrow exceptions provided for in other federal statutes, the availability of federal financial participation (FFP) for full Medicaid benefits to non-citizens in a satisfactory immigration status.  New Mexico has elected the option to provide Medicaid to a broader group of | New Mexico is improperly applying the ROP and incorrectly determining eligibility based on immigration status.  The state does not have a complete list of satisfactory immigration statuses on the Medicaid application or in the ASPEN eligibility system. Additionally, based on a status selected on the application, or immigration documentation provided by individuals, eligibility workers incorrectly classify |

| | Requirement | Regulations | Finding |
|---|---|---|---|
| | | non-citizens who are otherwise eligible individuals under age 21 and pregnant women who are lawfully residing in the U.S., as provided in section 1903(v)(4). FFP for other non-citizens (who are otherwise eligible for Medicaid in the state and who do not have a satisfactory immigration status) is available only for services necessary to treat an emergency medical condition. See 8 USC 1601 et seq. Sections 1137(d) and 2405(c) of the Act requires individuals seeking coverage under Medicaid to provide a declaration of satisfactory immigration status under penalty of perjury. Such declaration is required whether an individual is in an immigration status included in the definition of qualified non-citizen or in a status included in the definition of lawfully present in the July 1, 2010 SHO. For non-citizens declaring a satisfactory immigration status, states also are required under section 1137(d) of the Social Security Act (Act) to provide applicants with a reasonable opportunity period (ROP) to prove their status, during which time states must provide full benefits. Under recently promulgated regulations at 42 CFR 435.956(b), effective January 20, 2017, the reasonable opportunity period for non-citizens generally is 90 days. Non-citizens who do not make a declaration of satisfactory immigration status are not entitled to a reasonable opportunity period or to benefits during such period. Non-citizens who are not residents of a state are not eligible for any Medicaid benefits. | applicants as having "documented, undocumented, or unknown" status. Those classified as having a "documented" status are given a reasonable opportunity period, including benefits, to prove that they are in a satisfactory status. However, not every non-citizen who has a documented status is in a satisfactory status for purposes of Medicaid FFP. The result is that some non-citizens who are present in the country in a documented status which does not confer eligibility for full benefits are incorrectly receiving benefits during an ROP. This not only results in improper claims for FFP, but may violate the terms of the individual's visa and jeopardize his or her status in the country. |
| 6 | Redetermination of eligibility every 12 months | **42 CFR §435.916 (a)** requires that the eligibility of Medicaid beneficiaries whose financial eligibility is determined using MAGI-based income must be renewed once every 12 months, and no more frequently than once every 12 months. | Per a court order, New Mexico did not terminate coverage for beneficiaries who did not complete the renewal process. The court has rescinded its order to the extent it was in violation of federal requirements, and the state is no longer required to maintain coverage for these individuals. The state has indicated verbally an acceptable process for handling beneficiaries who have not been successfully renewed in the past 12 months; however, the state has not provided a reasonable timeline for completing this process. |
| 7 | Determination of eligibility during a presumptive eligibility period | **42 CFR §435.1100** et. seq. requires the state to provide Medicaid during a presumptive eligibility period to individuals who are determined eligible by a qualified entity on the basis of preliminary information. | All individuals applying for Medicaid through a presumptive eligibility process are asked to complete a full application for the presumptive eligibility determination, beyond the "preliminary information" typically required for presumptive eligibility determinations.<br>Individuals are also required to provide a Social Security Number to receive presumptive eligibility determination, which is inconsistent with the state plan and requirements in 435.1102. |

