IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

    Plaintiffs,

vs.                                            No. CIV 88-0385 KG/CG
                                                    Consolidated with
                                                    No. CIV-88-0786 KG/CG

BRENT EARNEST, Secretary of the
New Mexico Human Services Department,

    Defendant.

## REPLY TO BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY THE SPECIAL MASTER'S REPORT (DOC. 814)

       Defendant, New Mexico Human Services Department (HSD), filed its objections to the Special Master's report on February 20, 2018.   On the same day, HSD filed a Motion to Modify the report pursuant to Rule 53.  The department has requested that this court amend the findings and conclusions in the Special Master's report to reflect the progress that has been made by HSD.  In addition, the Department requested Recommendations #1 and #8 not be adopted by the court and for certain clarifications regarding the remaining recommendations.

       Rule 53(f), Fed. R. Civ. P., sets forth the procedures for the court to act on the Master's report and the standards by which the court should review the report.   Rule 53(f) provides that when considering a report from a master, the court may adopt, affirm, modify, reverse or reject, in whole or in part.  The rule provides that a party may file objections to the Master's report no later than 20 days from the time of the report.   Parties may also file a motion to adopt or modify

1

the report in the same time frame. Fed. R. Civ P. 53(f)(2). Plaintiff made no such motion to modify the Master's report.

The Court's Order on March 5, 2018 (Doc. 828) restricted the scope of Plaintiffs' supplement to the scope of HSD's Motion to Modify the Special Master's Report. Many of Plaintiffs' arguments, however, go far afield of the Motion's scope, including argument for sanctions. HSD's reply does not respond to arguments not in the scope of the motion.

HSD has improved its Medicaid and SNAP eligibility processing and the department is exceeding federal timeliness monitoring standards. The Department has eliminated the backlog of applications and renewals that first occurred in 2014 with the expansion of Medicaid and which built up again in 2015 and 2016 after the court order prohibiting case closure. The Department has implemented more than 60 notices, including the Notice of Case Action. The department has promulgated updated regulations in accordance with decree requirements. The Department continues to make prudent investments and operational changes to ensure we provide the highest levels of service.

Plaintiffs continue to misrepresent facts in order to advance their litigation strategy. Plaintiffs have failed to supply any evidence in their pleadings or in the evidentiary hearing that would contradict the clear progress made by HSD or give the Court reason to deny the motion to modify. Since the decree was signed, HSD's obligations have increased in both number and complexity. This case has now unfortunately become less about whether HSD has fulfilled its federal law obligations to class members and instead has become mired in argument as to whether HSD has fulfilled specific decree obligations.

1. **Defendant Provides Benefits Timely and Well Above the Standards Set by Federal Oversight Agencies.**

HSD approves benefits for individuals who are eligible at timeliness rates above United States Department of Agriculture/Food and Nutrition Services (USDA/FNS) federal monitoring standards[1]. Timeliness rates for approvals of initial applications for SNAP exceeded 98% in January and have been above 97% since August of 2017. Similarly, Medicaid approvals of initial applications in January were performed timely at a rate of 96%, and have been above 95% since August 2017. Likewise, January timeliness rates for approval of renewals were 97.9% and 96.2%, for Medicaid and SNAP respectively. Individuals and families eligible for benefits consistently receive them timely. This data has been validated by the Compliance Specialist.

Denial timeliness rates are lower, but still improving, despite the fact that the Department does not currently have an auto-denial or auto-closure feature in the eligibility system. As Defendant has discussed with court, the lack of these automated features results in low denial timeliness rates, as the Department gives the clients until the last day of the application or certification period to provide the necessary information. Obviously, on the following day, those cases become overdue and staff begins manually processing them. This results in low timeliness rates for denials, but it serves the clients by affording them last possible minute to complete the process. The majority of these denials are also for procedural reasons (see Defendant Exhibit B, Page 32). The procedural denials are typical, given that individuals and families, who are not seeking to continue their SNAP, simply don't complete the renewal application. However, as per federal law, ISD initiates the recertification process, whether or not the family is seeking to continue their benefits. Thus, by design, this process results in higher procedural closure rates.

---

[1] See 7 C.F.R. 275.24(b)(ii); USDA October 2014 State Guidance on Improving Low Supplemental Nutrition Assistance Program Application Processing Timeliness Rates. In addition, the state has adopted a 95% standard for monitoring Medicaid application processing timeliness.

