IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

    Plaintiffs,

vs.                                          No. CIV 88-0385 KG/CG
                                                      Consolidated with
                                                      No. CIV-88-0786 KG/CG

BRENT EARNEST, Secretary of the
New Mexico Human Services Department,

    Defendant.

## JOINT STATUS REPORT

On May 18, 2018, the parties in this matter held a Meet and Confer pursuant to this Court's Orders. Secretary Brent Earnest, Deputy Secretary Christopher Collins, Income Support Division (ISD) Deputy Director Judy Parks, and other staff from ISD were in attendance. Sovereign Hager and Maria Griego attended on behalf of the Plaintiffs. Special Master Lawrence Parker and Compliance Specialist Ramona McKissic were also in attendance. Below is a summary of the matters addressed by the parties and the Special Master in the Meet and Confer, including each party's respective position on the matter and any documented agreements or outcomes.

1) **Experts Required by Doc. 836:** Defendant stated that HSD is still trying to determine the best way to bring on experts. Defendant believes it is particularly important that the immigrant eligibility expert be a permanent, classified position for the Department. The SNAP and Medicaid experts will likely serve as experts in a time limited role (e.g., as an appointment for the duration of the Order and Decree). The additional assignments will bolster the Department's expertise in these areas, but over the long term, such expertise should continue to reside in the respective divisions.

    An appointed expert could only serve through the end of the current administration unless the new Governor decides to retain the appointee. The other option Defendant is considering is to redefine a job currently held a classified employee to be that of the expert. If HSD chooses to use a current employee, the duties the employee will have in the new role must be a logical outgrowth of the employee's duties in his/her current role. HSD is currently working on identifying possible candidates to serve in all expert roles and is writing job descriptions. The Special Master emphasized that the appointment/hiring decisions need to be made quickly. The Special Master suggested that the Department assign current employees to fill these

positions temporarily until the positions can be filled permanently. He recommended that the Department look to national organizations for help identifying qualified individuals for the positions.

2) **Notice of Case Action (NOCA):**

a. Plaintiffs' counsel requested that HSD provide information on all work requests (WRs) and change requests (CRs) to the NOCA on March 28, 2018. Plaintiffs' specifically requested documentation of CRs and WRs associated with the NOCA after December 31, 2017. HSD stated that the tracking system is a compilation of tickets and work requests that are submitted by staff. The report only provides a summary of the work request and requires each to be reviewed to determine the nature of the work request (new functionality or issue). The Department stated that it was able to compile a report with all CRs and WRs that have been implemented or are in the queue since January 1, 2018. HSD provided that report to Plaintiffs on May 18, 2018. HSD explained that CR and WR do not necessarily mean there is a change to take place. The CR and WR are analyzed to determine if the change is necessary.

b. Plaintiffs also alerted the Department to two additional concerns regarding the NOCA. First, for people who receive the NOCA following an automatic renewal of Medicaid, the notice Trigger #71a populates on the NOCA. This trigger explains to the individual that their Medicaid has been renewed based on information that was on file and from other data sources and tells them to inform the Department if the information is wrong in one of several ways. The highlighted text in Trigger #71a, below, identifies the additional language that needs to be changed to ensure the information is clear to the recipient. The current language directs the individual to "mail this form to" instead of directing them to "mail the information to". Plaintiffs identified this similar text on the HUMAD, which the Department updated on May 28, 2018. The Department is reviewing other notices that utilize this standard text to identify if a change is needed.

| Trigger # | Programs/COEs | Case Action | Eligibility Results |
|---|---|---|---|
| 71a | All Medicaid and MSP COEs | Recertification (only for auto-renewal, successful ex parte renewal and administrative renewal) | Ongoing – approved for some or all members. |

ISD renewed Medicaid for your household members. We did not need more information from you. We counted your household size and got income from your case file and other data sources. This is called an Administrative Renewal.

If the information in the table at the end of this letter is correct, you do not have to do anything. If the information is wrong or has changed, tell us in one of these ways:

| | | |
|---|---|---|
| ✉ | **Mail this form to**: | Income Support Division<br>Central ASPEN Scanning Area<br>P O Box 830 Bernalillo, NM 87004-0015 |

| | | |
|---|---|---|
| 📠 | **Fax to**: | (855) 804-8960 |
| ☎ | **Call the Income Support Customer Service Center Toll Free at:** | (800) 283-4465<br>Monday-Friday, 8 am to 5 pm<br>The call is free. |
| 💻 | **Submit online at**: | https://www.yes.state.nm.us/ |
| 🏢 | **In person at the ISD office.** | <mark>ISD Field office name</mark><br><mark>ISD Field office address</mark> |

