IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DEBRA HATTEN-GONZALES, et al.,**

    **Plaintiffs,**

**v.**                                                 **No. CIV 88-0385 KG/CG**
                                                   **Consolidated with**
                                                   **No. CIV-88-0786 KG/CG**

**BRENT EARNEST, Secretary of the**
**New Mexico Human Services Department,**

    **Defendant.**

## SECOND REVISED MODIFIED SETTLEMENT AGREEMENT AND ORDER

       The parties were ordered to revise the settlement agreement in the matter of *Debra Hatten Gonzales, et al. v. the Secretary of the NM Human Services Department*. The terms of this Agreement (or "Consent Decree" or "Decree") are prospective in nature but do not preclude a future Secretary of the NM Human Services Department ("HSD") from requesting modifications. A Plaintiff class consisting of all present and future applicants for these programs was certified by an Order filed July 19, 1989, adopted herein by this reference.

       The applicants claim that HSD violates their federally-guaranteed right to receive a prompt eligibility decision and, if eligible, benefits, by: (1) failing to inform applicants adequately of eligibility factors which must be verified, the alternate methods by which verification can be accomplished and the availability of HSD assistance in obtaining verification which is not readily available; (2) imposing inconsistent and excessive verification requirements which discourage applicants from completing the application process or result in the unlawful denial of benefits; (3) delaying the issuance of eligibility decisions and benefits beyond federal time standards; (4) failing to screen food stamp applicants routinely and adequately for

1

emergency assistance and provide timely expedited benefits; and (5) failing to provide applicants with adequate written notice of eligibility decisions. The Class Action Complaints for Declaratory and Injunctive Relief filed March 31, 1988 and July 1, 1988, and Sections 2(a), 3, 4 and 5 of the Pre-Trial Order, filed September 27, 1989, are adopted herein by this reference.

Defendant, Secretary of the New Mexico Human Services Department, has denied the applicants' claims because HSD asserts that its application processing practices comply with relevant federal law and regulations, including, among other federal requirements: 1) processing applications within federal standards, 2) informing applicants of eligibility factors which must be verified, and 3) properly notifying applicants of eligibility decisions.

If this revised Agreement is approved by the Court, notice will be provided to members of the plaintiff class by posting a copy of this Agreement in the public reception area of each ISD filed office, together with a notice, in English and Spanish, advising all applicants of the settlement of this suit, the name, address and telephone number of counsel for the class, and their right to advise class counsel of any perceived violations of this Agreement. The Agreement and notices will remain posted throughout the pendency of this action.

The parties agree to make good faith efforts to resolve any differences that may arise in the course of rendering this Agreement operational. If the parties cannot resolve their differences after such negotiations, either party may seek a ruling from the Court.

This Agreement is binding on the parties, their successors and agents. Once all the terms of this Agreement have been met, as defined in Section I (I), below, HSD shall be found in compliance with the Agreement and the case will be dismissed as provided herein. The Court shall have continuing jurisdiction over this matter to resolve disputes and enforce the terms of this Agreement.

An applicant's right to raise claims and defenses individually based on issues resolved

2

herein but not yet fully implemented is specifically reserved and not impaired by this Agreement.

## I.  DEFINITIONS

These definitions shall apply to the following terms used in this revised Agreement:

A.  The "application process" begins when an application for SNAP or Medicaid assistance is submitted to HSD and ends when a notice of eligibility decision and, if eligible, benefits, are deposited in the mail or available through electronic transfer. The application process includes providing relevant written information to applicant, screening an application, holding an application interview, verifying eligibility factors, responding to applicant requests for assistance, extensions of time, and mailing an eligibility decision, and if eligible, benefits.

B. "Applicant" means a person applying for Medicaid or SNAP assistance, a household or an authorized representative.

C. "Timely Denial" means, as to initial applications for SNAP benefits, an eligibility determination by a case worker or eligibility system to deny the initial application and to cause a notice to be generated on or before the 30th day after the application was received by the agency, unless the 30th day falls on a weekend or holiday. For Medicaid, the standard is 45 days or 90 days for disability determinations. If the 30th or 45th day falls on a weekend or holiday, the denial of SNAP and Medicaid benefits shall be timely if the SNAP or Medicaid application is denied on or before the next business day after the weekend or holiday.

D. "Timely Application Approval" means 1) as to applications eligible for expedited processing, that SNAP benefits are issued to the household no later than the 7th calendar day following the date on which the household filed the application; and 2) as to applications subject to 30 day processing, that SNAP benefits are issued to the household no later than the 30th day following the date on which the household filed the application. For Medicaid applications subject to 45 day processing, the Medicaid benefits are available to the household by the 45th day

3

following the date on which the household submitted the application.

