IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

Plaintiffs,

vs.

Civ. No. 88-385 KG/CG
Consolidated with
Civ. No. 88-786 KG/CG

DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,

Defendant.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon "Defendant's Rule 60(b)(5) Motion to Modify Second Revised Modified Settlement Agreement and Order Sections II, III and IV(F)(1)," and memorandum in support, both filed November 20, 2019 (collectively, Motion to Modify). (Docs. 893 and 894). Plaintiffs filed an amended response on February 3, 2020, and Defendant filed a reply on January 24, 2020. (Docs. 927 and 920). Having reviewed the Motion to Modify and its briefing, the Court grants the Motion to Modify, in part, as described below.

*I. Procedural Background*

On February 3, 2020, Plaintiffs filed a request for a hearing on the Motion to Modify and on "Plaintiffs' Amended Motion to Enforce Compliance with the Consent Decree and Orders of this Court and Request for Relief" (Doc. 926) (Amended Motion to Enforce). (Doc. 928). In a March 5, 2020, Amended Order Setting Hearing, the Court granted the request for a hearing, set a hearing on April 1, 2020, and listed factual issues the Court would consider at the hearing. (Doc. 937). With respect to the Motion to Modify, the Court stated that it "will take evidence only on the factual issue of whether Defendant is currently '[m]aking incorrect eligibility

determinations for Medicaid by counting income that should not be counted under federal law[.]'" *Id.* at 2, ¶ 2. In addition, the Court notified the parties that it may rule on "Defendant's Motion to Strike Plaintiff's Amended Motion to Enforce (Doc. 926) and Plaintiffs' Amended Response to Defendant's Motion [to Modify] (Doc. 927)," (Doc. 930), at the hearing. *Id*. at 5.

The Court subsequently continued the April 1, 2020, hearing "until further order of the Court" due to concerns related to the COVID-19 pandemic. (Doc. 945) at 1. The Court has yet to reset a date for the hearing. Nonetheless, in anticipation of a future hearing, the Court ordered the parties to file additional evidence, if any, that they plan to present at the hearing to resolve the factual issues listed in the Amended Order Setting Hearing. (Doc. 949). The parties have done so. (Docs. 950 and 951).

Having reviewed Defendant's request to strike Plaintiffs' amended response to the Motion to Modify and Plaintiffs' response to that request to strike, the Court determines that it can rule on that request to strike without a hearing. Defendant argues that the Court should strike Plaintiffs' amended response because it does not comply with the Court's February 3, 2020, Order (Doc. 925).[1] The Court finds that Plaintiffs have substantially complied with the Order and the amended response does not prejudice Defendant in arguing his Motion to Modify. Hence, the Court denies Defendant's request to strike Plaintiffs' amended response to the Motion to Modify. The Court, however, holds Defendant's request to strike the Amended Motion to Enforce in abeyance until the Court holds a hearing on the Amended Motion to Enforce.

Also, having reviewed the Motion to Modify and its accompanying briefing, the Court determines, likewise, that, except for the Medicaid eligibility determination issue related to

[1] That Order required Plaintiffs to "re-file their exhibits, limiting each set of exhibits to 50 pages of their choosing…." (Doc. 925) at 2.

counting income that should not be counted under federal law, the Court can decide the remaining issues in the Motion to Modify without a hearing. Accordingly, the Court will rule on those remaining issues at this time and will hold the Medicaid eligibility determination issue in abeyance until a hearing on that particular factual issue.

*II. Motion to Modify*

Defendant moves for Fed. R. Civ. P. 60(b)(5) relief from judgment with respect to Sections II and IV(F)(1) of the August 2018 Second Revised Modified Settlement Agreement and Order (Doc. 854-1) (Consent Decree). Defendant claims he has satisfied Section II by complying with Sections II's numerical timeliness requirement for twelve consecutive months, October 2018 to October 2019. Having satisfied Section II, Defendant concludes that he longer needs to comply with the timeliness reporting requirements under Section IV(F)(1).

