IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

    Plaintiffs,

vs.                                                                   Civ. No. 88-0385 KG/CG
                                                                     Consolidated with
                                                                     Civ. No. 88-786 KG/CG

DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,

    Defendant.

AMENDED MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon the Special Master's Report (Report) recommending a case file review process, filed September 18, 2020. (Doc. 973). The parties filed timely objections and requests for clarification on October 2, 2020. (Docs. 976 and 977); *see also* Fed. R. Civ. P. 53(f)(2) (party "may file objections to" or move to modify special master's report). On October 15, 2020, the Special Master filed a timely reply to those objections and requests for clarification. (Doc. 979).

       Having reviewed the Report, the objections and requests for clarification, and the Special Master's reply, the Court, applying a *de novo* standard of review, adopts the Report, in part, and modifies the Report as described below. *See* Fed. R. Civ. P. 53(f)(3) and (4) (court decides *de novo* objections to special master's factual findings and legal conclusions); Fed. R. Civ. P. 53(f)(1) (court may adopt or modify special master's report).

*I. Background*

       The Second Revised Modified Settlement Agreement and Order (Consent Decree) states in Section IV(A)(1) that "[t]he parties agree that a case file review is necessary to measure

compliance with Section III [Application Processing Practices] and to verify that systemic or programmatic barriers to proper application determinations and access to benefits do not exist with HSD's application processing practices."[1]  (Doc. 854-1) at 11.  The Consent Decree describes the requirements for completing a case file review in Section IV(A).  *Id.* at 11-13.

> Furthermore, the Joint Motion to Approve Two Corrective Action Plans (CAPs) states:
>
> When HSD has fully implemented the provisions of both CAPs, Plaintiffs will then conduct a file review.  If that file review does not reveal any systemic barriers as defined in [Section] IV of the Consent Decree, and if Plaintiffs have not learned of other systemic barriers as defined in [Section] I of the Consent Decree, Defendant may move for dismissal of the case at that time.

(Doc. 878) at 2, ¶ 4; *see also* (Doc. 879) (Order Approving Corrective Action Plans).  The Court notes that the first CAP seeks "to remedy the specific systemic barriers identified in Plaintiffs' most recent file review, the results of which were previously reported to the Court."  (Doc. 878) at 1, ¶ 1.  The second CAP, known as the non-CAP, seeks "to remedy the systemic barriers identified outside the most recent file review and that have been the subject of previous Orders issued by the Court."  *Id.* at 1, ¶ 2.

Having learned that the parties cannot agree on a process for the upcoming case file review, despite multiple mediation efforts by the Special Master, the Court ordered the parties to file their respective proposals for a case file review process by August 31, 2020, which they did.  (Doc. 967) at 3; *see also* (Doc. 969) (Plaintiffs' Case Review Proposal); (Doc. 970) (Defendant's Case File Review Process Proposal).  On September 8, 2020, the Court ordered the Special Master to "review the parties' proposals for the case file review process and file a report with the Court recommending a case file review process…."  (Doc. 972).  The Court further provided the parties with an opportunity "to file any objections to the report."  *Id.*

---

[1] "HSD" is the New Mexico Human Services Department.

In accordance with the Court's order, the Special Master filed his Report and the parties filed their objections and requests for clarification. The Court subsequently ordered the Special Master to file a reply to the objections and requests for clarification, which he did.[2] *See* (Doc. 978). The Court also stated that it would not entertain further briefing from the parties. *Id.*

## II. The Report

The Special Master's proposed case file review process encompasses the following seven areas: case file review sample, systems access logistics, training, case file reviewers, case file review tool, case file review reporting tool, and validation of the case file review. The Special Master also proposes deadlines for accomplishing various tasks in the case file review process. Finally, the Special Master attached to the Report, in PDF format, a proposed case file review tool consisting of 16 questions and a proposed case file review reporting tool. The actual tools are Excel spreadsheets with drop-down menus.

## III. Discussion

The Court will examine each area of the proposed case file review process, including any objections or requests for clarification as well as the Special Master's reply to those concerns.

