IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

        Plaintiffs,

v().

DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,

        Defendant.

Civ. No. 88-0385 KG/CG
Consolidated with
Civ. No. 88-0786 KG/CG

**PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH DECREE TO TRANSLATE DOCUMENTS AND INTERPRET AS REQUIRED BY FEDERAL LAW**

    Thousands of New Mexicans speak languages other than English and face systemic barriers to food and medical assistance because application documents are not provided in their language. Because of Defendant's unlawful practices food and medical assistance are delayed and denied to New Mexican families who speak languages other than English. During the COVID-19 pandemic families have experienced even greater barriers. Plaintiffs respectfully move this Court for an Order requiring Defendant to comply with the terms of the Second Revised Modified Settlement Agreement, Doc. 853, entered August 21, 2018 (hereafter "the Decree"), to provide translation of documents of informational materials, and materials used in the application and renewal process for SNAP and Medicaid as well as interpretation into languages required by federal law.[1]

    Federal law and the Decree require the New Mexico Human Services Department (HSD) to translate documents into other languages if they are spoken by a specific percentage of low-

---

[1] **Translation** is written language assistance service and **Interpretation** is oral language assistance service *See* Language Access Assessment and Planning Tool for Federally Conducted and Federally Assisted Programs (May 2011), *Available at*
https://www.lep.gov/sites/lep/files/resources/2011_Language_Access_Assessment_and_Planning_Tool.pdf.

1

income New Mexicans. But Defendant is not complying with the law regarding translation. Consequently, class members are unable to complete applications without additional help, often from family members or community organizations, if from anyone at all, and cannot determine which documents they must provide or what the letters they receive from Defendant mean. This causes delays and denials of assistance for which families qualify. Plaintiffs have written to Defendant and raised this issue numerous times over the past several years. Plaintiffs have discussed this unlawful conduct at Meet and Confers, however Defendant refuses to take action to provide the required translations. For these reasons, Plaintiffs seek an Order from the Court. In support of this Motion, Plaintiffs state the following:

1. **The Decree and Federal Law Require Translation of Documents and Provision of Interpreters**

The Decree requires that Defendant comply with federal laws and regulations that govern application processing and "the parties recognize the state's requirement to comply with those federal regulations." *See*, Decree, p. 6, ¶ 4. The Decree similarly requires Defendant to establish procedures governing SNAP offices that best serve households "with adult members who are not proficient in English…" *Id*, ¶ 5. Defendant must provide notices that inform applicants of the information they must provide to verify their eligibility. *Id*, at p. 7, ¶ 6. For notices to be an effective means of communicating with people who are not proficient in English, they must meet the standards in federal law and regulations, this explicitly includes translation into languages spoken by a threshold number of individuals served by Defendant as detailed below.

   a. **Federal SNAP regulations and guidance requiring translation of documents.**

Federal SNAP regulations require that translation of *program informational materials* based on the number of low-income Limited English Proficient (LEP) households as described below:

   1) In project areas with less than 2,000 low-income households, if approximately 100 or

2

  more of those household are of a single language minority;

2) In project areas with 2,000 or more low-income households, if approximately 5 percent or more of those households are a single language minority; **and**

3) In project areas with a certification office that provides bilingual service as required by 7 C.F.R. § 272.4(b)(3).

7 C.F.R. § 272.4(b)(2) (emphasis added).

State agencies are required to provide *certification materials* in the appropriate languages and *bilingual staff or interpreters* as follows:

"(i) In each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households; and

(ii) In each project area with a total of less than 100 low-income households if a majority of those households are of a single-language minority." 7 C.F.R. § 272.4(b)(3).

Certification materials include the SNAP application form, change report form and notices to households. 7 C.F.R. § 272.4(b)(3)(ii)(A). A project area is "the county or similar political subdivision designated by a state as the administrative unit for program operations…or a State as a whole may be designated as a single project area." 7 C.F.R. § 271.2. HSD has consistently maintained that the state as a whole is a "project area" for the purpose of determining HSD's obligations to provide interpretation and translation under relevant SNAP regulations. Plaintiffs do not dispute this distinction because it is irrelevant. The SNAP regulations require translation of information, certification materials, and bilingual staff based on the following threshold of single language minority households served by an *individual certification office*. This means that in New Mexico, HSD must:

