

EXHIBIT

A

April 28, 2017

Secretary Brent Earnest
Human Services Department
P.O. Box 2348, Pollon Plaza
Santa Fe, New Mexico 87504-2348

Subject: Human Services Register Vol. 40 No. 4

Dear Secretary Earnest,

Please accept the following comments on the regulatory changes proposed by the Human Services Department (HSD) in the above referenced register. These comments are co-signed by numerous organizations that work directly with, and on behalf of, families who participate in the Supplemental Nutrition Assistance Program (SNAP) across New Mexico. These organizations urge HSD to implement the recommendations in this letter, particularly those that ensure eligible New Mexicans from immigrant families will be able to access assistance and that the state continue to implement a waiver of the federal rule restricting unemployed adults to just three months of SNAP in a three year period.

The purpose of SNAP is "to safeguard the health and well-being of [New Mexico's] population by raising levels of nutrition among low-income households."[1] New Mexicans face one of the highest rates of food insecurity in the nation[2] and New Mexico currently has the highest unemployment in the United States.[3] SNAP kept 76,000 people out of poverty in New Mexico, including 36,000 children, per year between 2009 and 2012, on average.[4] Federal food assistance injected $169 Million dollars into New Mexico in 2016.[5] Every effort must be made to streamline administration of SNAP benefits, so that eligible families can enroll and stay enrolled.

---

[1] Supplemental Nutrition Assistance Program, 7 U.S.C. §2011 (2015).
[2] 17.2% of New Mexicans experience food insecurity, which is nearly one out of every five people. Food Insecurity in New Mexico, Map the Meal Gap, Feeding America, *available at* http://map.feedingamerica.org/county/2014/overall/new-mexico. We have the second highest rate of child food insecurity in the country with nearly 30% of New Mexico's children not getting enough to eat. Map the Meal Gap 2016, Feeding America, *available at* http://www.feedingamerica.org/hunger-in-america/our-research/map-the-meal-gap/2014/map-the-meal-gap-2014-exec-summ.pdf, p. 30. The number of New Mexican children living in poverty jumped from 24% in 2008 to 31% today. Annie E. Kasey Foundation, National Kids Count Data, "Children in poverty (100 percent poverty)," *available at* http://datacenter.kidscount.org/data/tables/43-children-in-poverty-100-percent-poverty?loc=1&loct=2#ranking/2/any/true/35/any/322. Overall poverty in New Mexico is also increasing with 21.4% of the state living below the federal poverty in 2013 compared to just 17% in 2008. Annie E. Kasey Foundation, National Kids Count Data, "Total Population living in Poverty," *available at* http://datacenter.kidscount.org/data/tables/3883-total-population-living-in-poverty?loc=33&loct=2#detailed/2/any/false/36,868,867,133,38/any/8239.
[3] Bureau of Labor Statistics, Unemployment by State (February of 2017), *available at* https://www.bls.gov/web/laus/laumstrk.htm.
[4] Center on Budget and Policy Priorities, New Mexico Supplemental Nutrition Assistance Program, *available at* http://www.cbpp.org/sites/default/files/atoms/files/snap_factsheet_new_mexico.pdf (March of 2017).
[5] *Id.*

**HSD must create a comprehensive worker manual.**

Currently, the New Mexico Administrative Code, along with various interim policies posted on the department's website function as a manual for workers.[6]  HSD also uses Interim Policies and Procedures (IPPs), General Information Memoranda (GI's) and Manual Revision Forms (MRs) to clarify, update, and sometimes supersede the NMAC.  These miscellaneous forms are stored on a shared drive that is not indexed or searchable, making it impossible for a worker to know what the correct and most up to date policy is.  HSD is required to have uniformity in office application processing practices. HSD cannot achieve this uniformity in application processing if workers have to rely on multiple and disorganized sources of policy and procedure for application processing. In order to create the required uniformity in application processing, we recommend that HSD create a comprehensive worker manual, which incorporates HSD's final NMAC revisions, so that all workers have access to the current application processing policies and procedures.

**NMAC 8.139.100.7**
- **(A)(15) – Certification Period.** Refers to Subsection A of 8.139.120.9 NMAC, for the requirement that the certification period conform to calendar months and includes the requirement for completion of an interim report. However, Subsection A of 8.139.120.9 NMAC does not mention interim report forms.

**NMAC 8.139.100.7**
- **(B)(27) – Define simplified reporting as the norm, not an alternative.** Simplified Reporting is defined as "an alternative change reporting requirement." In fact, NMAC 8.139.120.9 states simplified reporting is the standard reporting process adopted by HSD for all participants. We recommend using the following definition: simplified reporting is the system for reporting changes to household information during a SNAP participant's certification period.

**NMAC 8.139.120.9**
- **(B)(1) and (B)(2) – Clarify that the deadline is for uninterrupted benefits.** The 10th day in a month is the deadline to guarantee that participants will be able to continue to receive SNAP on their normal issuance schedule if they remain eligible per 7 CFR 273.12(a)(5)(iv).

- **(C) – Include other special assistance HSD is required to provide participants regarding simplified reporting pursuant to 7 CFR 273.12 (a)(5)(ii)(C) and (D).** Federal law requires state agencies to provide special assistance in completing and filing interim reports to households whose adult members are mentally or physically disabled or are non-English speaking or otherwise lacking in reading and writing skills such that they cannot complete and file the required interim report.  In addition, the state agency must inform participants of the appropriate telephone number which they may call to ask questions or to obtain help in completing the interim report. We recommend HSD include these critical federal requirements in this subsection.

- **(D) – HSD must provide certification materials in languages other than English and Spanish.** Federal law requires state agencies to have certification materials available in the appropriate language and have bilingual staff or interpreters in "each individual certification office that provides service to an area containing approximately 100 single-language minority low-

---

[6] *See* 8.100.100.15 A. "Policy and procedures manual:  The regulations for the public assistance programs administered by the department are located on the official website of the New Mexico administrative code located at http://www.nmcpr.state.nm.us/nmac/.  Procedures and policy guidance is located at the official department website under the specified division at http://www.hsd.state.nm.us/."

income households; and in each project area with a total of less than 100 low income households if a majority of those households are of a single-language minority."[7] HSD must develop estimates of the number of low income single-language minority households, both participating and not participating in SNAP, for each project area and certification office by using census data and knowledge of project areas and areas serviced by certification offices.[8] HSD must seek information from community action agencies, planning agencies, migrant service organizations, and school officials.[9] If those sources of information do not provide sufficient information, HSD must, for a six month period, record the number of single-language minority households that visit the office to make inquiries about the program, file a new application for benefits, or be recertified.[10] Data on New Mexico shows that Bernalillo County alone has over 1,500 residents who speak Vietnamese and are not fluent in English.[11] The New Mexico Asian Family Center reports they served over 100 Vietnamese families in 2016, almost all of whom were in Bernalillo County and had low to extremely low incomes.[12] Refugee assistance agencies in New Mexico have data showing there are also a considerable number of Swahili, Arabic, Farsi, and Dari speakers in Bernalillo County.[13] Census data shows that in McKinley County, over 6,800 residents speak Navajo and are not fluent in English.[14] There are also significant numbers of Chinese and Korean speakers in several New Mexico counties.[15] The undersigned organizations urge the Department to comply with the requirements of the law so that eligible families who speak languages other than English and Spanish have the required access to SNAP benefits.

- **(D)(3) – The interim report form should state verification that participants must submit, not verification participants may submit.** *See* 7 CFR 273.12(b)(2)(v). If HSD lists optional verification on the form, the form must specify that the verification is optional.

- **(F)(3)(b) – HSD must give more information to households when the Department determines information is questionable.** If verification is questionable, HSD must follow the procedure at NMAC 8.100.130.12(B) to notify the household that the verification is questionable and why it is questionable, the additional information which must be provided, the alternative methods of providing the information, the deadline for supplying the information, that the applicant will be allowed an extension of time to supply the information if requested, that the applicant should contact the worker if an extension is desired, that the applicant may discuss with the worker whether any other readily available verification is acceptable, that the worker is available to assist the applicant if the information is not readily available, and that a

---

[7] 7 CFR. 272.4(b)(3).
[8] 7 CFR 272.4(b)(6).
[9] *Id.*
[10] *Id.*
[11] *See* Data from U.S. Census 2008-2012, compiled by the U.S. Dept. of Justice, Civil Rights Division, *available at* https://www.lep.gov/maps/2012/county/NM_cnty_LEP.ACS_5yr.2012.pdf
[12] *See* New Mexico Asian Family Center, FY16 Client Demographics Data Report, on file at NM Center on Law and Poverty and included with this letter as Attachment 3.
[13] New Mexico Refugee Assistance agencies collect data on the individuals they serve, contact Celia Yapita of Catholic Charities and Tarrie Burnett of Lutheran Family Services. We encourage the Department to reach out to these organizations.
[14] *See* Data from U.S. Census 2008-2012, compiled by the U.S. Dept. of Justice, Civil Rights Division, *available at* https://www.lep.gov/maps/2012/county/NM_cnty_LEP.ACS_5yr.2012.pdf
[15] *Id.*

- **HSD Should Maintain the Current Time Clock Until It Expires:** HSD's current USDA approved time clock for implementing the three-month time limit is January 1, 2016 through December 31, 2018. HSD should maintain this time clock if the state decides to implement the three-month time limit prior to December 31, 2018. This would allow the state to implement the time limit and allow participants to regain eligibility in January of 2019, at which time the clock would start again for a new three year period. This option lessens the negative impact of any newly implemented requirements because disqualified participants will have an earlier opportunity to regain eligibility as the state is adjusting to the new requirements.

**Thank you for considering these comments. Please contact Juan Martinez at juan@nmpovertylaw.org or (505) 255-2840, should you have any questions.**

Sincerely,

**Interfaith Hunger Coalition**
The Interfaith Hunger Coalition collaborates on addressing hunger issues in our communities through networking, education, and public policy advocacy. Our goal is ensure that all New Mexican families have access to healthy and nutritious food.

**NM Voices for Children**
New Mexico Voices for Children (NM Voices) is a nonpartisan, statewide advocacy organization. We work to create systems-level sustainable change that will improve the lives of New Mexico's children.

**NM Center on Law and Poverty**
The New Mexico Center on Law and Poverty's mission is to advance economic and social justice through education, advocacy, and litigation. We work with low-income New Mexicans to improve living conditions, increase opportunities, and protect the rights of people living in poverty.

**Coalition to End Homelessness**
The New Mexico Coalition to End Homelessness was founded in 2000 to lead a comprehensive, coordinated, and strategic response to homelessness. Today the Coalition has some 70-member organizations that provide housing and services to individuals and families experiencing homelessness.

