IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBRA HATTEN-GONZALES, et al.,

    Plaintiffs,

vs.

                                                Civ. No. 88-0385 KG/CG
                                                Consolidated with
                                                Civ. No. 88-786 KG/CG

DAVID R. SCRASE, Secretary of the
New Mexico Human Services Department,

Defendant.

### ORDER FOLLOWING FEBRUARY 25, 2022 HEARING

On February 25, 2022, the Court held an in-person hearing on Plaintiffs' Refiled Motion to Enforce Compliance with Decree to Translate Documents and Interpret as Required by Federal Law (Doc. 1019), the Court's Order for Additional Information (Doc. 1027), and Plaintiffs' Request for Clarification (Doc. 1029). The hearing was attended by Ms. Sovereign Hager for Plaintiffs, Mr. Paul Ritzma, on behalf of Defendant, and Defendant David R. Scrase, M.D., in his capacity as the Secretary of the New Mexico Human Services Department ("HSD" or "the Department"). In this way, the Court granted Plaintiffs' Request for Hearing (Doc. 1025).[1] This Order memorializes the Court's oral ruling at the February 25 hearing. For the reasons explained on the record and herein, Plaintiffs' Motion to Enforce is granted in part and denied in part, Plaintiffs' Request for Clarification is denied, and the Court's Order for Additional Information is modified as follows:

---

[1] To the extent Plaintiffs requested additional or further relief in their Request for Hearing, that request is denied.

I.   *Motion to Enforce*

Plaintiffs' Motion to Enforce, broadly, alleges Defendant is not complying with SNAP and Medicaid regulations related to language access for limited English proficiency persons. Specifically, Plaintiffs contend Defendants needs to translate documents into additional languages and provide additional interpretation services. In response, Defendant contends the Department provides all SNAP and Medicaid documents in English Spanish, provides bilingual staff in Spanish, and provides free access to the CTS Language Link. Therefore, Defendant asserts that he is in compliance with all applicable regulations and provides meaningful access to limited English proficiency persons.

As further explained at the Hearing and herein, Plaintiffs' Motion is denied with respect to Title VI of the Civil Rights Act and granted with respect to requiring Defendant to provide taglines with Medicaid notices. The Court presently lacks sufficient information to resolve the Motion with respect to SNAP regulations, therefore, Defendant will undertake a 90-day, statewide survey to adduce clear estimates of the number of single language minority households that may be eligible for the SNAP program.

A.  *Title VI of the Civil Rights Act*

Plaintiffs argue that Title VI of the Civil Rights Act requires Defendant to provide written translation of vital documents for each eligible limited English proficiency language group that constitutes five percent or 1,000 people, whichever is less, of the population of persons eligible to be served or likely to be affected or encountered. Plaintiffs' position misconstrues the role of Department of Justice guidance and lacks a firm foundation in the law.

Plaintiffs correctly point out that Title VI of the Civil Rights Act states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." (Doc. 1019) at 4-5 (quoting 42 U.S.C. § 2000d). The Department of Justice (DOJ) considers it "strong evidence" of compliance with Title VI if the recipient of federal funds, that is, the State, "provides written translations of vital documents for each eligible limited English proficiency language group that constitutes five percent or 1,000, which is less, of the population of persons eligible to be served or likely to be affected or encountered." (Doc. 1019) at 5 (quoting *Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons*, 67 Fed. Reg. 41455, 41464 (June 18, 2002) ("Safe Harbor Rule")). "Translation of other documents, if needed, can be provided orally." *Id.* (quoting same).

> However, DOJ updated its guidance on November 28, 2014, to state:
>
> The failure to provide written translations under the circumstances outlined [above] does not mean there is non-compliance. Rather, they provide a common starting point for [program administrators] to consider whether and at what point the importance of the service, benefit, or activity involved; the nature of the information sought; and the number or proportion of LEP persons served call for written translations of commonly-used forms into frequently encountered languages other than English. Thus, these paragraphs merely provide a guide for recipients that would like greater certainty of compliance than can be provided by a fact-intensive, four-factor analysis.