4

| | Requirement | Regulations | Finding |
|---|---|---|---|
| 8 | Redetermination of eligibility based on available information (*ex-parte* renewals) for non-MAGI populations | 42 CFR §435.916 (b) requires that the agency redetermine eligibility without requiring information from the individual for beneficiaries whose Medicaid eligibility is determined on a basis other than modified adjusted gross income, if the agency is able to do so based on information from available data sources. | Beneficiaries whose eligibility is not based on MAGI must reapply for coverage every 12 months. New Mexico does not attempt to make a redetermination of eligibility without requiring information from the beneficiary. |
| 9 | Coordination of eligibility with other insurance affordability programs | 42 CFR §§435.916(f)(1) and 435.930 require that the agency consider all bases of eligibility prior to making a determination of ineligibility and that the agency continue to furnish Medicaid to all individuals until they are found to be ineligible.\n\n42 CFR §435.1200 requires that for individuals who are determined to be ineligible for Medicaid, the agency must promptly and without undue delay, determine potential eligibility for, and, as appropriate, transfer and individual's electronic account to, other insurance affordability programs. | Beneficiaries are terminated from coverage once determined ineligible for coverage on a MAGI basis, even if potentially eligible for non-MAGI coverage. Beneficiaries must then reapply for coverage. No effort is made to identify other potential bases of eligibility, or follow up with the beneficiary to obtain information needed to determine eligibility on such other bases, prior to termination. |
| 10 | Proper training of eligibility workers | 42 CFR §431.15 requires that the state plan must provide for methods of administration that are found by the Secretary to be necessary for the proper and efficient operation of the plan.\n42 CFR §432.30 requires that the state plan must provide for a program of training for Medicaid agency personnel that is consistent with the program objectives of the agency.\n\n42 CFR §432.10(c) requires that the Medicaid agency establish and maintain personnel administration in conformance with 5 CFR part 900, subpart F.\n\n5 CFR 900.603(c) requires training of employees, as needed, to assure high quality performance. | New Mexico has not provided adequate training materials and sufficient resources to support eligibility workers in processing Medicaid applications and renewals. Many training materials are unclear, incomplete, and include inaccurate policies related to Medicaid application, verification, and renewal for Medicaid. Given the excessive manual work required of workers to process cases, these gaps in training result in errors in eligibility determinations at application and renewal. |



# HUMAN
## SERVICES
### DEPARTMENT

**Office of Inspector General**

**INTERIM REPORT OF INVESTIGATION**

June 24, 2016

This report is the property of the New Mexico Human Services Department (HSD), Office of
Inspector General (OIG), and qualifies under the **LAW ENFORCEMENT EXCEPTION** as
determined by the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, 14-2-1
and the Freedom of Information Act (FOIA), Title 5 U.S.C. § 552. This report is for **OFFICIAL
USE ONLY**. Appropriate safeguards should be provided for the report and it may not be
disclosed outside HSD without prior written approval of the OIG.

**Exhibit** ___15___



Susana Martinez, Governor
Brent Earnest, Secretary
Adrian R. Gallegos, Inspector General

**HUMAN SERVICES**
Department

**Office of Inspector General**
Investigations Bureau
8909 Adams St NE, Ste A
Albuquerque, NM 87113-2701

# INTERIM REPORT OF INVESTIGATION FOR THE HONORABLE CARMEN E. GARZA, U.S. MAGISTRATE JUDGE, U.S. DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

DATE:        June 24, 2016

FROM:        Adrian R. Gallegos
             Inspector General
             Office of Inspector General

SUBJECT:     Alleged Falsification of Expedited Case Information
             (OIG Case No. 16-PSI-27396)

The attached Interim Report of Investigation serves to inform you of the preliminary status of an ongoing criminal investigation by the New Mexico Human Services Department (HSD), Office of Inspector General (OIG), Investigations Bureau. The investigation is being worked jointly with the U.S. Department of Agriculture (USDA), OIG Investigations Division. The focus of the investigation pertains to alleged actions taken in potential violation of federal and/or state law.