## 2. Plaintiffs' Response Misrepresents Facts and Data and Does Not Contradict Defendant's Recommendation to Modify the Special Master's Report

Plaintiffs' response includes misleading statements about the timeliness data. In particular, they write: "The most egregious violation of federal law is HSD's failure to timely inform families at re-certification that their case is closed. This means that families who have been receiving SNAP stop receiving benefits, but just 6.9% of them get a notice that their case is closed and explaining why." This is wrong. All individuals and families whose cases are closed for procedural or other reasons receive a notice explaining why a case is closed, whether the case was processed within the certification period or after it. The notice used for this purpose is the Notice of Case Action (NOCA). Plaintiffs misrepresent this data and these facts to abstractly paint a picture of non-compliance.

Similarly, Plaintiffs state that: "Eleven percent of eligible applicants do not have their benefits timely renewed. *See* Defendant's Exhibit B, admitted into Evidence on March 1, 2018 (p. 34-36)." This is also wrong. Actually, 93.6% of applicants had their benefits timely renewed (6.4 percent did not) in the month of January. This is a significant improvement since November 2017. In addition, 96.2% of recertifications received from the applicant by the due date are processed timely by the department. (See Defendant Exhibit B, Page 35). Furthermore, Plaintiffs have suggested in meetings with the department that it underreports its timeliness of renewal processing – i.e., the department is penalizing itself by the manner in which it counts renewal timeliness. The department tracks timeliness by the benefit issuance date even for individuals (and families) that do not timely submit their recertification packet. Plaintiffs have suggested that department should track our requirement as 30 days from the date of receipt of the

4

recertification packet. Yet, in their response, Plaintiffs contradict themselves to further their argument of non-compliance.

Plaintiffs also misconstrue changes that have been made to the EBT card activation system. They erroneously suggest, without any evidence, that the department is not providing expedited benefits in accordance with law and the Decree. As discussed with Plaintiffs and the Court, the department made changes to the EBT card activation system to ensure that a head of household member who does not possess a social security number and has not yet received an alternate ID number in an office, can activate their EBT card upon receipt. Plaintiffs brought one instance wherein this was a problem for an applicant, yet cast it as a large systemic problem. Nevertheless, the department made changes to the system to address this concern. The EBT Interactive Voice Response (IVR) system was changed to automate this process.

Plaintiffs in court and in these filings have also gone out of their way to make an issue of the implementation of an employee manual. Here, too, facts do not support their arguments. HSD believes an online manual is an important tool for staff, as identified in the June 2016 letter to the court (Doc 712). Document 712 estimates a 24-27 month time period to procure for a vendor and complete the envisioned scope of work. The Department completed the procurement and has a contractor in place to complete the work, including the production of an online version of the manual. This is clearly spelled out in the contract, and the manual and online guide are on schedule to be delivered in July and August of 2018. Yet, Plaintiffs misstate the timeline and argue that the manual will be implemented in 2019, "three years after Defendant made a commitment to create worker manual." (Document 822, page 3). Again, this is factually and verifiably incorrect (See Defendant Exhibit I).[2]

---

[2] Other work besides the manual required by that contract will be completed in 2019.

### 3. Defendant's Motion to Modify Should Be Adopted by the Court

As argued in court and in our objections to the Special Master's report (Doc. 813), Items 1 – 5, Page 7 of the Special Master's Report (Doc. 810), occurred under different management than is in place today. Specifically, these items were the result of the actions the department had to take in 2014, prior to the appointment of the deputy secretary, to comply with an order of the federal court (Document 500). While the actions put us in compliance with the court order, these actions were violations of federal regulations for processing of SNAP and Medicaid applications. As a result, the department received the advanced warning letter (Item 1) from the Food and Nutrition Service and submitted the Corrective Action Plan in response to CMS' request (Item 2). After the department received the advanced warning, the Court agreed to modify the court order to allow the department to process cases in accordance with federal regulations (see Document 749). During this time, a large "backlog" of pended cases accumulated, which became the occurrences cited in the report (Items 4 and 5).

This timeline does not support the Special Master's findings. Moreover, these are statements of fact and are not stated to blame the Court, as the Plaintiffs disingenuously and continually state. Defendant accepted that Order, implemented it, and tried its best to work under its terms until it was clear that it was unworkable.

If the Special Master's Findings are incorrect regarding the staff at HSD, then logically his conclusions about the staff are not right. While the Special Master begins his report on Findings by using the qualifier, "Historically, the Defendants have failed…," he failed to correctly connect the timeline of events to the actions of the staff. HSD provided significant evidence of progress and success, which is by and large the work of the management team.

HSD could not have had this success without accountability of management from top to bottom. Throughout 2017, the Department operated under a new work plan, with clear deadlines, which was provided to the Special Master. The plan and deadlines achieved compliance with the Consent Decree to the greatest degree humanly possible. As the Department has reported to this Court, it has improved Medicaid and SNAP eligibility processing, and the Department is exceeding federal timeliness standards. The Department has implemented more than 60 notices (some multiple times), including the Notice of Case Action (NOCA) and the Help Us Make A Decision (HUMAD) notice. None of this could have occurred in an environment where failure is an accepted part of the Income Support Division (ISD) operation and culture.