c. Plaintiffs also alerted HSD that NOCAs which Plaintiffs' Counsel has received for clients do not include a calculation table. When Plaintiffs raised this issue last year, Defendant informed Plaintiffs' Counsel that the NOCA did not contain a calculation table for authorized representatives who receive the notice and HSD stated that there were plans to fix that problem. HSD agreed to investigate the current status of the calculation table and when it is programmed to appear in eligibility notices.  HSD has reviewed the NOCA storyboard and confirmed that the calculation tables are not currently being generated on the NOCA that is sent to the authorized representative. HSD is currently working with Deloitte to have these changes implemented into the NOCA.  A release date will be provided once determined. Plaintiffs are concerned that after reporting this exact issue to Defendant in February of 2017, Defendant reported that it would be fixed when the new NOCA was released in 2018.  *See* p. 24 of Doc. 771.

3) **Help Us Make a Decision (HUMAD) verification request form and Verification Check List (VCL):**

a. The HUMAD is scheduled for a revision (version 4.2.2.) in August 2018.  Revision 4.2.2 will include the following changes:  1) specific types of unearned income will be requested from applicants and the notice will include more specific examples of documents the applicant can provide to verify the different types of unearned income, and 2) a new sentence "*[p]roofs given may be used for more than one program*" will be added as standard text towards the end of the notice.  Plaintiffs requested information regarding how the HUMAD is populated when the Department receives information it determines "questionable" and which fields on the notice require a worker to enter information and which fields are populated automatically.  HSD stated that the Trigger #8 is used on the HUMAD when information is questionable.  HSD staff stated that workers manually enter information in the "reason for questionable verification" column and determine how the examples of proof are populated based on the type of verification that is needed. HSD agreed to verify that this is the correct process and to let Plaintiffs know if the process is different than what was described in the Meet and Confer. HSD has since verified that Examples of Proof that are populated on the HUMAD for Trigger #8 are not generated from the static examples of proof.  This trigger contains open text fields for the "Reason for Questionable Verification" and "Examples of Proof" that will give HSD the information needed (Please return

3

one proof for each of the following). During design it was determined that these two fields should be open text to allow the caseworker to meet the requirements of NMAC 8.100.130.12B(2)-(4), as well as the ability to be more specific in their request to resolve the questionable, incomplete or inadequate verification.

**Trigger #8: When there is a questionable verification for the client**
The following proof(s) you provided are questionable. This means that ISD needs more documentation in order to decide if you can get benefits. Without the proof(s) listed below, your benefits will be reduced or denied. Please turn in the proof(s) listed below.

| Name | Type of Information we need | Program | Due Date | Reason for questionable verification | Examples of proofs that will give us the information we need (Please return one proof for each of the following): |
|---|---|---|---|---|---|
| Wendy Smith | Identity | SNAP | August 31, 2012 | Driver's License is expired  This is the comment a worker enters in ASPEN for questionable verifications. Whatever is entered by the worker in the comments box shall be displayed here. | Valid Driver's License |

b. Plaintiffs' counsel noted that the VCL recently provided by HSD was not a comprehensive list. HSD stated that the full VCL document is a very large document and they must investigate how to make it available to Plaintiffs. HSD did not provide a timeframe for a response. To clarify, a single VCL, with examples of proof, does not exist. The parties need to meet to discuss the best approach to create this document or complete this review. Plaintiffs are concerned that this does not exist because HSD reported that the full VCL was reviewed by a literacy expert.

4) **Delay Notices:** HSD assured Plaintiffs that the Notice of Delay was implemented as of April 1, 2018 and has been in continuous use since then. The only changes that will be made to the Delay Notice will be to incorporate changes regarding verification for unearned income. These are the same changes described above that will be made to the HUMAD described above.

5) **Emergency Medical Services for Aliens (EMSA) notices:** Plaintiffs asked when the NOCA will be updated to: 1) include all denial reasons for EMSA, and 2) include a calculation table when EMSA applicants are denied for not meeting income requirements. The Department informed Plaintiffs' counsel that it believes the EMSA notices are compliant, and that these changes are not necessary at this time. HSD will inform Plaintiffs when a timeline for making these changes has been established.

6) **YesNM Online Application and Renewal Literacy Review:** HSD's contract with Insight ends on June 30, 2018. By the end of the contract period, Insight will have provided HSD with a complete literacy and readability review. Once HSD knows what changes have been recommended by Insight, the Department will provide Plaintiffs with a timeframe for when the changes will be made and implemented.