E. "Timely Recertification Application Approval" means 1) as to households that have filed a timely recertification application pursuant to 7 C.F.R. § 273 .14 (c), that SNAP benefits are issued not later than 30 calendar days after the date the household received its last allotment or no later than the household's normal issuance cycle in the month following the end of its current certification period as provided in 7 C.F.R. §§ 273. 14 (d)(1) and (2); and 2) as to households that have filed a recertification application after the 15th day of the last month of the certification period, but before the end of the certification period, that SNAP benefits are issued not later than 30 calendar days after the application was submitted. For Medicaid, a renewal application is timely approved if Medicaid benefits are available to the household and a notice of approval is issued by the last day of the last month of the current 12 month certification period.

F. "Recertification Application Denial" means 1) a denial or termination of SNAP or Medicaid benefits at the end of a household's certification period that is a result of an eligibility determination to deny or terminate benefits; or 2) the automatic closure of a household's case at the end of the certification period.

G. "Timely Recertification Application Denial" means 1) as to timely filed recertification applications, an eligibility determination to deny and mail notice of such denial on or before the last day of the household's current certification period; or 2) as to recertification applications filed after the 15th of the last month of the certification period, but before the end of the certification period, an eligibility determination to deny and mail notice of denial by the 30th day following the date the application was submitted, or in the cases where the 30th day falls on a weekend or holiday, the next business day following the 30th day. For Medicaid, a renewal application is timely denied if an eligibility determination to deny has been made and notice of such denial is mailed on or before the last day of the household's current certification period.

H. "Systemic or Programmatic Barrier" means a policy or prevalent practice implemented at one or more of the Income Support Division offices that results in the failure to comply with federal law in the SNAP and/or Medicaid program and is not due to an isolated event or action.

I. For the purpose of this Agreement, full implementation and full compliance means the department has met the requirements identified in this agreement. Each section identifies the method for measuring compliance.

## II. PROMPTNESS OF ELIGIBILITY DETERMINATIONS AND BENEFITS

A. Federal laws and regulations establish application-processing timelines. Compliance with the federal application processing time standards in the SNAP and Medicaid programs is required, and HSD strives to be 100% compliant with those standards. The parties recognize, however, that unforeseen circumstances and human error by applicants and workers may result in less than 100% compliance in any given month. Therefore, for purposes of this agreement, the measurement of timeliness is set forth in the next subsection.

B. The parties agree that the requirements of the Decree for timely processing, as defined in paragraph 1 of this Section, will be satisfied if Defendant meets a 96% "monthly" processing standard statewide for a period of six consecutive months, with no individual offices falling below 94% for two consecutive months.

C. The monthly timely processing standard shall apply to each of the following five categories:

1. initial applications eligible for 7 day (expedited) processing for SNAP;
2. initial applications subject to 30 day processing for SNAP (including approvals and denials);
3. 45 and 90 day processing for Medicaid (including approvals and denials);

5

4. all recertification dispositions for SNAP (including approvals and denials); and

5. all recertification dispositions for Medicaid (including approvals and denials).

D. Any performance percentage over a half (.5) percentage point shall be rounded up to the nearest whole percentage number. For example, a timeliness percentage of 95.51% shall be considered 96% for purposes of this Agreement.

E. The parties agree that compliance with these timeliness provisions may be challenged if there is a determination that a systemic or programmatic barrier, as defined in Section I, exists that materially impacts client services.

### III.   APPLICATION PROCESSING PRACTICES

Federal law and regulation govern the practice of application processing and the parties recognize the state's requirement to comply with those federal regulations. Although some variation in offices may exist, the parties recognize that uniformity in office application processing practices is necessary for providing applicants with a fair and equal opportunity to participate in the SNAP and Medicaid programs consistent with the goal of assisting individuals seeking to apply for benefits.

Federal law for SNAP requires HSD to "establish procedures governing the operation of food stamp offices that the state agency determines best serve households in the state, including households with elderly or disabled members, households in rural areas with low-income members, homeless individuals, households residing on reservations, households with adult members who are not proficient in English and households with earned income." 7 CFR 273.2(a)(1). Federal law governing Medicaid requires HSD to have policies and procedures that "ensure that eligibility is determined in a manner consistent with simplicity of administration and the best interests of the applicant or beneficiary." 42 CFR 435.902. To meet these requirements, Defendant has agreed to standardize the application process and provide applicants with written

information in standardized formats which is comprehensive, accurate and easy to understand.