Defendant further moves under Rule 60(b)(5) to modify Section III(B) of the Consent Decree to remove the reference to the *Ortiz v. Eichler* case, which requires that denial notices contain a certain degree of specificity to comport with due process. Defendant moves to replace the *Eichler* reference with the following: "Denial notices shall be provided to applicants in compliance with federal regulations, federal guidance, and/or model federal notices." *See* 7 C.F.R. § 273.13; 45 C.F.R. § 431.210.

Plaintiffs oppose the Motion to Modify in its entirety.

*III. Relevant Portions of the Consent Decree*

Section I of the Consent Decree contains definitions. Section II of the Consent Decree addresses the promptness of SNAP and Medicaid eligibility determinations, i.e., the timely processing of applications. Section III of the Consent Decree addresses the accuracy of SNAP and Medicaid eligibility determinations, i.e., the correct processing of applications. Finally,

Section IV of the Consent Decree concerns case file reviews, reporting, and other implementation requirements. "Each section [of the Consent Decree] identifies the method for measuring compliance." (Doc. 854-1) at 5, Section I(I). The Court will dismiss this case when Defendant has met all the terms of the Consent Decree. *Id.* at 2.

Section II specifically acknowledges that "[f]ederal laws and regulations establish application-processing timelines." *Id.* at 5, Section II(A). Section II states that Defendant "satisfies" the "federal application processing time standards in the SNAP and Medicaid programs" if Defendant achieves "a 96% 'monthly' processing standard statewide for a period of six consecutive months, with no individual offices falling below 94% for two consecutive months." *Id.* at 5, Section II(A) and (B). "The parties agree that compliance with these timeliness provisions may be challenged if there is a determination that a systemic or programmatic barrier, as defined in Section I, exists that materially impacts client services."[2] *Id.* at 6, Section II(E).

Section III provides, among other things, that "[d]enial notices shall be provided to applicants with the degree of specificity represented by the notices approved by the court in Ortiz v. Eichler, C.A. No. 84-16 MMS (D. Del., April 21, 1989)." *Id.* at 7, Section III(B). The Consent Decree states that the Court can dismiss with prejudice "issues resolved by Section III" if a "case file review shows that no systemic barriers have existed over a period of six months…." *Id.* at 12-13, Section IV(A)(7).

---

[2] Section I(H) defines "Systemic or Programmatic Barrier" as "a policy or prevalent practice implemented at one or more of the Income Support Division offices that results in the failure to comply with federal law in the SNAP and/or Medicaid program and is not due to an isolated event or action." (Doc. 854-1) at 5.

In Section IV(F)(1), the Consent Decree details Defendant's obligation to provide data to Plaintiff as follows:

> Monthly, on an agreed upon date, Defendant will provide Plaintiffs the following data with source information for the SNAP and Medicaid programs until HSD has met the requirements of this Agreement:
>
> a. the number of applications filed by program statewide and within each office;
>
> b. office, region, and statewide timeliness rates for each category set forth in Subsections I(C) - I(G), above;
>
> c. the number of SNAP applicants who are eligible for expedited services but did not receive timely expedited SNAP benefits by office;
>
> d. data on the Case and Procedural Error Rate;
>
> e. the approval, withdrawal, procedural denial and need-based denial rates for each program, by office; and
>
> f. data on the status of Defendant's phone system by office, including call center statistics, to include the number of calls received, the number answered and speed to answer.

*Id.* at 14-15.

Finally, the "terms" of the Consent Decree "do not preclude" Defendant "from requesting modifications." *Id.* at 1. The Consent Decree explains that it "may be modified only by Order of the Court based either on the agreement of the parties, or if required by changes in the federal law or regulations, or for other good cause as determined by the Court." *Id.* at 14, Section IV(E).

*IV. Discussion*

*A. Timeliness: Sections II and IV(F)(1)*

Defendant moves for Rule 60(b)(5) relief with respect to Sections II and IV(F)(1), claiming he has satisfied the Consent Decree's requirement for timely processing of applications for twelve consecutive months, October 2018 to October 2019.