### A. Case File Review Sample

#### 1. *Time Frame for Case File Review Sample*

The Consent Decree states in Section IV(A)(2) that "[t]he case file review shall be based on the prior six months of eligibility determinations…." (Doc. 854-1) at 11. The Special Master recommends that Defendant "pull the sample and include eligibility determination actions for the months of February, March, May, June, July and August 2020." (Doc. 973) at 2. Considering

---

[2] The Court ordered that the reply not exceed the scope of the Report or the responses/objections filed by the parties. *See* (Doc. 978).

that the COVID-19 pandemic began the spring of 2020 in New Mexico, "[t]he Special Master chose the months above because it provides the Court an opportunity for a well-rounded view of performance and may include eligibility determinations prior to, during, and post waiver implementation." *Id.* at 3. The Special Master also notes that Defendant's July 17, 2020, CAP summary "indicates the CAP remedies related to systemic barriers identified in the prior case review were completed by December 22, 2019." *Id.*; *see also* (Doc. 965-2).

*a. Plaintiffs' Objections*

Plaintiffs object to the six months chosen by the Special Master because they are not consecutive. Plaintiffs assert that the Consent Decree contemplates a time frame consisting of six consecutive months. Plaintiffs also contend that the Special Master does not explain why he excluded April 2020. In addition, Plaintiffs contend that eliminating April will complicate the case file review "because cases with decisions up to July are likely to also have had relevant actions made in April." (Doc. 976) at 4-5. Plaintiffs request that the six-month time frame begin on February 1, 2020, and end on July 31, 2020.

In his reply, the Special Master explains his reasoning for excluding April 2020 and how the non-consecutive months would not create confusion for the reviewers. Nonetheless, after considering the parties' responses to his recommended case file review time frame, the Special Master states that "it is important that August and September be included in the sample universe" to provide a view of Defendant's more recent performance. (Doc. 979) at 6-7. Consequently, the Special Master now recommends that the case file review time frame include the following consecutive six months: April, May, June, July, August, and September 2020. In considering this new recommendation *de novo*, the Court concludes that such a six-month time frame is appropriate and acceptable under the Consent Decree. Hence, the Court adopts the Special

4

Master's recommendation that the case file review time frame begin on April, 1, 2020, and end on September 30, 2020.

### b. Defendant's Request for Clarification

"Defendant seeks clarification that compliance with the decree, via the case file review, shall not be evaluated based on compliance with CAP item 3.a and non-CAP items 4.a, 4.b, 4.c, and 4.d." (Doc. 977) at 2. Defendant notes "that CAP item 3.a had yet to be implemented by the last sample month (August 2020)" and that "non-CAP items 4.a, 4.b, 4.c, and 4.d are not included as those items are not related to systemic barriers identified in the prior case review…." *Id.* Defendant concludes that excluding CAP item 3.a and non-CAP items 4.a, 4.b, 4.c, and 4.d from the case file review "will not impact the results of the case file review or compliance with the decree." *Id.*

The Special Master replies by noting that Defendant's own case file review proposal does not exclude the above CAP and non-CAP items. The Special Master also clarifies "that Defendant will be measured for compliance with Section III of the Second Modified Consent Decree and associated requirements including those items being remedied by CAP items as documented in Defendant's CAP Summary for" CAP item 3.a and non-CAP items 4.a, 4.b, 4.c and 4.d. (Doc. 979) at 6. In fact, the Court observes that it appears that implementation of CAP item 3.a and non-CAP items 4.a, 4.b, 4.c, and 4.d will have been completed by August 23, 2020, before the case file review time frame ends on September 30, 2020.[3] Moreover, pursuant to the

---

[3] The part of CAP item 3.a Defendant refers to requires implementation of all change requests and work requests "identified in the CAP" by August 23, 2020. (Doc. 965-2) at 5. Non-CAP items 4.a, 4.b, 4.c, and 4.d concern Yes/NM, immigrant eligibility, EBT card activation, and emergency medical services for aliens. *Id.* at 6-9. Although the majority of the permanent solutions for those non-CAP items have been completed, even as early as January 2019, it appears that the last permanent solution should have been completed by August 23, 2020. *Id.*

5

Joint Motion to Approve Two Corrective Action Plans, Plaintiffs have a right to conduct a case file review once "HSD has fully implemented the provisions of both CAPs…." (Doc. 878) at 2, ¶ 4.  Notwithstanding the Joint Motion to Approve Two Corrective Action Plans, Defendant fails to explain why the Court should not consider non-CAP items 4.a, 4.b, 4.c, and 4.d simply because they are not related to systemic barriers identified in the prior case review.