1) *Translate informational materials* into languages spoken by 5% or more of the low-income households and into languages spoken by 100 single language minority low-income households that are in an area **served by an individual certification office**, **and**

2) *Translate certification materials and provide bilingual staff to provide interpretation* into languages spoken by 100 single language minority low-income households that are **served**

3

**by an individual certification office.**

Federal regulations require HSD to develop estimates of the number of low income single-language minority households, both participating and not participating in SNAP, for each project area and certification office by using census data and knowledge of project areas and areas serviced by certification offices. 7 C.F.R. § 272.4(b)(6). HSD must seek information from community action agencies, planning agencies, migrant service organizations, and school officials to develop these estimates. *Id*. If those sources of information do not provide sufficient information, HSD must, for a six-month period, record the number of single-language minority households that visit the certification office to make inquiries about the program, file a new application for benefits, or be recertified. *Id*.

**b. Federal Medicaid regulations and guidance require translation of documents.**

State agencies must provide Medicaid applicants and participants with Medicaid eligibility requirements, available Medicaid services, and the rights and the rights and responsibilities of applicants and beneficiaries in plain language and in a manner that is accessible and timely. *See* 42 C.F.R. § 435.905. For people whose primary language is not English, this includes the provision of oral interpretation and written translations at no cost to the individual, as well and information about the availability of language services and how to access such information and services, at a minimum through the use of taglines in non-English languages indicating the availability of language services. *Id.* Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, sex, disability, and national origin in entities that operate health programs that receive federal financial assistance through the U.S. Department of Health and Human Services. 42 U.S.C. § 18116.

**c. Translation is also required by Title VI of the Civil Rights Act**

Section 601 of Title VI of the Civil Rights Act of 1964, states that "no person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation

in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000(d). Recipients of federal financial assistance may not exclude anyone on the basis of race, color, or national origin from participation in any program or activity. 7 C.F.R. § 15.3(a). This prohibition applies to unequal treatment in priority, qualifications, quantity, methods or charges for services, use, participation in the service or benefit available, or in the use, occupancy or benefit of any structure, facility or improvement. *Id*. Nor may recipients directly or through contractual or other arrangements utilize criteria or methods of administration which have the effect of defeating or substantially impairing accomplishment of the program objectives with respect to individuals of a particular national origin. 7 C.F.R. § 15.3(b)(2). The U.S. Department of Justice considers translation of documents by a covered entity in the following circumstances strong evidence of compliance with the Civil Rights Act: a) translation of vital documents for each eligible LEP language group that constitutes five percent or 1,000, whichever is less, of the population of persons eligible to be serviced or likely to be affected or encountered, or b) if there are fewer than 50 persons in a language group that reaches the five percent trigger, a written notice should be provided in the primary language with at a minimum information about the right to receive competent oral interpretation of those written materials free of cost. *See* Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41455, 41464 (June 18, 2002) (Known as the "Safe Harbor Rule").

**2. A significant percentage of New Mexicans speak languages other than English**

Data from the U.S. Census that is compiled by the U.S. Department of Justice (DOJ) shows that a large percentage of New Mexicans speak languages other than English.[2] It shows the

---

[2] Data compiled by the U.S. DOJ shows that the following languages are spoken by 5% or 1000 people in New Mexico: Spanish or Spanish Creole (155,214); Navajo (11,579); Vietnamese (2,837); Chinese (2,007); Keres (1,760); German (1,527); Zuni (1,210). Data can be found here: https://www.lep.gov/maps/lma2015/Final_508# and https://www.census.gov/data/tables/2013/demo/2009-2013-lang-tables.html.

following languages are spoken by the lesser of 5% or 1,000 New Mexicans: Spanish, Vietnamese, Chinese, Zuni, Keres, German, and Dine.[3]

HSD certification offices are organized by County, with a few counties having multiple offices.  Certification office information is available on the HSD website at: https://www.hsd.state.nm.us/lookingforassistance/field_offices_1/.  County level census data shows that the following languages are spoken by more than 100 New Mexicans within specific New Mexico counties: Arabic, Tagalog, Korean, Persian (Dari/Farsi), Japanese, French (incl. Patois, Cajun), Italian, Laotian, Russian, Thai.[4]