**Catholic Charities New Mexico**
Our mission is to create hope for those in need by promoting self-sufficiency, strengthening families, fighting poverty and building community.

**NM Asian Family Center**
The New Mexico Asian Family Center is the only agency in the state providing culturally tailored services and programs to the Pan-Asian community so that they can advocate for and support themselves.

**Southwest Organizing Project**
We are a multi-racial, membership organization with a Board of Directors that is elected directly from our membership. SWOP acts as a vehicle for those directly affected by the decisions of governments to have a greater voice in the process.



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DEBRA HATTEN-GONZALES, et al.,

Plaintiffs,

vs.

David R. SCRASE, Secretary of the
New Mexico Human Services Department,

Defendant.

Civ. No. 88-385 KG/CG
Consolidated with
Civ. No. 88-786 KG/CG

**DECLARATION OF ANHDAO BUI**

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is AnhDao Bui, I am the Social Services Director at the New Mexico Asian Family Center (NMAFC).

2. I have personal knowledge of the information contained in this declaration.

3. The NMAFC was founded in 2006 by a circle of Asian women who came together to address the lack of culturally and linguistically tailored services to New Mexico's Pan-Asian Community. The NMAFC provides domestic violence survivor-led and centered services, programs centering traditional methods of healing, case management, youth and community leadership programs, financial education workshops, cross-racial movement building and civic engagement work.

4. Our organization serves all Asian ethnicities, but the majority of our client population are from families that immigrated from Vietnam, China, Afghanistan, Japan, and Philippines. The majority of our clients speak Vietnamese, Chinese (Mandarin) and Dari/Farsi.

5. NMAFC staff are frequently called upon to assist low-income families who speak Asian languages apply for public benefits such as Supplemental Nutrition Assistance Program (SNAP) and

1

Medicaid through the New Mexico Human Services Department (HSD) because the application is not available in languages other than English and Spanish. NMAFC staff, including myself, directly assist clients in applying for these benefits.

6. Based on my personal experience and knowledge of NMAFC's work, I understand that there are more than 100 individuals in the Southeast quadrant of Albuquerque who speak Vietnamese, but do not speak English. Also based on my personal experience and knowledge of NMAFC's work, I understand that there are more than 100 individuals who speak Chinese (Mandarin) and more than 100 individuals who speak Dari/Farsi in the Northeast quadrant, but do not speak English. Vietnamese is also widely spoken in other parts of Albuquerque and New Mexico, with well over 1,000 Vietnamese speakers who do not also speak English living in the state.

7. For Fiscal Year 2020 (July 1st, 2019, to June 30th, 2020) NMAFC served 307 clients for one-on-one case management. Of these clients, 88% speak languages other than English and are characterized under federal law as "Limited English Proficient (LEP)" because they need an interpreter. Each of the clients we serve have larger families that also need access to public benefits administered by the state. We also serve many more Chinese community members through large workshops to help many clients at once or through communication on the WeChat phone application, instead of in person. We often attend community gatherings that include hundreds of people.

8. Out of the 307 clients we assist through one-on-one case management, most clients are Vietnamese (134), Chinese (38), and Afghan clients speaking Dari/Farsi (46).

9. Out of the 307 clients, 292 clients are either low or extremely low income. Families are considered low income and qualify for NMAFC services if they have household income below 150% of the federal poverty level. Between 85%-95% our clients have household income below 138% of the poverty line. These clients live predominantly in the Southeast and Northeast

quadrant of Albuquerque but most of our clients seek benefits at the Northeast ISD office because it is easier to get to even if they live in the Southeast quadrant. Approximately 91% of our clients requested help to meet basic needs, which included help applying for food and medical assistance.

10. We often help clients call the Human Services Department (HSD) because the phone option to speak with customer service is only in English and Spanish. There is no way for applicants who speak languages other than English or Spanish to request help in the language they speak.

11. All SNAP and Medicaid applications, notices and other documents are only in English and Spanish.

12. NMAFC clients rely on NMAFC case managers to apply and recertify benefits. Applicants have either been unable to apply on their own or have repeatedly been denied when they have done so. NMAFC clients often seek assistance any time they receive a letter from HSD because the letters are in English. Families may not make it to our office in time for us to explain what a letter means, and they lose benefits. Families inadvertently miss deadlines and lose their benefits because they do not understand notices.

13. This is especially challenging for elderly clients during the pandemic who are not familiar with technology and cannot send us pictures of their letters to ask us for help. They must wait to go in person to get help translating the letter and, by that time, they usually have missed a deadline for turning in paperwork that would allow them to be approved for benefits.

14. Below are examples of the barriers NMAFC clients face when applying for benefits when they do not speak English. Three client stories are below.

   a. S.T.L.

      S.T.L is a 78-year-old woman who speaks Vietnamese and does not speak English. S.T.L. tried to apply for food assistance at an Income Support Division (ISD) office. She lives

3

with her 82-year-old husband. Their only income is $1,082 in social security benefits that they receive each month. She was only offered an application in English and was not offered an interpreter. She eventually brought a family member to interpret and was approved for benefits. However, because notices and forms were only in English, she missed deadlines to turn in documents to keep her SNAP benefits. HSD terminated her SNAP benefits for failure to turn in required documents. She and her husband lost benefits multiple times, for up to 1-2 months and had to reapply. During that time, they did not have enough to pay for food and other costs. Each time the couple received a letter from HSD, S.T.L.'s 82-year-old husband must drive her to the NMAFC office to have her notices read to her because she cannot drive and did not know how to send a picture of the notices to a case manager to read them to her. This increased their risk of contracting Covid-19 during the height of the pandemic. She was also not able to call the ISD office because she could not navigate the English phone options to talk to a customer service agent and ask for an interpreter. She tried several times and had to give up. Losing benefits and the increased burden of finding interpreters strained her household's limited resources.

b.   T.T.N.

T.T.N. is a 64-year-old woman who speaks Vietnamese and does not speak English. She lives with her young grandchild. T.T.N. receives SNAP and TANF. HSD never provided T.T.N. with an interpreter or documents in Vietnamese. Before getting help from NMAFC, T.T.N.  would pay for an interpreter to go with her to ISD offices. This would cost her between $75 and $100 for each visit. She also had to pay for an interpreter to read notices and letters she received from ISD about her benefits, costing her between $10-$25 for each letter.  Once she found out that NMAFC could help her for free, every

time T.T.N. needed help with ISD, she would have to take the bus to our NMAFC office to

have her notice explained to her. It would take hours out from her day because she had

to wait hours to catch the bus.

c.   T.N and and S.B.

T.N. and S.B. are an elderly couple who are 67 and 74 years old. They only speak

Vietnamese. The couple live on $1,016 in Social Security and a small amount of

unemployment benefits. T.N. and S.B. applied for SNAP food assistance because they

needed help buying food. They asked NMAFC to help them apply for SNAP because  they

both do not speak English. There was no way for them to apply for SNAP during the

pandemic as the application was only online or by phone and neither the phone system,

nor the application were in Vietnamese. NMAFC had to put the couple on a waiting list

to apply for benefits because NMAFC did not have the resources to meet the large

number of requests made during the pandemic. Once we assisted the clients submit an

application, they were approved for benefits. The couple did not understand the letters

they received  about their benefits because they were in English. During the pandemic,

the couple received a letter from ISD stating that they would be receiving $398 in

benefits due to the pandemic. However, they misunderstood and thought that they

owed $398 in benefits and did not use the benefits they were approved to receive and

worried because they knew that they could not afford to pay. The couple had no way of

confirming this information because of their limited English proficiency. The NMAFC

offices were closed due to the pandemic, and the couple did not know how to send

pictures of their letter for a case manager to confirm that they did not owe benefits.

Their case manager had to take a trip to the couple's home to read their letter and

confirm that client was getting more money and not that they owed money. The couple

was also unable to check the balance on their SNAP Electronic Benefit Transaction (EBT) Card, since the FreshEBT app is only in English. As a result, they did not know when or if they had money on their card to purchase food and on one occasion did not know that they did not have sufficient funds until their card was rejected at the grocery store.

15. When families cannot apply directly for benefits, they must wait longer to apply because they must wait in a long line for a case manager to have time to meet with them to help. This means that it takes longer for families and their children to receive the help with food/healthcare that they urgently need. Since families do not understand the notices they receive, they may start but are not be able to finish the application process. Some that are able to apply and begin receiving benefits later lose them because they are unable to recertify.

16. In July of 2020, NMAFC began collecting names of people who needed emergency assistance and, from August 2020 to April 2021 provided one-time emergency financial assistance to clients. Most of the clients who received this emergency assistance primarily speak Vietnamese, followed by large numbers of clients who primarily speak Dari/Farsi and Chinese (Mandarin). Some of these clients experienced delays in getting SNAP benefits because they could not understand the notices and forms they received. It took these clients longer to complete the SNAP application process and therefore could not afford housing costs.

17. During the pandemic, SNAP/Medicaid benefits were renewed automatically for some families. However, many clients are not aware of this because they are not able to read notices that came in the mail.

18. Clients have had to miss work to come to NMAFC's office to get help applying for benefits or to read notices. Some missed work because they had to go to the HSD office multiple times to try to apply for SNAP/Medicaid because they did not have access to an interpreter or application materials in their language.

19. Most of these families we work with would be capable of applying for themselves if the application were in their own language. They also would not have to give their personal information to someone in order to get help to apply. Our clients, despite being low-income, have previously had to pay people in the community to help them apply and this has further strained their financial situation.

20. We have used a large share of our resources to provide interpreting and translation for people to apply for public benefits. We had to hire additional community liaisons who speak Chinese, Vietnamese, and Dari to support the community in applying for benefits such as SNAP and Medicaid. This burden that has been put on our organization because of HSD's failure to provide these services for our community diverts resources from work we were created to do, which includes helping people heal from violent crimes and domestic violence, as we find solutions through the deep wisdom and experiences of our communities. Our budget was further burdened by having to provide one time rent/mortgage payment and utility funds to support clients whose benefits were delayed because of lack of interpreting and translation services when applying for benefits.

21. One of the grants we received was meant to serve 71 clients for the entirety of Fiscal Year 2020 with benefit applications, and we ended up helping 153 clients. As we are often the only available help for our many low-income families who speak languages other than English.

22. NMAFC has joined community organizations in urging HSD to translate documents into languages other than English and Spanish where they are required to do so by federal law. HSD has not responded to our communications for years.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 24, 2021.