79 Fed. Reg. 70771, 70782 (Nov. 28, 2014). When evaluating whether a State is in compliance with Title VI, DOJ applies a "balancing test" defined as

> an individualized assessment that balances the following four factors: a. The number or proportion of LEP persons eligible to be served or likely to be encountered within the area serviced by the [State agency]; b. The frequency with which LEP persons come in contact with the program or activity; c. The nature and importance of the program, activity, or service to people's lives; and d. The resources available to the [State agency] and costs.

79 Fed. Reg. 70771, 70772 (Nov. 28, 2014).

The SNAP and Medicaid programs administered by Defendant accept federal funds. Therefore, § 2000d applies to this case. Rather than imposing a separate or additional burden on Defendant, § 2000d and the interpretive guidance underscore and backstop the SNAP and Medicaid regulations with respect to language access.

Contrary to Plaintiffs' assertion, the Safe Harbor Rule does not impose an affirmative duty on Defendant to translate documents or provide interpretation services in an area where 1,000 or more people speak a single language other than English. Instead, the Safe Harbor Rule may guide Defendant in analyzing its compliance with Title VI. Put another way, the DOJ guidance cannot be converted into a legal requirement. For this reason, Plaintiffs' Motion is denied with respect to Title VI of the Civil Rights Act.

### B. Taglines and Medicaid Regulations

Plaintiffs contend that Medicaid regulations require Defendant to "provide Medicaid applicants and participants with Medicaid eligibility requirements, available Medicaid services, and the rights . . . and responsibilities of applicants and beneficiaries in plain language and in a manner that is accessible and timely." (Doc. 1019) at 4 (citing 42 C.F.R. § 435.905). "Individuals must be informed of the availability of the accessible information and language services . . . and how to access such information and services, <u>at a minimum through providing taglines in non-English languages</u> indicating the availability of language services." 42 U.S.C. § 435.905(b)(3) (emphasis added).

Defendant admits the Department does not provide taglines with Medicaid communications. However, he contends that he is in compliance because the Department provides Medicaid and SNAP materials in English and Spanish, has posted tagline posters in the HSD offices, and provides CTS Language Link access. Morevoer, Defendant asserts that the

repeal of tagline requirements under § 1557 of the Affordable Care Act exempts him from the § 435.905(b)(3) requirement to provide taglines when providing "electronic and paper formats" of "the eligibility requirements," "available Medicaid services," and "the rights and responsibilities of applicants and beneficiaries" "to all applicants and other individuals who request it." 42 C.F.R. § 435.905(a).

The Court acknowledges that posting tagline posters in offices and providing access to the CTS Language Link from those offices constitute important steps in providing language access. However, these steps do not take Defendant all the way to compliance.

Paragraph (b)(3) of the regulation requires taglines in non-English languages indicating the availability of language services. While the regulation is not explicit about where taglines must be included, reading the regulation as a whole proves instructive: taglines must be provided in electronic and paper formats of the eligibility requirements, available Medicaid services, and the rights and responsibilities of applicants and beneficiaries. 42 C.F.R. § 435.905. Taglines must be provided when communicating these matters to any applicant or to any person who requests information.

The Court notes that the federal Department of Health and Human Services provides translated taglines in 64 languages, including Arabic, Navajo, Vietnamese, Chinese, Swahili, and many others. The taglines are available, free of charge, for State partners to download and use. https://www.hhs.gov/civil-rights/for-individuals/section-1557/translated-resources/index.html (last accessed Feb. 28, 2022).

Finally, by its own terms, the repeal of § 1557 does not impact the tagline requirement in 42 C.F.R. § 435.905(b)(3). Moreover, the guidance issued along with the repeal states that existing regulations "continue[] to require covered entities to provide taglines whenever such

taglines are necessary to ensure meaningful access by LEP individuals to a covered program or activity." *Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority*, 85 Fed. Reg. 37160, 37176 (June 19, 2020).