The investigation was predicated upon media reports that highlighted five, HSD Income Support Division (ISD) employees who alleged that ISD employees and managers falsified case information in HSD's Automated System Program and Eligibility Network (ASPEN). The media reports were the result of court testimony given in U.S. District Court (court) for the District of New Mexico on April 28, 2016. Specifically, the media reports stated that the financial information of customers who applied and/or interviewed for Supplemental Nutrition Assistance Program (SNAP) services, also known as food stamps, was falsely input into ASPEN to avoid a seven-day federal processing requirement referred to as expedited services or to deny benefits. The specific customer financial information that is alleged to have been falsified was referred to as assets. Additional but similar allegations were made during a subsequent court hearing on May 13, 2016, adding that this practice had occurred since 2003.

The OIGs have reviewed and analyzed testimony and exhibits identified during the April 28 and May 13 court hearings, researched and reviewed governing criteria, conducted interviews of witnesses and potential subjects across the state, reviewed and analyzed documentary evidence supplied by those witnesses and potential subjects, froze and began collecting email and forensic acquisitions of computers assigned to ISD managers, and have begun to review specific SNAP cases that the OIGs have identified for further analysis.

Preliminary investigative results indicate what appear to be false statements made in ASPEN on

This report is the property of the New Mexico Human Services Department (HSD), Office of Inspector General (OIG), and qualifies under the LAW ENFORCEMENT EXCEPTION as determined by the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, 14-2-1 and the Freedom of Information Act (FOIA), Title 5 U.S.C. § 552. This report is for OFFICIAL USE ONLY. Appropriate safeguards should be provided for the report and it may not be disclosed outside HSD without prior written approval of the OIG.

some customer cases during the first few months of 2016. Specifically, it appears that some customer cases related to their submitted online SNAP applications, which qualified for expedite services, showed what appears to be the adding of assets that do not exist in the application or in a subsequent customer interview, if one was conducted and documented. The adding of assets caused these applications to be non-expeditable.

**Investigative Plan**

The OIGs continue to investigate the allegations to obtain sufficient facts to substantiate or refute the allegations and for presentation to the U.S. Attorney's Office for the District of New Mexico and/or the New Mexico Attorney General's Office. Pursuant to an in-depth analysis of identified cases, the OIGs will be identifying the specific person(s) who changed the assets. This process includes the research and analysis of ASPEN's computer transaction logs for each case. Once identified, the data obtained from the in-depth case analyses will be used to conduct interviews. The interviews will initially focus on those individuals who made the most changes and then expand. Interviews will also be conducted with some SNAP customers to determine whether they reported assets to ISD. Subsequently, and pursuant to these interviews, the OIGs will follow leads up the ISD chain-of-command. In addition, the OIGs will begin to review and analyze email and conduct forensic analysis of computer hard drives in search of documented evidence. The OIGs will also interview ISD's Quality Assessment and Policy and Program Bureaus and review any reports and/or correspondence that may have identified this issue previously and any ISD actions that may have been taken as a result.

Should the case be accepted for prosecution, the OIGs will begin to obtain, review and analyze cases outside of the online application process and complete the review and analysis of the online applications covering a five year period. Any identified interviews resulting from the additional analysis will also need to be completed.

The Interim Report of Investigation provides further detail into the preliminary status of this investigation. Should you have any questions regarding this investigation, please contact HSD-OIG Investigations Bureau Chief Ken Romero at (505) 222-9371, USDA-OIG Special Agent Rachel Hart at (214) 767-4604 or myself at (505) 660-1363.

This report is the property of the New Mexico Human Services Department (HSD), Office of Inspector General (OIG), and qualifies under the LAW ENFORCEMENT EXCEPTION as determined by the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, 14-2-1 and the Freedom of Information Act (FOIA), Title 5 U.S.C. § 552. This report is for OFFICIAL USE ONLY. Appropriate safeguards should be provided for the report and it may not be disclosed outside HSD without prior written approval of the OIG.