The above arguments are the basis of Defendant's request that the Court strike the Special Master's Recommendations #1 and #8 of his report, pages 9 and 10, and deny the Plaintiffs' Response and Supplemental Response Brief in Opposition to Defendant's Motion to Modify the Special Master's Report. Moreover, these recommendations give rise to sensitive Federalism concerns as they would tend to eviscerate HSD's discretionary authority over its own operations.

### 4. Jackson Litigation.

Not surprisingly, Plaintiffs try to minimize the significance of the Tenth Circuit's recent decision in *Jackson v. Los Lunas Community Program*, 880 F.3d 1176 (10th Cir. 2018). They argue that, because there is overlap between federal law and the terms of the Consent Decree, "*Jackson* does not impact this Court's compliance strategy which is simply to bring Defendant into compliance with federal law." (Supp. Response Brief at 2). Plaintiffs' argument misses the larger significant point that this Court must heed in the *Jackson* decision – when the

circumstances have changed significantly since the entry of the consent decree, a court has an obligation to evaluate the decree and whether and how it must be modified before continued enforcement is equitable.

Plaintiffs would like to ignore the fact that we are at a juncture in this case where the Special Master has specifically recommended that the Consent Decree be modified. Recommendation No. 2 states: "Revise the Consent Decree to give recognition to the parts that have been completed, update requirements, close the class (if allowed by law) and dismiss all court orders, in which the requirements have been met." (Doc. 810, page 9). The Special Master supports this recommendation with findings that:

- "The Consent Decree requirements as written are not attainable." (Doc. 810, page 5).
- "The 100% compliance standard is not realistic." (Doc. 810, page 5).
- "There are actions and deadlines that are no longer relevant." (Doc. 810, page 6).

These findings are in line with the types of circumstances that the *Jackson* decision found would warrant modification of a consent decree. *Jackson* Id. at 1201 (changed circumstances may warrant modification when compliance has become substantially more onerous, decree proves unworkable, or enforcement would be detrimental to public interest). "It is an abuse of discretion for a district court to deny a motion for modification where the moving party meets this burden." *Jackson* Id at 1201.

The Court should adopt the Special Master's recommendation to revise and update the Consent Decree. As part of that process, the Court should be guided by the factors in *Jackson* because they represent the Tenth Circuit's most recent pronouncement on the appropriate standards for modification of consent decrees. For example, areas where the Defendant has complied with federal law should be removed so that the modified decree is tailored to cure

actual, existing violations of federal law. Additionally, areas and language that go beyond the requirements of federal law should be removed from the Consent Decree.

In addition, the Court is required to apply a flexible approach to evaluating the equities of necessary modifications to the consent decree. *See Jackson* Id at 1201. *Jackson* recognizes that federal courts must use caution in continuing to enforce consent decrees that remain in place for extended periods of time as a means of achieving institutional reform in state governmental agencies. As the Tenth Circuit noted, "federalism concerns are heightened here because the decrees and the court's continued oversight have 'the effect of dictating state … budget priorities.'" *Jackson* Id at 1201 citing *Horne* v. Flores, 557 U.S. 433, at 448 (2009).

In short, *Jackson* absolutely impacts this Court's compliance strategy. The Court should use the clear guidance in that decision to direct the development of, and to objectify evaluation of compliance for, the revised Consent Decree the Special Master has recommended

**Conclusion**

HSD has displayed good faith compliance with the consent decree and many past errors have been eliminated to the extent possible. Defendant HSD is substantially complying with its obligations. HSD is a government entity with an especially complex mission. This administration has been committed and worked diligently to address the violations giving rise to this case and to bring the Department into compliance with Federal law. Plaintiff has failed to provide any evidence to contradict the facts that HSD has improved its Medicaid and SNAP eligibility processing, has eliminated the backlog of applications and renewals, has implemented more than 60 notices, has promulgated updated regulations and continues to make prudent investments and operational changes to ensure we provide the highest levels of service.

The department has requested that this court amend the findings and conclusions in the Special Master's report to reflect the progress that has been made by HSD.   In addition, the Department requested Recommendations #1 and #8 not be adopted by the court and for certain clarifications regarding the remaining recommendations.   For the reasons contained herein, the court should grant the Motion to Modify the Special Master's Report. (Doc. 814)

Respectfully submitted,
/s/ Christopher Collins
General Counsel
New Mexico Human Services Department
PO Box 2348
Santa Fe, NM 87504
Christopher.Collins@state.nm.us

I HEREBY CERTIFY that on this 16th day of March, 2018, I filed the foregoing electronically through the CM/ECF system, which caused all parties to be served by electronic means.

/s/ Christopher Collins