7) **Worker Manual:** The manual that HSD refers to as the "Field Operations Guide" will not include program eligibility policy and is, instead, a procedure guide for workers. The contractor recommended that HSD create a policy manual. Plaintiffs asked if Defendant would move forward with that recommendation. It is Plaintiffs' position that HSD needs a plain language explanation of policy that will help workers understand how policy is to be applied and can assist the public in understanding basic eligibility rules. The Secretary explained that the Wiki will contain policy information, including serving a single, searchable point of reference for policy in the New Mexico Administrative Code (NMAC) and other policy memos. The Wiki will also link to the Field Operations Guide, ASPEN information and training. The Department stated that it recently completed a "clean up" of its various memoranda. Any memoranda that contained outdated or irrelevant information were rescinded and others were deleted if obsolete, after substance was incorporated into the NMAC.

8) **Churn data:** HSD provided Plaintiffs with a handout on "churn" data. The report provides data on the number of cases where families experienced a break in services for 1-3 months but were issued a benefit in the month following the break regardless of the reason for the break.

9) **Emergency Medical Services for Aliens (EMSA) timeliness tracking:** The Department is currently working with a statistician to determine how EMSA application processing timeliness can be measured and reported along with Medicaid timeliness numbers. HSD does not currently have a timeframe for providing a final response on when this will be accomplished. Plaintiffs also asked for confirmation on whether or not EMSA cases are the only cases excluded from overall Medicaid timeliness numbers. HSD agreed to investigate whether all Medicaid programs are also included in overall timeliness numbers. The Special Master asked to discuss the issue of timeliness tracking with Defendant separately.

10) **Presumptive Eligibility (PE) Applications:** Presumptive eligibility is a process that allows certified workers in hospitals and other community organizations to determine applicants eligible for Medicaid based on preliminary information, while a full application is processed. In January 2017, the Center for Medicare and Medicaid Services (CMS) found that HSD's PE application: 1) required more information beyond the preliminary information needed for a PE eligibility decision, and 2) illegally required applicants to provide a Social Security Number. HSD explained that the Department is compliant and that the PE application meets the

requirements under federal law.  HSD provided confirmation again of its compliance on May 21, 2018.

11) **Auto Closure:**  HSD reports that the auto-closure was piloted in 11 field offices and that the pilot process went well, overall.  To the extent any glitches were discovered, they had no effect on clients or benefit provision and have since been remedied.  Auto-closure went statewide on May 31, 2018.

12) **ST 005 and ST 007 reports:** The ST 005 and ST 007 are the reports generated by HSD that list the number of SNAP and Medicaid cases that were closed or denied for specific reasons. HSD has been providing these reports on a monthly basis to Plaintiffs. However, the numbers identified on the report are duplicated, as a case or application may have up to four denial reasons.  HSD has provided Plaintiffs with the list of reasons HSD identified as procedural closure or denial reasons. These are the reasons HSD uses to determine the number of applications and renewals that are closed or denied for procedural reasons as reported in the MSR.  Plaintiffs requested HSD explain how the MSR reports are generated and how they correspond to the ST 005 and 007.  HSD committed to checking with its data person to determine how this information can be provided and sent a response on May 31, 2018.

13) **Phone System:**  Plaintiffs requested information on how Conduent manages phone capacity in the call center.  HSD explained that Conduent supervisors place calls daily to make sure that there are sufficient lines available for customers.  The phone system is organized into four "trunks" that overflow to one another when one trunk has reached capacity.  Conduent also built in a 10% overflow capacity for times of when all four "trunks" are full. If the call center exceeds trunk capacity plus overflow capacity, they move to a SIP server system which can handle an increase in call volume without reaching capacity.  To date, the call center has not come close to reaching full capacity.

14) **Reformat of data:**  HSD provided Plaintiffs with a document which lists data the Department provides and a proposal to eliminate specific reports for future JSRs.  Plaintiffs agreed to review the document and get back to HSD with questions, comments and/or concerns but did not provide a timeframe for response.

**Respectfully submitted,**

*/s/ Sovereign Hager*
Maria Griego and Sovereign Hager
New Mexico Center on Law and Poverty
924 Park Ave. SW, Suite C
Albuquerque, NM 87102

(505) 255-2840 FAX (505) 255-2778

And

Daniel Yohalem
1121 Paseo de Peralta
Santa Fe, NM 87501
(505) 983-9433 FAX (505) 989-4844

Attorneys for Plaintiffs

**Respectfully submitted,**

Christopher P. Collins
New Mexico Human Services Department
2009 Pacheco Street
P.O. Box 2348
Santa Fe, New Mexico 87504
(505) 827-7701

Attorney for Defendant

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 4th day of June 2018, I filed the foregoing pleading electronically with the United States District Court, causing the same to be electronically served on opposing counsel, Christopher Collins. A copy of the foregoing pleading and this certificate were also served this day on counsel by emailing a copy to Christopher.Collins@state.nm.us
                    */s/ Maria Griego*
                    Maria Griego