A. HSD will provide written materials and standard form documents in compliance with 7 CFR 273.2(c)(5) and 7 CFR 273.10(g)(1)(ii) for SNAP and 42 C.F.R. 435.905(b) for Medicaid. Defendant agrees to implement client correspondence at no more than a sixth-grade reading level, to be reviewed and certified by a literacy expert. This requirement applies to notices and forms used online, in person or by mail and which are provided to applicants.

B. Denial notices shall be provided to applicants with the degree of specificity represented by the notices approved by the court in Ortiz v. Eichler, C.A. No. 84-16 MMS (D. Del., April 21, 1989).

C. For households applying for benefits, Defendant will meet the requirements of 42 CFR 435.908(a) for Medicaid and 7 C.F.R. 273.2(c)(2)(i) for SNAP. Defendant will provide applicants seeking assistance an opportunity to meet with a HSD employee who will assist the client and facilitate the application process.

D. HSD's application procedures shall be designed to identify households eligible for expedited service at the time the household requests assistance in accordance with 7 C.F.R. § 273.2(i)(2).

E. In accordance with 7 C.F.R. 273.2(c)(5), Defendant shall provide each household at the time of application for certification and recertification with a notice that informs the household of the verification requirements the household must meet as part of the application process. The notice shall also inform the household of the HSD's responsibility to assist the household in obtaining required verification provided the household is cooperating with HSD as specified in 7 C.F.R. § 273.2(d)(1). Defendant will provide the same notice to applicants for Medicaid. For Medicaid, Defendant must also meet the requirements of 42 CFR 435.905, regarding the availability and accessibility of program information and 42 CFR 435.908(a) for providing

assistance with Medicaid applications and renewals.

    F. Defendant shall schedule interviews in accordance with 7 C.F.R. § 273.2(e)(3). At the time of this agreement, HSD's current policy and practice is to schedule interviews to occur within 10 days of application for initial applications. For recertification applications, Defendant will comply with 7 C.F.R. § 273.14(b)(3)(iii).

    G. Defendant will comply with the verification requirements of 7 C.F.R. for SNAP and 42 C.F.R. for Medicaid. The following provisions are specifically identified in this agreement:

1. In accordance with 7 CFR 273.2(a)(1), Defendant shall not, as a condition of eligibility, impose additional application or application processing requirements for SNAP.

2. In accordance 42 C.F.R. 435.952(c), Defendant shall not require an individual to provide additional information or documentation unless information needed by the agency in accordance with 42 CFR § 435.948, § 435.949 or § 435.956 cannot be obtained electronically or the information obtained electronically is not reasonably compatible, as provided in the verification plan described in § 435.945(j), with information provided by or on behalf of the individual for Medicaid.

3. Defendant shall verify, prior to certification of the household, all other factors of eligibility which HSD determines are questionable. HSD has established and will maintain guidelines in the New Mexico Administrative Code (currently found at NMAC 8.100.130.12) that will be followed in determining what shall be considered questionable information pursuant to 7 CFR 273.2(f)(2) and the notice that must be sent informing applicants about questionable information and how they can verify their eligibility.

4. Defendant will base requests for verification of eligibility factors on the ready

availability of such verification through discussion with the applicant, as required by 7 C.F.R. 273.2(f)(4)(i).

5. Defendant will use documentary evidence, such as pay stubs and utility bills, as the primary source of verification for all items except residency and household size, as provided in 7 C.F.R. 273.2(f)(4)(i). The household has the primary responsibility for providing documentary evidence to support statements on the application and to resolve any questionable information. HSD must assist the household in obtaining this verification provided the household is cooperating with the department, in accordance with 7 C.F.R. 273.2(f)(5)(i). If the applicant cannot supply documentary verification that is readily available, the worker will allow the applicant to verify eligibility factors through a collateral contact, as described in 7 C.F.R. 273.2(f)(4)(ii) for SNAP and 42 C.F.R. 457.380 for Medicaid eligibility verification. Where a collateral contact is not available to verify eligibility factors, the worker will allow the applicant to verify eligibility factors through a sworn statement, to the extent allowed by 7 C.F.R. 273.2(f)(1)(i) for SNAP and 42 C.F.R. 435.952(c)(3) for Medicaid.

6. Income shall be verified for all SNAP households prior to certification in accordance with 7 CFR 273.2(f), except in situations where the family is eligible for Expedited SNAP, as described in 7 CFR 273.2(i)(4). Where all attempts to verify the income have been unsuccessful because the person or organization providing the income has failed to cooperate with the household and HSD, and all other sources of verification are unavailable, the eligibility worker shall determine an amount to be used for certification purposes based on the best available information, as specified in 7 C.F.R. 273.2(f)(1)(i).