The parties do not dispute that Defendant has achieved the Section II numerical timeliness requirement of "a 96% 'monthly' processing standard statewide for a period of six consecutive months, with no individual offices falling below 94% for two consecutive months." (Doc. 854-1) at 5, Section II(B). Plaintiffs, however, argue that the Court can only eliminate Section II when Defendant has fully complied with all of the Consent Decree's terms. Plaintiffs also challenge Defendant's compliance with Sections II's numerical timeliness requirement based on the existence of systemic barriers. Plaintiffs finally argue that since the Court cannot eliminate Section II for the foregoing reasons, the Court, likewise, cannot eliminate Section IV(F)(1).

*1. Section II*

With respect to Section II, Defendant relies on the part of Rule 60(b)(5) that provides that the Court may relieve a party "from a final judgment, order, or proceeding" if a "judgment has been satisfied, released or discharged." A "court's order approving the consent decree is tantamount to a final judgment on the merits." *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1198 (10th Cir. 2018). Consequently, Rule 60(b)(5) applies to consent decrees. *Id.* Nonetheless, courts must keep in mind that "[a] Rule 60(b) motion for relief from judgment is an extraordinary remedy and may be granted only in exceptional circumstances." *Id.* at 1191-92.

*a. Whether the Consent Decree Allows for Elimination of Section II Absent Full Compliance with the Consent Decree*

To decide whether the Consent Decree allows for partial Rule 60(b)(5) relief, the Court must examine the scope of the Consent Decree itself. It is well-established that "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). "[T]he instrument must be construed as it was written." *Id.* If the consent decree is

"clear and unambiguous," this Court's "only task is to give full effect to the plain meaning of the consent order." *United States v. Browning*, 518 F.2d 714, 717 (10th Cir. 1975).

Section II does not state that compliance with the numerical timeliness requirement will result in a "dismissal," like other parts of the Consent Decree provide. However, Section II(B) clearly and unambiguously states that compliance with the numerical timeliness requirement "satisfies" Section II. Indeed, if a party "satisfies" a consent decree, Rule 60(b)(5) explicitly provides relief from that consent decree. Despite the "satisfies" language in both Section II and Rule 60(b)(5), Plaintiffs argue that without requiring Defendant to "achieve uniformity and accuracy in case processing, any timeliness achieved will not correct violations of federal law." (Doc. 927) at 4. Put another way, Plaintiffs argue that Defendant must comply with both Section II's numerical timeliness requirement and Section III's requirements for accurate processing of applications in order to comply with federal law. Plaintiff's interpretation, however, is not consistent with a plain reading of the Consent Decree.

In fact, Section II specifically acknowledges that "[f]ederal laws and regulations establish application-processing timelines" and that meeting the numerical timelines satisfies "the federal application processing time standards in the SNAP and Medicaid programs…." (Doc. 854-1) at 5, Section II(A) and (B). That language does not suggest or require that Defendant must comply with Section III accuracy requirements in order to comply with separate federal law on timeliness. Rather, the language in Section II clearly and unambiguously indicates that Defendant's compliance with numerical timelines satisfies federal law on timeliness. In addition, the fact that the Court can dismiss Section III with prejudice based on case reviews demonstrates that the parties contemplated piecemeal compliance with the Consent Decree. To

construe the Consent Decree, otherwise, could very well lead to the indefinite duration of this case, an absurd result that neither Defendant nor Plaintiffs desire or intend.

To further support their argument against piecemeal Rule 60(b)(5) relief, Plaintiffs note that the Court did not grant Defendant's 2007 motion to dismiss only a portion of the Consent Decree. *See* (Doc. 320). The Court, however, denied that motion to dismiss without prejudice in 2013 "because the case appears to have moved forward despite the pendency of [that] motion[]" and because of the Court's interest in managing its docket. (Doc. 453) at 1-2. Hence, the Court's denial of that motion to dismiss does not provide a basis for Plaintiffs' assertion that the Consent Decree does not permit partial compliance.