Having considered *de novo* Defendant's request to exclude CAP item 3.a and non-CAP items 4.a, 4.b, 4.c, and 4.d from the case file review and the Special Master's reply to that request, the Court determines that Defendant has failed to justify his request to exclude CAP item 3.a and non-CAP items 4.a, 4.b, 4.c, and 4.d from the case file review.  The Court, therefore, denies the request to exclude CAP item 3.a and non-CAP items 4.a, 4.b, 4.c, and 4.d from the case file review.

### 2. *Case File Review Sample Size and Method of Pulling Case File Review Samples*

With respect to the size of the case file review sample and the method of pulling the case file review sample, the Consent Decree states in Section IV(A)(3) that "[t]he case file review shall be conducted by Plaintiffs on a random statewide sample of files of all Medicaid and SNAP applications and cases (Approvals, Denials, and Recertifications) with eligibility determinations as to Medicaid and SNAP initial applications and renewals…." (Doc. 854-1) at 11.  The Consent Decree further states in Section IV(A)(3):

> The size of the sample shall be sufficient to provide no greater than a 5% confidence interval (margin of error) at the 95% confidence level for a 25% or greater incidence rate of processing errors in the sample. This sample size is estimated to be approximately 300 case files. The parties may agree in advance to different statistical parameters – e.g., confidence interval or estimated error rate -- for determination of the appropriate sample size.

*Id.* at 12. In addition, "[p]rocessing errors in the sample may be considered systemic or programmatic barriers" if the "[e]rrors … occur in more than 15% of applications." *Id.*

The Special Master proposes that Defendant "pull the sample in the same manner used for the prior case review activity." (Doc. 973) at 3. The Special Master recommends "that the parties … utilize the seed number and random selection activity to establish a random sample of **120**" case files. *Id.* at 4. The Special Master explains that, "[b]ased on the discussion with parties," he "believes a representative measurement of Defendant's compliance may be achieved with a sample size smaller than the full sample…." *Id.* The Special Master also recommends that Defendant "provide the final sample list to the Special Master and Plaintiffs" and that "[t]he Special Master will monitor the random case selection process." *Id.* The Special Master proposes that Defendant pull the case file review samples 15 calendar days from the date of the entry of this Memorandum Opinion and Order. *Id.*

### a. Plaintiffs' Objections

Plaintiffs object to the 120-case file review sample size arguing that such a sample size deviates from the Consent Decree's margin of error and confidence level requirements that produce an approximate 300-case file review sample size. Plaintiffs also contend that the Special Master does not provide a reason for that deviation. Plaintiffs argue that

> [a]vailable data from HSD show that the number of case decisions from February through July 2020, a six-month period similar to the one proposed by the Special Master are very similar to what they were in 2018, when the previous case review took place on the basis of 288 cases. There were 701,919 *decisions* in February through July 2020 and 828,230 *decisions* from February through July of 2018. In the past case review, a total of 450,000 *cases* contained the actions described above (because some cases had multiple program decisions each month). As such, a similar sample size is necessary to obtain the statistically significant results required by the Decree.

(Doc. 976) at 3 (footnote omitted). In addition, Plaintiffs assert that the parties cannot deviate from the Consent Decree's statistical parameters and the 300-case file review sample size

because the parties have not agreed to alternative statistical parameters, as required under the Consent Decree. Plaintiffs correctly maintain that the Court can only deviate from the Consent Decree if a party moves to modify the Consent Decree.

The Special Master replies to this objection by observing that Plaintiffs only requested 120 case files to review procedural closures or denials in 2014, 2015, and 2018.[4] *See* (Doc. 979-3) at 1, ¶ 2. The Special Master also notes that the Consent Decree's parameters that define what constitutes a systemic barrier (errors occurring in more than 15% of applications) "apply to any sample size." (Doc. 979) at 4.