Furthermore, community-based groups and nonprofits have alerted HSD to the fact that many New Mexicans are low-income and speak Vietnamese and Chinese specifically. *See* April 28, 2017, Letter from Community Organizations, *attached as* Exhibit A. Information gathered by Plaintiffs' Counsel from community-based groups in Albuquerque shows that more than 100 low-income New Mexicans do not speak English well and speak the following languages within specific HSD certification office areas in Albuquerque: Vietnamese, Chinese, Arabic, Dari/Farsi, Swahili, and Kinyarwanda, with Vietnamese and Chinese spoken by over 1000 people statewide. *See* Declaration of AnhDao Bui, *attached as* Exhibit B, ¶ 6 (Vietnamese); Declaration of Sara Deewa, *attached as* Exhibit C, ¶ 8 (Dari/Farsi); Declaration of Martin Ndayisenga, *attached as* Exhibit D, ¶¶ 6-7 (Swahili/Kinyarwanda); Declaration of Mohammed Alkwaz, *attached as* Exhibit E, ¶ 6 (Arabic). Afghan refugees typically speak Dari/Farsi and 299 Afghan refugees are expected to be resettled in New Mexico.[5] HSD must utilize this information in determining into which languages certification materials must be translated. *See* 7 C.F.R. § 272.4(b)(6).

**2.  Defendant's refusal to translate documents used in the application process violates federal law and harms families who qualify for food and medical assistance.**

---

[3] *Id*.
[4] These languages are spoken by over 100 people in Bernalillo County, with French being spoken by over 100 people in both Bernalillo and Santa Fe County. Data can be found here: https://www.lep.gov/maps/lma2015/Final_508#.
[5] *Over 4,400 Afghan Refugees to be resettled in Texas, nearly 300 in NM*, Associated Press KVIA ABC-7, Sept. 29, 2021, at 3, https://kvia.com/news/2021/09/15/over-4400-afghan-refugees-to-be-resettled-in-texas-nearly-300-in-nm/.

6

Defendant only provides the online[6] and paper[7] application for SNAP and Medicaid in English and Spanish. A tagline in Vietnamese that purports to give information on how to apply for benefits links to a factsheet on Medicaid and Exchange coverage, which refers families to the same application processes for Medicaid only that are not in Vietnamese. HSD's online application has a language button at the top which allows families to select languages other than Spanish and English. However, when a language other than English or Spanish is selected, those languages produce a note that states "unsupported language" and gives a 1-800 number to call, which is only in English and Spanish. The HSD phone system (1-800-283-4465) does not offer interpretation into languages other than Spanish and all the instructions for callers are in English only. This makes it impossible to navigate to an interpreter without additional help from an English speaker to get an operator on the line who can call an interpreter.

Other certification materials, such as notices of eligibility, verification requests and forms are not translated into languages other than Spanish. Defendant does not produce taglines in notices sent to families or otherwise alert families in any way to the availability of language assistant services when applying for or renewing SNAP or Medicaid. There are no informational materials about SNAP in languages other than English and Spanish.

Families have lost or been denied SNAP and Medicaid because Defendant does not translate certification materials into languages other than Spanish. *See* Exhibit B, Bui Decl. ¶ 14(a). When families cannot read application materials because they cannot read English or Spanish, they cannot apply directly for benefits and must seek help from a third party and wait for that assistance. This means that it takes longer for families and their children to receive the food and health care benefits they urgently need and qualify for because of the language they speak. *See* Declaration of Cuc T. Nguyen, *attached as* Exhibit F, ¶¶ 7-10 (Stating that she went 8 months without Medicaid

---

[6] The online application is *available at* https://www.yes.state.nm.us/yesnm/home/index.
[7] The paper application is *available at* https://www.hsd.state.nm.us/lookingforassistance/apply-for-benefits/.