_____
AnhDao Bui



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DEBRA HATTEN-GONZALES, et al.,**

**Plaintiffs,**

**vs.**
                                                                 **Civ. No. 88-385 KG/CG**
                                                                  **Consolidated with**
                                                                  **Civ. No. 88-786 KG/CG**

**DAVID R. SCRASE, Secretary of the**
**New Mexico Human Services Department,**

 **Defendant.**

### DECLARATION OF SARA DEEWA

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is Sara Deewa.

2. I have personal knowledge of the information contained in this declaration.

3. I work at United Voices for Newcomer Rights, as a program coordinator, in the Refugee and Immigrant Well-being Project at the University of New Mexico.

4. Our organization serves the Afghan, African, and Arabic refugee communities.

5. I personally help the Dari/Farsi-speaking community apply for Medicaid and SNAP food assistance because the application is only available in English, and my clients speak limited English.

6. Dari/Farsi, is a language typically spoken by families from Afghanistan. It is distinct from Persian Farsi, which is typically spoken by families from Iran. The two spoken languages are not mutually intelligible when spoken. However, the two dialects of Farsi are the same when written so the single translation of the application would help speakers of both.

7. The Afghan community in New Mexico varies in size throughout the year because and over time because New Mexico is a refugee-resettlement hub. There may be an influx of Dari/Farsi

1

speakers that do not stay in the state permanently. However, they are low income and frequently need SNAP and Medicaid upon arrival in New Mexico.

8. Through my personal experience and knowledge assisting people apply for Medicaid and SNAP, I know that Dari is spoken by at least 100 people in the Northeast quadrant of Albuquerque.

9. Many of the people I work with are low-income and have difficulty paying for their bills, housing, and healthcare. This has been even more of an issue during the pandemic.

10. Many of the people we serve have lost their jobs but have been unable to apply for SNAP and Medicaid because the application is only available in English and it is unclear how or if interpreters are available when calling HSD.

11. Due to the high volume of people who need help applying for SNAP and Medicaid, my colleagues and I must provide more interpreting services than what is covered by our funding that is specifically for helping people apply for benefits.

12. Our clients do not understand how to fill out the documents needed and finding translators or interpreters delays their application. Some are not able to get a translator or interpreter and end up going without any benefits. Some clients have lost benefits because they could not understand the notices they received and they did not turn in required documents. For example, when families have missed renewal deadlines caused by the lack of interpreting and translation, they have gone without benefits for 3 weeks to a month and could not pay rent, food, or other bills.

13. If the application were in Farsi, they would be significantly less likely to face these unfair delays.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 16, 2021.

_____
Sara Breswa



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DEBRA HATTEN-GONZALES, et al.,**

**Plaintiffs,**

**vs.**

        **Civ. No. 88-385 KG/CG
Consolidated with
Civ. No. 88-786 KG/CG**

**DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,**

 **Defendant.**

### DECLARATION OF MARTIN NDAYISENGA

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is Martin Ndayisenga,

2. I have personal knowledge of the information contained in this declaration.

3. I am a Community-Based Research Specialist and a Refugee Community Leader at the University of New Mexico Refugee Well-being Project. I also work as a Community Navigator through the UNM Pathways program.

4. My organization serves the Albuquerque African refugee and immigrant community.

5. The people that we work with primarily speak Swahili , Kirundi, Kinyarwanda, and French. I help clients apply for SNAP, TANF, and Medicaid at local Income Support Division offices of the NM Human Services Department (HSD).

6. Based on my personal knowledge and experience working with the refugee community, there are at least 100 people who speak Swahili in the Southeast and Southwest quadrants of

1

Albuquerque and that do not speak English fluently.  Swahili is spoken by at least 1000 people in the state of New Mexico.

7. Based on my personal knowledge and work with the community, I understand that Kinyarwanda is also spoken by at least 100 people in the Southeast quadrant of Albuquerque.

8. My clients often receive notices in English that they do not understand. Some of our clients have been unable to pay for housing, bills, and health services because they have been unable to apply for benefits at HSD or lost benefits due to lack of interpreting and translations of the benefits applications.

9. When HSD closed its offices due to Covid-19 pandemic many community members, and leaders had to help other community members to apply/update/renew SNAP and Medicaid and facilitate further communication with HSD because translation and interpretation is not generally provided.

10. Staff at the Refugee Resource Center are using work time to assist community members with interpretation/translation services and then must take additional time or not complete their regular work assignments.

11. People who speak the languages mentioned above have also inexplicably gotten SNAP and Medicaid notices in Spanish. When this happens, our organization cannot understand the notices and help families.

12. Our organization does not receive funding for interpreting or to assist clients in signing up for benefits. This means that we do this work on a volunteer basis because, if we do not help people sign up for benefits, they will not be able to since the state does not provide the application in their language.

13. Since all people were encouraged to stay home during the pandemic, it was difficult for clients to find a person to read and explain their notices to them.

14. When families cannot understand notices from HSD, they often lose benefits because they may miss an important deadline or other requirement to document their eligibility for benefits. This causes significant hardship to families who are very low income and at times, do not even have authorization to work in the United States, assuming work is possible. During the public health emergency it was not.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 17, 2021.

Martin Ndayisenga


EXHIBIT
E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


**DEBRA HATTEN-GONZALES, et al.,**

**Plaintiffs,**

**vs.**                                                    **Civ. No. 88-385 KG/CG
Consolidated with
Civ. No. 88-786 KG/CG**


**DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,**

 **Defendant.**


**DECLARATION OF MOHAMMED ALKWAZ**

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is Mohammed Alkwaz.

2. I have personal knowledge of the information contained in this declaration.

3. I work at United Voices for Newcomer Rights, which is a non-profit organization that offers three

   programs to newly resettled refugees in New Mexico: Refugee and Immigrant Well-being

   Project, the Mentoring project, and Pathways.

4. The Refugee Well-being Project has a team of interpreters, community advisors, and staff

   members. Our experienced interpreters provide interpretation in Dari, Pashto, Persian, French,

   Swahili, Kinyarwanda, Kirundi, Arabic and more. Many were once refugees themselves and some

   were even past participants in the program.

5. I work as a Pathway navigator, community mentor, program coordinator, and interpreter. I work

   directly with the Arabic-speaking community that speaks very limited English. I help people

   apply for SNAP and Medicaid at the New Mexico Human Services Department (HSD).

1

6.   Based on my personal knowledge and experience providing services for the Arabic-speaking community, I know there are at least 100 people who speak Arabic and do not speak English well in the Northeast and Northwest quadrants of Albuquerque and that at least 1000 people speak Arabic and do not speak English well in the state of New Mexico.

7.   Many of the people I help have lost income and had great difficulty paying for basic needs, like housing, food and healthcare  since the pandemic started in 2020.  These problems were compounded when families could not access benefits due to language barriers. During the pandemic, our clients expressed despair and decreased mental health because of the uncertainty, hardship and difficulties accessing public benefits.

8.   The Medicaid and SNAP application and renewal is only provided to our clients in English. I routinely travel to the houses of my clients to help them fill out and submit initial and renewal applications.

9.   Notices about the applications are only sent in English. This means that many of my clients learn too late that they needed to turn in a document after the deadline has passed. This is because it takes time and resources to get help in reading the notices that HSD sends. Benefits are terminated or denied when documents are not turned in on time. This causes families to have to reapply and leaves them without food and medical benefits for weeks at a time.

10. If HSD provided written information about SNAP and Medicaid, including forms and notices in Arabic, families would be less likely to incorrectly lose or be denied food and medical assistance.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 16, 2021.

Mohammed Alkwaz

2



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DEBRA HATTEN-GONZALES, et al.,**

**Plaintiffs,**

**Civ. No. 88-385 KG/CG**       **Consolidated with**

                                                      **Civ. No. 88-786 KG/CG**

**DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,**

 **Defendant.**

### DECLARATION OF CUC T. NGUYEN

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. I have personal knowledge of the facts stated in this declaration.

2. This declaration was produced using an interpreter.

3. My name is Cuc. T. Nguyen. I am 51 years old and reside in Albuquerque, New Mexico with my ten-year-old son. I am a single parent and work in a nail salon.

4. My primary language is Vietnamese. I do not speak English.

5. In February of 2017 I needed help applying for Medicaid because I was going through a divorce, I lost income, and did not have medical insurance. My son needs to have medical insurance for his physical exams, checkups, dental and eye care, and in case of emergencies.

6. UNM Southeast Heights clinic referred me to the Human Services Department's Income Support Division (ISD) office on Cutler Ave. around March of 2017 and I went in person to try to get help applying for Medicaid.

7. The people working at that ISD office did not understand me and did not have anyone that spoke Vietnamese. The HSD staff person that I spoke to told me that they could not help me

because they did not understand me and told me to come back with my own interpreter to get help.

8. I tried to find an interpreter in the community that could help and found a person that could help me apply for Medicaid, but the person charged a fee that I could not afford.

9. I went without Medicaid or health insurance for about 8 months, and I kept going back and forth to the ISD office and the UNM SE Heights Clinic but nobody could help me apply for Medicaid.

10. I was eventually able to get Medicaid and then lost it in April of 2020, right after the pandemic shut almost everything down, because I missed a deadline to turn in documents. I missed the deadline because I did not understand the paperwork that I received.  The notices I received were in English, and I was not getting help in Vietnamese.  I also lost my job due to the pandemic during this time.

11. Colleagues at work told me about the New Mexico Asian Family Center (NMAFC). I was able to get help from NMAFC to reapply for Medicaid and to keep certifying after.

12. A few months after getting Medicaid, the NMAFC helped me apply for SNAP food assistance because I had a low income, and I needed some help for me and my son.

13. Even though I started working again at the end of July 2020, I still needed SNAP food benefits because my income was very low.

14. My income was also low because I had to take time off work to help my 10-year-old son with his online schooling during the pandemic. I do not have anyone else that can help my son with his schoolwork, so I had to cut back my hours at the salon.

15. Due to the pandemic getting worse, I lost my job again in mid-November 2020 and am still currently not working. My only income is currently unemployment insurance and SNAP. I also have Medicaid.  Business at the salon still has not returned to its former level.

16. I do not get any other assistance and it has been hard to pay all my bills and buy food with just unemployment and SNAP.

17. When I get letters in the mail from ISD requesting documents to keep my benefits, I do not understand them because they are only in English.

18. I know numerous people who primarily speak Vietnamese that need help applying for benefits because they only speak Vietnamese and must pay for help interpreting.