For these reasons, the Court concludes that the applicable Medicaid regulation, 42 C.F.R. § 435.905, requires Defendant to provide non-English taglines in paper and electronic format when communicating with any applicant or other person requesting information about the Medicaid program. Within thirty (30) days from the date of entry of this Order, Defendant will include taglines in all Medicaid communications involving eligibility requirements, available Medicaid services, and the rights and responsibilities of applicants and beneficiaries. Defendant will also include taglines in all Medicaid communications involving the application, a decision on the application, and any Notice of Rights or Notice of Hearing.

For these reasons, Plaintiffs' Motion to Enforce is granted-in-part with respect to taglines under the Medicaid regulations.

C. *CTS Language Link*

Defendant asserts he provides meaningful access to limited English proficiency persons by providing a 1-800 number for individuals to call and access a translator, free of charge. HSD uses the Yes New Mexico website for online SNAP and Medicaid applications. The website contains sufficient functionality to translate into English or Spanish. Additionally, the website contains a drop-down menu for other languages, including Vietnamese, Swahili, and others. The links for languages other than English and Spanish provide a phone number to call for translation services.

The phone number provided by HSD gives menu options in English and Spanish. Put another way, to access an interpreter for any other language, a user would need to navigate the

English or Spanish menus to get an operator, and then ask for an interpreter in the third language. At the Hearing, counsel for Defendant confirmed the Court's understanding of this process.

The Court notes that other State agencies have updated, and continue to update, the interactive voice control such that the 1-800 number provides a list of languages and a user can hit a button or speak when their language comes up. Defense counsel confirmed HSD has not employed this functionality but offered no reason why HSD has not or cannot update its language line functionality.

Within thirty (30) days from the date of entry of this Order, HSD will update its interactive voice control on the 1-800 language access line to allow users to speak their language and be connected with a translator or provide a list of languages available, allowing the user to hit a button when their language pops up.

### D. SNAP Regulations

The parties agree that Defendant defines New Mexico as a statewide project area for SNAP purposes, and that SNAP allows such a definition. The instant dispute centers on whether Defendant has any "certification offices," as that term is used in 7 C.F.R. § 272.4(b)(3) and (b)(6). The Court previously ruled that Defendant does have such certification offices, and reaffirms that ruling. (Doc. 1027).

The Court begins with the canons of construction. Federal regulations are interpreted by "applying general rules of statutory construction." *Time Warner Enter. Co., L.P. v. Everest Midwest Licensee, LLC*, 381 F.3d 1039, 1050 (10th Cir. 2004). The most basic canon of statutory construction dictates that the Court must "give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section." *Lamb v. Thompson*, 265 F.3d 1038, 1051 (10th Cir. 2001).

7

With the canons of construction in mind, the Court turns to 7 C.F.R. § 272.4(b), which elucidates the language access requirements for SNAP. At the outset, paragraph (b)(1) defines "single-language minority" as "households which speak the same non-English language and which do not contain adult(s) fluent in English as a second language." 7 C.F.R. § 272.4(b)(1).

The regulation dictates under what circumstance the State agency "shall provide bilingual program information and certification materials, and staff or interpreters as specified in paragraphs (b)(2) and (3) of this section." *Id.* Paragraph (b)(2) requires the State agency to

> provide materials used in Program informational activities in the appropriate language(s) as follows: . . . (ii) In project areas with 2,000 or more low-income households, if approximately 5 percent or more of those households are of a single-language minority; and (iii) in project areas with a certification office that provides bilingual service as required in paragraph (b)(3) of this section.

7 C.F.R. § 272.4(b)(2). Paragraph (b)(3) requires the State agency to

> provide both certification materials in the appropriate language(s) and bilingual staff or interpreters as follows:
> (i) In each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households; and
> (ii) In each project area with a total of less than 100 low-income households if a majority of those households are of a single-language minority.
>> (A) Certification materials shall include the SNAP application form, change report form and notices to households.
>> (B) If notices are required in only one language other than English, notices may be printed in English on one side and in the other language on the reverse side. If the certification office is required to use several languages, the notice may be printed in English and may contain statements in other languages summarizing the purpose of the notice and the telephone number (toll-free number or a number where collect calls will be accepted for households outside the local calling area) which the household may call to receive additional information. For example, a notice of eligibility could in the appropriate language(s) state:
>>
>> Your application for SNAP benefits has been approved in the amount stated above. If you need more information telephone _____.