**NEW MEXICO HUMAN SERVICES DEPARTMENT
OFFICE OF INSPECTOR GENERAL**

**INTERIM REPORT OF INVESTIGATION**

**June 24, 2016**

## ALLEGATION

This ongoing criminal investigation was predicated upon media reports that highlighted five, New Mexico Human Services Department (HSD), Income Support Division (ISD) employees who alleged that employees and managers falsified customer case information in HSD's Automated System Program and Eligibility Network (ASPEN). The media reports released were the result of court testimony given in U.S. District Court (court) for the District of New Mexico on April 28, 2016. Specifically, the media reports stated that some customer information supplied pursuant to their application and/or interview for Supplemental Nutrition Assistance Program (SNAP), also known as food stamps, services was not reported but was entered into ASPEN as resources. The resources specifically referenced were assets. The customer's assets were falsely input into ASPEN to avoid a seven-day federal processing requirement referred to as expedited services.

Subsequent to the media reports, a second court hearing was held on May 13, 2016, in Las Cruces, New Mexico. This hearing introduced four additional current and former ISD employees who provided similar allegations and alleged that the falsification of information as it related to expedited services occurred as far back as 2003.

## POTENTIAL STATUTORY VIOLATION(S)

Title 18 United States Code (U.S.C.) § 1001; False Statements, and Title 18 U.S.C. § 371; Conspiracy.

## BACKGROUND

HSD-ISD provides services to over 800 thousand low-income customers through statewide programs of financial assistance, food assistance, employment assistance, Medicaid, and training services. Beginning in January 2014, HSD employed ASPEN to replace a twenty-five year old database. ASPEN provided for an integrated eligibility system that would improve public access to services through the Internet and streamlined services. It combined seven programs, including Temporary Assistance to Needy Families, SNAP, Low Income Home Energy Assistance Program, Cash Assistance, and Medicaid. ASPEN is used for eligibility determination, benefit issuance and case management for each of these programs.

Federal regulation provides for expedited SNAP service. Expedited SNAP service means that a qualified household reporting little or no income or resources may be entitled to receive SNAP

This report is the property of the New Mexico Human Services Department (HSD), Office of Inspector General (OIG), and qualifies under the LAW ENFORCEMENT EXCEPTION as determined by the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, 14-2-1 and the Freedom of Information Act (FOIA), Title 5 U.S.C. § 552. This report is for OFFICIAL USE ONLY. Appropriate safeguards should be provided for the report and it may not be disclosed outside HSD without prior written approval of the OIG.

**aspen**

Automated System Program and Eligibility Network

**Deloitte.**

# DHG 10/31 Implementation activity report
# 04/07/2017

ASPEN – DHG Work
October 31, 2016

**Exhibit** __16__

# Activity Report – Overdue Applications

| Summary of overdue pending applications (by program) | SNAP | Medicaid |
|---|---|---|
| Pending overdue applications as of 04/07 | 1002 | 6256 |
| # of pending programs approved | 29 | 25 |
| # of pending programs denied | 71 | 81 |
| # of pending programs closed | 2 | 0 |
| Total pending overdue programs | 900 | 6150 |

*ASPEN automatically evaluates MSP if the client requests Medicaid and so 1 pending program could result in 2 approvals in some scenarios
*Number of approved, denied and closed are only for overdue pending applications and do not include applications processed in the regular timeframe

## Details of the programs processed



Application Details



Medicaid Approval
Details

# Activity Report – Overdue Recertification

| Summary of overdue renewals (by category of eligibility) | SNAP(PR) | SNAP(IR) | Medicaid |
|---|---|---|---|
| Pending overdue renewals as of 04/07 | 20016 | 17065 | 58004 |
| # of COEs (EDGs) approved | 171 | 220 | 238 |
| # of COEs (EDGs) closed | 785 | 175 | 775 |
| # of COEs (EDGs) Denied | 8 | 0 | 0 |
| Pending overdue renewals | 19052 | 16670 | 56991 |

Details of the renewals processed


IR Details


Recertification
Details (SNAP)


Recertification
Details(Medicaid)