7. To the extent possible, an eligibility worker will offer to assist an applicant in obtaining verification of an eligibility factor where verification is difficult to obtain, provided the client is cooperating.

8. After the date on which HSD mails a request for verification or notice of questionable verification, HSD will allow an applicant the full application processing time period applicable to each program or 10 working days, whichever is later, to submit the requested verification.

H. Federal law requires HSD to provide assistance to households by telephone, as specified in 42 C.F.R. 435.908(a) for Medicaid, and provide a telephone number on SNAP notice as specified in 7 C.F.R. 273.10(g)(1)(i). Defendant agrees that HSD shall accept telephone calls throughout the working hours. If an office is not available to answer the phone, the opportunity to leave a voicemail message will be provided. HSD will maintain a process to ensure that phone calls are returned in a timely manner. All phone calls and messages will be documented in the applicant's case file. Nothing in this subsection prohibits the department from centralizing phone operations.

I. Every ISD field office will provide applicants with receipts for verification documents submitted subsequent to the interview and retain them in the case file or office for at least six months. In accordance with 7 C.F.R. 273.2(h)(3), if there is a delay caused by HSD, HSD shall not deny the application and shall notify the household that its application is pending and inform the household of the reason for the delay and any action the household must take by the deadline to complete the application process. If the household is found to be eligible after the first 30-day period, due to a delay by HSD, the household is entitled to benefits retroactive to the month of application.

J. In accordance with 7 C.F.R. 273.2(h)(2), if HSD cannot take further action on an

application by the 30th day, due to a delay caused by the household, the household shall lose its entitlement to the benefits for the month of application. However, HSD shall give the household an additional 30 days to take the required action. If the household was at fault for the delay in the first 30-day period but is found to be eligible during the second 30-day period, HSD shall provide benefits only from the month following the month of application. The household is not entitled to benefit for the month of application.

 K. Because this is a Court-approved settlement and HSD has agreed to enforce all of its federal regulatory requirements governing the application process, Defendant will conduct reviews of Defendant's compliance with federal law and the Decree.

## IV. CASE FILE REVIEW, REPORTING, AND OTHER IMPLEMENTATION REQUIREMENTS

 A. Case File Review:

  1. The parties agree that a case file review is necessary to measure compliance with Section III and to verify that systemic or programmatic barriers to proper application determinations and access to benefits do not exist within HSD's application processing practices.

  2. The case file review shall be based on the prior six months of eligibility determinations and shall be started in September 2018, and periodically thereafter if Defendants are not determined to be in compliance with this Consent Decree. Plaintiffs shall have access to the entire record contained in each case file.

  3. The case file review shall be conducted by Plaintiffs on a random statewide sample of files of all Medicaid and SNAP applications and cases (Approvals, Denials, and Recertifications) with eligibility determinations as to Medicaid and SNAP initial applications and renewals occurring after January 1, 2018 (or any subsequent six-

month period). The size of the sample shall be sufficient to provide no greater than a 5% confidence interval (margin of error) at the 95% confidence level for a 25% or greater incidence rate of processing errors in the sample. This sample size is estimated to be approximately 300 case files. The parties may agree in advance to different statistical parameters – e.g., confidence interval or estimated error rate -- for determination of the appropriate sample size.

4. Processing errors in the sample may be considered systemic or programmatic barriers, as follows:

    i. Errors that occur in more than 15% of applications. This presumption may be overcome with sufficient evidence to show the errors are not actually systemic.

    ii. Errors that occur in less than 15% of applications are not considered systemic or programmatic barriers. This presumption may be overcome with sufficient evidence that shows the existence of a systemic or programmatic barrier despite the low-incidence error.

5. The parties shall agree on the common evaluation elements prior to the start of the file review.

6. The case files reviewed by Plaintiffs shall also be subject to review by the Special Master and the Compliance Specialist and by Defendant. If Defendant disputes the accuracy of any of Plaintiffs' findings, the Special Master and Compliance Specialist will review and resolve these disputes, subject to appeal of any disagreements to the Court.

7. If the case file review shows that no systemic barriers have existed over a period of six months, then HSD shall be found to be fully complying with the applicable terms,

conditions and undertakings of Section III of this Consent Decree. The Court can make such a finding *sua sponte*, or upon motion by either party. Such a finding will result in a dismissal with prejudice of the issues resolved by Section III of this Agreement.