Viewing the Consent Decree within its four corners, and giving plain meaning to the clear and unambiguous language of the Consent Decree, the Court concludes that the Consent Decree provides that Defendant can "satisfy" the numerical timeliness requirement for Rule 60(b)(5) purposes, which Defendant has done, without having to comply with all of the terms of the Consent Decree.[3]

---

[3] Plaintiffs also argue that a concern related to timeliness is Defendant's "incorrect eligibility determinations for Medicaid by counting income that should not be counted under federal law." (Doc. 927) at 5 (emphasis added). To support this concern, Plaintiffs cite a requested ASPEN Change Request (CR) titled "Administrative Renewal Changes." (Doc. 927-1) at 16-18. The administrative renewal process change documented in that CR concerns eligibility accuracy related issues measured in Section III and, thus, does not relate to Section II timeliness issues. Nonetheless, if accurate, Plaintiffs' assertion that Defendant incorrectly determines Medicaid eligibility by counting income that should not be counted under federal law is troubling. As stated above, the Court will address that factual assertion at a future hearing. In the meantime, the Court directs Defendant to ensure, if he has not already, that he is correctly determining Medicaid eligibility by counting only income allowed under federal law.

*b. Whether Systemic Barriers Taint Defendant's Compliance with the Numerical Timeliness Requirement*

Even if Defendant satisfies the numerical timeliness requirement under Section II(B), Plaintiffs, proceeding under Section II(E), now challenge that compliance by alleging the existence of systemic barriers. First, Plaintiffs point to the Special Master's January 31, 2018, Report; Plaintiffs' own February 25, 2019, case review; and the July 10, 2019, corrective action plans (CAPs) as evidence of systemic barriers. (Doc. 810), (Doc. 878), and (Doc. 927-1) at 1-15).

Although Defendant refers to an October 2018 to October 2019 time frame for timeliness compliance, the Consent Decree requires only a six-month period of compliance. The relevant time frame under the Consent Decree, then, is May 2019 to October 2019. The Special Master's January 31, 2018, Report, and Plaintiffs' February 25, 2019, case review, were compiled months before the May 2019 to October 2019 time frame. Any systemic barriers revealed in those documents relate to a time not material to the May 2019 to October 2019 time frame. The Special Master's January 31, 2018, Report, and Plaintiffs' February 25, 2019, case review, therefore, do not support Plaintiffs' argument that systemic barriers taint Defendant's compliance with Section II's numerical timeliness requirement.

On the other hand, the Court approved the CAPs in July 2019, well within the May 2019 to October 2019 time frame. The CAPs are composed of items identified in Attachment 1 and in Attachment 2 of the Joint Motion to Approve Two Corrective Action Plans. (Docs. 878, 878-1, and 878-2). The parties negotiated the CAP items identified in Attachment 1 to remedy systemic barriers identified in Plaintiffs' previous case review. Under the Consent Decree, case file reviews measure compliance with Section III, not Section II. The Attachment 1 items, therefore,

are not relevant to whether Defendant engaged in systemic barriers related to compliance with Section II's timeliness requirement.

The parties also negotiated the so-called non-CAP items identified in Attachment 2 to remedy systemic barriers identified outside of Plaintiffs' previous case review and identified in Court orders. The only non-CAP item related to Section II timeliness is non-CAP Item 4.c, EBT Card Activation. Timeliness is an issue in Item 4.c only insofar as that item contemplates how quickly EBT cards are activated. Plaintiffs, however, do not contend that Defendant has not completed Item 4.c. The Court is not persuaded that the non-CAP items identified in Attachment 2 support their assertion that systemic barriers exist regarding Defendant's compliance with Section II's timeliness requirement.