The Court acknowledges that the Consent decree allows parties to "agree in advance to different statistical parameters – e.g., confidence interval or estimated error rate -- for determination of the appropriate sample size." (Doc. 854-1) at 12. In accordance with this provision, the parties in the past agreed to different statistical parameters, including a 120-case file review sample size. The parties, however, do not agree to such a sample size for this particular case file review. Under this situation, the Consent Decree provides that the case file review sample size consist of approximately 300 case files. The Court, therefore, sustains Plaintiffs' objection to the 120-case file review sample size and will order that the case file review sample size consist of 288 case files, which is approximately 300 case review files, and statistically significant by Plaintiffs' own account.

### b. The Parties' Requests for Clarification

The parties request clarification regarding the method employed by Defendant in the last case file review to pull case sample files. Plaintiffs request that the Special Master include the

---

[4] Plaintiffs note that in prior negotiations they "discussed the possibility of utilizing a smaller number of cases in a targeted case review of denials only which would draw from a much smaller universe of cases (denials, rather than all case actions)…." (Doc. 976) at 2.

specific requirements of that sampling process as described in a September 12, 2018, email from Vida Tapia-Sanchez, the HSD Income Support Division Deputy Director of Policy and Program, "wherein a seed number is provided by Plaintiffs' counsel and the SAS statistical software is used to pull the sample." *See* (Doc. 976) at 7; (Doc. 976-1).

The Special Master clarifies in his reply that he

> intends for the Defendant to use the same process documented by HSD and submitted to the Special Master and Plaintiffs on August 13, 2018 via email from Vida Tapia Sanchez (Exhibit #1), with the flexibility for modifications to accommodate final sample months and size orders from the Court for this case review.

(Doc. 979) at 3. The Special Master also refers to the September 12, 2018, email from Vida Tapia-Sanchez, which Plaintiffs cite, to describe the sampling process. Moreover, the Special Master clarifies that he "intends for [the] parties to perform this same random sampling process remotely via Microsoft Teams or Zoom to allow the participants performing the work to share computer screens to ensure transparency." *Id.*

Considering the Special Master's clarified recommendation *de novo*, the Court adopts the Special Master's recommendation that (1) the random case sampling process follow the process described in both the August 13, 2018, and September 12, 2018, emails from Vida Tapia Sanchez; (2) the sampling process occur remotely via Microsoft Teams or Zoom with computer screen sharing; (3) Defendant provide the final sample list to the Special Master and Plaintiffs, and (4) the Special Master monitor the case file selection process.

    B. *System Access Logistics*

The Special Master recommends that Plaintiffs "identify their readers and complete required security access forms/trainings prior to the established training deadline." (Doc. 973) at 4. The Special Master further recommends that Defendant "provide Plaintiffs read-only access to sample cases via a Virtual Private Network (VPN) or the SharePoint type setting as indicated

9

in Defendant's case review plan (Doc. 970)." *Id.* Also, the Special Master proposes that Defendant "provide technical assistance points of contact to Plaintiffs during work hours until the case review activity is completed." *Id.* The Special Master proposes that the parties complete system access logistics activities within 10 calendar days of the date of the entry of this Memorandum Opinion and Order, and prior to training. *Id.*

### 1. Plaintiffs' Request for Clarification

Plaintiffs note that Defendant's case file review plan (Doc. 970), referenced by the Special Master, contemplates that the case file review occur "on site in an HSD office (COVID safe environment will be provided) with access to ASPEN as needed to conduct the case file review within the appropriate review parameters." (Doc. 970) at 6. Considering the current COVID-19 pandemic and the Governor's order to telework when possible, Plaintiffs request that the Court order "remote access identical to the access provided during the past case file review." (Doc. 976) at 5.