because of language barriers during the application process). Families often start but are not able to finish the application process because HSD does not send notices about application requirements in their language. *See* Declaration of Carol Hughes, *attached as* Exhibit G, ¶ 9. Some that are able to apply and begin receiving benefits later lose those benefits because they are unable to recertify their continued eligibility. *See* Exhibit B, Bui Decl. ¶ 14(a). Families with already limited income resort to at times having to pay someone from the community to attend meetings with the ISD offices to interpret and to read notices for them. *See* Exhibit B, Bui Decl. ¶ 14(b); Exhibit F, Nguyen Decl. ¶ 8. As described below, these barriers have been exacerbated during the pandemic, when families no longer had the benefit of in-person assistance from community-based organizations, due to public health orders. *See also* "Eligible but Excluded: How Systemic Inequalities in Language Access are Impacting Asian, Pacific Islander, and African Immigrant and Refugee Communities During the Pandemic," New Mexico Voices for Children, 2021. Report can be found at https://www.nmvoices.org/archives/15665 (finding that language barriers prevented families who spoke languages other than English from readily accessing government assistance during the COVID-19 pandemic). Local non-profit and direct service organizations have been and continue to be forced to bear the burden of HSD's failure to comply with the law, diverting resources towards translation and interpretation, that would otherwise be used to help families with other needs. *See* Exhibit B, Bui Decl. ¶¶ 20-21; Exhibit D, Ndayisenga Decl. ¶¶ 9-13; Exhibit C, Deewa Decl. ¶ 11.

Below are specific class members impacted by Defendant's failure to translate documents in violation of federal law:

1) S.T.L. is 78 years old and resides with her husband K.B., who is 83 years old. The couple do not read or speak English and are proficient in Vietnamese. Their only source of income is $1,082 in Social Security benefits and they rely on SNAP food assistance to buy food. The family has repeatedly lost SNAP food assistance benefits for 1-2

8

months at a time because the notices they receive are in English and not understand the letters that they received in the mail that were written in English. This caused the family to miss deadlines to turn in documents since they could not understand the letters they received. Every time the family receives English notices, K.B. must drive to a non-profit organization called the New Mexico Asian Family Center to have staff explain what the notice says. This has been increasingly difficult and impossible at times during the COVID-19 pandemic as both S.T.L and K.B. are at high risk of health complications should they contract COVID-19 due to their age. The family had to take additional steps and expend limited personal resources because HSD does not provide documentation in Vietnamese. For example, the family received a letter about an early issuance of SNAP benefits. However, because the couple had lost SNAP in the past and did not understand the notice, the family needlessly traveled to HSD offices and resubmitted applications during the public health emergency. The family would not have lost benefits or needlessly resubmitted applications if the application were provided in Vietnamese as required by law. *See* Exhibit B, Bui Decl. ¶ 14(a).

2) L.H. is a 47-year-old aromatherapy masseuse. She primarily reads and speaks Mandarin and cannot read or speak English. Her business had to close because of the COVID-19 public health orders. She applied for food assistance in November 2020 with the help of a case manager at NM Asian Family Center. L.H. had no income and had lost the room she was renting from another family because she could not afford the rent. She now has to sleep on the floor of her struggling business. She was determined to qualify for expedited SNAP and should have received benefits within 7 days. However, she did not receive those benefits because she did not complete an interview. The notices about the interview and phone calls to her were all in English. Delays in food assistance caused by the lack of information in her language reduced her access

9

to food and ability to pay for other basic needs. As a result of cutting back on food, L.H. lost 10 pounds and went from weighing 110 to 100 pounds; she is 5'3" tall. Part of the reason she was unable to afford more food was because she had to continue to pay her expensive health insurance as she waited to be approved for Medicaid. *See* Exhibit G, Hughes Decl.

3) Shaoxue Zhang is a single mother of three children (ages 3, 4 and 20), living in Albuquerque. Ms. Zhang is proficient in Chinese (Mandarin and Cantonese) and does not read or speak English. Ms. Zhang applied for food assistance in April 2020 after a domestic violence incident. Because the application materials were not in a language she could read, she had to seek assistance from two non-profit organizations, the NM Asian Family Center and Enlace, to complete her application, which delayed her application for food assistance. The forms that she receives are in English only and cause her to miss deadlines to maintain benefits. For example, she did not understand a letter requiring her to turn in immigration status documents, which caused her benefits to be reduced. Without access to food assistance, Ms. Zhang could not purchase the food necessary to feed her children and meet other basic needs. Declaration of Shaoxue Zhang, *attached as* Exhibit H.