19. If the state agency provided documents in Vietnamese, we would be able to apply and meet program requirements on my own. I would not have to expend time and resources contacting NMAFC to help me with my case and would not have the regular and unfair stress on my family each time I receive a letter from the state agency.


I declare under penalty of perjury that the foregoing is true and correct. Executed on January 22, 2021.

Cuc T. Nguyen


**Interpreter Statement**

I hereby affirm that I speak Vietnamese and English fluently, and that I have translated the foregoing declaration from English to Vietnamese to the above-named declarant to the best of my ability. The above-named declarant indicated that she understood and agreed with the statements in this declaration as translated to her.

AnhDao Bui



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


DEBRA HATTEN-GONZALES, et al.,

Plaintiffs,

Civ. No. 88-786 KG/CG

DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,

 Defendant.

### DECLARATION OF CAROL HUGHES

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. I have personal knowledge of the facts stated in this declaration.

2. My name is Carol Hughes, and I am a Mandarin-English bilingual case manager at the New Mexico Asian Family Center (NMAFC)

3. I have helped families apply and recertify  public benefits with the Income Support Division (ISD) because ISD does not provide interpretation and translation to families who speak languages other than English and Spanish.

4. Families I work with frequently experience delays in getting benefits or are denied because they do not receive information in the language that they speak.

5. For example, I recently assisted a client, with the initials L.H., who is 46 years old,  in applying for SNAP food assistance. She does not speak English and speaks Mandarin. She lives alone but supports her son in China. She owns an aromatherapy massage business where she typically receives about $200 per week for her services.

1

6.  Like many workers in New Mexico, she has been struggling because she could not operate her business during the pandemic. She used to rent a room from another family, but she can no longer afford it and now sleeps at her massage storefront. During the shutdown, she had no income and qualified for emergency food benefits.

7.  This client sought my help to apply for SNAP food assistance because the application is not available in a written form of Chinese online. If it were, she would be able to fill it out on her own. It is impossible to apply over the phone because the English phone prompts do not allow a person to navigate to ask a person for an interpreter.

8.  For all families I assist, I note on the  online application that the individual does not speak English and speaks Chinese-Mandarin, but ISD only sends notices in English. Sometimes families can get a picture to me or visit me in person, so I can read the letters to them. This isn't always possible, especially during the public health emergency.

9.  For example, L.H. received multiple letters about her application. By the time she was able to get them to me to read, she was being notified that she had missed an appointment.  She had to wait an additional 3 weeks to start receiving SNAP and Medicaid because she didn't get a call for her interview and was unable to call by herself to ask to reschedule.  Eventually, she had to ask one of her massage customers to call ISD in English. He got hung up on twice. He was on hold for 15 minutes, was told that he would be transferred to get a Mandarin interpreter and then ISD terminated the call without explanation. Because the customer helped her, HSD eventually called the client back with an interpreter and she was approved for SNAP and Medicaid. She now receives $200 in SNAP assistance per month.

10. If clients received notices in written Chinese, they would not experience delays in benefits and the significant harm that follows.  For example, delays cause my clients with no income, like the one described above, to go without food. During the business shutdowns caused by the public

health emergency, my client had to purchase less food so that she could pay for some of her bills.  She lost 10 pounds and ended up weighing only 100 pounds (she is  5'3" tall). She also had significant health issues due to a violent attack and was forced to purchase private health insurance to receive care while waiting for Medicaid. She has told me that in addition to the considerable hardship described above, she was threatened with eviction and considered suicide, but did not take further action because her son in China relies on her.

11.  The hardships described above are typical of families with limited resources who cannot access benefits due to ISD's failure to translate and provide interpretation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 14, 2021.


Carol Hughes

3

EXHIBIT

H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

Plaintiffs,

Civ. No. 88-786 KG/CG

DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,

Defendant.

### DECLARATION OF SHAOXUE ZHANG

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1.  I have personal knowledge of the facts stated in this declaration.

2.  This declaration was produced using an interpreter.

3.  My name is Shaoxue Zhang and I am 41 years old.

4.  I reside in Albuquerque, New Mexico with my three children. My children are 3 years old, 4 years old and 20 years old I am a single parent.

5.  My primary language is Chinese Cantonese, but I also speak Chinese Mandarin. I do not speak English.

6.  I cannot afford childcare for my youngest children. I must take care of them during the day and for that reason do not work outside the home. I was in a domestic violence incident on February 27, 2020. A case manager at the New Mexico Asian Family Center (NMAFC) helped me find help with rent from Enlace Comunitario until we were able to get relocated in July so we could be safe from my abusive husband.

7.  A case manager at Enlace Comunitario helped me begin the SNAP and Medicaid application online because it is not offered in Chinese. It is also impossible to use the automated options to

ask for an interpreter by phone. I needed to take over the Medicaid case for my youngest

children and establish a SNAP case for our family that did not include my husband.

8.   I was able to get an interpreter for my interview over the phone for my SNAP application

because the person helping me at Enlace put on my application that I needed an interpreter.  I

was approved for SNAP and Medicaid.

9.   Every time I get a letter from ISD, I must get help from NMAFC to understand what it means and

what I need to do to keep benefits.

10.   I need SNAP food benefits to provide food for my kids and Medicaid to make sure that they have

regular doctor checkups and in case they get sick.

11.   I do not have any family that lives here and my family in China cannot help me since they do not

have a lot of money, especially because of the pandemic.

12.   I get notices but they are in English, and I cannot read them.

13.   SNAP and cash assistance are my only income.

14.   Each time I need to contact HSD about my case, I must talk to them through the NMAFC

because everything at HSD is in English and there is no way to directly get an interpreter when

you call by phone.

15.   I am very capable in my own language. If the online application materials and information were

in Chinese, I would be able to apply for myself.

16.   Needing help from someone to fill out these applications takes away my privacy as I have no

choice but to give someone my personal information in order to apply.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 22,
2021.


Shaoxue Zhang

**Interpreter Statement**

I hereby affirm that I speak Chinese and English fluently, and that I have translated the foregoing declaration from English to Chinese to the above-named declarant to the best of my ability. The above-named declarant indicated that she understood and agreed with the statements in this declaration as translated to her.

Carol Hughes

**EXHIBIT I**

# NM center on law and poverty

---

<u>Memorandum</u>

To:    **Mark Reynolds, General Counsel, New Mexico Human Services Department**
From: **New Mexico Center on Law and Poverty**
Date:  **December 2009**
Re:    **Department Failure to Meet Legal Requirements re Language Access and Notice**

The notices currently issued by the New Mexico Human Services Department ("HSD") to Limited English Proficient ("LEP") individuals are in violation of several federal laws. Outlined below is a sampling of the applicable law.

## I.    <u>Title VI of the Civil Rights Act of 1964</u>

Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, provides that no person shall "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Section 602 authorizes and directs federal agencies that are empowered to extend federal financial assistance to any program or activity "to effectuate the provisions of [section 601] . . . by issuing rules, regulations, or orders of general applicability." 42 U.S.C. §2000d-1.

The Supreme Court, in <u>Lau v. Nichols</u>, 414 U.S. 563 (1974), held that Title VI prohibits conduct that has a disproportionate effect on LEP persons because such conduct constitutes national-origin discrimination.

### A.    **U.S. Department of Health & Human Services Regulations and Guidance**

The U.S. Department of Health & Human Services ("HHS") has promulgated regulations pursuant to section 601 of Title VI forbidding recipients of federal funds from "utiliz[ing] criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program with respect to individuals of a particular race, color, or national origin." 45 C.F.R. §80.3(b)(20).

HHS has also issued "Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons," which specifically addresses the need to translate vital written documents. 68 F.R. 47311. "Written notices of eligibility criteria, rights, denial, loss, or decreases in benefits or services," are listed therein as possible vital written materials. <u>Id.</u> at 47319. To provide recipients of federal funds greater certainty as to whether they are in compliance with their Title VI obligations to provide written translations in languages other than English, the guidance sets forth circumstances that can provide "safe harbor." A "safe harbor" means that if a recipient provides written translations under these circumstances, such action will be considered strong evidence of compliance with the recipient's written-translation obligations.

720 Vassar Drive NE • Albuquerque NM • 87106
www.nmpovertylaw.org • Phone: (505) 255-2840 • Fax: (505) 255-2778

*The Center receives funds from Equal Access to Justice and IOLTA funds from The Center For Civic Values.*

Recipients "that provide written translation of vital documents for each eligible LEP language group that constitutes five percent or 1,000, whichever is less, of the population of persons eligible to be served or likely to be affected or encountered," are covered by safe harbor. Id. at 47319. Well over 1,000 Spanish speaking LEP individuals access the HHS programs administered by HSD. Nonetheless, in violation of federal law, HSD does not translate one of the most important forms of vital documents – notices – into Spanish. HSD's failure to even comport with safe harbor elements demonstrates the risk the Department faces of being found in non-compliance with its Title VI obligations.

**B.    U.S. Department of Agriculture Regulations**

The U.S. Department of Agriculture ("USDA") has promulgated regulations specifically addressing when state agencies are required to translate written materials. "Based on the estimated total number of low-income households in a project area which speak the same non-English language (a single-language minority), the State agency shall provide bilingual program information and certification materials. . ." 7 C.F.R. §272.4(b)(1). Specifically, the "state agency shall provide both certification materials in the appropriate language(s) and bilingual staff or interpreters . . . in each individual certification office that provides services to an area containing approximately 100 single-language minority low-income households." 7 C.F.R. §272.4(b)(3). "Certification materials shall include . . . notices." 7 C.F.R. §272.4 (b)(3)(ii)(A).

HSD has not, as required by law, estimated the total number of low-income households in a project area which speak the same non-English language. Nonetheless, according to data from the ISD2 computer system provided by HSD on June 24, 2008 in response to an IPRA request, at least fifteen New Mexico Income Support Division offices serve over 100 Spanish speaking households. Therefore, HSD is required to provide bilingual notices.

"If notices are required in only one language other than English, notices may be printed in English on one side and in the other language on the reverse side. If the certification office is required to use several languages, the notice may be printed in English and may contain statements in other languages summarizing the purpose of the notice and the telephone number (toll-free number or a number where collect calls will be accepted for households outside the local calling area) which the household may call to receive additional information." 7 C.F.R. §272.4 (b)(3)(ii)(B). Again, because HSD has not estimated the total number of low-income households in a project area which speak the same non-English language it is unknown whether HSD is required to use several languages.