7 C.F.R. § 272.4(b)(3).

Finally, the regulations requires the State agency to "develop estimates of the number of low-income single-language minority households, both participating and not participating in the program, for each project area and certification office . . . ." 7 C.F.R. § 272.4(b)(6). If the State agency lacks sufficient information to determine whether there is a need for bilingual staff or interpreters, the regulation requires the State agency to undertake a survey for each certification office to create the appropriate estimate. *Id.*

While paragraph (b)(6) does not explicitly reference paragraph (b)(3), the information gathered pursuant to paragraph (b)(6) provides the basis for the agency to determine the "approximate" number of single-language minority households serviced by each certification office, which in turn dictates which offices must provide interpreters and materials in which languages.

Defendant raised two key issues with respect to the SNAP regulations: first, whether Defendant has "certification offices"; and second, which portions of the regulation apply to Defendant.

The regulations do not define "certification office," but use the terms "project area" and "certification office" in such as to make clear that the terms have different meanings. For example, 7 C.F.R. § 272.4(b)(2)(iii) address "project areas *with a certification office*." (emphasis added). This suggests that "certification office" means something different than "project area."

Given that the term "certification office" is not defined, the Court must give that term its plain meaning. Here, a certification office or a local certification office would be the HSD office where an applicant goes to certify his or her application for benefits, or to be interviewed. And while Defendant does not use the term "certification office," he admits to having 28 "field

9

offices" statewide, and directs applicants to those field offices for in-person interviews during the SNAP application process and during recertification.

The Court concludes, as a matter of law, that Defendant's "field offices" are "certification offices" within the meaning of the SNAP regulations.

With respect to the second issue—which provisions of the regulation apply to Defendant—the answer is simple: the entire regulation applies to Defendant. Were the Court to accept Defendant's contention that only paragraph (b)(2) applies, because New Mexico is a statewide project area with more than 2,000 low-income households, Defendant would only need to provide SNAP materials in a language spoken by 5% or more of the applicable population. In this case, Spanish. Defendant's theory, however, would deny access and benefits significant pockets of non-English speaking communities in New Mexico simply because of a language barrier. The result would be that people could be denied benefits, or never know they are entitled to benefits, like food, nutrition, and medical care. The SNAP regulations expressly require more access.

Having concluded that Defendant's field offices are "certification offices," the Court now considers what type of language access Defendant must provide. The parties agree that Defendant must provide translated materials and interpretation services in Spanish. Defendant, in fact, does provide translated materials, interpretation services, and bilingual staff in Spanish.

However, Defendant has been operating under the misapprehension that only subparagraph (b)(2)(ii) applies, that is, the regulation requiring the State agency to provide materials used in Program information activities in languages other than English "in project areas with 2,000 or more low-income households, if approximately 5 percent or more of those households are of a single-language minority." 7 C.F.R. § 272.4(b)(2)(ii). Using only this

section, Defendant contends he has discharged his duty by providing materials in Spanish. Defendant is incorrect.

Subparagraph (b)(2)(iii) provides that HSD must provide materials used in Program information activities in the appropriate languages "in project areas with a certification office that provides bilingual service as required in paragraph (b)(3) of this section." *Id.* at (b)(2)(iii). Paragraph (b)(3) provides that HSD shall provide both certification materials *and* bilingual staff or interpreters "in each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households." *Id.* at (b)(3). To determine which certification offices must provide this service, paragraph (b)(6) requires the Department to "develop estimates of the number of low-income single-language minority households, both participating and not participating in the program, for each project area and certification office[.]" *Id.* at (b)(6).

In addition to Defendant's misplaced argument that only paragraph (b)(2) applies, Defendant contends that the four-factor analysis employed by DOJ to determine compliance with Title VI of the Civil Rights Act applies to determine Defendant's obligations under the SNAP regulations. Defendant is incorrect. The SNAP regulations impose a separate and distinct obligation on Defendant that does not resort to the four-factor analysis discussed *supra*.