8. If systemic barriers are determined to exist, the parties will meet and confer to review any necessary corrective action to address the barrier. Either party may seek relief from the Court to address a systemic barrier. After implementation of the corrective action, a second case file review shall be performed in accordance with this section. If the second case file review finds no systemic barriers then HSD shall be determined to be fully complying with the terms, conditions and undertakings of Section II of this Agreement. This Court can make such a finding *sua sponte*, or upon motion by either party. Such a finding will result in a dismissal with prejudice of the issues resolved by Section III of this Agreement. If systemic barriers are determined to exist, the process set forth in this paragraph shall be repeated periodically until no systemic barriers are determined to exist.

B. Plaintiffs may allege there is a systemic or programmatic barrier, as defined in Section I(H), above, through evidence other than the case file review and timeliness data. To verify their claim of a systemic or programmatic barrier, Plaintiffs must provide sufficient evidence demonstrating such a barrier. If the parties disagree that the evidence is sufficient to demonstrate the presence of a systemic or programmatic barrier, the parties must meet and confer in an effort to resolve the disagreement. If this does not resolve the dispute, either party may seek relief from the Court.

C. During the pendency of this case the parties shall meet and confer within 30 days of a request for such a meeting by either party.

D. HSD will make any revisions which are necessary to conform the regulations to the terms of this Consent Decree.

E. HSD will not make changes in the application processing practices or the use of standard form documents adopted pursuant to this Consent Decree without providing Plaintiff's counsel with at least thirty days advance notice and an opportunity for a conference on the matter, unless emergency implementation of a regulation must be accomplished before thirty days elapse. This Consent Decree may be modified only by Order of the Court based either on the agreement of the parties, or if required by changes in the federal law or regulations, or for other good cause as determined by the Court.

F. Data and Other Reporting:

1. Monthly, on an agreed upon date, Defendant will provide Plaintiffs the following data with source information for the SNAP and Medicaid programs until HSD has met the requirements of this Agreement:

    a. the number of applications filed by program statewide and within each office;

    b. office, region, and statewide timeliness rates for each category set forth in Subsections I(C) - I(G), above;

    c. the number of SNAP applicants who are eligible for expedited services but did not receive timely expedited SNAP benefits by office;

    d. data on the Case and Procedural Error Rate;

    e. the approval, withdrawal, procedural denial and need-based denial rates for each program, by office; and

    f. data on the status of Defendant's phone system by office, including call center statistics, to include the number of calls received, the number

answered and speed to answer.

2. Every quarter, on an agreed upon date, HSD will provide Plaintiffs' Counsel with a list of the dates, locations and types of monitoring activity conducted in New Mexico by the United States Department of Health and Human Services' Centers for Medicare and Medicaid Services (CMS) and the United States Department of Agriculture's Food and Nutrition Service (FNS).

3. Within three weeks of receiving the information identified in paragraph F(2) of this Section, counsel for Plaintiffs may request and within 14 days of a request Defendant shall provide access, for inspection and copying, to the following information relating to the time period under review: (a) specific corrective action plans; (b) specific management evaluations conducted by federal agencies and the department; and (c) source data for one specific month that can be used to validate the statistical summaries compiled by Defendant.

The requirements of this subsection supersede and replace all previous court orders for provision of data and reporting.

The parties, their officers, agents, servants, employees, successors and attorneys, and those persons in active concert with them who receive actual notice of this Second Revised Modified Settlement Agreement/Consent Decree are hereby restrained from violating the terms, conditions and undertakings contained herein.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Agreed:

  /s/ ***SOVEREIGN HAGER***
Sovereign Hager
Maria Griego
New Mexico Center on Law and Poverty
924 Park Ave. SW, Suite C
Albuquerque, NM 87102
505-255-2840	Fax (505) 255-2778
sovereign@nmpovertylaw.org
maria@nmpovertylaw.org

Daniel Yohalem
Attorney at Law
1121 Paseo de Peralta
Santa Fe, NM 87501
505-983-9433	Fax (505) 989-4844
dyohalem@aol.com

Jane B. Yohalem
Attorney at Law
P.O. Box 2827
Santa Fe, NM 87504
505-988-2826	Fax: 505-982-6692
jbyohalem@gmail.com

Attorneys for Plaintiffs


  /s/ ***CHRISTOPHER P. COLLINS***
New Mexico Human Services Department
2009 Pacheco Street
P.O. Box 2348
Santa Fe, New Mexico 87504
(505) 827-7701
christopher.collins@state.nm.us

Attorney for Defendant