Second, Plaintiffs argue that a concern related to timeliness is Defendant's illegal termination of Medicaid benefits by requiring families to reapply for Medicaid benefits when they fail to produce documentation and information that is not required by federal law to determine eligibility. Plaintiffs cite a graph documenting Help Us Make a Decision (HUMADs) sent per week before and after implementation of CR 2946, which "eliminate[s] unnecessary requests for information for Medicaid cases." (Doc. 927-1) at 19; (Doc. 878-1) at 6. Plaintiffs contend that the graph "shows that hundreds of illegal [HUMAD] requests for verification went out every day, amounting to as many as 1,600 a week." (Doc. 927) at 5. The graph, however, shows that after the implementation of CR 2946 in mid-August 2019, the number of HUMADs sent each week dramatically dropped from 1,600 a week to about 200 a week. That graph simply does not support a contention that, at this time, "hundreds of illegal [HUMAD] requests for verification went out every day, amounting to as many as 1,600 a week." (Doc. 927) at 5. In sum, Plaintiffs have not persuaded the Court that systemic barriers, as defined in Section I(H),

materially impact client services related to the timely processing of SNAP and Medicaid applications.

The Court concludes that Defendant can "satisfy" Section II for Rule 60(b)(5) purposes without complying with the entire Consent Decree and that Defendant satisfied Section II's timeliness requirement, untainted by systemic barriers. The Court, thus, concludes that Defendant has fully complied with Section II and, therefore, grants his request for Rule 60(b)(5) relief as to Section II. Furthermore, apart from Rule 60(b)(5) and pursuant to the Consent Decree, Defendant's satisfaction of Section II's timeliness requirement constitutes good cause to modify the Consent Decree to eliminate Section II. *See* (Doc. 854-1) at 14, Section IV(E).

*2. Section IV(F)(1)*

Defendant argues that since he satisfies the Section II timeliness requirement, he also is entitled to Rule 60(b)(5) relief as to Section IV(F)(1), which Defendant contends contains timeliness reporting requirements. In reviewing Section IV(F)(1), the Court finds that only Section IV(F)(1)(a), (b), and (c) relate to timeliness while Section IV(F)(1)(d) through (f) do not.[4] *See* (Doc. 854-1) at 14-15.

Defendant's request to modify Section IV(F)(1) involves the part of Rule 60(b)(5) that provides for relief if applying a judgment "prospectively is no longer equitable…." To warrant relief under that part of Rule 60(b)(5) in the consent decree context, the movant must show "(a) that a significant change in factual circumstances or in law warrants revision of the decree, and

[4] Subsection (a) requires reporting on "the number of applications filed by program statewide and within each office;" subsection (b) requires reporting on "office, region, and statewide timeliness rates for each category set forth in Subsections I(C)-I(G);" and subsection (c) requires reporting on "the number of SNAP applicants who are eligible for expedited services but did not receive timely expedited SNAP benefits by office…." (Doc. 854-1) at 14.

(b) that the requested modification is suitably tailored to the changed circumstances." *Jackson*, 880 F.3d at 1201.

Here, the Court's determination that Defendant no longer must comply with the timeliness requirement in Section II is a significant change in circumstances that requires a corresponding modification of the Consent Decree's timeliness reporting requirements. As a result of that significant change in circumstances, the Court concludes that it is no longer equitable to require Defendant to continue to adhere to the timeliness reporting requirements found in Section IV(F)(1)(a), (b), and (c). Accordingly, the Court grants Defendant's request for Rule 60(b)(5) relief as to Section IV(F)(1)(a), (b), and (c). Moreover, notwithstanding that Rule 60(b)(5) relief, Defendant's satisfaction of Section II's timeliness requirement constitutes good cause to modify the Consent Decree to eliminate the Section IV(F)(1)(a), (b), and (c) reporting obligations. *See* (Doc. 854-1) at 14, Section IV(E).

*B. Section III(B) Reference to the Eichler Case*

Defendant also moves under Rule 60(b)(5) to modify Section III(B) to remove the reference to the *Eichler* case and to state, instead, that: "Denial notices shall be provided to applicants in compliance with federal regulations, federal guidance, and/or model federal notices." Defendant relies on the portion of Rule 60(b)(5) that allows for relief if prospective application of a judgment "is no longer equitable…."

Defendant argues that "HSD's compliance with the federal notice requirements for the Medicaid and SNAP programs should be measured by the standards set by [the Centers for Medicare and Medicare] and [the Food and Nutrition Services], the experts in those areas," and not by a 1989 case. (Doc. 894) at 6. Defendant, however, does not argue that circumstances have changed since the Court approved and adopted the Consent Decree in August 2018 to

warrant omitting the *Eichler* reference. In fact, the due process principle stated in *Eichler* requiring specificity in denial notices is still good law.[5] *See, e.g.*, *Soskin v. Reinertson*, 353 F.3d 1242, 1263 (10th Cir. 2004) (holding that due process may also impose additional requirements for Medicaid notices); *Barry v. Corrigan*, 79 F. Supp. 3d 712, 743–44 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) (quoting *Eichler* and finding SNAP "Notice of Case Action" violated due process because of lack of specificity); *Perdue v. Gargano*, 964 N.E.2d 825, 836 (Ind. 2012) (finding *Eichler* instructive and concluding that "[d]ue process requires that the notice provide the individualized reasons underlying" a "predicate conclusion[] necessitating a denial of benefits").

Furthermore, Defendant's disagreement with his predecessor's negotiations that included the *Eichler* reference in the Consent Decree simply does not constitute an exceptional circumstance that justifies the extraordinary remedy provided under Rule 60(b)(5). *See Armour & Co.*, 402 U.S. at 681 (stating that "[c]onsent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms"). For the above reasons, the Court denies Defendant's Rule 60(b)(5) request to modify Section III(B).

Even if Rule 60(b)(5) does not provide Defendant with relief as to the *Eichler* reference, the Consent Decree provides that the Court may modify the Consent Decree if the parties agree to a modification, "changes in the federal law or regulations" require a modification, "or for other good cause as determined by the Court." (Doc. 854-1) at 14, Section IV(E). Acknowledging the lack of agreement by the parties as well as the lack of any changes in federal law or regulations, the Court cannot modify Section III(B) unless good cause exists for the

---

[5]The Court notes that it has yet to decide if Defendant meets minimum federal requirements for denial notices as well as due process requirements. *See* Amended Motion to Enforce (Doc. 926).

modification. Defendant apparently wants to modify Section III(B) because he prefers a less stringent notice standard, i.e., a notice standard without the individualized information required by due process. Considering that the *Eichler* due process principle is still good law, Defendant's desire for a less stringent notice standard, alone, does not constitute good cause for the requested modification to Section III(B). For these additional reasons, the Court denies Defendant's request to modify Section III(B).

IT IS ORDERED that

1. "Defendant's Motion to Strike Plaintiff's Amended Motion to Enforce (Doc. 926) and Plaintiffs' Amended Response to Defendant's Motion [to Modify] (Doc. 927)," (Doc. 930), is denied as to Plaintiffs' amended response to the Motion to Modify, but it is held in abeyance as to Plaintiff's Amended Motion to Enforce until such time as the Court holds a hearing on Plaintiffs' Amended Motion to Enforce;

2. Defendant ensure, if he has not already, that he is correctly determining Medicaid eligibility by counting only income allowed under federal law; and

3. "Defendant's Rule 60(b) Motion to Modify Second Revised Modified Settlement Agreement and Order Sections II, III and IV(F)(1)," (Doc. 893), is granted, in part, as follows:

a. the Court holds the Medicaid eligibility determination issue related to counting income that should not be counted under federal law in abeyance until such time as the Court holds a hearing on the issue;

b. Defendant has satisfied Section II of the Consent Decree and is relieved from complying with Section II;

c. Defendant is relieved from complying with Section IV(F)(1)(a), (b), and (c); and

d. the Consent Decree is modified to eliminate Section II and Section IV(F)(1)(a), (b), and (c).

________________________________
UNITED STATES DISTRICT JUDGE