Plaintiffs explain that remote access to case review files is possible if Defendant follows his previous case file review process: image copies of case files from ASPEN "(referred to as the production environment)" on the day the sample is pulled, load the "copied production environment onto an encrypted flash drive, known as an IRONKEY," and load the information from the IRONKEY onto a computer from which Plaintiffs can access the case files. (Doc. 976) at 6. Plaintiffs maintain that with the copied case files on IRONKEY they can remotely access case files either on their own computers or on HSD issued computers.

### 2. Defendant's Objection

Defendant objects to the recommendation that he provide Plaintiffs with read-only access to case files via a VPN or SharePoint type of setting. Defendant has several concerns with this

10

recommendation. First, he states that "[t]he ASPEN system, without considerable development and modification work, is not designed to select … cases from the system and either download or copy them to [a] separate database, (SharePoint) or separate ASPEN system database with remote access." (Doc. 977) at 2. Second, if Plaintiffs have VPN access to ASPEN, Defendant states Plaintiffs will "have access to every client file in the ASPEN system … in a non-production environment" for the case file review time frame. *Id.* at 3. Consequently, Defendant proposes that Plaintiffs conduct the case file review on-site in an HSD office, with COVID-19 safety precautions, where Plaintiffs cannot access case files outside of the case file review sample. Third, Defendant contends that "the SharePoint setting option, while possible is not practicable within the timeframes provided (10 Calendar Days from Order) and could result in errors associated with copying the information and uploading." *Id.* at 3. In sum, Defendant requests that Plaintiffs use the method for accessing the case file samples Plaintiffs used in the prior case file review, which Plaintiffs conducted at Defendant's office.

        3. *The Special Master's Reply*

"The Special Master disagrees that imaging a copy of the ASPEN database to a production environment requires major modification of the ASPEN system." (Doc. 979) at 8. The Special Master notes that "Defendant performed this action during the 2018 case review process to allow the Plaintiffs access to the system without interfering with [the] ASPEN production system." *Id.* In 2018, Defendant used a Deloitte team to create the production environment in three days. (Doc. 979-4). The Special Master further notes that he understands that "an image of the ASPEN production environment is 'all or none' meaning the image requires an image of the entire database and not specific cases." (Doc. 979) at 8. In fact, "Plaintiffs had access to all cases in the ASPEN image of the production environment during the

2018 case review." *Id.* at 8-9.  The Special Master observes that the case file review tools will limit Plaintiffs to the pulled sample cases "regardless of whether or not Plaintiffs have access to additional information." *Id.* at 9.

The Special Master also "no longer recommend[s] the SharePoint option due to the laborious process and potential opportunities for data inconsistencies and omissions." *Id.*  In addition, the Special Master does not recommend that the parties "violate the Governor's public health executive orders requesting individuals to telework to the greatest extent possible." *Id.*

In sum, the Special Master now recommends that Plaintiffs have "remote access to an image of the ASPEN database in the production environment or the read-only version of the ASPEN database." *Id.*  Furthermore, the Special Master recommends that the Court order Plaintiffs to access only case information relevant to the case file samples pulled for this review. Finally, similar to the 2018 case file review, the Special Master recommends that Defendant upload onto SharePoint any "electronic copies of ASPEN screen shots, correspondence and/or verifications" Plaintiffs request, i.e., case documentation, as provided in the 2018 DHG Case Review document  *See* (Doc. 979-7) at 2.

Having reviewed the parties' concerns regarding system access logistics and the Special Master's reply to those concerns, the Court decides *de novo* to adopt the Special Master's recommendations that (1) Defendant provide Plaintiffs with "remote access to an image of the ASPEN database in the production environment or the read-only version of the ASPEN database;" (2) Plaintiffs not access case information that is not relevant to the case file review samples pulled for this case file review; and (3) Defendant upload onto SharePoint any case documentation consisting of "electronic copies of ASPEN screen shots, correspondence and/or verifications" which Plaintiffs request in accordance with the 2018 DHG Case Review document

(Doc. 979-7); and (4) Defendant provide technical assistance points of contact to Plaintiffs during work hours while they conduct their case review activities.

### C. Training

The Special Master recommends that Defendant "provide a virtual or recorded overview of ASPEN or SharePoint method used to access the case information functionality for Plaintiffs." (Doc. 973) at 4. If Defendant provides a recorded overview, the Special Master recommends that Defendant provide Plaintiffs an opportunity "to obtain clarification prior to start of the review." *Id.* The Special Master proposes that Defendant complete training 14 calendar days from the date of the entry of this Memorandum Opinion and Order. *Id.* at 5.

The parties do not object to the training recommendations nor do they seek any clarification. Having considered the merits of the training recommendation *de novo*, the Court adopts the training recommendation in its entirety.

### D. Case File Reviewers

The Special Master recommends that "Counsel … read the sample cases using a uniform case review tool" and that case reading activities begin no later than 15 calendar days from the date of the entry of this Memorandum Opinion and Order "or 1 Calendar day following the date training, access and sample has been completed (whichever is sooner)." *Id.* (bold type omitted).

The parties do not object to the recommendation regarding case file reviewers nor do they seek any clarification. Having considered the merits of the recommendation regarding case file reviewers *de novo*, the Court adopts that recommendation in its entirety.

### E. Case File Review Tool

The Special Master also proposes "a single sixteen question [case file review] tool" in order "to measure both application and renewal eligibility processing performance." *Id.* The

case file review tool contains a drop-down menu from which a user can select response(s) to the tool.  *Id.*

### 1. Plaintiffs' Objection

Plaintiffs object to Question 10 of the case file review tool, which asks, "Was verification request form (HUMAD) accurate and seeking information as required by Decree?"[5]  (Doc. 973-1).  Plaintiffs believe that this question does not fully address the Consent Decree's "requirement that Defendant not require applicants to supply verification that is not necessary to determine eligibility." (Doc. 976) at 6-7.  In addition to the improper use of the HUMAD form, Plaintiffs argue that Defendant seeks unnecessary verifications verbally and through the use of "other illegal notices."  *Id.* at 7.  Plaintiffs complain that Question 10 "only checks for improper HUMAD forms…."  *Id.*  Plaintiffs, therefore, request that the case file review tool include "the question whether case files contain a request for verification that is not necessary to determine eligibility relevant to the review period."  *Id.* at 8.

The Special Master replies to Plaintiffs' objection by recommending this question, instead:  "Was the verification request accurate and seeking information as required by the Decree and Regulations (verbal or written)?"  (Doc. 979) at 10.  Upon a *de novo* review of Plaintiffs' objection and the Special Master's revised Question 10, the Court finds that revised Question 10 cures Plaintiffs' objection to Question 10.  Consequently, the Court adopts the Special Master's recommendation to revise Question 10 as described above.

### 2. Defendant's Objections

Defendant objects to Question 13 of the case file review tool, which asks, "If applicable, is a document receipt on file and maintained for the past six months?"  (Doc. 973-1).  Defendant

---

[5] HUMAD stands for "Help Us Make a Decision."

asserts that this question does not track Section III(I) of the Consent Decree which requires that "[e]very ISD field office will provide applicants with receipts for verification documents submitted subsequent to the interview and retain them in the case file or office for at least six months." (Doc. 854-1) at 10. Defendant also contends that Question 13 is vague because it "would yield a negative answer every time the application and verification documents are less than 6-months old." (Doc. 977) at 4. Defendant, therefore, requests that Question 13 read as follows: "If applicable, is a document receipt for verifications submitted subsequent to the interview on file?" *Id.* In the alternative, Defendant requests that the Court eliminate Question 13.

The Special Master replies to Defendant's objection by proposing the following revised Question 13: "If applicable, is a document receipt on file and maintained, as required by the Decree?" (Doc. 979) at 11. Upon a *de novo* review of Defendant's objections and the Special Master's revised Question 13, the Court finds that revised Question 13 cures Defendant's objections to Question 13. The Court, therefore, adopts the Special Master's recommendation to revise Question 13 as described above.

    *F. Case File Review Reporting Tool*

The Special Master also created a single case file review reporting tool "to report objective and quantitative outcomes of the case review to ensure uniformity in response reporting." (Doc. 973) at 5. The case file review reporting tool requires Defendant and Plaintiffs to "complete [an] Excel spreadsheet with drop-down responses to report the findings for the action read." *Id.; see also* (Doc. 973-2). The Special Master proposes that once the parties complete the case file review reporting tool accurately, the parties will submit their respective case file review reporting tools (Excel spread sheets) and case file review tools (PDFs) to the

Special Master and to opposing counsel 45 business days from the date of the commencement of the case reading activities.

Plaintiffs do not object to the case file review reporting tool nor do they seek a clarification.

Defendant also does not object to that tool, but he seeks clarification of several aspects of the case file review reporting tool. First, Defendant requests that the Special Master and the Compliance Specialist re-evaluate the case file review reporting tool "to make sure that the dropdown menu is consistent and does not produce a false negative outcome." (Doc. 977) at 5. Second, Defendant "requests that the Special Master and Compliance Specialist develop a scoring guide to eliminate any problems with the reporting tool and the drop-down menu scoring." Id. at 6. Third, Defendant contends that clarification is needed regarding how to complete the case file review reporting tool accurately. Finally, Defendant requests that "[i]f either party has not completed reviewing all … cases by the deadline [for submitting to the Special Master the case file review reporting tools (Excel spread sheets) and case file review tools (PDFs)], only those cases completed by that deadline will be accepted." Id.

The Special Master replies to Defendant's request for clarification by revising the case file review reporting tool "to allow the reviewers to provide a response for each question on the Case Review Tool." (Doc. 979) at 11. The Special Master explains that "this change eliminates the need for additional clarification regarding the correct method for completing the reporting tool." Id. Also, "[t]he question responses for individual questions 1-18 are the same as the questions on the case review tool." Id. The Special Master further agrees with Defendant "that all deadlines in this case review process must strictly be enforced." Id.

16

The Court finds upon *de novo* review of Defendant's objections and the Special Master's reply that the revised case file review reporting tool cures any objection Defendant has to the tool. The Court, therefore, adopts the recommendation to use the revised case file review reporting tool. Moreover, the Special Master will accept only those case reviews completed by the deadline for submitting the case file review reporting tools (Excel spread sheets) and case file review tools (PDFs) to the Special Master. Finally, in light of the 288-case file review sample size, the Court will modify that submission deadline to 60 business days from the date of the commencement of the case reading activities.

### G. *Validation*

Lastly, the Special Master recommends that he "review the submitted results to resolve error case disagreements and … provide the final outcome to both parties." (Doc. 973) at 6. The Special Master further recommends that he "meet and confer with [the] parties as he deems necessary to finalize the results." *Id.* Once the Special Master completes the validation process, "the Special Master will issue a report." *Id.* The Special Master proposes that he complete the validation process "30 Business Days from the receipt of the completed Case Review Reporting Tool and the Case Review Tool PDF from [the] parties." *Id.* (bold type omitted).

The parties do not object to the validation recommendation nor do they seek any clarification. Having considered the merits of the validation recommendation *de novo*, the Court adopts that recommendation in its entirety.

IT IS ORDERED that

1. the Special Master's Report (Doc. 973) is modified and clarified as described *supra*;

2. the Court adopts the Special Master's Report (Doc. 973) to the extent provided in this Memorandum Opinion and Order; and

3. the parties and the Special Master will adhere to following case file review deadlines:

   a. Defendant will pull 288 random case files for the time frame of April 1, 2020, to September 30, 2020, by **NOVEMBER 5, 2020**;

   b. the parties will complete system access logistics activities by **NOVEMBER 2, 2020**, but prior to training;

   c. Defendant will complete training activities by **NOVEMBER 4, 2020**;

   d. the parties will commence case file reading activities either by **NOVEMBER 5, 2020**, or one calendar day following the completion date for training, system access logistics, or training, whichever occurs first;

   e. the parties will provide the Special Master completed case file review reporting tools (Excel spread sheets) and case file review tools (PDFs) 60 business days from the commencement of case reading activities; and

   f. the Special Master will complete the validation process 30 business days from his receipt of the completed case file review reporting tools (Excel spread sheets) and case file review tools (PDFs).

_____
UNITED STATES DISTRICT JUDGE