4) Cuc T. Nguyen is 51 years old and resides in Albuquerque, New Mexico with her 13-year-old son. Ms. Nguyen reads and speaks Vietnamese proficiently, but does not speak English. Ms. Nguyen has applied for SNAP benefits at different times when her family experienced financial hardships. Ms. Nuyen originally attempted to get help applying for Medicaid benefits at an HSD office but was turned away because there were no employees who spoke Vietnamese to help her. HSD staff told her to come back with her own interpreter. She eventually found out about the NM Asian Family Center and they were able to help her. Each time Ms. Nguyen seeks benefits, she must do so with

the help of an advocate or case manager at NM Asian Family Center. However, she has difficulty maintaining benefits because the notices she receives are not in Vietnamese. For example, in January of 2021, Ms. Nguyen's family's SNAP benefits were terminated and she did not know why, but assumed she was ineligible. Three months later, she was able to reapply with help and learned that she had missed a renewal deadline because she did not understand the letters that were sent to her in English. The Nguyens had to reduce the amount of food they purchased during the three months that her family was without food assistance and did not have any other source of income due to the pandemic. Exhibit F, Nguyen Decl.

Other declarations attached hereto detail the frequent challenges community organizations face in providing assistance to families because HSD does not meet federal requirements and the accompanying hardship to families who are denied benefits or experience long delays in getting food and medical assistance. *See* Exhibit B, Bui Decl.; Exhibit G, Hughes Decl.; Exhibit C, Deewa Decl.; Exhibit D, Ndayisenga Decl.; Exhibit E, Alkwaz Decl.

### 3. **For over a decade Defendant has chosen to discriminate against families rather than translate documents as required by federal law.**

The Decree requires that the parties attempt to resolve issues: "[t]he parties agree to make good faith efforts to resolve any differences that may arise in the course of rendering the Agreement operational." Decree, p. 2, ¶ 4. Plaintiffs have repeatedly communicated with Defendant regarding federal language access requirements for SNAP and Medicaid, beginning in 2009, twice in 2017, again in 2018, 2019, 2020 and 2021.

Plaintiffs' Counsel alerted Defendant to these regulations and the need for compliance with the Civil Rights Act in 2009. *See* email and memorandum from NM Center on Law and Poverty to HSD counsel, *attached as* Exhibit I. Plaintiffs and community-based organizations raised the issue again through comments on proposed rulemaking by Defendant in April of 2017. *See* Exhibit A. This was also raised in connection with the Decree requirements with HSD Counsel in May of

11

2017. *See* Letter from CLP to HSD about Decree requiring translation, *attached as* Exhibit J.

Plaintiffs again requested written translation pursuant to the Decree and federal law in 2018, when submitting written comments concerning Defendant's online application for assistance. *See* Comments on Yes NM, *attached as* Exhibit K. Defendant agreed to implement Plaintiff's comments on the online application in a response to that letter in 2018. *See* HSD response to Yes NM comments, *attached as* Exhibit L.

In 2019, HSD agreed to address Plaintiffs' Comments on the online application, known as YES-NM, as one of the changes required for the Court Approved Corrective Action Plans. *See* Court Approved Corrective Action Plan, Doc. 878, Exhibit 2. Plaintiffs inquired about translation with the Court-appointed HSD Immigration Specialist. *See* Notes from the immigrant eligibility work group in July of 2019, *attached as* Exhibit M. No action was taken. In 2020, Defendant stated in an update on the implementation of the Corrective Action Plan, that "NMHSD is working to make these options available to our customers" and stated that the online application is "pending translation." *See* HSD update on CAP implementation, *attached as* Exhibit N. However, no such action has been taken.  And nothing has ever been promised or done concerning paper applications or notices. In June of 2020, Defendant sent Plaintiffs a letter both asking for additional information on the specific issue of language access compliance and incorrectly stating that federal regulations for all entities receiving federal funding must translate written documents into languages with a population of 5% or more. *See* June 2, 2020, letter from HSD, *attached as* Exhibit O. Defendant's response also did not address the federal food stamp regulations listed above that Plaintiffs have been raising for over a decade. Plaintiffs responded with another explanation of federal law and data. *See* June 17, 2020, letter to HSD, *attached as* Exhibit P.

In 2021, Plaintiffs made one last attempt to resolve this with Defendant at the April 2021 Meet and Confer. In a letter, sent the day before the next Meet and Confer, HSD's General Counsel for the first time acknowledges that federal regulations exist, but misstates the federal regulatory

12

requirement and then refused to take further action at the Meet and Confer. *See* April 22, 2021 letter from HSD to Plaintiffs' Counsel, *attached as* Exhibit Q. At this point Plaintiffs have no choice but to turn to the Court for assistance in ensuring that Defendant provides application materials in the languages required by federal law.

Defendant is utterly non-compliant with federal food stamp and Medicaid regulations and the Decree. Defendant has refused to translate documents into languages spoken by more than 100 low-income households in an area served by an individual certification office. Defendant has not made estimates of the number of families it serves that are from a single language minority pursuant to 7 C.F.R. § 272.4(b)(2). HSD's notices do not provide taglines or information about how to find language assistance services, as required by 42 C.F.R. § 435.905. Instead, the "Notice of Rights" states under a paragraph about persons with disabilities that "Additionally, program information may be made available in languages other than English" but does not give information about how to request assistance or translate information. The only form with interpretation information is on the notice called, Your Right to a Fair Hearing, which states an interpreter is available for the fair hearing. *See* sample Notice of Case Action sent to class member Cuc T. Nguyen, *attached as* Exhibit R.

Even absent these specific regulatory requirements, Defendant is not meeting the minimal requirements set by Title VI of the Civil Rights Act, which would require translation into languages spoken by 5% of the population or 1,000, whichever is less. HSD's legal counsel has expressed Defendant's intent to continue a policy of discrimination by failing to translate documents, with full knowledge that families are being harmed as a consequence. This intentional discrimination violates class members' civil rights and causes families to go without food and medical care.[8]

---

[8] *See* Almandares v. Palmer, 284 F.Supp. 2d 799, 804-809 (reviewing case law and finding that a claim of intentional discrimination under Title VI of the Civil Rights will not be dismissed where a state agency knew of their obligations to provide bilingual services in SNAP but continued failing to do so). *See also*, Barber v. State of Colorado Revenue Services, 562 F.3d 1222, 1228 (10th Cir. 2009)( "The deliberate indifference standard, unlike some tests for intentional discrimination, 'does not require a showing of personal ill will or animosity toward the

13

Plaintiffs have no choice but to seek relief from the Court. Defendant opposes this Motion.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order requiring Defendant to provide interpreters and translate certification materials, notice and other vital documents as required by 7 C.F.R. § 272.4, Medicaid regulation, and U.S.C. including:

a) Within 60 days of the Court's Order, Defendant must determine the number of low-income households that form a single language minority with 100 or more households served by each certification office;

b) Within 120 days of this Court's Order, Defendant must provide all informational and certification materials used in the SNAP and Medicaid application process, including the common application for assistance,[9] in the languages spoken by families that meet the following thresholds: 1) at least 100 single language minority, low-income families that live in an area served by an individual certification office office areas; 2) at least 5 percent of the population or 1000 people (whichever is less).  This includes, but is not limited to Vietnamese, Chinese, Arabic, Tagalog, Korean, Dari/Farsi (Persian), Japanese, Laotian, Thai, Italian, German, and Russian. HSD shall consult with leaders of tribal governments to discuss appropriate translation of materials into any Native American language, including but not limited to Zuni, Keres, and Diné. Where written translation is not possible or appropriate, interpreters or bilingual staff shall be provided as required by paragraph (d) below.

c) Within 30 days of the Court's Order, provide taglines on all written documents used to enroll and maintain Medicaid and SNAP with information about how to access language assistance services in English and the 17 other most commonly spoken

---

disabled person,' but rather can be 'inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.")

[9] HSD utilizes a common application for SNAP and Medicaid and a Medicaid only application as a secondary choice for applicants of Medicaid only.

languages in New Mexico. This may include languages spoken by Native American populations, as determined through consultation with tribal governments.

d) Immediately provide access to interpreters for any language requested, including by phone and bilingual staff required by 7 C.F.R. § 272.4(b)(3).

Respectfully submitted,
/s/ *Verenice Peregrino Pompa*
Verenice Peregrino Pompa
Teague González
Sovereign Hager
New Mexico Center on Law and Poverty
924 Park Ave. SW, Suite C
Albuquerque, NM 87102
(505) 255-2840 FAX (505) 255-2778

And

Daniel Yohalem
1121 Paseo de Peralta
Santa Fe, NM 87501
(505) 983-9433 FAX (505) 989-4844
*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of October, 2021, I caused a true and correct copy of the foregoing to be electronically served through the CM/ECF system to all counsel of record.

*/s/ Sovereign Hager*
Sovereign Hager

15