The extent of information provided to LEP Spanish speaking applicants on notices is: "Si Ud. necesita ayuda para poder leer esta carta, cominquese con su trabajador(a)." In English, that translates as "if you need help to read this letter, contact your worker." This falls short of the requirements of 7 C.F.R. §272.4 (b)(3)(B). The notice is insufficient as it does not contain "statements in other languages summarizing the purpose of the notice and the telephone number (toll-free number or a number where collect calls will be accepted for households outside the local calling area) which the household may call to receive additional information." The information provided in Spanish tells the reader nothing about the content of the notice.

New Mexico is not in compliance with requirements of 7 C.F.R. § 272.4 (b)(3). Barriers posed by an antiquated system do not remove the obligation of the state to provide certification materials – including notices – in the appropriate language(s). If the HSD cannot program the system to provide adequate notices, it has an obligation to take other steps to meet the requirements of 7 C.F.R. § 272.4 (b)(3).

## II.   Executive Order 13166

On August 11, 2000, Executive Order 13166 was issues. "Improving Access to Services for Persons with Limited English Proficiency," 65 F.R. 50121 (August 16, 2000). Under that order, every federal agency that provides financial assistance to non-federal entities must publish guidance on how their recipients can provide meaningful access to LEP persons. The U.S. Department of Justice ("DOJ") was identified as the central repository of these plans and agencies were directed to submit their plans to DOJ for review.

On that same day, DOJ issued a general guidance document setting forth general principles for agencies to apply in developing guidance documents pursuant to the Executive Order. "Enforcement of Title VI of the civil rights Act of 1964 National Origin Discrimination Against Persons with Limited English Proficiency," 65 F.R. 50123 (August 16, 2000)("DOJ LEP guidance"). This guidance reiterated that, "failure to assure that people who are not proficient in English can effectively participate in and benefit from programs and activities may constitute national origin discrimination prohibited by Title VI." Id.

DOJ has specifically articulated its position regarding written language assistance in 28 C.F.R. §42.405(d)(1), stating:

> Where a significant number or proportion of the population eligible to be served or likely to be directly affected by a federal assistance program . . . needs service or information in a language other than English in order to be informed of or to participate in the program, the recipient shall take reasonable steps, considering the scope of the program and the size and concentration of such population, to provide information in appropriate languages to such persons. This requirement applies with regard to written materials of the type which is ordinarily distributed to the public.

On October 26, 2001, Assistant Attorney General for the Civil Rights Division, issued a memorandum in response to questions raised regarding the requirements of the Executive Order in light of the Supreme Court's decision in Alexander v. Sandoval, 532 U.S. 275 (2001). "Memorandum for Heads of Departments and Agencies General Counsels and Civil Rights Directors," (October 26, 2001). This memorandum reaffirmed the force of the Executive Order and DOJ LEP guidance reiterating that, "Federally assisted programs and activities may not be administered in a way that violates the Title VI regulations."

## III.   Notices Issued by HSD are in Violation of Federal Law

As discussed above, there are several federal laws requiring HSD to provide Spanish speaking LEP households notices in their language. HSD does not provide Spanish speaking LEP households notices in their language. Therefore, HSD is acting in violation of several federal laws.

EXHIBIT
J

 **NM** center on law and poverty

924 Park Ave SW, Ste C
Albuquerque, NM 87102
505.255.2840
nmpovertylaw.org

May 11, 2017

Chris Collins, General Counsel
Natalie Campbell, Assistance General Counsel
New Mexico Human Services Department
P.O. Box 2348
Santa Fe, NM 87504

VIA EMAIL

**Re: HSD regulations subject to the Decree**

Dear Chris and Natalie,

We write regarding the Human Services Department's (HSD) recent pursuit of regulatory changes to the state's Supplemental Nutritional Assistance Program (SNAP) in violation of the Hatten-Gonzales Decree. This consists of changes proposed by Human Services Register (HSR) Vol. 40 No. 5 that include HSD's proposal to delete entire regulatory sections that list SNAP verification requirements for documenting an applicant's U.S. citizen or immigration status and the limited circumstances when HSD workers can report undocumented immigrants to the Department of Homeland Security. HSD's recent regulatory proposals demonstrate HSD's ongoing failure to implement regulations that conform to terms of the Decree and Orders of the Court. HSD must promulgate SNAP regulations that conform to terms of the Decree and prior court rulings.

With HSD's promulgation of rules in HSR Vol. 40 No. 5, HSD must remember that the Decree requires HSD to: (1) standardize the application process by implementing and maintaining uniform office practices throughout the state and by providing applicants with written information in standardized formats which is comprehensive, accurate, and easy to understand."[1]; (2) request only those verification documents which are necessary to establish eligibility and benefit amounts for the assistance program(s) for which the applicant was applied[2]; and (3) promulgate regulations that comply with the terms of the Decree.[3]

**HSD worker manual.**
HSD must create a comprehensive worker manual. Currently, the New Mexico Administrative Code (NMAC), along with various interim policies posted on the department's website function as a manual for workers.[4] HSD also uses Interim Policies and Procedures (IPPs), General Information Memoranda

---

[1] Decree, p. 8.
[2] Decree, p. 14.
[3] Decree, p. 26 (stating the parties will agree upon any revisions to or supplementations of ISD regulations which are necessary to conform the regulations to the terms of the Agreement.)
[4] *See* 8.100.100.15 A. "Policy and procedures manual: The regulations for the public assistance programs administered by the department are located on the official website of the New Mexico administrative code located at http://www.nmcpr.state.nm.us/nmac/. Procedures and policy guidance is located at the official department website under the specified division at http://www.hsd.state.nm.us/."

1

[10] require HSD workers to provide special assistance in completing and filing interim reports to households whose adult members are mentally or physically disabled or are non-English speaking or otherwise lacking in reading and writing skills such that they cannot complete and file the required interim report or obtain necessary verification documents. HSD draft regulation at 8.139.120.9(C)[11] does not include a description of this special assistance that HSD workers are required to provide individuals who have difficulty in obtaining verification or completing the interim report. To the extent the NMAC is used as a worker manual and in order to comply with the Decree, HSD must include in the NMAC the requirement to provide special assistance in completing and filing interim reports when requested by SNAP participants.

HSD must clarify the gross income limit for simplified reporting. The draft regulation at NMAC 8.139.120.9(G)(1)[12] requires households to report when monthly gross income exceeds 130% of the federal poverty level and states the household shall use the monthly gross income limit for the household size that existed at the time of certification or recertification. For the majority of SNAP participants, the gross income limit at certification is 165% of the federal poverty level, so the second statement is misleading. To the extent the NMAC is used as a worker manual and in order to create the uniformity in application processing required by the Decree, HSD must change the language to require households to report when "monthly gross income exceeds 130% of the federal poverty level for the household size at the time of certification or recertification."

### Change report forms.

Hardcopies of change report forms must be given to families with paid postage. HSD currently only provides hard copies of change report forms upon request. Federal law requires that HSD provide a change report form "to newly certified households at the time of certification, at recertification if the household needs a new form; and a new form shall be sent to the household whenever a change report form is returned by the household."[13] The form must include information listed at 7 CFR 273.12(b)(1), including paid postage. This requirement should be added to HSD regulations and fully implemented by the Department.

### Language Access.

**8.139.120.9(D) – HSD must provide certification materials in languages other than English and Spanish.** Federal law requires state agencies to have certification materials available in the

---

are non-English speaking or otherwise lacking in reading and writing skills such that they cannot complete and file the required interim report. In addition, the state agency must inform participants of the appropriate telephone number which they may call to ask questions or to obtain help in completing the interim report.

[10] See Decree, p.7, §2 (which states that each applicant will be provided with a fair and equal opportunity to participate in the Food Stamp program consistent with goal of assisting all eligible individuals to qualify). See also Decree, p. 13, ¶13 (which states that the assistance offered and provided by the eligibility worker is based on the particular needs of the applicant and the worker's ability to address those needs, but may arise as a result of an applcant's limited ability to read, speak, or understand the English language, mental impairments, physical illness, disability, handicap, lack of funds, lack of transportation, or a lack of knowledge about hoe to obtain a document).
[11]
[12] See Human Services Register Vol. 40 No. 5, p. 24.
[13] 7 C.F.R. 273.12(b)(4).

appropriate language and have bilingual staff or interpreters in "each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households; and in each project area with a total of less than 100 low income households if a majority of those households are of a single-language minority."[14] HSD must develop estimates of the number of low income single-language minority households, both participating and not participating in SNAP, for each project area and certification office by using census data and knowledge of project areas and areas serviced by certification offices.[15] HSD must seek information from community action agencies, planning agencies, migrant service organizations, and school officials.[16] If those sources of information do not provide sufficient information, HSD must, for a six month period, record the number of single-language minority households that visit the office to make inquiries about the program, file a new application for benefits, or be recertified.[17] Data on New Mexico shows that Bernalillo County alone has over 1,500 residents who speak Vietnamese and are not fluent in English.[18] The New Mexico Asian Family Center reports they served over 100 Vietnamese families in 2016, almost all of whom were in Bernalillo County and had low to extremely low incomes.[19] Refugee assistance agencies in New Mexico have data showing there are also a considerable number of Swahili, Arabic, Farsi, and Dari speakers in Bernalillo County.[20] Census data shows that in McKinley County, over 6,800 residents speak Navajo and are not fluent in English.[21] There are also significant numbers of Chinese and Korean speakers in several New Mexico counties.[22] The undersigned organizations urge the Department to comply with the requirements of the law so that eligible families who speak languages other than English and Spanish have the required access to SNAP benefits.

## HSD must give more information to households when the Department determines information is questionable.

If verification is questionable, HSD must follow the procedure described in the Decree[23] and codified at NMAC 8.100.130.12(B) which includes notifying the household that the verification is questionable and why it is questionable, the additional information which must be provided, the alternative methods of providing the information, the deadline for supplying the information, that the applicant will be allowed an extension of time to supply the information if requested, that the applicant should contact the worker if an extension is desired, that the applicant may discuss with the worker whether any other readily available verification is acceptable, that the worker is available to assist the applicant if the information is not readily available, and that a failure to supply the needed information or contact the worker by the

---

[14] 7 CFR. 272.4(b)(3).
[15] 7 CFR 272.4(b)(6).
[16] *Id.*
[17] *Id.*
[18] *See* Data from U.S. Census 2008-2012, compiled by the U.S. Dept. of Justice, Civil Rights Division, *available at* https://www.lep.gov/maps/2012/county/NM_cnty_LEP.ACS_5yr.2012.pdf
[19] *See* New Mexico Asian Family Center, FY16 Client Demographics Data Report, on file at NM Center on Law and Poverty and included with this letter as Attachment 3.
[20] New Mexico Refugee Assistance agencies collect data on the individuals they serve, contact Celia Yapita of Catholic Charities and Tarrie Burnett of Lutheran Family Services. We encourage the Department to reach out to these organizations.
[21] *See* Data from U.S. Census 2008-2012, compiled by the U.S. Dept. of Justice, Civil Rights Division, *available at* https://www.lep.gov/maps/2012/county/NM_cnty_LEP.ACS_5yr.2012.pdf
[22] *Id.*
[23] Decree, p. 18, ¶25.

EXHIBIT
K
tabbies



924 Park Ave SW, Ste C
Albuquerque, NM 87102
505.255.2840
nmpovertylaw.org

March 23, 2018

Brent Earnest, Secretary
New Mexico Human Services Department
P.O. Box 2348
Santa Fe, NM 87504

VIA EMAIL

**Re:  Revised YES NM Online Renewal Option**

Dear Secretary Earnest,

Thank you for the opportunity to review the Department's revised YES NM Online Renewal Option.  Overall, we are pleased that the Department made important changes to the online renewal form to make it align with the ISD 122 and MAD 608 paper renewal forms. There are a few outstanding issues with the online option, outlined below, that must be remedied for compliance with federal law and the Decree provision that standardized documents must contain accurate information.

**The renewal option is not clearly available when accessing YES-NM.**  Currently, there is no way for a participant logging into his/her YES-NM account to determine on the landing page if: 1) if the case is up for renewal and there is action that he or she must take to renew benefits, and 2) how to complete the renewal.  We suggest that the Department add an alert to the landing page that clearly tells participants that their case is up for renewal and include a link to the renewal form.

**Participants are not required to complete a "mid-certification review" under federal law.** The screen titled "What is the Status of My Food Assistance Program (SNAP) Benefits?" states that the participant must complete a "mid-certification review" in the eleventh month following approval.  There is no provision under federal law that allows for or requires a "mid-certification review."  If HSD is planning to impose an additional "mid-certification review" requirement on participants not currently permitted under the law, the Department must immediately let Plaintiffs know of any such plans and we must be afforded the requisite timeframe to review and provide comment.

**The online form does not gather enough information to determine if an applicant is in an eligible immigration status for SNAP and Medicaid.**  The immigrant eligibility screen does not allow applicants to indicate whether they are an Amerasian. The Department must gather this information to properly determine non-citizen eligibility. For purposes of Medicaid and SNAP eligibility, qualified non-citizens who are Amerasians are not subject to the

1

**Language access.** Federal law requires state agencies to have certification materials available in the appropriate language and have bilingual staff or interpreters in "*each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households; and in each project area with a total of less than 100 low income households if a majority of those households are of a single-language minority.*" 7 CFR. 272.4(b)(3).  Currently, the screen that collects information on the applicant's language only includes the option to select "English" or "Spanish."  The Department should include other languages commonly spoken in New Mexico, e.g. Vietnamese and Navajo in the dropdown menu and, at a minimum, must include an option for "other" with a space for applicants to fill in their preferred language. This will allow the Department to conduct an interview in the applicant's preferred language and, when required, translate any requisite materials. We wrote to the Department about its duty to provide language access under federal law in May 2017.  HSD indicated that it was waiting on feedback from FNS before implementing a language access policy.  Please provide us with an update as to any communication the Department has had with FNS on this matter.

## Miscellaneous provisions

- The introductory screen includes a statement "*[t]o apply for additional programs, you must complete a new application.  If you are interested in applying for other programs, apply online or contact your local office.*"  This statement is incorrect.  Families completing the online renewal form can add new household members and request benefits for the new member. Please eliminate this statement.
- The screen entitled "Federal Deduction" has a field for "frequency."  It is confusing to ask for the frequency of a tax deduction. We recommend asking for "frequency" if amount is deducted from pay more than once a year.
- The screen that gathers information on dependent care costs asks for "amount of round trip mileage for day care/dependent care" but does not indicate over what time period the Department is requesting this information.
- When a family adds a household member who is under 16 to the household, they must answer a long list of questions on "veteran information" that are almost certainly inapplicable to a child of that age, e.g. "is this person on active duty?"  We understand that this information is generally required for new household members but suggest that the Department implement a system override to bypass these questions when the new household member is a newborn.
- The screen titled "What Has Been Mailed to Me?" did not include the notice of renewal for some of the cases we reviewed.  Please provide confirmation that for every case that is up for renewal, a paper notice (either the MAD 608 or ISD 122) is mailed to the client.
- We reviewed a number of NOCAs in various case files and many of them had application dates that were over 11 months old.  E.g. in the "Richie Cunningham" file, the NOCA, dated February 14, 2018 states that the client applied on March 01, 2017. We are concerned that there is a glitch with the revised NOCA that does not accurately populate application dates. We ask that the Department please investigate this issue and let us know how and when it is resolved.
- We renew our concern that the Department is requiring applicants to indicate their gender.  Gender is not an eligibility factor for any programs administered by the



**Fair Hearing**

✓ Affidavit

**Details**

Complete

## Request A Fair Hearing: Details

| Individual's Name | Notice Date | Individual Id | Notice Name |
|---|---|---|---|
| ▇▇▇▇▇ | 03/25/2019 | 106776 | HSD 1210 - Notice of Case Action |

### ▼ Mailing Address

ⓘ If you do not want us to send any letters about your benefits to the address you have given below, please give us an alternate mailing address where we can send your mail. It is okay to send mail to the address given, please leave this section as it is.

**Address**

**City**

**State**
New Mexico

**Zip Code**

*These should no longer be mandatory as per CLP letter.*

### ▼ Request Details

Do you want to continue receiving the benefits you receive now?*

○ Yes          ○ No

Please tell us about your reasons for asking for a hearing. Give as much information as you can about the reasons for asking for a hearing. You may submit your request even if you can't answer all of the following questions.

Is your case being closed? Why?
Are your benefits being lowered? Why?
Has your application been denied or has it been acted on within time limits?
Did the worker have the wrong information?
What other information should we know about your reasons for asking for a hearing?

Please write down your reason(s) for asking for a fair hearing and why you think the action taken was wrong:*

250 remaining characters

☐ By checking this box and typing my name below, I am electronically signing this notice.*

**First Name*** ▇▇▇▇     **Middle**     **Last Name*** ▇▇▇▇

← Back                                                                Next →

---

**Language access.** Federal law requires state agencies to have certification materials available in the appropriate language and have bilingual staff or interpreters in "each individual certification office that provides service to an area containing approximately 100 single-language minority low- income households; and in each project area with a total of less than 100 low income households if a majority of those households are of a single-language minority." 7 CFR. 272.4(b)(3). Currently, the screen that collects information on the applicant's language only includes the option to select "English" or "Spanish." The Department should include other languages commonly spoken in New Mexico, e.g. Vietnamese and Navajo in the dropdown

menu and, at a minimum, must include an option for "other" with a space for applicants to fill in their preferred language. This will allow the Department to conduct an interview in the applicant's preferred language and, when required, translate any requisite materials. We wrote to the Department about its duty to provide language access under federal law in May 2017. HSD indicated that it was waiting on feedback from FNS before implementing a language access policy. Please provide us with an update as to any communication the Department has had with FNS on this matter.

**_NMHSD Response:_** The Department agrees. NMHSD is working to make these options available to our customers. Emailed sent to Carolyn to see if we received response to HSD.



The introductory screen includes a statement "[t]o apply for additional programs, you must complete a new application. If you are interested in applying for other programs, apply online or contact your local office." This statement is incorrect. Families completing the online renewal form can add new household members and request benefits for the new member. Please eliminate this statement.

**_NMHSD Response:_** The Department disagrees. The statement above applies when household wants to add/apply for additional programs. This is a correct statement in that situation. The current functionality allows the household to use the Renewal Form to add additional household members when renewing active categories of assistance.



| | | | |
|---|---|---|---|
| | | | Ambassador Q&A could be stored for all to access |
| 9:15-9:30 | EBT alternative access number<br>1. When is it first available in ASPEN?<br>2. Training updates on how we educate field staff on providing the alternative access number to non-citizen customers | Laurie | o Understanding of how field is trained on alternative access number and discussion on ways to improve consistency<br>o Laurie explained when the alternative access number is first viewable (after initial EDG run). Discussed that training may be incorporated for new hire to include process for giving the alternative access number and it may also be added into the Field Operation Guide |
| 9:30-9:45 | Language Access 7 CFR 272.4 (b) bilingual requirements<br>1. The Department has had no FNS findings on language access regarding this issue<br>2. Response from FNS regarding what is considered service area | Laurie | o Language Access requirements per FNS<br>o Laurie advised that HSD has not had any FNS findings on this issue. Sovereign referenced a prior letter from CLP to HSD on this issue, which she stated she would send Laurie. Laurie advised that HSD was awaiting clarification from FNS about this but has not received it yet. |
| 9:45-10:30 | CIA Immigration Training<br>1. Immigration tool in QuikGuide and possible incorporation of CLP training charts<br>2. Immigration Training Webinar and feedback | Laurie | o Feedback on training<br>o Laurie briefed on the upcoming Immigration training, and her delivery of the webinar with assistance from the Ambassadors as facilitators. Proposed additions to the student workbooks that include some of CLP training |



4.a Non-CAP YESNM Recommended Language Edits

| | | | |
|---|---|---|---|
| Language access. Federal law requires state agencies to have certification materials available in the appropriate language and have bilingual staff or interpreters in "each individual certification office that provides service to an area containing approximately 100 single-language minority low- income households; and in each project area with a total of less than 100 low income households if a majority of those households are of a single-language minority." 7 CFR. 272.4(b)(3). Currently, the screen that collects information on the applicant's language only includes the option to select "English" or "Spanish." The Department should include other languages commonly spoken in New Mexico, e.g. Vietnamese and Navajo in the dropdown menu and, at a minimum, must include an option for "other" with a space for applicants to fill in their preferred language. This will allow the Department to conduct an interview in the applicant's preferred language and, when required, translate any requisite materials. We wrote to the Department about its duty to provide language access under federal law in May 2017. HSD indicated that it was waiting on feedback from FNS before implementing a language access policy. Please provide us with an update as to any communication the Department has had with FNS on this matter. | | This will be add to the 235 sprint. Ticket #YES 11300 has been created, HSD is pending translation.<br><br>In Progress/On Schedule | 03/30/2020 |
| The introductory screen includes a statement "[t]o apply for additional programs, you must complete a new application. If you are interested in applying for other programs, apply online or contact your local office." This statement is incorrect. Families completing the online renewal form can add new household members and request benefits for the new member. Please eliminate this statement. | The department disagrees. The statement above applies when household wants to add/apply for additional programs; this is a correct statement in this situation. The current functionality allows the household to use the Renewal Form does to add additional household members when renewing Active categories. | N/A | N/A |
| When a family adds a household member who is under 16 to the household, they must answer a long list of questions on "veteran information" that are almost certainly inapplicable to a child of that age, e.g. "is this person on active duty?" We understand that this information is generally required for new household members but suggest that the Department implement a system override to bypass these questions when the new household member is a newborn. | The current functionality is that the fields are not mandatory to be completed to complete the application process. There is a Ticket addressing this issue; a review of all fields is being done to see what is being asked of each applicant. | This will be add to the 234 sprint. Ticket YES 11301 has been created.<br><br>In Progress/On Schedule | 03/16/2020 |
| The screen titled "What Has Been Mailed to Me?" did not include the notice of renewal for some of the cases we reviewed. Please provide confirmation that for every case that is up for renewal, a paper notice (either the MAD 608 or ISD 122) is mailed to the client. | If all online application processes have been completed by the recipient a renewal notice information will appear in their YesNM account. Renewal notices are system generated 45 days prior to renewal due date. YESNM applications must be linked to ASPEN | N/A | N/A |

EXHIBIT

O

H U M A N   SERVICES
D E P A R T M E N T

*Michelle Lujan Grisham, Governor*
*David R. Scrase, M.D., Secretary*
*Paul Ritzma, General Counsel*

June 2, 2020

Via Email:  sovereign@nmpovertylaw.org

Sovereign Hager
NM Center on Law & Poverty
924 Park Avenue, SW, Ste. C
Albuquerque, NM  87102

Re:    Limited English Proficiency Discussion

Ms. Hager:

At the May 15, 2020 Meet and Confer you asked to discuss some issue regarding Limited English Proficiency (LEP) requirements. HSD agreed to exchange information regarding this issue.  So that we can have a productive discussion on LEP issues, it would be helpful if you could provide more detailed information and a specific explanation of exactly what the issue is and how it is a matter for discussion under the Decree.

As I understand it, you raised this issue approximately one year ago with Ms. Kraw and Ms. Martinez during some immigration issue discussions.  At that time, they recall the issue being adequately discussed and resolved as a non-issue.  Given those previous discussions and explanations by HSD on LEP requirements, if you could please provide any new information you might have to show that a population of approximately 5% or more of households of a single-language minority exist state-wide, other than Spanish.

Importantly, according to the U.S. Department of Justice Civil Rights Division LEP data, New Mexico has a total LEP population of 184,199 out of a total state population of 1,928,173, for total LEP percentage of 9.55%.  Of the total LEP population (184,199), according to DOJ data, 155, 214 are single-language Spanish, representing 8.05%.  That leaves 1.5% of the LEP population (approximately 39 languages) state-wide.

As you are aware, HSD has, beyond providing translated documents in Spanish, interpretation services available for the state's population that is a single language minority, including Spanish.

Thank you.

Respectfully,
/s/
Paul Ritzma



EXHIBIT

P



NM center on
law and poverty

924 Park Ave SW, Ste C
Albuquerque, NM 87102
505.255.2840
nmpovertylaw.org

June 17, 2020

Via Email: Paul.Ritzma@state.nm.us

Paul Ritzma
Office of General Counsel
Human Services Department
1474 Rodeo Road
Santa Fe, NM 87505

Re:    Assistance to families who speak languages other than English.

Mr. Ritzma,

Thank you for following up regarding HSD's obligation to translate vital documents into languages other than English. We appreciate your collaboration on this matter in order to make sure that all New Mexicans have access to benefits.  This purpose of this letter is to respond to your June 2, 2020 letter, remind HSD about our prior communication on this issue and HSD's commitments to comply with federal law.  In your letter, you incorrectly state, without reference, that there must be more than 5% of individuals who speak languages other than Spanish in New Mexico to require HSD to translate documents into languages other than Spanish. This is incorrect.  The correct requirements are below. Further, Plaintiffs have repeatedly provided this information to HSD and HSD stated that the online application is "pending translation" in response to the legal authority below.  Data from the Department of Justice derived from the U.S. Census showing individuals from different linguistic groups in New Mexico is attached.[1]

1.  **Vital HSD documents must be translated into languages other than English and Spanish.**

As a recipient of federal funding, HSD must provide meaningful access to services for individuals with limited English proficiency.[2]  Multiple executive orders and federal guidance require HSD to translate vital documents into languages spoken by a threshold amount of the population served. The "…eligible LEP language group must constitute five percent or 1,000, **whichever is less**, of the population of persons eligible to be served or likely to be affected or encountered…".[3] Each county office has a different group of individuals "likely to be served" and thus requires a separate analysis.

---

[1] Data was downloaded from the Department of Justice Civil Rights Division, *available here* https://www.lep.gov/maps/lma2014/Final
[2] See, e.g., 28 CFR 401-415.
[3] See 65 FR 50123 (*Enforcement of Title VI of the Civil Rights Act of 1964-National Origin Discrimination Against Persons With Limited English Proficiency; Policy Guidance*); *See also* 67 FR 41455 (*Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons*) and 79 FR 70771 (*Guidance from USDA Guidance to Federal Financial Assistance Recipients Regarding the Title VI Prohibition Against National Origin Discrimination Affecting Persons With Limited English Proficiency*).

The most recent census data, provided with this letter shows that HSD must translate documents into the following languages: Spanish, Arabic, Persian, Hindi, German, French, Italian, Russian, Hindi, Vietnamese, Chinese, Tagalog, Japanese, Korean, Navajo, Keres, Zuni, Tewa, Tiwa, Towa, Apache.

## 2.  HSD Must Comply with SNAP Regulations Concerning Language Access

Plaintiffs provided the following information to HSD on May 15, 2017.

Federal law requires state agencies to have certification materials available in the appropriate language and have bilingual staff or interpreters in "each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households; and in each project area with a total of less than 100 low income households if a majority of those households are of a single-language minority."[4] HSD must develop estimates of the number of low income single-language minority households, both participating and not participating in SNAP, for each project area and certification office by using census data and knowledge of project areas and areas serviced by certification offices.[5] HSD must seek information from community action agencies, planning agencies, migrant service organizations, and school officials.[6] If those sources of information do not provide sufficient information, HSD must, for a six month period, record the number of single-language minority households that visit the office to make inquiries about the program, file a new application for benefits, or be recertified.[7] Data on New Mexico shows that Bernalillo County alone has 2,346 residents who speak Vietnamese and are not fluent in English.  The New Mexico Asian Family Center reports they served over 100 Vietnamese families in 2016, almost all of whom were in Bernalillo County and had low to extremely low incomes.[8] Refugee assistance agencies in New Mexico have data showing there are also a considerable number of Swahili, Arabic, Farsi, and Dari speakers in Bernalillo County. There are also significant numbers of Chinese and Korean speakers in several New Mexico counties.

As you know, the Decree requires HSD to comply with federal law and regulations concerning notices. Please let us know when HSD will translate vital documents into languages other than English and what languages it will translate the documents into.

Respectfully,

/s/ Sovereign Hager
Legal Director
New Mexico Center on Law and Poverty

---

[4] 7 CFR. 272.4(b)(3).
[5] 7 CFR 272.4(b)(6).
[6] Id.
[7] Id.
[8] See New Mexico Asian Family Center, FY16 Client Demographics Data Report – provided to HSD in May 2017.



EXHIBIT

_Q_



H U M A N   SERVICES
D E P A R T M E N T

*Michelle Lujan Grisham, Governor*
*David R. Scrase, M.D., Secretary*
*Paul Ritzma, General Counsel*

April 22, 2021

Via Email: teague@nmpovertylaw.org

Teague Gonzalez, Esq.
NM Center on Law & Poverty
924 Park Avenue, SW, Ste. C
Albuquerque, NM  87102

      Re:    Response – April 12, 2021 Letter – April Meet and Confer

Ms. Gonzalez:

      In response to your letter of April 12, 2021, your contention(s) that there are "outstanding" issues related to compliance with the Corrective Action Plan (CAP) have no merit.

      In July of 2019, the Court granted the parties' joint motion in which the parties agreed that a case file review would only be conducted after "HSD has fully implemented the provisions of both CAPs." (*See:* Doc. 878).  Defendant agreed to proceed with the case file review in reliance on the parties' agreement and the Court's approval of the joint motion.  In September of 2020, the Special Master, by order of the Court (Doc. 972), issued a report in which he noted that "CAP remedies related to system barriers identified in the prior case review were completed by December 22, 2019." (*See:* Doc 973).  Plaintiffs did not raise, when they submitted their proposal to proceed with the case file review, that there were any "outstanding" compliance issues with the CAP.  Plaintiffs did not object to proceeding with the case file review and did not raise any objection to the Special Master's finding that "CAP remedies related to system barriers identified in the prior case review were completed by December 22, 2019."  If, in fact, there were "outstanding" issues related to compliance with the CAP, then the case file review should never have taken place and was conducted in violation of the parties' agreement and the Court's order granting the joint motion.



*Michelle Lujan Grisham, Governor*
*David R. Scrase, M.D., Secretary*
*Paul Ritzma, General Counsel*

The reason codes that you cite in your letter are "correct" and have been through literacy and readability review. In the examples cited above, the differences between the suggested readability and the final notice language (Spanish final notice language was not included in the table above) boil down to the difference between "regulation" and "rule" or "established" or "met." Such minor differences are not violative of federal law, the Decree, or the CAP.

In addition, there is substantial documented of Plaintiffs having had the opportunity to review the reason code list over the past several years. There is substantial evidence that Plaintiffs have provided Defendant with lists of reason codes with suggested changes going back as far as 2015. Most recently, at the January 2020 special reason code meeting, Plaintiffs provided such a list. Based on those lists, suggestions improvements were made, going back as far as 2015. To assert, at this point-in-time (post-case review and after 5 months without raising any concerns) that there are additional reason codes issues, raises questions about the legitimacy of your contentions.

Your assertion that CAP Item 4.b. "Immigrant Eligibility" has not been completed is completely without merit. HSD has provided Plaintiffs and the Special Master substantial evidence of completion and compliance. Defendant did, as evidence by the January 2021 JSR, agree to provide the finalized non-automated process for handling the handful of unique immigrant eligibility cases once the final mapping was complete. The final mapping of that process was finalized and documentation has been uploaded to the Sharepoint site in a special folder labeled (Non-Cap Item – Immigrant Eligibility – Special Handling Process). Also, As evidenced by the January 15, 2021 JSR, Plaintiffs were informed that Defendant had only identified one case where the process was necessary.

Finally, your repeated assertion regarding CAP Item 4.a.1 "YES NM" that "HSD's current application materials are not translated in the languages required by 7 CFR 272.4(b)(1)" has no merit and appears to be based on your misunderstanding of those federal requirements. Below is the entire subsection (b) of the regulation:



*Michelle Lujan Grisham, Governor*
*David R. Scrase, M.D., Secretary*
*Paul Ritzma, General Counsel*

**(b) Bilingual requirements.**

**(1)** *Based on the estimated total number of low-income households in a project area which speak the same non-English language (a single-language minority), the State agency shall provide bilingual program information and certification materials, and staff or interpreters as specified in paragraphs (b) (2) and (3) of this section. Single-language minority refers to households which speak the same non-English language and which do not contain adult(s) fluent in English as a second language;*

**(2)** *The State agency shall provide materials used in Program informational activities in the appropriate language(s) as follows:*

**(i)** *In project areas with less than 2,000 low-income households, if approximately 100 or more of those households are of a single-language minority;*

**(ii)** *In project areas with 2,000 or more low-income households, if approximately 5 percent or more of those households are of a single-language minority; and*

**(iii)** *In project areas with a certification office that provides bilingual service as required in paragraph (b)(3) of this section.*

Below, is the actual definition of project area, which is key to the analysis of the requirements of subsection (b):

*7 CFR § 271.2 - Definitions.*

*Project area means the county or similar political subdivision designated by a State as the administrative unit for program operations. Upon prior FNS approval, a city, Indian reservation, welfare district, or any other entity with clearly defined geographic boundaries, or any combination of such entities, may be designated as a project area, or a State as a whole may be designated as a single project area.*

FNS designates New Mexico's "single project area" to be the "State as a whole." Pursuant to that designation by FNS, the only non-English language in New Mexico at or above the 5 percent requirement is Spanish. HSD has translated its application materials into Spanish and is fully compliant with



*Michelle Lujan Grisham, Governor*
*David R. Scrase, M.D., Secretary*
*Paul Ritzma, General Counsel*

Federal law.  In addition, for those less than 5 percent non-English language speakers in the single project area, HSD provides translator services.

Defendant has invested substantial time and resources and worked diligently to achieve completion of the CAPs items and compliance with the decree.   Plaintiffs' assertion that CAPs items remain "outstanding," post-case review and after having been supplied, over-and-over again, with substantial evidence of compliance has no merit.  Defendant has met its obligation to meet and confer and attempt to resolve issues in good faith and has established that all remedies set forth in both CAPs have been fully implemented. As the parties represented to the Court, full implementation of those CAPs remedies is "compliance with the Consent Decree in this case." (*See:* Doc. 878).

Respectfully,
/s/
Paul Ritzma

CC:   Special Master Parker
        Compliance Specialist Ramona McKissic
        Daniel Yohalem
        Sovereign Hager
        Dr. David Scrase
        Angela Medrano
        Karmela Martinez



**INCOME SUPPORT DIVISION**
CENTRAL ASPEN SCANNING AREA
P.O. BOX 830
BERNALILLO NM 87004
**PHONE NUMBER:** (800) 283-4465
**FAX NUMBER:** (855) 804-8960



32300002414644000000Y

**Case Number:**
**Date:**            August 7, 2021
Revision Date: ISD 205 April 11th, 2020

CUC T NGUYEN



**EXHIBIT**
**R**

## Notice to Client

Dear Cuc T Nguyen,

The New Mexico Human Services Department Income Support Division will give you more SNAP benefits. This is due to the COVID-19 pandemic. It is added to your normal SNAP and lets you get the full amount of SNAP benefits for your household size. This is $95.00 for August 2021.

The department asks that you use this money to buy enough food to stay home. They ask that you use it to continue social distancing and limit your exposure to other people.



00585946950001207364890

## Notice of Rights



**Special Needs Information** If you are a person with a disability and you require this information in an alternative format, or require a special accommodation to participate in any public hearing, program or services, please contact the Human Services Department, American Disabilities Act (ADA) coordinator at (505) 827-6201 or through the New Mexico Relay System TDD at (800) 659-8331 or by dialing 711. The Department requests at least 10 days advance notice to provide requested alternative formats and special accommodations. (Revised 09/15/14)

### Your Civil Rights Nondiscrimination Statement

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, sex, religious creed, disability, age, political beliefs, or reprisal or retaliation for prior civil rights activity in any program or activity conducted or funded by USDA.

Persons with disabilities who require alternative means of communication for program information (e.g. Braille, large print, audiotape, American Sign Language, etc.), should contact the Agency (State or local) where they applied for benefits. Individuals who are deaf, hard of hearing or have speech disabilities may contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, (AD-3027) found online at: http://www.ascr.usda.gov/complaint_filing_cust.html, and at any USDA office, or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992.

Submit your completed form or letter to USDA by:

| (1) mail: U.S. Department of Agriculture<br>Office of the Assistant Secretary for Civil Rights<br>1400 Independence Avenue, SW Washington,<br><br>D.C. 20250-9410 | (2) fax: (202) 690-7442<br>(3) email: program.intake@usda.gov<br><br>This institution is an equal opportunity provider. (Revised 10/14/15) |
| --- | --- |

**To file a complaint** through HSD of discrimination and/or rude treatment regarding a program receiving Federal or State financial assistance, a complaint form is available at the ISD office or you may write to: NM Human Services Department, ISD Civil Rights Director, P.O. Box 2348, Santa Fe, NM 87504-2348 or by fax (505) 827-7241.

### Confidentiality

All information you give to HSD is confidential. This information will be given to HSD employees who need it to manage the programs for which you have applied. Confidential information may also be released to other federal and state agencies. All information will be used to determine eligibility and/or to provide services. (Revised 07/15/14)

This information may be given to other Federal and State agencies for official examination, and to law enforcement officials for the purpose of picking up persons fleeing to avoid the law. If you get benefits that you were not eligible for and have to pay them back, this is called a claim. If your household gets a claim against it, the information on this application including all Social Security Numbers, may be given to Federal and State agencies, as well as private claims collection agencies for claims collection action. You only have to give U.S. Citizenship and Social Security Numbers for those household members that are applying for. You do not need to give a U.S. Citizen to apply.

Non-citizen immigrants not requesting assistance for themselves, do not need to give immigration status information, Social Security Numbers, or other similar proofs; however, they must give proof of income and things they own because part of their income and things they own may count towards the household's eligibility for assistance. Certain benefits may be available for people without a Social Security Number; ask ISD.

We also check with other agencies, the federal Income and Eligibility Verification Service (IEVS) and The Public Assistance Reporting Information System (PARIS) about the information that you give us. This information may affect your household eligibility and benefit amount.



0990000241464400000000

## FAIR HEARING REQUEST

Revision Date: March 21st, 2021

| Mailing Address: | Date: AUGUST 7, 2021 |
| | Name: |
| | Case Number: |

I do not agree with an action on my case. I am asking for a fair hearing in the following program(s).

☐ SNAP or E&T          ☐ Cash Assistance or NM Works (TANF)          ☐ LIHEAP

☐ General Assistance                                                   ☐ Medicaid

**(Unrelated Child & Disabled Adult)**

If my benefits were lowered or stopped:

☐ I want to keep getting the same amount of benefits while I wait for a fair hearing decision. I understand if the hearing decision is not in my favor, I may have to pay back any benefits I received while waiting for the hearing and the decision.

☐ I DO NOT want to keep getting the same amount of benefits while I wait for a fair hearing decision.
(For more information on the fair hearing process see the other side of this form.)

Please write down your reason(s) for asking for a fair hearing and why you think the action taken was wrong. Give as much

_____

_____

_____

_____

| Client or Authorized Representative Signature: | Date: |

You can leave this form at any Income Support Division and it will be delivered to the Fair Hearings Bureau or you may send it or fax it to:

HUMAN SERVICES DEPARTMENT - FAIR HEARINGS BUREAU
PO BOX 2348
SANTA FE, NM 87504-2348
FAX # (505) 476-6215

When the Fair Hearings Bureau in Santa Fe receives your hearing request, you will be sent a notice confirming that your request for hearing was received.  You will receive a second notice with information about the date and time of your hearing and the phone number you need to call for the hearing.  If you have any questions about your hearing rights, call NM Legal Aid at (833) LGL-HELP ((833) 545-4357).



01 #



8594695000012073648 91

# YOUR RIGHT TO A FAIR HEARING

Revision Date: March 21st, 2021

| | |
|---|---|
| **What is a Fair Hearing and why should I ask for one?** | A Fair Hearing gives you the chance to explain why you think there has been a wrong decision made about your benefits. Hearings are held over the phone with a hearing officer. The hearing officer will hear information from you and from the Income Support Division and decide whether the decision was right or wrong. |
| **Can I get help with my hearing?** | You can have a friend or family member participate in the hearing with you. You may also be able to get free legal help. To learn more about free legal help, call NM Legal Aid at (833) LGL-HELP ((833) 545-4357). |
| **How long do I have to ask for a hearing?** | You must request a hearing within **120 days** from the date of the adverse action you are appealing. You may be able to get more time to ask for a hearing if you have a good reason, like illness or another circumstance beyond your control. |
| **Can I keep my benefits if I request a hearing?** | If you are already getting benefits, you may be able to continue receiving benefits while you wait for your hearing if you request your hearing within **13 days** of the adverse action date. **For SNAP or CASH:** If the hearing decision is not in your favor, you may have to pay back the benefits you received while waiting for your hearing. |
| **How do I ask for a hearing?** | You can request a hearing by filling out the information on the other side of this form and mailing or faxing it to:<br>HUMAN SERVICES DEPARTMENT - FAIR HEARINGS BUREAU<br>PO BOX 2348<br>SANTA FE, NM 87504-2348<br>FAX # (505) 476-6215<br><br>You can request a hearing over the phone by calling (800) 283-4465. You can also request a hearing in person at any Income Support Division office. |
| **Special Needs Information**  | If you are a person with a disability and you require this information in an alternative format, or require a special accommodation to participate in any public hearing, program or services, please contact the Human Services Department, American Disabilities Act (ADA) coordinator at (505) 827-6201 or through the New Mexico Relay System TDD at (800) 659-8331 or by dialing 711. The Department requests at least 10 days advance notice to provide requested alternative formats and special accommodations. (Revised 09/15/14) |
| **If you need an interpreter** | You have a right to a free interpreter. Let the Human Services Department (HSD) know if you need an interpreter before or during the hearing by calling: (800) 283-4465. |