Put another way, the Department must determine which certification offices service "approximately 100 single-language minority low-income households." 7 C.F.R. § 272.4(b)(3). Defendant contends that he aggregates sufficient data to make such an estimate. However, as discussed at the Hearing, and based on the parties' competing interpretation of the submitted data, the Court finds that it lacks sufficient—and sufficiently reliable—data to determine whether Defendant is in compliance.

Because the Court lacks sufficient information to resolve Plaintiffs' Motion to Enforce with respect to the SNAP regulations, the Court takes that portion under advisement. From April 1, 2022, through June 30, 2022, Defendant will undertake a statewide survey in which it will record the total number of single-language minority households that contact the Department in person, by phone, or online to make inquiries about the program, file a new application for benefits, or be recertified. No later than March 8, 2022, the parties shall meet and confer on a suitable process to conduct the survey. The parties will submit a joint proposal regarding conduct of the survey to the Special Master no later than March 15, 2022. If the parties are unable to agree on a joint proposal, each party will submit their individual proposal regarding conduct of the survey to the Special Master no later than March 16, 2022. In the event that the parties submit competing proposals to the Special Master, the Special Master will determine the process for conducting the survey by March 23, 2022. Given the importance of the subject matter, the Court will not entertain a motion by either party to extend the deadlines.

Not later than July 15, 2022, Defendant will file with the Court a report of its findings broken down by language and by field office, and aggregated for the entire project area. At the same time Defendant submits its report, Defendant will upload all of the raw data collected during the survey to the DHG Litigation Document Library.

II. Motion for Clarification

Plaintiffs sought clarification of the Court's original Order for Additional Information (Doc. 1027), and asked the Court to extend the survey period to 180 days. This request is denied. The Court is aware of the 180-day period prescribed in 7 C.F.R. § 272.4(b)(6). However, this Order for a survey imposes a separate obligation from any survey requirement under the regulation. Under the unique circumstances of this moment in time, where additional

federal benefits and automatic extensions are phasing out and many recipients must recertify, the Court is satisfied that a 90-day survey will be sufficient for Defendant to have contact with a majority of program-eligible households.

Defendant also sought clarification on whether the survey order was to provide more information to comply with the need for bilingual staff or interpreters under paragraph (b)(6), or to comply with another part of the regulation. The simple answer is: Both. The individual provisions of the SNAP regulation cannot be read in isolation, but rather must be read as a cohesive whole that was intentionally and intelligently drafted to maximize language access for persons and households who may be eligible for the SNAP program.

III. Conclusion

For the reasons stated herein and on the record at the Hearing, IT IS ORDERED THAT:

1. Plaintiffs' Motion to Enforce (Doc. 1019) is granted-in-part, denied-in-part, and taken under advisement;

2. Plaintiffs' Motion for Hearing (Doc. 1025) is granted;

3. Plaintiffs' Motion for Clarification (Doc. 1029) is denied;

4. Within thirty (30) days from the date of entry of this Order, Defendant will include taglines in all Medicaid communications involving eligibility requirements, available Medicaid services, and the rights and responsibilities of applicants and beneficiaries. Defendant will also include taglines in all Medicaid communications involving the application, a decision on the application, and any Notice of Rights or Notice of Hearing;

5. Within thirty (30) days from the date of entry of this Order, HSD will update its interactive voice control on the 1-800 language access line to allow users to speak their

language and be connected with a translator or provide a list of languages available, allowing the user to hit a button when their language is indicated;

6. From April 1, 2022, through June 30, 2022, Defendant will undertake a statewide survey in which it will record the total number of single-language minority households that contact the Department in person, by phone, or online to make inquiries about the program, file a new application for benefits, or be recertified; and

7. Not later than July 15, 2022, Defendant will file with the Court a report of its findings broken down by language and by field office, and aggregated for the entire project area; Defendant will upload all of the raw data collected during the survey to the DHG Litigation Document Library.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE